NVB 4001 (Rev. 09/20)

## * * § 362 INFORMATION SHEET * *

Silver State Broadcasting, LLC _____

BK-21-14978-a

DEBTOR
  W. Lawrence Patrick, Receiver _____

BK- _____

MOTION #: _____

MOVANT

CHAPTER: 11 ▾

---

### _Certification of Attempt to Resolve the Matter Without Court Action:_

_Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so._

_Date:_ 11/23/2021 _____        _Signature:_ /s/Brett A. Axelrod _____

_Attorney for Movant_

---

Note for parties not represented by an attorney: Information about motions for relief from the automatic stay is available at the U.S. Bankruptcy Court's website:
https://www.nvb.uscourts.gov/filing/filing-pro-se/legal-services/. _____

---

PROPERTY INVOLVED IN THIS MOTION: All assets of Debtors estates held by Receiver _____
NOTICE SERVED ON:  Debtor(s) ✔ ; Debtor's counsel ✔ ; Trustee ✔ ;
DATE OF SERVICE: 11/23/2021 _____

---

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st _____ | 1st _____ |
| 2nd _____ | 2nd _____ |
| 3rd _____ | 3rd _____ |
| 4th _____ | 4th _____ |
| Other: _____ | Other: _____ |
| Total Encumbrances: _____ | Total Encumbrances: _____ |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |

---

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION"for MOVANT : |
|---|---|
| Amount of Note: _____ | . |
| Interest Rate: _____ | . |
| Duration: _____ | . |
| Payment per Month: _____ | . |
| Date of Default: _____ | . |
| Amount in Arrears: _____ | . |
| Date of Notice of Default: _____ | . |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
|   Relief sought based on Receivership Orders entered by State Court and District Court. | |
| SUBMITTED BY: Brett A. Axelrod _____ | SUBMITTED BY: Brett A. Axelrod _____ |
| _____ | SIGNATURE: /s/Brett A. Axelrod _____ |

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Application for Appearance *Pro Hac Vice* Pending
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        nkoffroth@foxrothschild.com
*Counsel for W. Lawrence Patrick*

Electronically Filed November 23, 2021

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

SILVER STATE BROADCASTING, LLC,

☐ Affects Silver State Broadcasting, LLC
☐ Affects Golden State Broadcasting, LLC
☐ Major Market Radio, LLC
☒ Affects all Debtors

Case No. BK-21-14978-abl

Jointly Administered with:
Case No. BK-S-21-14979-abl
Case No. BK-S-21-14980-abl

Chapter 11

**EMERGENCY MOTION TO EXCUSE TURNOVER IN FAVOR OF RECEIVER AND TO DISMISS/ABSTAIN, OR, ALTERNATIVELY, FOR STAY RELIEF AND/OR CONVERSION**

Hearing Date: *Application for OST Pending*
Hearing Time: *Application for OST Pending*
Place: Courtroom 1, Third Floor
       Foley Federal Building
       300 Las Vegas Boulevard South
       Las Vegas, Nevada 89101

# **TABLE OF CONTENTS**

I.    Introduction ................................................................................................. 1

II.   Factual Background ..................................................................................... 4

    A.    General Background ............................................................................. 4

    B.    The Debtors' Only Significant Assets Are the Licenses to Operate the FM Radio Stations and Mr. Stolz Admits That the Radio Stations Do Not Generate Revenue. ................................................................................. 5

    C.    Bellaire Obtains and Records A Judgment Against Golden State—During Litigation in Which the Debtor and Mr. Stolz Were Sanctioned for Discovery Misconduct and Submitting "Contradictory Testimony"—That the Debtor Schedules as Unsecured. ......................................................................... 6

    D.    The Plaintiffs in the District Court Action Obtain a Judgment in Excess of $1.2 Million Based on Certain Debtors' and Mr. Stolz's Willful Violation of Copyrights. .......................................................................................... 8

    E.    The District Court Appoints the Receiver as Mr. Stolz Is Repeatedly Sanctioned, Held in Contempt, and Jailed for Discovery Misconduct During Post-Judgment Enforcement. ................................................................. 8

    F.    The Mr. Stolz Employs Frivolous Litigation Tactics and Misleading Filings with the FCC to Interfere with the Consummation of a $6 Million Sale of the Radio Stations Entered into by the Receiver and Approved by the District Court. ................................................................................................. 11

III.  Argument .................................................................................................. 15

    A.    The Receiver Should be Excused from Turnover under 11 U.S.C. § 543(d) ........ 15

        1.    The Debtors Have No Hope of Reorganization Because They Admittedly Generate Only "Meager" Revenue and the Debtors Have Proven Incapable of Selling Their Assets. ................................. 16

        2.    The Debtors Clearly Demonstrated—and the District Court Found— That They Will Not Use Their Assets to Pay Creditors. ................... 17

        3.    Mr. Stolz Has Grossly Mismanaged the Debtors by Failing to Abide by Sound Business Practices, Failing to Maintain the Licenses, Failing to Provide Basic Disclosures to the Receiver, and Causing the Debtors to Incur Thousands of Dollars of Unnecessary Sanctions. .......... 18

        4.    The Debtors Do Not Schedule Preferences or Require Any Other Special Benefit Conferred Under the Bankruptcy Code to Maximize the Value of Their Estates. ................................................. 19

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127918512.2

i

B.    The Court Should Dismiss the Bankruptcy Cases or Abstain from Hearing the Bankruptcy Cases. ................................................................................................ 20

1.    The Bankruptcy Cases Should be Dismissed for Cause under 11 U.S.C. § 1112(b). ................................................................................... 20

2.    Alternatively, the Court Should Abstain from Hearing the Bankruptcy Cases, Under § 305(a). ............................................................ 24

C.    Alternatively, the Court Should Terminate the Automatic Stay to Allow the Receiver to Take Control of the Debtors' Assets. ................................................. 26

D.    Alternatively, the Court Should Convert the Bankruptcy Cases to Chapter 7 for Cause. .................................................................................................. 29

IV.    Conclusion ..................................................................................................................... 30

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

127918512.2

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A Partners, LLC,*
    344 B.R. 114 (Bankr. E.D. Cal. 2006) ................................................................................ 29

*In re Altman,*
    2018 WL 3133164 (B.A.P. 9th Cir. June 26, 2018) ............................................................ 26

*In re Bellucci,*
    119 B.R. 763 (Bankr. E.D. Cal. 1990) ............................................................................... 24

*Big Shanty Land Corp. v. Comer Properties,*
    61 B.R. 272 (N.D. Ga. 1985) ............................................................................................. 22

*In re Charfoos,*
    979 F.2d 390 (6th Cir. 1992) .............................................................................................. 22

*In re Chris-Marine U.S.A., Inc.,*
    262 B.R. 118 (Bankr. M.D. Fla. 2001) .............................................................................. 22

*In re Consol. Pioneer Mortg. Entities,*
    248 B.R. 368 (B.A.P. 9th Cir. 2000), *aff'd,* 264 F.3d 803 (9th Cir. 2001) ........................ 20

*In re Curtis,*
    40 B.R. 795 (Bankr. D. Utah 1984) ......................................................................... 26, 27, 29

*In re Danzik,*
    549 B.R. 804 (Bankr. D. Wy. 2016) .................................................................................. 26

*Dill v. Dime Savings Bank, FSB (In re Dill),*
    163 B.R. 221 (E.D.N.Y. 1994) ................................................................................ 15, 16, 18

*Duvar Apt., Inc. v. F.D.I.C. (In re Duvar Apt., Inc.),*
    205 B.R. 196 (B.A.P. 9th Cir. 1996) ................................................................................. 26

*In re EB Holdings II, Inc.,*
    591 B.R. 10 (Bankr. D. Nev. 2018) ................................................................................... 26

*In re Eighty South Lake Inc.,*
    63 B.R. 501 (Bankr. C.D. Cal. 1986) ................................................................................ 22

*In re Eisen,*
    14 F.3d 469 (9th Cir. 1994) ............................................................................................... 22

*In re Ericson,*
    26 B.R. 973 (Bankr. C.D. Cal. 1983) ................................................................................ 16

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

iii

127918512.2

*First Fed. Bank of Cal. v. Robbins (In re Robbins)*,
    310 B.R. 626 (B.A.P. 9th Cir. 2004) .................................................................... 3, 28

*French Bourekas Inc. v. Turner*,
    199 B.R. 807 (Bankr. E.D.N.Y. 1996) ..................................................................... 15

*In re Goeb*,
    675 F.2d 1386 (9th Cir. 1982) .................................................................................. 22

*In re Greenberg*,
    2017 WL 3816042 (B.A.P. 9th Cir. Aug. 31, 2017) ................................................ 21

*In re Hassen Imports P'ship*,
    2013 WL 4428508 (B.A.P. 9th Cir. Aug. 19, 2013) .......................................... 23, 24

*In re KCC-Fund V, Ltd.*,
    96 B.R. 237 (W.D. Mo. 1989) ............................................................................ 16, 18

*In re Korean Western Presbyterian Church of Los Angeles*,
    618 B.R. 282 (Bankr. C.D. Cal. 2020) ..................................................................... 27

*In re Kronemyer*,
    405 B.R. 915 (B.A.P. 9th Cir. 2009) ........................................................................ 26

*In re Landmark Fence Co., Inc.*,
    2011 WL 6826253 (C.D. Cal. Dec. 9, 2011) ........................................................... 27

*In re Lizeric Realty Corp.*,
    188 B.R. 499 (Bankr. S.D.N.Y. 1995) ..................................................................... 16

*In re Marshall*,
    721 F.3d 1032 (9th Cir. 2013) .................................................................................. 21

*In re Michael S. Starbuck, Inc.*,
    14 B.R. 134 (Bankr. S.D.N.Y. 1981) ....................................................................... 25

*In re Newport Offshore Ltd.*,
    219 B.R. 341 (Bankr. D.R.I. 1998) ........................................................................... 25

*In re O'Hara*,
    2019 WL 3451730 (9th Cir. BAP July 30, 2019), *aff'd*, 835 F. App'x 253 (9th
    Cir. 2020) ................................................................................................................. 20

*In re Orchards Vill. Invs., LLC*,
    405 B.R. 341 (Bankr. D. Ore. 2009) ........................................................................ 16

*In re Owen-Johnson*,
    115 B.R. 254 (Bankr. S.D. Cal. 1990) ..................................................................... 24

