David Mincin, Esq.
Nevada Bar No. 5427
MINCIN LAW, PLLC
7465 W. Lake Mead Boulevard, #100
Las Vegas, Nevada 89128
dmincin@mincinlaw.com
Phone: 702-852-1957
Fax: N/A
*Attorney for Mincin Law, PLLC*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

Re:

☐ AFFECTS SILVER STATE BROADCASTING, LLC,

☐ AFFECTS GOLDEN STATE BROADCASTING, LLC,

☐ AFFECTS MAJOR MARKET RADIO, LLC,

☒ AFFECTS ALL DEBTORS,

Debtors.

Case No.: BK-S-21-14978-ABL
Chapter: 11

Joint Administration with
Case No.: BK-S-21-14979-ABL
Case No.: BK-S-21-14980-ABL

Hearing Date: December 20, 2021
Hearing Time: 9:30 a.m.

## MINCIN LAW, PLLC'S RESPONSE TO:

(1) **EMERGENCY JOINT MOTION FOR ORDER DIRECTING COURT APPOINTED RECEIVER TO TURNOVER PROPERTY**

(2) **EMERGENCY MOTION TO EXCUSE TURNOVER IN FAVOR OF RECEIVER AND TO DISMISS/ABSTAIN, OR, ALTERNATIVELY, FOR STAY RELIEF AND/OR CONVERSION**

Creditor Mincin Law, PLLC, responds as follows to the above captioned motion. This response is made and based upon the petition, schedules, pleadings and papers on file in this bankruptcy case and on the following points and authorities and exhibits.

## POINTS AND AUTHORITIES

1. <u>Introduction</u>.

Mincin Law, PLLC is a judgment creditor of Silver State Broadcasting, LLC, Golden State Broadcasting, LLC, the parent company and the principal of the debtor Edward Stolz

Page 1 of 8

W:\2015 - DM\4097stoltz.gord\Chapter 11 Bankruptcies\Silver State Broadcasting 21-14978\Resp To Emerg Jt Mtn For Receiver To Turnover Property & Mtn To Excuse Turnover And To Dismiss...DMcb...12-13-2021.wpd

December 13, 2021 (10:33am)

(See Proof of Claim 1). It is the general position of Mincin Law that the receiver has presented an abundance of evidence and a plethora of reasons to support the conclusion that cause exists for relief to be granted. However, as also explained in detail below, in order to insure the best interests of all creditors are protected, this case should not be dismissed. Instead, the stay should be lifted, and then, only for the limited purpose of completing the pending sale referred to in the Receiver's motion and for payment of the Receiver's administrative claims. Likewise, instead of being dismissed, this case should be converted to chapter 7 so that the balance of funds from the sale can be timely, economically and equitably distributed to **all** creditors by a chapter 7 trustee.

2. <u>The Evidence And Documents Submitted By The Receiver And Recent Decision From The Federal Receivership Court Plainly Demonstrate That Cause Exists To Grant Relief</u>.

While the Receiver's motion presents an abundance of evidence and history that show cause exists to grant relief, Mincin Law wishes to highlight certain court rulings.

Mincin Law believes the facts and circumstances of the WB Judgment is more than telling and should inform this Court's decisions on the pending motions. As recited on page 16 of Docket 45, WB has a judgment for $330,000 in statutory damages, $865,000 in attorneys fees, $55,000 in costs, and $17,000 in sanctions. In addition to this, it appears from the Receiver's Motion that the Receiver and Receiver's counsel are owed in the range of $600,000 in attorneys fees and this sum will presumably now grow substantially due to these cases being filed.

Boiled down to its essence, the Debtor entities have incurred an approximate $1,500,000 liability in fees and costs awarded to their adversary fighting a $300,000 claim, which apparently was based on the refusal to pay royalties for music it played on its radio stations. Mincin Law is greatly concerned with the prospect of having a principal who turned a $300,000 demand for payment of royalties into a $2,000,000 judgment being in charge of a chapter 11 estate. In its ideal machinations Chapter 11 involves the pursuit of orderly and

W:\2015 - DM\4097stoltz.gord\Chapter 11 Bankruptcies\Silver State Broadcasting 21-14978\Resp To Emerg Jt Mtn For Receiver To Turnover Property & Mtn To Excuse Turnover And To Dismiss...DMcb...12-13-2021.wpd

December 13, 2021 (10:33am)

efficient resolution and payment of claims to save an ongoing business. There is nothing in the above judicial history to indicate that this Chapter 11 is intended to be or will be used in a manner that comports with Chapter 11's ideal machinations.