*In re Plumberex Specialty Prods., Inc.*,
    311 B.R. 551 (Bankr. C.D. Cal. 2004) ..................................................................... 27

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

iv

*In re Powers Aero Marine Servs., Inc.*,
  42 B.R. 540 (Bankr. S.D. Tex. 1984)....................................................................16

*In re Prometheus Health Imaging, Inc.*,
  705 F. App'x 626 (9th Cir. 2017).........................................................................21

*In re Prop. Mgmt. & Inv., Inc.*,
  19 B.R. 202 (Bankr. M.d. Fla. 1982) ...................................................................20

*In re Rognstad*,
  121 B.R. 45 (Bankr. D. Haw. 1990)......................................................................22

*In re Skymark Properties II, LLC*,
  597 B.R. 391 (Bankr. E.D. Mich. 2019) ........................................................16, 24

*In re Starlight Houseboats, Inc.*,
  426 B.R. 375 (Bankr. D. Kan. 2010)....................................................................25

*In re Sullivan*,
  522 B.R. 604 (B.A.P. 9th Cir. 2014)...............................................................20, 21

*In re Tucson Estates, Inc.*,
  912 F.2d 1162 (9th Cir. 1990) .............................................................................26

*In re Uno Broadcasting Corp.*,
  167 B.R. 189 (Bankr. D. Ariz. 1994) ...................................................................16

*In re Winn*,
  43 B.R. 25 (Bankr. M.D. Fla. 1984)................................................................21, 22

*In re WLB-RSK Venture*,
  296 B.R. 509 (Bankr. C.D. Cal. 2003) .................................................................21

**Statutes**

11 U.S.C. § 305(a) .............................................................................................24, 25

11 U.S.C. § 362(d)(1) ..............................................................................................26

11 U.S.C. § 362(g)(2) ..............................................................................................26

11 U.S.C. § 543(a) .............................................................................................15, 16

11 U.S.C. § 543(b) .............................................................................................15, 30

11 U.S.C. § 543(d) .............................................................................................15, 16

11 U.S.C. § 543(d)(1) ...................................................................................15, 16, 20

11 U.S.C. § 1112(b) ...................................................................................1, 20, 24, 30

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

127918512.2

11 U.S.C. § 1112(b)(1) ................................................................................................ 20, 21, 29

**Other Authorities**

FED. R. BANKR. P.  4001(a)(1) ...................................................................................... 29

FED. R. BANKR. P. 4001(a)(3) ...................................................................................... 29

FED. R. EVID. 201(b) ..................................................................................................... 1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

127918512.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

W. Lawrence Patrick (the "Receiver"), the receiver of substantially all of the assets[1] of the above-captioned the debtors and debtors-in-possession (collectively, the "Debtors"),[2] hereby submits this motion (the "Motion") for entry of an order: (i)(a) excusing the Receiver from the turnover provisions of § 543 of title 11 of the United States Code (the "Bankruptcy Code"),[3] and (b) dismissing the Bankruptcy Cases (defined below) or abstaining from hearing the Bankruptcy Cases, pursuant to §§ 1112(b) and 305(a), respectively; or, alternatively, (ii)(a) terminating the automatic stay as to the Receiver, pursuant to § 362(d), or (b) converting the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code, pursuant to § 1112(b); and (iii) granting the Receiver such other and further relief as is just and appropriate under the circumstances.  In support of the Motion, the Receiver respectfully submits the concurrently-filed *Declaration of W. Lawrence Patrick* (the "Patrick Declaration") and the *Request for Judicial Notice* (the "RJN"), references the *Declaration of Edward R. Stolz in Support of Emergency Joint Motion for Order Directing Court Appointed Receiver to Turnover Property Pursuant to 11 U.S.C. §§ 543(a) and (b)* [Docket No. 31] (the "Stolz Declaration") and respectfully states as follows:

## I.

## INTRODUCTION[4]

The Debtors filed these Bankruptcy Cases after nearly a decade of litigation and post-judgment enforcement actions resulted in the appointment of the Receiver by both the State Court

---

[1] Among other things, the Receivership Order appointed the Receiver over the Debtors' three FM Radio Stations (defined below), which are the principal assets of this Bankruptcy Case.  *See* Patrick Decl., ¶ 11 at 3 n.3.  For the avoidance of doubt, the Debtors' AM Radio Station and three translators (e.g., low-power FM stations) are not assets of the Debtors' receivership estate.  *See id.*

[2] The Debtors are Silver State Broadcasting, LLC ("Silver State"), Golden State Broadcasting, LLC ("Golden State"), and Major Market Radio, LLC ("Major Market").  Unless otherwise set forth herein, all "Docket" references are to the docket of the Silver State Bankruptcy Case.  The docket of the Golden State Bankruptcy Case is referred to herein as the "Golden State Docket" and the docket of the Major Market Bankruptcy Case is referred to herein as the "Major Market Docket."  To the extent applicable, the Receiver respectfully requests that the Court take judicial notice of the filings on the dockets of the Bankruptcy Cases, pursuant to Rule 201(b) of the Federal Rules of Evidence.

[3] Unless otherwise set forth herein, all references to "Section" and "§" are to sections of the Bankruptcy Code.

[4] Unless otherwise defined herein, all capitalized terms used in this Introduction have the definitions set forth elsewhere in this Motion.

1

127918512.2

and the District Court and the arrest of the Debtors' principal for contempt.  The judgments against the Debtors in each case offered early indications of the Debtors' contemptuous attitude toward their creditors and legal obligations.  On July 22, 2014, the State Court entered the Bellaire Judgment against Golden State for longstanding nonpayment of antenna licensing fees.  During the case, Golden State was sanctioned for discovery misconduct that included the State Court's observation that "Mr. Stolz submitted contradictory testimony" on his compliance with the State Court's orders.  RJN, Ex. B.  On May 22, 2018, the District Court entered the WB Judgment against the Debtors, Mr. Stolz and related entities based on their intentional copyright abuses—they continued to play licensed music after refusing to pay licensing fees and the subsequent termination of the licenses for nonpayment.  However, the judgments were only the initial exposure of the Debtors' misconduct—the Debtors refused to pay and refused to participate in court-ordered post-judgment enforcement.

The Debtors and Mr. Stolz were repeatedly held in contempt during post-judgment enforcement—resulting in **the arrest of Mr. Stolz** and the appointment of the Receiver.  On July 15, 2019, after Mr. Stolz refused to provide post-judgment discovery pursuant to the District Court's order compelling discovery, the District Court observed that "it is very evident to the Court that the defendant, Mr. Stolz, has been, I would say, intentionally not complying with both the request by the plaintiffs and the Court's Order."  RJN, Ex. L-1.  On July 18, 2019, after failing to heed the District Court's threat of arrest, the District Court entered an order to show cause finding that "defendant Stolz willfully and unambiguously disobeyed the court's March 22, 2019 order" compelling discovery.  RJN, Ex. M.  Ultimately, the District Court permitted the Debtors to attempt to sell their Radio Stations to satisfy the WB Judgement; however, after the process languished, the District Court appointed the Receiver in July 2020.  The State Court followed suit and appointed the Receiver in October 2020.

The obstructionist efforts of the Debtors and Mr. Stolz intensified after the appointment of the Receiver.  The Receiver expeditiously moved to marshal and market the Debtors' assets to satisfy the WB Judgment and the Bellaire Judgment.  However, Mr. Stolz refused to comply with even the most fundamental disclosure obligations—the Debtors failed to turn over even a single relevant document concerning the Debtors' businesses, failed to provide keys to the Radio Stations, concealed account

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1    numbers for the Debtors' bank accounts, prevented the Receiver from taking operational control of

2    the Radio Stations, and failed to disclose the locations and lessors of the radio antennae.  *See* RJN

3    Exs. P, Q.  As a result of this willful non-disclosure, Mr. Stolz was held in contempt by the District

4    Court in orders entered September 2, 2020, January 28, 2021, and February 17, 2021.  *See* RJN, Exs.

5    Q-S.  In conjunction with its February 2021 order, the District Court also issued a warrant for Mr.

6    Stolz's arrest and found that "***Stolz is now a fugitive from justice***."  RJN, Ex. S (emphasis added).

7    After self-surrendering to the United States Marshals Service, the District Court was compelled to

8    hold Mr. Stolz under arrest as he was deposed by the Receiver.

9        Despite constant obstruction by the Debtors and Mr. Stolz, the Receiver secured a *bona fide*,

10    all-cash offer from VCY to purchase the Debtors' Radio Stations for $6 million.  On November 9,

11    2020, the District Court approved the sale in an order that the Debtors and Mr. Stolz never appealed.

12    *See* RJN, Ex. W.  Instead, the Debtors and Mr. Stolz have twice moved to terminate the receivership—

13    a tactic the District Court has twice rejected.  ***First***, the Debtors (as here) claimed that the District

14    Court improvidently approved a "fire sale" price, which the District Court rejected given the Debtors'

15    lengthy and unsuccessful sale efforts.  The Debtors also claimed (as here) that they were excluded

16    from the *in camera* sale process; however, the District Court observed that, instead, the Debtors

17    simply chose not to participate.  ***Second***, Mr. Stolz (as he could have done all along) satisfied the WB

18    Judgment and again requested termination of the receivership.  The District Court rejected this ploy

19    because the Debtors still had not paid the Receiver's fees, that continue to accrue as the Debtors bring

20    frivolous litigation, or satisfied the Bellaire Judgment.

21        The Bankruptcy Cases were filed in a transparent attempt to delay the FCC's approval of a

22    value maximizing sale approved ***more than one year ago*** by the District Court.  The FCC is in the

23    process of reviewing and authorizing the transfer of the Debtors' Licenses to VCY.  However, the

24    Debtors have repeatedly interfered in the process by filing misleading objections to approval,

25    including repeated insinuations that the receivership would be terminated as a result of the Debtors'

26    motions.  In the District Court's most recent order, the District Court made clear that the FCC process

27    should proceed: "Enough is enough. VCY may tell the FCC: sell the Stations. Apparently, we are

28

127918512.2

3

1    nowhere near the end." RJN, Ex. BB. Less than two months later, the Debtors filed the Bankruptcy

2    Cases.

3         The receivership should be permitted to proceed to conclusion under the alternative forms of

4    relief requested by the Receiver. The Debtors have no business being in bankruptcy—they admit that

5    their revenues are "meager" as a result of missing critical revenue generating operations, they failed

6    to sell their assets outside of bankruptcy, they failed to maintain their principal assets (the Licenses)

7    in compliance (a problem VCY has expended substantial effort to solve), and they repeatedly ignored

8    court orders requiring basic disclosure of information that will be similarly sought in the course of

9    these Bankruptcy Cases. The Receiver and Bellaire are the only meaningful creditors listed in the

10   Debtors' schedules—despite incorrectly scheduling Bellaire as unsecured. Each of the foregoing are

11   sufficient to find cause to excuse turnover in favor of the Receiver and to dismiss these Bankruptcy

12   Cases. Taken together with the Debtors' and Mr. Stolz's incessant misconduct, the Receiver should

13   be permitted to conclude his nearly year-and-a-half long effort to consummate the VCY sale and

14   satisfy the debts the Debtors are unwilling to pay on their own. In the words of the District Court,

15   "enough is enough."