Mincin Law's concerns are only worsened by the following ruling from the Federal Receivership Court wherein the court ruled as follows:

> Defendants' claim that "this case should have been over on November 9, 2020" is patently false and, moreover, irritating to the Court: this case has dragged on because Defendants have filed motion after motion, preventing the winding-up of the Receivership. (Id.) Most pertinently, the case continued after that date because Defendants moved to enforce a settlement agreement – a borderline frivolous motion that the Court nonetheless had to adjudicate. (Dkt. No. 338.) Had Defendants wished to wrap up the case at that point, they need not have wasted the Court's time on that motion. After that, of course, the case was prolonged when Stolz became a fugitive from justice. (See Dkt. No. 368 (warrant for Stolz's arrest).) Counsel for Defendants is reminded to recall Federal Rule of Civil Procedure 11 when making such arguments before this Court.

(Exhibit A, p. 3 of 7).

In addition, the following ruling is also pertinent to the pending motions:

> Despite its exasperation with the antics of Stolz and his attorneys, the Court hears his basic plea: to terminate the Receivership before his life's work, the Stations, can be sold. In service of that aim, the Court has set forth clear orders listing the steps that must be taken before the Receivership can be terminated and an expedited schedule for accomplishing those steps. (Termination Order; Scheduling Order.) The Court had hoped that upon issuance of this order, Defendants would promptly pay the Receiver and Bellaire. Had Defendants elected to follow that route, the Court could have terminated the Receivership – and returned Mr. Stolz's radio stations to him – by the end of August.
>
> But Defendants chose not to take their lumps, pay their debts, and allow everyone involved to put this torturous case behind them.

(Exhibit A, p. 6 of 7).

Given this ruling and history, there is no reason to presuppose that the Debtors will suddenly "choose to take their lumps, pay their debts, and allow everyone to put the multitude of existing lawsuits and judgments behind them." There is no reason to presuppose that this Chapter 11 will be anything other than a launching point for countless new waves of litigation, appeals, and then more litigation. The evidence provided by the Receiver provides overwhelming support for a conclusion that cause exists to grant relief.

Page 3 of 8

W:\2015 - DM\4097stoltz.gord\Chapter 11 Bankruptcies\Silver State Broadcasting 21-14978\Resp To Emerg Jt Mtn For Receiver To Turnover Property & Mtn To Excuse Turnover And To Dismiss...DMcb...12-13-2021.wpd

December 13, 2021 (10:33am)

1  3.  **The Receiver Should Not Be Compelled To Turnover The FCC Licenses And Other Assets And The Automatic Stay Should Be Lifted To Permit The Receiver To Complete The Sale Of FCC Licenses.**

The motion and evidence filed by the Receiver indicates that there is a pending sale for 3 FM radio stations for $6,000,000 that the receiver wishes to complete. The Receiver's motion indicates that Stolz has been given substantial time and opportunity to secure a larger sales price. Stolz has not presented anything concrete to suggest that he can or will sell the stations for a larger sum and in fact presents that he will oppose to the bitter end any attempts to sell his life's work. He has also not presented anything concrete to demonstrate that he has the actual means or the sincere intent to pay all judgments and creditors in full in a timely manner.

Based on this evidence Mincin Law believes the stay should be lifted to permit the receiver to complete the pending sale and the Receiver should be relieved from any obligation to turn these assets over to the estate.

4.  **The Lift Stay Should Be Lifted For The Limited Purpose Of Completing The Pending Sale And Permitting Payment Of The Receiver's Administrative Expenses.**

For reasons discussed above and in more detail in the following, the stay should be lifted but the order lifting stay should be limited to completing the pending sale and paying any administrative fees owed to the receiver and the receiver's counsel. The balance of funds should be turned over to a chapter 7 bankruptcy trustee for administration under the jurisdiction of this court.