16                                            **II.**

17                               **FACTUAL BACKGROUND**

18   **A.**   **General Background**

19        1.    On October 19, 2021 (the "Petition Date"), the Debtors filed a voluntary petitions

20   [Docket No. 1] (the "Petitions") for relief under chapter 11 of the Bankruptcy Code with the United

21   States Bankruptcy Court for the District of Nevada (the "Court"), which initiated the above-captioned

22   chapter 11 bankruptcy cases (the "Bankruptcy Cases"). To date, no official committee or examiner

23   has been appointed by the Office of the United States Trustee in these Bankruptcy Cases.

24        2.    On November 4, 2021, the Debtors filed motions to jointly administer the above-

25   captioned cases. *See, e.g.*, Docket No. 14. On November 19, 2021, the Court entered an order

26   [Docket No. 37] granting joint administration of the Bankruptcy Cases.

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127918512.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**B.**     **The Debtors' Only Significant Assets Are the Licenses to Operate the FM Radio Stations and Mr. Stolz Admits That the Radio Stations Do Not Generate Revenue.**

3.     The Debtors are three Nevada limited-liability companies that operated three FM radio stations and one AM radio station (the "Radio Stations")—with call signs commonly known as KFRH-FM, KREV-FM, KRCK-FM, and KBET-AM—that operate under Federal Communications Commission (the "FCC") licenses (collectively, the "Licenses"). *See* Stolz Decl., ¶ 2 at 1; *see also* Docket No. 28 at 4 (Sched. A/B, ¶ 64 at 2). Edward R. Stolz ("Mr. Stolz") is the manager and sole member of each Debtor entity through Royce International Broadcasting Corporation ("Royce"). *See* Stolz Decl., ¶ 2 at 1.

4.     The Licenses are the Debtor's principal assets.[5]  Specifically, the Debtors report their primary assets as follows:

| Debtor | Description | Debtor's Valuation |
|--------|-------------|---------------------|
| Silver State | Radio Licenses for K276 GW (Translator), KFRH FM (full service), and KBET AM (full service) | $20,000,000 |
| Golden State | Radio License for KREV FM (full service) | $15,000,000 |
| Major Market | Radio License for KRCK FM (full service), K238AK (translator), and K251BX (translator) | $5,000,000 |

*See* Docket No. 28 at 4 (Sched. A/B, ¶ 64 at 2); Golden State Docket No. 31 at 4 (Sched. A/B, ¶ 64 at 2); Major Market Docket No. 29 at 4 (Sched. A/B, ¶ 64 at 2).  The valuations presented by the Debtors in their schedules are admitted estimations and the Debtors do not reference any formal appraisal of the value of the Licenses. *See id.*  The only other significant assets alleged by each Debtor are potential claims against the Debtors' prior attorney for alleged malpractice (in the estimated amount of $6,000,000) and the Receiver for alleged fiduciary duty claims (in the estimated amount of $6,000,000).  *See* Docket No. 28 at 5 (Sched. A/B, ¶ 74 at 3); Golden State Docket No. 31 at 5 (Sched. A/B, ¶ 74 at 3); Major Market Docket No. 29 at 5 (Sched. A/B, ¶ 74 at 3).

---

[5] Further, in the District Court action (discussed below), Mr. Stolz admitted that the Licenses are the only assets of the Debtors with material value.  *See* RJN, Ex. DD (Stolz Decl., ¶ 6) ("The assets that represent the vast majority of Defendants' value and that could in fact be used to satisfy Plaintiffs' judgment are [Defendants'] FCC radio broadcast licenses. . . ."); *see also id.* (Stolz Decl., ¶ 4) ("While Defendants possess some miscellaneous assets that could be liquidated, even if those miscellaneous assets were liquidated, they could not satisfy" the Amended Judgment).

127918512.2

5.      The Radio Stations do not generate significant revenue.  In a recent appellate filing, Mr. Stolz admitted that the Radio Stations do not have significant going concern value because they do not maintain an advertising revenue sales program:

> As with other of America's few independent radio station operations, the sole significant source of revenue for Defendants is the sale of advertisements that are then aired on their radio stations. ***Unfortunately, Defendants earn relatively meager revenues.*** This is in part because Defendants do not presently have a national advertising sales representation company.  A contract with a national sales representation company is crucial in the radio industry[.]

*See* RJN, Ex. CC (Stolz Decl., ¶ 8) (emphasis added).  Consistent with the foregoing, the Debtors report no gross income on their statement of financial affairs.  *See* Docket No. 28 at 13 (SOFA, Pt. 1 at 1); Golden State Docket No. 31 at 13 (SOFA, Pt. 1 at 1); Major Market Docket No. 29 at 13 (SOFA, Pt. 1 at 1).[6]

**C.      Bellaire Obtains and Records A Judgment Against Golden State—During Litigation in Which the Debtor and Mr. Stolz Were Sanctioned for Discovery Misconduct and Submitting "Contradictory Testimony"—That the Debtor Schedules as Unsecured.**

6.      On November 16, 2012, Bellaire Tower Homeowners Association ("Bellaire") filed a complaint (the "Bellaire Complaint") against Golden State in the California Superior Court for the County of San Francisco (the "State Court"), which initiated the case captioned *Bellaire Tower Homeowners Association v. Golden State Broadcasting, LLC*, Case No. CGC-12-526191 (the "Bellaire Case").  *See* RJN, Ex. A.  The Bellaire Complaint alleged, in part, that Golden State defaulted on its non-exclusive license to install, maintain, operate, and repair an FM broadcasting transmitter, antenna, and associated equipment for broadcast of KREV-FM on Bellaire Tower, located at 1101 Green Street, San Francisco, California.  *See id.* (Complaint, ¶ 6 at 2).  Golden State defaulted by failing to pay utilities due and owing under the antenna license.  *See id.*

7.      During litigation, the State Court entered evidence sanctions against Golden State— specifically based on the conduct of Golden State's principal, Mr. Stolz.  *See* RJN, Ex. B.  The Court

---

[6] The Debtors claim that all revenue is reported by Royce with all other entities disregarded for corporate tax purposes; however, report "none" when asked to identify the "gross revenue from business" without regard to the Debtors' tax reporting practice.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

imposed the evidence sanctions after Golden State "unreasonably failed to make discovery, violated the Court's December 27, 2013 Order by failing to produce its witnesses for deposition pursuant to Bellaire's valid deposition notice and by failing to pay the monetary sanctions ordered by the Court." *Id.* (Order at 2).  The Court's findings were specifically critical of Mr. Stolz's conduct and provided, *sua sponte*, that:

> The Court further finds that **Mr. Stolz submitted contradictory testimony** on the issue of his compliance with the Court's December 27, 2013 Order and appearance at the Court ordered settlement conference.

*Id.* (emphasis added).

8.    On July 22, 2014, the State Court entered a judgment (the "Bellaire Judgment") in favor of Bellaire and against Golden State in the amount of $111,426.06 after application of a security deposit.  *See* RJN, Ex. C.  On March 30, 2016, the Court of Appeal of the State of California affirmed the Bellaire Judgment on appeal taken by Golden State.  *See* RJN, Ex. D.  On August 29, 2016, the State Court entered a further order awarding Bellaire attorney's fees associated with the appeal in the amount of $73,119.87.  *See* RJN, Ex. E.  The Receiver understands that the unpaid balance of the judgment is not less than $340,039.85 and that interest, costs, and attorney's fees continue to accrue, pursuant to the Bellaire Judgment.

9.    Bellaire asserts that the Judgment is properly perfected against the Golden State License for KREV FM.  On September 30, 2014, Bellaire recorded an abstract of judgment in the office of the San Francisco Assessor-Recorder.  *See* RJN, Ex. F.  On November 21, 2014, Bellaire filed a notice of judgment lien and UCC Filing Acknowledgement with the California Secretary of State.  RJN, Ex. G.  On November 6, 2019, Bellaire filed a notice of continuation of judgment lien with the California Secretary of State.  *See* RJN, Ex. H.  Notwithstanding the foregoing, Golden State scheduled Bellaire solely as an unsecured creditor and asserts that Golden State has no secured creditors.  *See* Golden State Docket No. 31 at 6 (Sched. D), 7 (Sched. E/F, ¶ 3.1 at 1) (scheduling the claim in the amount of $343,984.00).

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127918512.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**D.**     **The Plaintiffs in the District Court Action Obtain a Judgment in Excess of $1.2 Million Based on Certain Debtors' and Mr. Stolz's Willful Violation of Copyrights.**

10.      On April 1, 2016, WB Music Corporation and certain other plaintiffs (collectively, the "Plaintiffs") filed a complaint (the "WB Complaint") against Silver State, Golden State, Royce, Playa Del Sol Broadcasters ("Playa"), and Mr. Stolz in the United States District Court for the Central District of California (the "District Court"), which initiated the case captioned *WB Music Corp., et al. v. Royce International Broadcasting Corp., et al.*, Case No. 5:16-cv-00600-JGB-SP (the "WB Case"). *See* RJN, Ex. I. As set forth more fully in the WB Complaint, the Plaintiffs asserted claims for copyright infringement arising from violations of title 17 of the United States Code (the "Copyright Act"). *See id.* Specifically, the Plaintiffs alleged that the Debtor-defendants refused to pay licensing fees to the Plaintiffs and continued to play the Plaintiffs' licensed music after the Plaintiffs terminated the license for nonpayment.[7] *See id.* (Compl., ¶¶ 27-30 at 6).