5.  **Dismissal Of This Case Is Not In The Best Interests Of Creditors- The Federal Receivership Court Is Not Well Equipped To Insure That All Creditor Claims Are Timely Administered And Paid.**

The Federal Receivership Court is well equipped to preside over the appointment of a receiver to take charge of FCC licenses and to oversee the orderly sale and disposition of them. However, the Federal Receivership Court is **not** well equipped to preside over the claims resolution process and is not well equipped to oversee and insure that equitable distributions are made to **all** creditors.

Page 4 of 8

W:\2015 - DM\4097stoltz.gord\Chapter 11 Bankruptcies\Silver State Broadcasting 21-14978\Resp To Emerg Jt Mtn For Receiver To Turnover Property & Mtn To Excuse Turnover And To Dismiss...DMcb...12-13-2021.wpd

December 13, 2021 (10:33am)

In the first instance, Mincin Law is concerned that the Federal Receivership Action has been ongoing since 2016. Mincin Law is a judgment creditor who has never received notice of the Receivership Action at all. As a corollary to this, it was not given notice to file a claim or a deadline to file it by. Mincin Law believes there are several other creditors who have never received notice of the Federal Receivership Action who will never be able to have their claims satisfied from the Federal Receivership estate.

More concerning to Mincin Law is the fact that the Federal Court presiding over the receivership has indicated that only creditors with final judgments are entitled to payment from receivership assets. Specifically, at page 6 of 7 of the Decision, the court cited Riehle v. Margolies, 279 US 218, 226 (1929) and determined that, in its interpretation of the law, "breach of contract claims must be reduced to judgment before the Court may order the Receiver to satisfy those claims." (Exhibit A). Accordingly, the Federal Court denied motions to pay claims filed by Adli Law Group, Crown Castle, Haas, and Mincin without prejudice to revisit the issue after they secure judgments (Exhibit A).[1]

Now that the Stolz entities have chosen this forum for relief, it would **not** be in the best interests of unsecured creditors to force them to return to state and federal courts in multiple jurisdictions (or in some instances file new lawsuits), prosecute their pending lawsuits until judgment, and then return to the Federal Receivership Court and hope that they might have their claim paid from the receivership estate. Unsecured creditors should not be exposed to these expenses, delays and uncertainty. They should not be exposed to the uncertainty of whether the receivership will even still exist when they have judgments entered in other courts.

Further, there is no indication or assurance that the Federal Receivership Court will

---

[1] As an aside, in the case of Mincin Law, Mincin Law's breach of contract claims have been reduced to Judgment, but this just gets to the heart of the other concerns about never having received notice that are expressed above.

Page 5 of 8

even let creditors file their judgment claims in the receivership case after they endure the expense and time of reducing their lawsuits to judgment. The apparent deadline set by the court to file claims has already expired. In the case of Mincin Law, Mincin Law was not permitted to file its motion to have its claim paid due to failure to file the motion timely. Mincin Law was bound to a deadline it never received notice of. There is no assurance in place that a creditor who has a judgment entered in its favor in 2022 or 2023 or beyond will be permitted to go to the Federal Receivership Court at some future time and request that their judgment claim be paid.

The court should also consider general public policy. Given the overburdened condition all courts are currently in due to the Covid pandemic, it would be against public policy to force numerous lawsuits to be filed or to be reinstated in courts that are already over-taxed.

The Receiver's papers present that several million dollars will be available for payment of unsecured claims. Under the ill-defined and unnoticed procedures set in place by the Federal Receivership Court, it is unlikely unsecured creditors will ever have a realistic chance to have their claims satisfied from these assets and funds.

By contrast, this Court is well equipped to preside over claims resolution and distributions to all creditors. The claims filing and objection process is well defined. Bankruptcy trustees are well equipped to review filed claims, determine which ones are valid, and determine which ones require more documentation. In the event the trustee determines the claim is not valid, this Court is well equipped to adjudicate the claim in an economic and efficient manner through claim objection procedures.

Dismissal of this case is not in the best interests of creditors. Lifting the stay in toto and forcing creditors to fend for themselves in state court and then in a poorly defined Federal Receivership proceeding is not in the best interests of creditors.