11.      On May 22, 2018, the District Court entered a judgment (the "WB Judgment") in favor of the Plaintiffs and against each defendant (including Golden State and Silver State) in the amount of $330,000 plus interest.[8] *See* RJN, Ex. J. The WB Judgment was amended three times during the course of the WB Case. Ultimately, on May 20, 2021, the District Court entered a third amended judgment (the "Amended Judgment") awarding plaintiffs a total of $1,737,046.16, plus interest, that encompassed $330,000 in statutory damages, $864,278.75 in attorneys' fees, $43,333.34 in non-taxable costs, and $11,951.37 in taxable costs, $17,515.80 in sanctions, $136,111.90 in attorney's fees and $318.00 in costs from Mr. Stolz, and $333,537.00 in attorney's fees and costs from the defendants. *See id.*, Ex. K.

**E.**     **The District Court Appoints the Receiver as Mr. Stolz Is Repeatedly Sanctioned, Held in Contempt, and Jailed for Discovery Misconduct During Post-Judgment Enforcement.**

12.      The District Court appointed the Receiver as the Debtors and Mr. Stolz were engaged in protracted—and repeatedly sanctioned—efforts to frustrate the Plaintiffs' enforcement of the

---

[7] As noted in the Complaint, this was the fourth such action against Stolz for willful copyright infringement. *See id.* (Compl., ¶¶ 37-44 at 7-9).

[8] On May 7, 2018, the District Court also permanently enjoined the defendants from broadcasting the Plaintiff's music without first obtaining proper authority.

127918512.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Amended Judgment.  By way of example, on March 22, 2019, the District Court granted the Plaintiffs'

motion to compel discovery responses and deposition of Mr. Stolz and issued sanctions related to the

Plaintiffs' post-judgment enforcement efforts.  *See* RJN, Ex. L.  In its Order, the District Court found

that

> defendant has never served responses to the document requests, never
> appeared for his noticed deposition or proposed alternative dates, and
> never served objections to either[.]

*See id.* (Order at 4).  Mr. Stolz failed to comply with the District Court's order and the Plaintiffs filed

their first motion to appoint a receiver.  On July 15, 2019, the District Court held a hearing on the

request and explained:

> So it is very evident to the Court that the defendant, ***Mr. Stolz, has
> been, I would say, intentionally not complying with both the request
> by the plaintiffs and the Court's Order***, specifically Magistrate Judge
> Pym's Order of March 2019, and previous orders regarding the
> production of documents and the sitting for a deposition. I am not
> happy about Mr. Stolz noncompliance, and I believe some drastic
> measure is appropriate.

RJN, Ex. L-1 (July 15, 2019 Hr'g Tr., at 3:22-25, 4:1-4) (emphasis added).  The Court ordered Mr.

Stolz to appear for a deposition and threatened that noncompliance would result in the issuance of

warrant.  *See id*. (July 15, 2019 Hr'g Tr., at 5:12-14).

      13.    On July 18, 2019, the District Court issued an order to show cause (the "OSC") why

Mr. Stolz should not be held in contempt and further sanctioned for continuing to refuse to comply

with the District Court's order compelling discovery responses and a deposition.  *See* RJN, Ex. M.

Based on a lengthy recitation of Mr. Stolz's noncompliance, the District Court found that:

> defendant ***Stolz willfully and unambiguously disobeyed the court's
> March 22, 2019 order*** to produce all documents responsive to
> plaintiffs' document requests, meet and confer to determine a date for
> his deposition, and pay plaintiffs sanctions of $8,308.35. Defendant
> Stolz has provided no explanation for his failure to comply, apart from
> his assertion that "[i]t was never [his] intention to disrespect this Court,
> or not comply with the [sic] any order issued by this Court" (see Stolz
> Decl. ¶ 2), and his vague claims of confusion about the order. By
> shirking his discovery obligations, defendant Stolz continues to hinder
> the discovery necessary to execute the judgment entered in this action.

127918512.2

*Id.* (OSC at 7) (emphasis added).  The District Court issued sanctions, ordered Mr. Stolz to show cause why he should not be held in contempt, and continued the hearing on the Plaintiffs' then-pending motion to appoint the Receiver to the same day as the OSC hearing.  *See id.* (OSC at 9).

14.    On July 6, 2020, after the defendants engaged in a fruitless effort to sell the Radio Stations, the District Court entered an order appointing the Receiver (the "Receivership Order").  *See* RJN, Ex. N.  The Receivership Order granted the Receiver broad authority to sell the Radio Stations and the Debtor's related assets, including the Licenses, to satisfy the Amended Judgment. Specifically, the Receivership Order provides, in part, that:

> The Receiver shall have the power and authority to take charge of and manage Defendants' Radio Stations' assets, businesses, and affairs, to bring and defend actions in his own name, as Receiver; to take and keep possession of Defendants' Radio Stations' assets; to receive rents, and collect accounts receivable and other debts; to take all steps necessary to operate and manage Defendants' Radio Stations, including the authority to appoint an agent or agents under him, and to do all other acts which may be necessary and proper to operate and manage the stations;

> . . .

> The Receiver is authorized to: solicit offers for the sale of Defendants' Radio Stations' assets, including but not limited to the broadcast licenses issued by the Federal Communications Commission for Defendants' Radio Stations (the "FCC Licenses"), according to normal and customary industry practices; and report to the Court any firm offers for purchase, with recommendations regarding the offer.

RJN, Ex. N (Receivership Order, ¶ B at 2, ¶ D at 3).  On October 22, 2020, Bellaire obtained a similar order from the State Court appointing the Receiver in the Bellaire Case.  *See* RJN, Ex. O.

15.    The Debtors and Mr. Stolz immediately undertook to frustrate the Receiver's efforts to marshal assets to conduct an orderly sale from the outset of the Receiver's appointment.  On September 2, 2020, the District Court entered an order holding Mr. Stolz in contempt based on his efforts to frustrate the Receiver's duties, including, *inter alia*, failing to turn over even a single relevant document concerning the Debtors' businesses, failing to provide keys to the Radio Stations, concealing account numbers for the Debtors' bank accounts, preventing the receiver from taking operational control of the Radio Stations, and failing to disclose the locations and lessors of the radio

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

antennae.  *See* RJN Exs. P (Ex Parte Appl. at 1-2), Q (Contempt Order at 2).  The order imposed further monetary sanctions on Mr. Stolz and required Mr. Stolz to be jailed if he did not provide the Receiver with a detailed list of initial disclosures concerning the Debtors and their operations.  *See id.*, Ex. Q (Contempt Order at 2-3).

16.    On January 28, 2021, the District Court again held Mr. Stolz in contempt for continuing to withhold necessary information to the Receiver.  *See* RJN, Ex. R.  The outstanding disclosures included, *inter alia*, the Debtors' banking records and financial documents, website hosting information, accounting for all revenue of the Radio Stations, and identifying the Debtors' vendors.  *See id.* (Contempt Order at 2).  Mr. Stolz was ordered to self-surrender to the United States Marshals Service if he did not comply by February 2, 2021.

17.    On February 2, 2021, Mr. Stolz neither complied with the District Court's order nor surrendered to the United States Marshals Service and the District Court issued a warrant for his arrest.  *See* RJN, Ex. S (Order at 1).  On February 17, 2021, the District Court found that "***Stolz is now a fugitive from justice.***"  *Id.* (emphasis added).  The District Court further fined Mr. Stolz $10,000 for each day Mr. Stolz failed to surrender from the date of entry of the order.  *See id.* (Order at 2).

18.    On February 18, 2021, Mr. Stolz self-surrendered to the United States Marshals Service.  *See* RJN, Ex. T (Order at 1).  On February 19, 2021, while in custody, the Court placed Mr. Stolz under oath and permitted the Receiver to interview Mr. Stolz concerning the outstanding information requests.  *See id.*  The Court ultimately released Mr. Stolz and cautioned that further information may be required.  *See id.*  On February 24, 2021, the Court ordered that Mr. Stolz appear before the Court to provide additional disclosures concerning the Debtors' operations.  *See id.*

F.    **The Mr. Stolz Employs Frivolous Litigation Tactics and Misleading Filings with the FCC to Interfere with the Consummation of a $6 Million Sale of the Radio Stations Entered into by the Receiver and Approved by the District Court.**

19.    The Receiver moved expeditiously to identify a potential purchaser and consummate a sale of the Debtors' assets despite Mr. Stolz's incessant interference.  The Receivership Order obligated the Receiver to "report to the Court any firm offers for purchase, with recommendations

regarding the offer." RJN, Ex. N (Receivership Order, ¶ D at 3). On August 17, 2020, the Receiver informed the District Court of a *bona fide*, all-cash offer to purchase the Radio Stations and requested that the Court review the offer *in camera*. *See* RJN, Ex. U (Motion at 1). As set forth in the offer, VCY America, Inc. ("VCY") proposed to acquire the Debtors' three FM Radio Stations for a cash purchase price of $6 million. *See* Patrick Decl., ¶ 13 at 4. At the time, the Receiver requested *in camera* review because "[t]his offer has been made confidentially, and public disclosure of its terms prior to an agreement being consummated would endanger not only the specific transaction contemplated in the offer, by any future effort to negotiate a sale of the receivership's assets." *Id.* On September 10, 2020, following *in camera* review and upon the Receiver's recommendation, the District Court authorized the Receiver to accept the offer from VCY. *See* RJN, Ex. V. On November 9, 2020, following *in camera* review of the proposed transaction documents, the District Court entered an order authorizing the sale (the "Sale Order") to VCY. *See* RJN, Ex. W. The Debtors and Mr. Stolz never appealed the Sale Order.

20.    Rather than appeal the Sale Order, Mr. Stolz sought to interfere with the sale process by repeatedly requesting termination of the receivership. On September 21, 2020, Mr. Stolz filed a motion to terminate the receivership. *See* RJN, Ex. X. Mr. Stolz made two primary arguments, each of which were rejected by the District Court in its October 9, 2020 order denying the motion. *See id.* **First**, Mr. Stolz claimed that the Radio Stations were being sold at a "fire sale" price, to which the District Court responded:

> The Court disagrees. The Court appointed a Receiver only after providing Defendants ample opportunity to sell the radio stations through their chosen broker to satisfy the Amended Judgment, to no avail. . . . Despite Defendants' failure to provide the necessary documents and items for the Receiver to carry out its duties, the Receiver secured a bona fide offer to purchase the radio stations. After reviewing the offer to purchase the radio stations, along with the Receiver's recommendation that the offer be accepted, the Court authorized the Receiver to accept the offer. The Court is therefore unpersuaded by Defendants' characterization of this process as a "fire sale," or by their assertion of harm. In any case, at this stage, given their repeated stonewalling and non-compliance, any harm to Defendants by the Receiver's sale of the radio stations would be self-inflicted.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

*Id.* (Order at 3) (citations omitted).  ***Second***, Mr. Stolz claimed that he was excluded from the *in camera* process to review offers.