///

W:\2015 - DM\4097stoltz.gord\Chapter 11 Bankruptcies\Silver State Broadcasting 21-14978\Resp To Emerg Jt Mtn For Receiver To Turnover Property & Mtn To Excuse Turnover And To Dismiss...DMcb...12-13-2021.wpd

December 13, 2021 (10:33am)

6.  Conclusion.

For the reasons stated Mincin Law submits that the pending motions should be decided as follows: 1) The Debtor's motion for turnover should be denied; 2) the Receiver's request for dismissal should be denied; 3) in the alternative, the Receiver's request for conversion to chapter 7 and appointment of a trustee should be granted; 4) the stay should be lifted for the limited purpose of permitting the receiver to complete the pending sale of 3 FM Radio Stations for $6,000,000 and for final resolution of the Receivers administrative fees and costs; 5) the Court should order the balance of all sale proceeds be turned over to the proposed chapter 7 trustee for administration under the jurisdiction of this court.

DATED this 13th day of December, 2021.

MINCIN LAW, PLLC

By: /s/ David Mincin
David Mincin, Esq.
Nevada State Bar No. 5427
7465 W. Lake Mead Boulevard, #100
Las Vegas, Nevada 89128
*Attorney for Mincin Law, PLLC*

Page 7 of 8

W:\2015 - DM\4097stoltz.gord\Chapter 11 Bankruptcies\Silver State Broadcasting 21-14978\Resp To Emerg Jt Mtn For Receiver To Turnover Property & Mtn To Excuse Turnover And To Dismiss...DMcb...12-13-2021.wpd

December 13, 2021 (10:33am)

# CERTIFICATE OF SERVICE

Pursuant to Fed.R.Bank.P. 2002 and LR 2002, I certify that I am an employee of Mincin Law, PLLC, and on the 13th day of December, 2021, service of a true and correct copy of the MINCIN LAW, PLLC'S RESPONSE TO: (1) EMERGENCY JOINT MOTION FOR ORDER DIRECTING COURT APPOINTED RECEIVER TO TURNOVER PROPERTY (2) EMERGENCY MOTION TO EXCUSE TURNOVER IN FAVOR OF RECEIVER AND TO DISMISS/ABSTAIN, OR, ALTERNATIVELY, FOR STAY RELIEF AND/OR CONVERSION was made by:

[X]    ECF SERVICE: That service was made by electronic transmission through the ECF filing system of the U.S. Bankruptcy Court, District of Nevada to the parties as listed below: and/or

BRETT A. AXELROD on behalf of Other Prof. W. LAWRENCE PATRICK
baxelrod@foxrothschild.com, pchlum@foxrothschild.com;mwilson@foxrothschild.com

OGONNA M. BROWN on behalf of Creditor VCY AMERICA, INC.
OBrown@lrrc.com, nlord@lewisroca.com, ogonna-brown-4984@ecf.pacerpro.com, dberhanu@lewisroca.com

THOMAS H. FELL on behalf of Creditor CROWN CASTLE MU LLC
tfell@fclaw.com, clandis@fclaw.com;CourtFilings@fennemorelaw.com

STEPHEN R HARRIS on behalf of Debtor GOLDEN STATE BROADCASTING, LLC, MAJOR MARKET RADIO LLC & SILVER STATE BROADCASTING, LLC
steve@harrislawreno.com, hannah@harrislawreno.com;norma@harrislawreno.com

JOHN M NAYLOR on behalf of Creditor NAYLOR & BRASTER ATTORNEYS AT LAW PLLC JNAYLOR@NAYLORANDBRASTERLAW.COM,
asharples@NAYLORANDBRASTERLAW.COM

U.S. TRUSTEE - LV - 11 USTPRegion17.lv.ecf@usdoj.gov

_____/s/ Carol Burke_____
An Employee of Mincin Law, PLLC

Page 8 of 8

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  **EDCV 16-600 JGB (SPx)**    Date  August 26, 2021

Title  *WB Music Corp. et al. v. Royce International Broadcasting Corp. et al.*

---

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):  Attorney(s) Present for Defendant(s):