> The Court again disagrees. Pursuant to the Receivership Order, during the August 17, 2020 status conference, the Receiver informed the Court and Defendants of the existence of a bona fide, all-cash offer to purchase the radio stations. On that same day, the Receiver submitted a request for in camera review of the offer. [] Defendants did not respond to the Receiver's notification of an offer or to their request for in camera review for more than three weeks, after the Court granted the in camera request. [] Further, Defendants did not file this Application until September 21, 2020, eleven days after the Court's Order authorizing the Receiver to accept the purchase offer. [] Defendants' Application also conveniently ignores Defendants' repeated stonewalling, failure to comply with the Court's orders, and inexplicable delay in taking steps to satisfy the Amended Judgment, all of which led the Court to approve the receivership in the first place. Thus, not only have Defendants failed to establish that they were without fault in creating the "crisis" requiring ex parte relief, but it is apparent that they alone created this "crisis."

*Id.* (citations omitted).  The District Court concluded that "[t]he Court will not entertain discharging the Receiver and terminating the Receivership absent evidence of satisfaction of the Amended Judgment." *Id.*

21.    On February 3, 2021, Mr. Stolz deposited sufficient funds with the District Court to satisfy the then-second amended version of the Judgment and contemporaneously filed a motion to terminate the receivership.  *See* RJN, Ex. Y (Order at 2).  The Receiver opposed, in part, on the basis that the sale of the Radio Station was pending and was necessary to satisfy the Bellaire Judgment and other costs of the receivership estate.  *See id.* (Order at 3).  On March 18, 2021, the District Court entered an order denying the motion pending a final accounting from the Receiver and "to ensure that the satisfaction of the judgments in the instant case has not prejudiced other creditors." *Id.*  In finding the factual equities did not weigh in favor of the defendants, the District Court observed that "[t]he Court was forced to appoint the Receiver because Defendants failed to satisfy the Amended Judgment for <u>two</u> years.  ***The Court simply cannot trust Defendant Ed Stolz's representations that he will satisfy amounts due in the future***." *Id.* (emphasis added).

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127918512.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

22.     On October 15, 2021, Mr. Stolz again filed a motion to compel the Receiver to issue a final accounting. *See* RJN Ex. Z (Order at 1).  On October 22, 2021, the District Court entered an order swiftly rejecting the argument and noting that "[t]his Application is simply another attempt by Defendants to terminate the receivership without satisfying the conditions the Court imposed for terminating the receivership." *Id.*

23.     Mr. Stolz has leveraged the delay caused by his repeated motions to his advantage and to the detriment of all other interested parties.  By way of example, Mr. Stolz mischaracterized the orders denying his motions to terminate the receivership in filings before the FCC, which is currently considering whether to permit the transfer of the Licenses to VCY.  Mr. Stolz (through Royce and Silver State) misleadingly claimed that "the receivership will likely be terminated in the short term, and the station transfer will not need to be examined further." *See* RJN, Ex. AA (FCC Letter at 2). In addition to the uncertainty caused by delays in FCC approval, VCY has already undertaken substantial expenses to bring the Radio Stations into working and permittable condition.  By way of example, as of March 2021, VCY had expended approximately $2,700 in travel costs related to due diligence; $20,000 in contract engineering costs; $45,000 in legal fees through December 31, 2020; $80,000 to purchase equipment necessary to bring the Radio Stations into compliance with their Licenses; and an escrow payment of $600,000 to purchase the Radio Stations. *See* Patrick Decl., ¶ 14 at 4.  The FCC approval process remains in limbo as Mr. Stolz continues to assert non-meritorious bases for delay. *See id.*

24.     The District Court has ordered Mr. Stolz to pay the Receiver $642,190.10 in fees and costs and ordered Mr. Stolz to pay third party creditor Bellaire's judgment that was, as of its latest filing, $340,039.85. *See* RJN, Ex. BB.  The District Court issued its order to, among other things, "list[] the steps that must be taken before the Receivership can be terminated and an expedited schedule for accomplishing those steps." *See id.* (Order at 6).  However, as the District Court observed, "Defendants chose not to take their lumps, pay their debts, and allow everyone involved to put this torturous case behind them." *See id.*  The amounts owing to the Receiver and Bellaire remain outstanding and the Debtors and Mr. Stolz continue their campaign to delay the sale through litigation tactics.  The exasperated District Court concluded: "Enough is enough. VCY may tell the FCC: sell

14

the Stations. Apparently, we are nowhere near the end." *Id.* (Order at 7).  Less than two months later, the Debtors filed the Bankruptcy Cases.

25.    The Bankruptcy Cases are simply another attempt by Mr. Stolz to sew confusion in the FCC approval process and mount a seriously belated effort to regain control of the Debtors solely for his own benefit.  As set forth more fully below, the receivership and related sale process are sufficiently matured—and Mr. Stolz sufficiently untrustworthy—that the interests of the Debtors' estates are best served by excusing the Receiver from turnover and dismissing these Bankruptcy Cases.

**III.**

**ARGUMENT**

**A.**    <u>The Receiver Should be Excused from Turnover under 11 U.S.C. § 543(d).</u>

Section 543 requires a custodian[9] with knowledge of a pending bankruptcy case to refrain from the administration of property of the estate except to the extent its efforts are to preserve the property.  *See* 11 U.S.C. § 543(a).  Additionally, the custodian must transfer property it holds to the trustee and file an accounting.  *See* 11 U.S.C. § 543(b).  However, § 543(d)(1) permits a bankruptcy court to excuse a custodian from the requirements of § 543 "if the interests of the creditors . . . would be better served by permitting a custodian to continue in possession, custody, or control of such property."  11 U.S.C. § 543(d)(1).  Consider the following factors to determine whether the interests of creditors would be served by exempting a custodian from the requirements of § 543(a) and (b):

(i)    whether there will be sufficient income to fund a successful reorganization;

(ii)    whether the debtor will use the property for the benefit of creditors;

(iii)    whether there has been mismanagement by the debtor; and

(iv)    whether there are preferences which a receiver is not empowered to avoid.

---

[9] Section 101(11)(A) defines a "custodian" as "a receiver or trustee of any property of the debtor, appointed in a case or proceeding not under this title."  The term custodian includes a receiver in state court actions. *See French Bourekas Inc. v. Turner*, 199 B.R. 807, 819 (Bankr. E.D.N.Y. 1996); *Dill v. Dime Savings Bank, FSB (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y. 1994).  Because the Receiver was appointed Receiver of the Debtor in the State Court Action, the present Emergency Motion is proper.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127918512.2

*See In re Orchards Vill. Invs., LLC*, 405 B.R. 341, 351-52 (Bankr. D. Ore. 2009) (citing *Dill v. Dime Savings Bank*, *FSB (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y. 1994)); *In re Lizeric Realty Corp.*, 188 B.R. 499, 506-507 (Bankr. S.D.N.Y. 1995); *In re Ericson*, 26 B.R. 973 (Bankr. C.D. Cal. 1983). The interests of the debtor are not a relevant consideration to the analysis under § 543(d). *Dill*, 163 B.R. at 225. Case law addressing section 543(d) overwhelmingly arises in the context of chapter 11 where courts weigh the importance of the assets at issue in the debtor's ability to reorganize. *See, e.g., In re KCC-Fund V, Ltd.*, 96 B.R. 237, 239-40 (W.D. Mo. 1989) (exempting the custodian pursuant to section 543(d)); *Dill*, 163 B.R. at 226 (exempting receiver from Section 543(a) and b) and considering impact on reorganization efforts). Bankruptcy courts have broad discretion to excuse turnover based on the specific facts and circumstances of the case. *See In re Uno Broadcasting Corp.*, 167 B.R. 189, 200 (Bankr. D. Ariz. 1994). As set forth below, each factor weighs in favor of excusing the Receiver from turnover under § 543(d)(1).

**1.    The Debtors Have No Hope of Reorganization Because They Admittedly Generate Only "Meager" Revenue and the Debtors Have Proven Incapable of Selling Their Assets.**

The first factor weighs in favor of excusing the Receiver from turnover because the Debtors admit that they do not generate significant revenue with which to fund a reorganization. *In re Skymark Properties II, LLC,* 597 B.R. 391, 400 (Bankr. E.D. Mich. 2019) (turnover excused where debtor's only asset was a "vacant, uninhabitable building that generates no income"). A debtor must be capable of demonstrating a likelihood of reorganization based on more than "wishful thinking." *See In re Powers Aero Marine Servs., Inc.*, 42 B.R. 540, 546 (Bankr. S.D. Tex. 1984) (granting turnover where evidence demonstrated that purported "reorganization is wishful thinking, unsupported by business evidence"). The Debtors admit that they are barely operational and that their "relatively meager revenues" are at least in part the result of significant gaps in their operations. *See RJN, Ex. CC (Stolz Decl., ¶ 8) ("Unfortunately, Defendants earn relatively meager revenues. This is in part because Defendants do not presently have a national advertising sales representation company. A contract with a national sales representation company is crucial in the radio industry[.]"). None of the Debtors report income on their schedules. *See Docket No. 28 at 13 (SOFA, Pt. 1 at 1); Golden

16

127918512.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1   State Docket No. 31 at 13 (SOFA, Pt. 1 at 1); Major Market Docket No. 29 at 13 (SOFA, Pt. 1 at 1).

2   The Debtors' admissions, alone, demonstrate that the Bankruptcy Cases cannot result in a

3   reorganization premised on revenue.

4           The hope of a liquidating chapter 11 case—even assuming *arguendo* that it would satisfy the

5   reorganizational factor—is likewise bleak.  The Debtors admit that the Licenses represent the only

6   material value of their estates but floundered for years when the District Court permitted them to

7   attempt to monetize the Licenses.  *See See* RJN, Ex. DD (Stolz Decl., ¶ 6) ("The assets that represent

8   the vast majority of Defendants' value and that could in fact be used to satisfy Plaintiffs' judgment

9   are [Defendants'] FCC radio broadcast licenses. . . .");  *see also id.* (Stolz Decl., ¶ 4) ("While

10  Defendants possess some miscellaneous assets that could be liquidated, even if those miscellaneous

11  assets were liquidated, they could not satisfy" the Amended Judgment); RJN, Ex. X (Order at 3) ("The

12  Court appointed a Receiver only after providing Defendants ample opportunity to sell the radio

13  stations through their chosen broker to satisfy the Amended Judgment, to no avail.").  Even if the

14  Debtors could monetize their assets, the District Court has already cast substantial doubt that they

15  would actually do so.  *See* RJN, Ex. Y (Order at 3) (rejecting request to terminate receiver where

16  District Court doubted Debtors would ever pay remaining creditors).  Accordingly, the Debtors

17  cannot (by their own admissions) demonstrate any prospect for reorganization.