None Present  None Present

Proceedings:   **Order (1) GRANTING IN PART and DENYING IN PART Receiver's Motion for Fees (Dkt. No. 457); (2) DENYING VCY America, Inc.'s Motion for Fees (Dkt. No. 458); (3) DENYING ADLI Law Group P.C.'s Motion for Fees (Dkt. No. 459); (4) GRANTING Bellaire Towers Homeowners Association's Motion for Satisfaction of Judgment (Dkt. No. 460); (5) DENYING Crown Castle's Motion for Fees (Dkt. No. 462); (6) DECLINING to accept for filing Chuck and Ellen Haas' Motion for Fees; and (7) DECLINING to accept for filing Mincin Law, PLLC's Motion for Fees**

Before the Court are motions for fees and costs filed by Receiver W. Lawrence Patrick ("Receiver"); interested party VCY America, Inc. ("VCY"); interested party ADLI Law Group P.C. ("Adli"); interested party Bellaire Tower Homeowners Association ("Bellaire"); interested party Crown Castle ("Crown Castle"); interested parties Chuck and Ellen Haas ("the Haases"); and interested party Mincin Law Group, PLLC ("Mincin") against Defendants Royce International Broadcasting Corporation, et al. (collectively, "Defendants"). ("Receiver Motion," Dkt. No. 457; "VCY Motion," Dkt. No. 458; "Adli Motion," Dkt. No. 459; "Bellaire Motion," Dkt. No. 460; "Crown Castle Motion," Dkt. No. 462; "Haas Motion," "Mincin Motion.") After considering the papers filed in support of and in opposition to the motions, as well as oral argument at hearing on August 23, 2021, the Court GRANTS IN PART and DENIES IN PART the Receiver Motion; DENIES the VCY Motion, the Adli Motion, and the Crown Castle Motion; GRANTS the Bellaire Motion; and DECLINES to accept for filing the Haas and Mincin Motions.

//

---

Page 1 of 7        CIVIL MINUTES—GENERAL        Initials of Deputy Clerk MG

## I. BACKGROUND

The parties are familiar with the voluminous post-judgment proceedings of this case; the Court relates only those necessary to an understanding of the instant motions.

On July 6, 2020, the Court appointed W. Lawrence Patrick as Receiver ("Receivership") to facilitate judgement against Defendants by managing Defendants' radio stations ("Stations"). ("Receivership Order," Dkt. No. 284.) As the parties are well aware, the Court and the Receiver have spent the last year attempting to wrangle Defendants, and in particular Defendant Ed Stolz ("Stolz"), into satisfying the judgments in this case.

On June 2, 2021, the Court entered an order stating that it would terminate the Receivership upon 1) Defendants' satisfaction of the most recent judgment ("Third Amended Judgment," Dkt. No. 429); and 2) Defendants' satisfaction of the Receiver's final accounting. ("Termination Order," Dkt. No. 432.) On July 23, 2021, the Third Amended Judgment was satisfied. (Dkt. No. 455.) On July 26, 2021, the Court set the following briefing schedule for the Receiver's fees:

1. The Receiver shall file a noticed motion for fees . . . no later than Monday, August 2, 2021. Any other parties intending to make formal claim[s] of Stolz must also file motions by this date and according to the schedule set forth below.

2. Stolz may oppose or file a notice of non-opposition by Monday, August 9, 2021 . . .

3. If the Receiver's motion is opposed, the Receiver may reply in support of his motion by Monday, August 16, 2021.

("Scheduling Order," Dkt. No. 456.)

On August 2, 2021, the Receiver, VCY, Adli, and Bellaire filed fee motions against Defendants. (See Receiver Motion, VCY Motion, Adli Motion, Bellaire Motion.) On August 6, 2021, Crown Castle filed a motion for costs and fees. (See Crown Castle Motion.)

On August 9, 2021, Defendants opposed the Receiver Motion and filed a declaration in support. ("Receiver Opposition," Dkt. No. 465; Dkt. No. 466.) Defendants supplemented the Receiver Opposition on August 11, 2021. (Dkt. No. 468.) On August 16, 2021, the Receiver replied in support of the Receiver Motion. ("Receiver Reply," Dkt. No. 469.)