18          **2.      <u>The Debtors Clearly Demonstrated—and the District Court Found—That They</u>**

19          **<u>Will Not Use Their Assets to Pay Creditors.</u>**

20          The lengthy record of delay and interference by the Debtors and Mr. Stolz in the Bellaire Case

21  and the WB Case demonstrate that they will not utilize these Bankruptcy Cases for the benefit of

22  creditors.  The District Court specifically found that the Receiver should not be discharged because,

23  based on the parties' conduct, "[t]he Court simply cannot trust Defendant Ed Stolz's representations

24  that he will satisfy amounts due in the future."  RJN, Ex. Y (Order at 3); *see also id.*, Ex. X (Order at

25  3) ("Defendants' repeated stonewalling, failure to comply with the Court's orders, and inexplicable

26  delay in taking steps to satisfy the Amended Judgment . . . led the Court to approve the receivership

27  in the first place").  Indeed, the Debtors repeatedly ignored orders of the District Court and incurred

28  sanctions from both the State Court and District Court in their gambit to avoid payment to their two

17

most significant creditors, Bellaire and the Plaintiffs.  The record eliminates nearly all doubt that these Bankruptcy Cases would be used for anything other than another artifice by which to avoid payment of the Debtors' obligations.

**3.  Mr. Stolz Has Grossly Mismanaged the Debtors by Failing to Abide by Sound Business Practices, Failing to Maintain the Licenses, Failing to Provide Basic Disclosures to the Receiver, and Causing the Debtors to Incur Thousands of Dollars of Unnecessary Sanctions.**

The Debtors were grossly mismanaged by Mr. Stolz—the sole manager and ultimate sole equity interest holder in the Debtors.  The Debtors admit that Mr. Stolz is their sole control person. *See* Stolz Decl., ¶ 2 at 1.  At the hands of Stolz, the Debtors refused to pay Bellaire under its antenna license and committed blatant copyright infringement, which resulted in substantial litigation and judgments against the Debtors.  Aside from the merits of the cases, the lengthy records in the Bellaire Case and WB Case make clear that Mr. Stolz is the sole cause of the additional sanctions imposed by the Debtors by the State Court and District Court by interfering with even the most basic of the Debtors' discovery obligations.  *See, e.g.*, RJN, Ex. B (Order at 2) (finding by the State Court that "Mr. Stolz submitted contradictory testimony" and imposing discovery sanctions); *id.*, Ex. M (OSC at 7) ("Stolz willfully and unambiguously disobeyed the court's March 22, 2019 order to produce all documents responsive to plaintiffs' document requests, meet and confer to determine a date for his deposition, and pay plaintiffs sanctions of $8,308.35").  Indeed, the District Court found that Mr. Stolz's litigation conduct was to blame to the extent the Debtors were devalued.  *See id.*, Ex. X (Order at 3) (finding that, due to the Debtors' "repeated stonewalling and non-compliance, any harm to Defendants by the Receiver's sale of the radio stations would be self-inflicted").  However, the harm visited on the Debtors by Mr. Stolz's mismanagement is not merely contained to litigation misconduct.

The Court can excuse turnover simply considering the poor business condition in which Mr. Stolz operated the Radio Stations prior to the appointment of the Receiver.  *See, e.g.*, *In re KCC-Fund V, Ltd.*, 96 B.R. at 240 (exempting receiver from 543(a) and b) where the debtor neglected upkeep of "rotted" apartment complexes); *Dill*, 163 B.R. at 224-225 (finding that "[t]he record before the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1  Bankruptcy Court establishes more than a reasonable inference of mismanagement" where the debtor

2  did not generate revenue, failed to maintain appropriate licensure, and the debtor's asset required

3  substantial repair).  As set forth above, the Debtor reports no income and admits that its revenues

4  were "meager" because the Debtors failed to commit necessary resources to advertising.  *See, e.g.*,

5  RJN, Ex. CC (Stolz Decl., ¶ 8); Docket No. 28 at 13 (SOFA, Pt. 1 at 1).  Further, VCY reported that

6  it has been forced to expend substantial resources for engineering to bring the Radio stations into

7  working order and to purchase equipment necessary to bring the Radio Stations into compliance with

8  their Licenses.  *See* Patrick Decl., ¶ 14 at 4.  Put simply, the Debtors' Radio Stations are in shambles

9  as the direct result of Mr. Stolz's poor management.

10       Mr. Stolz's conduct since the appointment of the Receiver further demonstrates he is incapable

11  of placing the interests of the Debtors over his personal vendettas.  As the District Court observed,

12  Mr. Stolz repeatedly refused to provide basic operational information to the Receiver—even under

13  penalty of being jailed.  RJN Exs. P-T.  The information requests that Mr. Stolz refused to provide,

14  and eventually landed him in the custody of the United States Marshals Service include failing to

15  provide a single relevant document concerning the Debtors' businesses, failing to provide keys to the

16  Radio Stations, concealing account numbers for the Debtors' bank accounts, preventing the receiver

17  from taking operational control of the Radio Stations, and failing to disclose the locations and lessors

18  of the radio antennae.  *See* RJN Exs. P, Q.  The Receiver doubts that Mr. Stolz will fulfill the similar

19  and fundamental disclosure requirements expected of debtors-in-possession in these Bankruptcy

20  Cases.  Turnover should be excused to preclude Mr. Stolz from assuming any control over the Debtors

21  wayward litigation strategy (such that it is) and business operations.

22       **4.**       **The Debtors Do Not Schedule Preferences or Require Any Other Special Benefit**

23       **Conferred Under the Bankruptcy Code to Maximize the Value of Their Estates.**

24       The Debtors and their estates will not require the protections or benefits conferred to debtors

25  under the Bankruptcy Code to maximize the value of their estates.  By way of example, the Debtors

26  admit that they did not make any transfers during the preference period that the Receiver would not

27  otherwise be able to recover under applicable nonbankruptcy law.  *See* Docket No. 28 at 13 (SOFA,

28  Pt. 4 at 1); Golden State Docket No. 31 at 13 (SOFA, Pt. 4 at 1); Major Market Docket No. 29 at 13

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1  (SOFA, Pt. 4 at 1); *cf In re Prop. Mgmt. & Inv., Inc.*, 19 B.R. 202, 206 (Bankr. M.d. Fla. 1982)

2  (requiring turnover where "it is clear that the State Court Receiver is unable to assert the powers of

3  avoidance reserved to the bankruptcy trustee").   Indeed, the District Court recognized that the

4  Receiver's continued efforts are necessary "to ensure that the satisfaction of the judgments in the

5  instant case has not prejudiced other creditors."  RJN, Ex. Y (Order at 3).  Accordingly, the interests

6  of creditors are not better served by allowing the Bankruptcy Cases to proceed in lieu of the

7  receivership.

8  Based on the foregoing, the Court should grant the Receiver's request to be excused from

9  turnover, pursuant to § 543(d)(1).

10  **B.**   **The Court Should Dismiss the Bankruptcy Cases or Abstain from Hearing the**

11  **Bankruptcy Cases.**

12  **1.**   **The Bankruptcy Cases Should be Dismissed for Cause under 11 U.S.C. § 1112(b).**

13  Section 1112(b)(1) provides that a court *shall* dismiss a chapter 11 case or convert it to a case

14  under chapter 7, whichever is in the best interest of creditors and the estate, if the party requesting

15  conversion or dismissal establishes "cause," unless the court determines that the appointment of an

16  examiner or trustee is in the best interest of creditors and the estate.  *See* 11 U.S.C. § 1112(b)(1).

17  Under § 1112(b), a court has wide discretion to convert a chapter 11 case to chapter 7 "for cause."

18  *See* 11 U.S.C. § 1112(b); *In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir.

19  2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001) (citing *In re Greenfield Drive Storage Park*, 207 B.R. 913,

20  916 (B.A.P. 9th Cir. 1997)).  Section 1112(b)(4) sets forth a non-exhaustive list of what constitutes

21  "cause" to convert or dismiss a case under § 1112(b).  *In re O'Hara*, 2019 WL 3451730, at *8 (9th

22  Cir. BAP July 30, 2019), *aff'd*, 835 F. App'x 253 (9th Cir. 2020) (citing *Consol. Pioneer*, 248 B.R.

23  at 375).  If cause is established, the decision whether to convert or dismiss the case falls within the

24  sound discretion of the Court.  *See In re Sullivan*, 522 B.R. 604, 612 (B.A.P. 9th Cir. 2014) (citing

25  *Mitan v. Duval (In re Mitan)*, 573 F.3d 237, 247 (6th Cir. 2009); *Nelson v. Meyer (In re Nelson)*, 343

26  B.R. 671, 675 (B.A.P. 9th Cir. 2006)).  Here, cause exists to dismiss the Bankruptcy Cases because

27  they were not filed in good faith and in light of the Debtors' gross mismanagement of the Radio

28

127918512.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Stations that will cause a substantial or continuing loss to or diminution of the estate without a reasonable likelihood of rehabilitation.

### a. The Debtors Filed the Bankruptcy Cases in Bad Faith to Further Interfere with the Receivership and the VCY Sale Intended to Maximize Value for Creditors.