On August 16, 2021, Defendants opposed the VCY Motion ("VCY Opposition," Dkt. No. 472); moved to strike the VCY Motion ("VCY Strike Motion," Dkt. No. 473);[1] opposed the Crown Castle Motion (Dkt. No. 474); and opposed the Adli Motion (Dkt. No. 475).

On August 18, 2021, Defendants moved for relief from various orders of the Court. ("Relief Motion," Dkt. No. 477-1.)[2] On August 19, 2021, Adli replied in support of its motion. (Dkt. No. 478.)

On July 30, 2021, the Clerk of this Court the Haas Motion. The Clerk did not file this motion because it was not noticed for any date and because it did not include a memorandum of points and authorities. On August 11, 2021, the Clerk of this Court received the Mincin Motion. The Clerk did not file this motion because it was untimely noticed for August 23, 2021.

## II.  DISCUSSION

### A.  Receiver Motion

The Receiver requests several categories of fees: (1) out-of-pocket expenditures; (2) compensation; (3) sales commission; (4) attorneys' fees; and (5) bonuses for certain employees. (See Receiver Motion.)

Defendants spend much of their opposition arguing that the Receivership is improper. (Receiver Opposition at 3.) That issue, however, is not before the Court; Defendants had an opportunity to be heard on that issue prior to the Court's issuance of the Receivership Order.

Defendants' claim that "this case should have been over on November 9, 2020" is patently false and, moreover, irritating to the Court: this case has dragged on because <u>Defendants have filed motion after motion, preventing the winding-up of the Receivership.</u> (Id.) Most pertinently, the case continued after that date because <u>Defendants moved to enforce a settlement agreement</u> – a borderline frivolous motion that the Court nonetheless had to adjudicate. (Dkt. No. 338.) Had Defendants wished to wrap up the case at that point, they need not have wasted the Court's time on that motion. After that, of course, the case was prolonged when Stolz became a fugitive from justice. (See Dkt. No. 368 (warrant for Stolz's arrest).) Counsel for Defendants is reminded to recall Federal Rule of Civil Procedure 11 when making such arguments before this Court.

Additionally, Defendants contend that the Stations should not be sold. (Id.) That issue is immaterial to payment of the Receiver; the Court addresses it below. Defendants also request that the Court grant sixty days of discovery and a hearing before the magistrate judge as to the question of whether the Receiver breached a fiduciary duty. (Id. at 5.) If Defendants wish to

---

[1] The VCY Strike Motion is currently calendared for September 13, 2021, at 9:00 a.m.

[2] The Relief Motion is currently calendared for September 20, 2021, at 9:00 a.m.

reopen discovery and conduct ancillary proceedings before a magistrate judge, they must file a properly noticed motion to modify the Court's scheduling order in this case.

Defendants contend that the Receiver has not complied with the Receivership Order because he failed to post a $10,000 bond with the Court; failed to file monthly reports; and failed to create an inventory of subject assets. (Id. at 6.) The Receivership Order did not require an asset inventory. (See Receivership Order.) And, as the Receiver represents, he complied with the other two requirements listed. (Receiver Reply at 4.)

The Court is inclined to award the Receiver out-of-pocket expenditures, compensation, and counsel fees. These are provided for in the Receivership Order and in the Court's order authorizing the Receiver to appoint counsel. (See Receivership Order; Dkt. No. 287.)

In California, courts calculate attorneys' fees using the "lodestar adjustment method." Robertson v. Fleetwood Travel Trailers of Cal., Inc., 144 Cal. App. 4th 785, 818 (2006). Under California law, the lodestar calculation "begins with a touchstone or lodestar, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney.'" Ketchum v. Moses, 24 Cal. 4th 1122, 1131-32 (2001) (quoting Serrano v. Priest, 20 Cal. 3d 25, 48 (1977)). The court may then adjust this amount upwards or downwards based on a number of factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." Id. at 1132.

The Receiver represents that his counsel's hourly rates range from $500-$975 an hour. (Receiver Motion at 6.) This is reasonable, considering the complexity of this litigation. Additionally, the Receiver submitted sufficient accounting for his counsel's time. (Dkt. No. 453-1 at 58 through 453-2 at 49.) Because the Court is well aware of the difficulty of the Receiver's job over the course of the last year, it finds the requested rates appropriate. It therefore awards him $34,122.06 in out-of-pocket expenditures; $105,000 in monthly fees; and $451,218.04 in counsel fees.