The Debtors filed the Bankruptcy Cases in bad faith, in order to circumvent the sale of the Radio Stations authorized by the District Court. Under § 1112(b)(1), a court may dismiss a Chapter 11 bankruptcy case "for cause," based on a finding the petition was filed in bad faith. *In re Prometheus Health Imaging, Inc.*, 705 F. App'x 626, 627 (9th Cir. 2017); *In re Marshall*, 721 F.3d 1032, 1047 (9th Cir. 2013); *In re Sullivan*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014) ("[b]ecause good faith is required in the commencement and prosecution of a chapter 11 case, the lack thereof constitutes cause for dismissal under § 1112(b)(1)") (internal citations and quotations omitted). While bad faith is not an enumerated factor under § 1112(b)(4), "courts may consider any factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions," to make the bad faith determination. *Prometheus*, 705 F. App'x at 627 (citing *Marshall*, 721 F.3d at 1047). A bad faith determination depends on the totality of circumstances of the case and not a single factor alone. *In re WLB-RSK Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal. 2003). "Generally, a plan is . . . filed in [bad] faith if it represents an attempt . . . to achieve objectives outside the legitimate scope of the bankruptcy laws." *Prometheus*, 705 F. App'x at 627 (citing *Marshall*, 721 F.3d at 1047). Stated differently, the bad faith inquiry requires the court to determine whether the debtor is attempting to unreasonably deter and harass creditors instead of seeking speedy, efficient reorganization on a feasible basis. *In re Greenberg*, 2017 WL 3816042, at *4 (B.A.P. 9th Cir. Aug. 31, 2017).

A bankruptcy case is filed in bad faith, and appropriately dismissed, particularly if the primary purpose of the petition is to frustrate a contempt proceeding. *In re Winn*, 43 B.R. 25, 28 (Bankr. M.D. Fla. 1984). "[A]n attempt by a Debtor to circumvent or escape the consequences of a contempt judgment issued by a court of competent jurisdiction was never a legitimate aim to be achieved by use of the rehabilitation provisions of this chapter and without doubt constitutes an impermissible use

127918512.2

of Chapter 11 of the Bankruptcy Code." *Winn*, 43 B.R. at 28; *See also In re Chris-Marine U.S.A., Inc.*, 262 B.R. 118, 124 (Bankr. M.D. Fla. 2001) ("The fact that a debtor filed for Chapter 11 relief solely to halt the accumulation of a per diem contempt judgment may be a factor in finding that a debtor did not file in good faith."); *In re Eighty South Lake Inc.*, 63 B.R. 501, 510 (Bankr. C.D. Cal. 1986) (bankruptcy filing intended to circumvent court orders or proceedings independent ground for finding of bad faith). As set forth above, the Debtors filed this Bankruptcy Case in bad faith following numerous contempt proceedings and judgments that steadily increased the cost to the Debtors of satisfying their remaining obligations to the Receiver before the receivership would be dismissed. *See* RJN, Ex. BB (Order at 7) ("To reiterate: under prevailing caselaw, the Court cannot terminate the Receivership until the Receiver's accounting has been satisfied. To achieve this, the Court must have a final accounting – which the Receiver cannot prepare if Defendants continue to litigate."). The same can be said of the Debtors' efforts to undermine the Receiver's appointment by the state court. *See In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994) ("A Chapter 11 case is filed in bad faith "where the debtor only intended to defeat state court litigation."). Here, the Debtor clearly wishes to avoid compliance with the Receivership Orders entered by the District Court and State Court and to assume control of the VCY sale without first satisfying the District Court's clear prerequisites to terminating the receivership.

Another important factor in determining the existence of bad faith is whether a debtor has misrepresented or omitted material facts in bankruptcy filings. *In re Goeb*, 675 F.2d 1386, 1390 n.9 (9th Cir. 1982); *In re Charfoos*, 979 F.2d 390 (6th Cir. 1992) (Chapter 11 petition would be dismissed as having been filed in bad faith based on numerous factual misrepresentations and omissions made by debtor on financial statements and bankruptcy pleadings, as well as on debtor's violations of state court order); *In re Rognstad*, 121 B.R. 45 (Bankr. D. Haw. 1990) (Chapter 11 debtors exhibited lack of good faith so as to warrant dismissal of case, where debtors were not honest with court and creditors, repeatedly ignored requirements of Bankruptcy Code and defiantly ignored orders of court, filed materially false statement of affairs and could not propose viable plan of reorganization). The finding of bad faith may rest on such nondisclosure or misrepresentation and even subsequent amendments do not vitiate bad faith in failing to disclose relevant facts. *Big Shanty Land Corp. v.*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

22

1    *Comer Properties*, 61 B.R. 272, 281 (N.D. Ga. 1985).  Here, the Debtors' recently filed schedules

2    contain multiple misrepresentations, including, most notably, failing to disclose the secured status of

3    Bellaire in the Golden State case.  *See* Golden State Docket No. 31 at 6 (Sched. D), 7 (Sched. E/F, ¶

4    3.1 at 1).  Further, the Debtors' schedules baselessly and grossly overestimate the value of the

5    Debtors' Radio Stations even though the $6 million VCY offer was obtained after **years** of marketing

6    and was the **only** all-cash *bona fide* offer of material value.  *See* Docket No. 28 at 4 (Sched. A/B, ¶

7    64 at 2); Golden State Docket No. 31 at 4 (Sched. A/B, ¶ 64 at 2); Major Market Docket No. 29 at 4

8    (Sched. A/B, ¶ 64 at 2).  Based on all the foregoing, this Court should dismiss the Bankruptcy Cases

9    as bad faith filings.

10            **b.     The Debtors' Litigation Conduct Presents a Continuing Loss to the Estate**

11                    **and Rehabilitation Remains Unlikely.**

12            Finally, as set forth above, the Debtors are grossly mismanaged under Mr. Stolz and his

13    conduct has (and will) caused a substantial or continuing loss to or diminution of the estate without

14    any reasonable likelihood of rehabilitation through these Bankruptcy Cases.  Section 1112(b)(4)(A)

15    provides that "cause" for conversion exists where there is a "substantial or continuing loss to or

16    diminution of the estate and the absence of a reasonable likelihood of rehabilitation".  *In re Hassen*

17    *Imports P'ship*, 2013 WL 4428508, at *13 (B.A.P. 9th Cir. Aug. 19, 2013).  The loss may be either

18    substantial or continuing, but need not be both, to constitute cause under § 1112(b)(4)(A).  *Id.*  (citing

19    *In re Creekside Senior Apartments, L.P.*, 489 B.R. at 61).  The substantial or continuing loss prong is

20    demonstrated by a loss that will "materially negatively impact the bankruptcy estate and the interest

21    of creditors," or "dwindling liquidity, or illiquidity resulting in unpaid postpetition debts which

22    usually constitute administrative expenses that will take priority over prepetition claims*." Hassan*,

23    2013 WL 4428508, at * 13.  To determine the existence of a continuing loss to, or diminution of, the

24    estate, the bankruptcy court must look beyond financial statements and fully evaluate the present

25    condition of a debtor's estate.  *Id.* (citing *In re Motel Props., Inc.*, 314 B.R. 889, 894 (Bankr. S.D. Ga.

26    2004) (citing *In re Moore Constr., Inc.*, 206 B.R. 436, 437–38 (Bankr. N.D. TEx. 1997)).  The

27    absence of a reasonable likelihood of rehabilitation under § 1112(b)(4)(A) is not a technical inquiry

28    of whether a debtor can confirm a plan, rather, the Court should analyze whether the debtor's business

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

23

prospects justify continuance of the reorganization effort. *Hassan*, 2013 WL 4428508, at *14 (citing *In re Wallace*, 2010 WL 378351 at *4 (Bankr. D. Id. Jan. 26, 2010)).

Here, the Debtors admit that their businesses generate only "meager" revenue because of their mismanagement and the Debtors were incapable of obtaining any offers in their own floundering marketing efforts. Indeed, the net result of the years of litigation spearheaded by the Debtors (at Mr. Stolz's behest) has been steadily increasing judgments in the form of, among other things, attorney's fee awards, interest, and sanctions, that directly resulted from their litigation misconduct. The Debtors have opposed approval of the ***only*** *bona-fide* all cash offer to purchase the Radio Stations. But for the investments of VCY while FCC approval remains pending, the Debtors were operating their Radio Stations in disrepair and in violation of their Licenses. Clearly, the losses to the estate is ongoing and significant. Furthermore, as set forth above, the Receiver the ability to achieve the same results and return for creditors as within bankruptcy. *See Skymark Props.*, 597 B.R. at 402-3 (dismissing case for cause where debtor's refinance/sale goals could be accomplished under UCRERA). Based on the foregoing, the evidence in these Bankruptcy Cases clearly demonstrates that cause exists for dismissal under § 1112(b).

## 2. **Alternatively, the Court Should Abstain from Hearing the Bankruptcy Cases, Under § 305(a).**

As an alternative to dismissal under § 1112(b), this Court should abstain from exercising jurisdiction over the Bankruptcy Case under § 305(a). Section 305(a) provides, in pertinent part, as follows:

> The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]

11 U.S.C. § 305(a). The Court must abstain from jurisdiction with respect to the entire bankruptcy case rather than merely portions of the case. *In re Owen-Johnson*, 115 B.R. 254, 257 (Bankr. S.D. Cal. 1990); *In re Bellucci*, 119 B.R. 763, 771 (Bankr. E.D. Cal. 1990) (Section 305(a) applicable on an "all-or-nothing basis" to the bankruptcy case). The standard to be applied in considering relief

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127918512.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1   under § 305(a) is whether the "interests of creditors and the debtor would be better served by"

2   abstention.  *Id.* (citing statute).

3          It is appropriate to dismiss a chapter 11 case under § 305(a) where liquidation proceedings,

4   such as a receivership, are pending.  *2 Collier on Bankruptcy* ¶ 305.02[2][c], at 305-8 to 305-09 (Alan

5   N. Resnick & Henry J. Sommer, eds., 16th ed. 2017); *See also In re Newport Offshore Ltd.*, 219 B.R.

6   341, 354-55 (Bankr. D.R.I. 1998) ("[Section] 305 provides that a bankruptcy court may dismiss a

7   bankruptcy case or suspend proceedings within it in appropriate circumstances, which may include

8   the pendency of state court receivership proceedings that appropriately serve the interests of involved

9   parties."); *In re Starlight Houseboats, Inc.*, 426 B.R. 375, 389 (Bankr. D. Kan. 2010) (dismissing case

10  under § 305(a)(1) where state court had been pending for several months when the bankruptcy was

11  filed and continuation of already underway state court receivership was preferable to starting anew in

12  bankruptcy court); *In re Michael S. Starbuck, Inc.*, 14 B.R. 134, 135 (Bankr. S.D.N.Y. 1981)

13  (dismissing case under § 305(a)(1) where receiver has been in place for months, many hours and fees

14  had already been expended by receiver and counsel in administering the debtor's estate and allowing

15  matter to continue in bankruptcy would be "terrible waste of time and resources").