Additionally, as discussed below, because the Court cannot dissolve the Receivership for at least two months, the Court approves the payment of and reimbursement for "stay bonuses" in the amount of $60,000. (Receivership Order at 3.)[3]

However, the Court's order does not contemplate awarding the Receiver a commission on the sale of the Stations until the actual sale occurs. (Receivership Order at 3.) Therefore, the

---

[3] Defendants contend that the Receiver did not have authority to promise these bonuses. (Receiver Opposition at 7.) However, the Receivership Order granted the Receiver "power and authority to take charge and manage" the Stations. (Receivership Order at 2.) These bonuses fall within that ambit. Additionally, Defendants contend that the Receiver ought to have sought permission from the Court before paying these bonuses. That is exactly what the Receiver has done in the Receiver Motion.

Court DENIES this portion of the Receiver Motion. The Receiver may renew it after a sale of the Stations.

### B.    VCY Motion

VCY is a third party seeking to purchase the Stations. (VCY Motion at 1.) On September 10, 2020, the Court ordered the Receiver to accept VCY's offer to purchase the Stations. (Dkt. No. 398.) The Federal Communications Commission ("FCC") has delayed that sale on the understanding that the Receivership was on the verge of being dissolved. ("VCY Status Report," Dkt. No. 433, at 1-2; VCY Motion at 4.) VCY now moves to be reimbursed for the amounts it has spent to "repair and maintain the Stations' facilities on behalf of the Receiver and to pursue the court-appointed sale of the Stations." (Id. at 1.)[4] VCY makes this motion "in case the sale of the Stations does not close prior to the termination of the Receivership." (Id.) As the Court discusses below, the Receivership cannot be terminated for several months, and therefore it is likely that the Stations will be sold. The Court therefore DENIES the VCY Motion. VCY may renew it at a later date if the FCC declines to allow the sale of the Stations.

### C.    Adli Motion

Adli requests $1,536,116.75 in fees for this and other cases in other courts. (Adli Motion at 1.) The Court is not insensitive to the amount of work Dariush Adli performed for Stolz. However, this is a thinly disguised breach-of-contract claim which must be brought as a stand-alone suit. Therefore, the Court DENIES the Adli Motion. Adli may renew it at a later date after following the appropriate procedure for securing attorneys' fees.

### D.    Bellaire Motion

Bellaire moves the Court to order that Defendants, through the Receivership, satisfy its judgment against Defendant Golden State Broadcasting, LLC ("Defendant Golden State").[5] (See Bellaire Motion.) Defendants filed no opposition to the Bellaire Motion.

---

[4] The Court does not consider the VCY Opposition, as it was untimely filed. The Scheduling Order ordered all motions for fees from the Receivership to be heard on the enumerated schedule. (Scheduling Order at 2 ("Any other parties intending to make formal claim[s] of Stolz must also file motions by this date and according to the schedule set forth below.")) The Court did this for Defendants' benefit, as they have repeatedly urged the Court to wrap up this case quickly, in order to prevent the sale of the Stations. Defendants' refusal, therefore, to adhere to the expedited schedule frustrates the Court. (See Adli Opposition at 2 (arguing that the Adli Motion, which was filed according to the Court's Scheduling Order, was untimely).)

[5] Stolz is Golden State's principal. (Bellaire Motion at 2.)

On July 22, 2014, the San Francisco Superior Court ("State Court") entered judgment for Bellaire against Defendant Golden State in a case that arose from Defendant Golden State's failure to pay certain radio equipment fees. (Id. at 1.) On October 22, 2020, the State Court appointed the Receiver as a receiver in its case as well, "consistent with the terms and conditions of his July 6, 2020 appointment as receiver by the District Court" in the instant case. (Dkt. No. 482-1.)

The Supreme Court has long held that receiverships in federal court may satisfy claims against the estate reduced to judgment in state court: "A judgment in a state court against a [federally-appointed] receiver, pursuant to section 66 of the Judicial Code . . ., establishes conclusively the right to payment from the funds of the receivership." Riehle v. Margolies, 279 U.S. 218, 226 (1929). The Court therefore GRANTS the Bellaire Motion and orders Defendants to pay Bellaire $340,039.85. Upon receipt of that sum, Bellaire shall simultaneously notify this Court and the State Court.