16         In these Bankrutpcy Cases, the interests of creditors and the Debtors would be better served

17  if the Court abstains under § 305(a).  It would be inefficient and a waste of time and resources to start

18  over in bankruptcy when a receivership proceeding has been pending in the District Court for nearly

19  a year-and-a-half and has been pending in the State Court for over one year and one month.  *See* RJN,

20  Exs. N, O.  As courts observe, restarting anew in the Bankruptcy Cases would constitute a "terrible

21  waste of time and resources" where the Receiver has already incurred over $600,000 in fees largely

22  due to the Debtors' misconduct.  *See* RJN, Ex. BB.  Moreover, as set forth above, the Bankruptcy

23  Cases were filed in bad faith, as an end-run around the District Court's conditions to termination of

24  the receivership and to avoid the District Court's ongoing monitoring of Mr. Stolz's contemptuous

25  conduct.  As such, this Court should abstain from exercising jurisdiction over the Bankruptcy Cases

26  and dismiss the Bankruptcy Cases in their entirety, under § 305(a), to allow the VCY sale to proceed

27  to consummation.

28

127918512.2

**C.**     **Alternatively, the Court Should Terminate the Automatic Stay to Allow the Receiver to Take Control of the Debtors' Assets.**

In the alternative, if the Court declines to excuse turnover, dismissal, or abstention, the Court should determine that cause exists to terminate the automatic stay under § 362(d) to allow the Receiver to proceed with fulfilling his duties under the Receivership Order, including consummating the VCY sale.  Section 362(d)(1) provides that the Court "shall" grant relief from stay to pursue litigation for cause.  *See* 11 U.S.C. § 362(d)(1) ("the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause").  To obtain relief from the automatic stay, the party seeking relief must first establish a *prima facie* case that "cause" exists for relief under § 362(d)(1).  *See Duvar Apt., Inc. v. F.D.I.C. (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996). Once a *prima facie* case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted.  *See* 11 U.S.C. § 362(g)(2); *see also In re Danzik*, 549 B.R. 804, 808 (Bankr. D. Wy. 2016) ("One who seeks relief from the automatic stay to continue litigation in a different tribunal must first establish cause, for such relief.  The burden then shifts to Debtor to establish he is entitled to the stay.").

"'Cause' is determined on a case-by-case basis."  *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990).  In determining whether "cause" exists to grant relief from the automatic stay to allow a movant to pursue litigation, courts in the Ninth Circuit have examined the factors set forth in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).  *See In re Kronemyer*, 405 B.R. 915 (B.A.P. 9th Cir. 2009); *see also In re EB Holdings II, Inc.*, 591 B.R. 10, 16 (Bankr. D. Nev. 2018); *In re Altman*, 2018 WL 3133164, at *6 (B.A.P. 9th Cir. June 26, 2018) (applying *Curtiss* factors to receivership action).  The *Curtis* factors are: (i) whether the relief will result in a partial or complete resolution of the issues; (ii) the lack of any connection with or interference with the bankruptcy case; (iii) whether the foreign proceeding involves the debtor as a fiduciary; (iv) whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (v) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (vi) whether the action essentially involves third parties,

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127918512.2

and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (vii) whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (viii) whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (ix) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under § 522(f); (x) the interests of judicial economy and the expeditious and economical determination of litigation for the parties; (xi) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (xii) the impact of the stay on the parties and the "balance of hurt." *See In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004). "[W]hile the *Curtis* factors are widely used to determine the existence of 'cause,' not all of the factors are relevant in every case, nor is a court required to give each factor equal weight." *In re Landmark Fence Co., Inc.*, 2011 WL 6826253 at *4 (C.D. Cal. Dec. 9, 2011).

"Cause" exists, under the *Curtis* factors, to grant relief from stay with respect to the Claims. The *Curtis* factors are analyzed as follows:

- **Factor 1: Partial or Complete Resolution of the Issues.** The Claims will resolve all disputes between the Receiver and the Debtors, namely the resolution of the pending VCY sale to satisfy the outstanding claims of creditors. *See In re Korean Western Presbyterian Church of Los Angeles*, 618 B.R. 282, 289 (Bankr. C.D. Cal. 2020) ("The State Court appears to have all the parties before it, and to be addressing the same governance/control issues that this Bankruptcy Court would have to address, so it can completely resolve these issues."). Accordingly, this factor weighs in favor of relief from stay because completion of the receivership sale and distributions will finally resolve all outstanding issues among the Debtors, the Receiver, and the Debtors' sole secured creditor.

- **Factor 2: Lack of Connection With or Interference in Bankruptcy Case.** The Bankruptcy Cases were filed specifically to forestall the VCY sale and usurp control over the Debtors from the Receiver. The Court will be presented with the same misconduct that the District Court and State Court have addressed for years, and, as set forth below, the appointment of a trustee (similar to the Receiver) will ultimately be necessary to the extent the Bankruptcy Cases are not dismissed. *See Korean Western Presbyterian Church of Los Angeles*, 618 B.R. at 289 (holding that "far from

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127918512.2

interfering with this bankruptcy case or causing prejudice, resolution of the issues that are already well underway in the State Court is essential to determine the bankruptcy issues" in the pending case). Accordingly, resolution of the receivership will further the interests of these Bankruptcy Cases, namely allowing continued independent monitoring of the Debtors and ensuring payment to creditors.

- **Factor 4: Specialized Tribunal; Factor 10: Judicial Economy; Factor 11: Preparation for Trial.** The District Court and State Court each have years of experience with the ongoing litigation and post-judgment enforcement actions against the Debtors. The receivership is at the precipice of completion once the FCC authorizes the VCY sale already approved by the District Court. Accordingly, the Court should not undertake renewed efforts to marshal and dispose of estate assets late in the receivership process.

- **Factor 7: Prejudice to Creditors.** The continuation of the receivership will not prejudice creditors of the Bankruptcy Case. The Debtors admit that the Receiver and Bellaire are the only significant creditors of the Bankruptcy Cases. By way of example, the Receiver's fees are the only unsecured claim listed in a specific amount on each of the Debtors' bankruptcy schedules—all others are listed as "unknown," contingent, unliquidated and disputed. *See* Docket No. 28 at 9-10 (Sched. E/F, Pt. 3 at 1-2); Golden State Docket No. 31 at 9-10 (Sched. E/F, Pt. 3 at 1-2); Major Market Docket No. 29 at 9-10 (Sched. E/F, Pt. 3 at 1-2). Further, though incorrectly scheduled, Bellaire is the only secured claimant. Accordingly, the Debtors' only significant creditors are already protected by the Receivership Orders.

- **Factor 3: The Debtor As a Fiduciary.** The Receiver was acting as a fiduciary to the Debtors prepetition. Further, as set forth herein, Mr. Stolz is incapable as acting as a competent fiduciary for the benefit of the Debtors creditors.

- **Factor 12: The Balance of the Hurt.** The Receiver and the Debtors' creditors will suffer substantial harm if they are precluded from completing the receivership and the VCY sale. The Debtors assets must be liquidated in bankruptcy in any event to produce a recovery to creditors—an eventuality the Debtors cannot forestall in perpetuity. *First Fed. Bank of Cal. v. Robbins (In re Robbins),* 310 B.R. 626, 631 (B.A.P. 9th Cir. 2004) (holding that "the court was not at liberty to moot this dispute by denying stay relief in perpetuity"). The Receiver has already expended substantial

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

effort to liquidate the Debtors' assets for the benefit of creditors, which should not be rehashed again in these Bankruptcy Cases, particularly with Mr. Stolz at the helm.

- **The Remaining Factors 5, 6, 8, and 9.** The receivership does not implicate insurance (Factor 5); Mr. Holman is one of a number of defendants (Factor 6); the judgments and receivership recoveries are not subject to equitable subordination, under § 510(c) (Factor 8); and the judicial lien of Bellaire is not avoidable, under § 522(f) (Factor 9).

Based on the foregoing, the Movants submit that the *Curtis* Factors overwhelmingly weigh in favor of granting relief from stay to allow the receivership to proceed with the VCY sale.

Further, to the extent the Court grants relief from stay, the Receiver respectfully requests that any such order be effective immediately notwithstanding Bankruptcy Rule 4001(a)(3). *See* FED. R. BANKR. P. 4001(a)(3) ("An order granting motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."). The 14-day stay is unnecessary because—although the completion of the FCC approval process is necessary to consummate the sale—the FCC approval process will not be immediately concluded in light of the Debtors' litigation tactics. *See, e.g.*, *In re A Partners, LLC*, 344 B.R. 114, 128 (Bankr. E.D. Cal. 2006) (waiving Bankruptcy Rule 4001(a)(3) where "the timing and delay inherent in the State's statutory foreclosure scheme give the Debtor all of the protection intended by Rule 4001(a)(3)"). Accordingly, waiver of the 14-day stay is appropriate to allow the FCC approval process to conclude.

**D.    Alternatively, the Court Should Convert the Bankruptcy Cases to Chapter 7 for Cause.**

As stated above, Section 1112(b)(1) of the Bankruptcy Code provides that, absent unusual circumstances, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1) (emphasis added). The reasons listed for dismissal of these Bankruptcy Cases also constitute cause for conversion of the Bankruptcy Cases to chapter 7. In the event this Court declines to dismiss or abstain, the Receiver respectfully requests that it convert the Bankruptcy Cases for cause.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

127918512.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

## IV.

## CONCLUSION

For the reasons set forth above, the Debtor respectfully requests that the Court enter an order: (i) granting the Motion in its entirety; (ii)(a) excusing the Receiver from the turnover provisions of § 543, and (b) dismissing the Bankruptcy Cases or abstaining from hearing the Bankruptcy Cases, pursuant to §§ 1112(b) and 305(a), respectively; or, alternatively, (iii)(a) terminating the automatic stay as to the Receiver, pursuant to § 362(d), or (b) converting the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code, pursuant to § 1112(b); and (iv) granting the Receiver such other and further relief as is just and appropriate under the circumstances.

Dated this 23rd day of November, 2021.

**FOX ROTHSCHILD LLP**

By:  */s/ Brett A. Axelrod*
      BRETT A. AXELROD, ESQ.
      Nevada Bar No. 5859
      NICHOLAS A. KOFFROTH, ESQ.
      Application for Appearance *Pro Hac Vice* Pending
      1980 Festival Plaza Drive, Suite 700
      Las Vegas, Nevada 89135
      *Counsel for W. Lawrence Patrick*

127918512.2