E.    **Crown Castle Motion**

Crown Castle moves the Court to award it damages, interest, attorneys' fees, and costs. (Crown Castle Motion at 1.) However, Crown Castle's state case against several of the instant Defendants has not yet been reduced to judgment. (Id. at 5.) Crown Castle offers no authority to demonstrate that this Court can independently adjudicate a case pending in state court. Riehle allows this Court to authorize satisfaction of state court judgments only.[6] The Court therefore DENIES the Crown Castle. Crown Castle may renew it at a later date if Crown Castle's state case is reduced to judgment.

F.    **Termination of Receivership**

Despite its exasperation with the antics of Stolz and his attorneys, the Court hears his basic plea: to terminate the Receivership before his life's work, the Stations, can be sold. In service of that aim, the Court has set forth clear orders listing the steps that must be taken before the Receivership can be terminated and an expedited schedule for accomplishing those steps. (Termination Order; Scheduling Order.) The Court had hoped that upon issuance of this order, Defendants would promptly pay the Receiver and Bellaire. Had Defendants elected to follow that route, the Court could have terminated the Receivership – and returned Mr. Stolz's radio stations to him – by the end of August.

But Defendants chose not to take their lumps, pay their debts, and allow everyone involved to put this torturous case behind them. Instead, Defendants contemplate extending

---

[6] The Mincin and Haas Motions are not properly before the Court. The Court reminds the moving parties, however, that under Riehle, what appear to be breach-of-contract claims must be reduced to judgment before the Court may order the Receiver to satisfy those claims. Additionally, the Court declines to accept the improperly filed paper copies and orders the parties to re-file properly noticed motions if they wish to pursue these claims at this time.

litigation for at least three more months. First, Defendants have filed two motions, noticed for late September, seeking to strike the VCY Motion under California's Anti-SLAPP statute and relief from the Court's Termination Order. (VCY Strike Motion; Relief Motion.) Adjudication of those motions may require adjudication of <u>another</u> round of fee motions. Second, Defendants have signaled an intent to file a motion to reopen discovery for sixty days, after which the Court envisions at least a month of motions practice. (Receiver Opposition at 5.)

To reiterate: under prevailing caselaw,[7] the Court cannot terminate the Receivership until the Receiver's accounting has been satisfied. To achieve this, the Court must have a final accounting – which the Receiver cannot prepare if Defendants continue to litigate. Defendants contemplate extending this litigation through the end of the year.

VCY requested of the Court in June a reassurance that it could purchase the Stations. (VCY Status Report at 1.) At the time, the FCC had paused sale of the Stations under the mistaken impression that Defendants would allow this case to close. Defendants, however, are unwilling to allow the Court to terminate the Receivership. Enough is enough. VCY may tell the FCC: sell the Stations. Apparently, we are nowhere near the end.

### III.    CONCLUSION

For the reasons above, the Court GRANTS IN PART and DENIES IN PART the Receiver Motion; DENIES the VCY Motion, the Adli Motion, and the Crown Castle Motion; GRANTS the Bellaire Motion; and DECLINES to accept for filing the Haas and Mincin Motions. Defendants shall satisfy the amounts above within thirty days of the date of this order, at which point interest shall begin to accrue.

For the reasons described at hearing, the Court STRIKES the VCY Strike Motion as moot and resets the Relief Motion for hearing on October 18, 2021.

**IT IS SO ORDERED.**

---

[7] Generally, a court will not entertain a motion for termination of a receivership until the Receiver prepares a final accounting. 65 Am. Jur. 2d Receivers § 146. For example, a court in the District of Hawaii considering a disputed question of terminating a receivership required the receiver to "file a final accounting with the Court" and "perform any other action necessary to wind up the receivership" by a specified date before parties could file a motion to terminate the receivership. <u>Bruser v. Bank of Hawaii</u>, No. CV 14-00387 LEK-RLP, 2020 WL 5845713, at *5 (D. Haw. Sept. 30, 2020).