BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Admitted *Pro Hac Vice*
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
         nkoffroth@foxrothschild.com
*Counsel for W. Lawrence Patrick*

Electronically Filed December 13, 2021

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>SILVER STATE BROADCASTING, LLC,<br><br>☐ Affects Silver State Broadcasting, LLC<br>☐ Affects Golden State Broadcasting, LLC<br>☐ Affects Major Market Radio, LLC<br>☒ Affects all Debtors | Case No. BK-21-14978-abl<br><br>Jointly Administered with:<br>Case No. BK-S-21-14979-abl<br>Case No. BK-S-21-14980-abl<br><br>Chapter 11<br><br>**OPPOSITION TO DEBTORS' EMERGENCY JOINT MOTION FOR ORDER DIRECTING COURT APPOINTED RECEIVER TO TURNOVER PROPERTY PURSUANT TO 11 U.S.C. §§ 543(A) AND (B)**<br><br>Hearing Date: December 20, 2021<br>Hearing Time: 9:30 a.m.<br>Place: Courtroom 1, Third Floor<br>    Foley Federal Building<br>    300 Las Vegas Boulevard South<br>    Las Vegas, Nevada 89101 |

1

128354302.2

W. Lawrence Patrick (the "Receiver"), the receiver of substantially all of the assets of the above-captioned the debtors and debtors-in-possession (collectively, the "Debtors"),[1] hereby files this *Opposition* (the "Opposition") to Debtors' *Emergency Joint Motion for Order Directing Court Appointed Receiver to Turnover Property Pursuant to 11 U.S.C. §§543(a) and (b)* [Docket No. 30] (the "Motion" or the "Turnover Motion").[2] This Opposition is made and based upon the following points and authorities, the *Request for Judicial Notice* ("Supplemental RJN") filed concurrently herewith, references the previously-filed *Request for Judicial Notice* [Docket No. 47] ("RJN") and the *Declaration of W. Lawrence Patrick* [Docket No. 46] (the "Patrick Declaration"), the papers and pleadings on file with the Court, and any oral arguments the Court may entertain at the hearing on the Motion, and respectfully states as follows:

## I.

## INTRODUCTION

The Debtors seek turnover of property of the receivership without a path forward following the District Court-ordered sale of the assets to VCY and without any discussion of the Debtors' longstanding efforts to hoodwink creditors and disobey court orders. The Debtors offer a simplistic approach to turnover: turnover is automatically required by the Bankruptcy Code and (at the time of the Motion) the Receiver had not sought an exception to turnover. That is not the current state of play. The Receiver has presented a thorough rebuttal to turnover in the Receiver's Motion, which is currently scheduled for contemporaneous hearing with the Debtor's Motion. The Receiver's Motion, and the evidence presented in support, clearly demonstrates that the Debtors are unfit to oversee their

---

[1] The Debtors are Silver State Broadcasting, LLC ("Silver State"), Golden State Broadcasting, LLC ("Golden State"), and Major Market Radio, LLC ("Major Market"). Unless otherwise set forth herein, all "Docket" references are to the docket of the Silver State Bankruptcy Case. The docket of the Golden State Bankruptcy Case is referred to herein as the "Golden State Docket" and the docket of the Major Market Bankruptcy Case is referred to herein as the "Major Market Docket." To the extent applicable, the Receiver respectfully requests that the Court take judicial notice of the filings on the dockets of the Bankruptcy Cases, pursuant to Rule 201(b) of the Federal Rules of Evidence.

[2] Capitalized terms not defined herein have the meanings ascribed to them in the Receiver's Motion [Docket No. 45] (defined below). Given that the Motion raises identical factual and legal issues to those raised in the Receiver's Motion and that the Motion and Receiver's Motion will be heard contemporaneously by this Court, this Opposition incorporates by reference the factual background and legal argument set forth in the Receiver's Motion to avoid unnecessarily duplicative briefing.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

128354302.2

assets based on repeated findings by the State Court and District Court overseeing postjudgment collections efforts that have been hamstrung by years of the Debtors' brazen misconduct. As set forth more fully below, the Debtors have already demonstrated at the recent Creditors Meeting that they are unable (or unwilling) to comply with some of the most fundamental disclosure requirements expected of debtors-in-possession. By way of example, they have taken a (still) undisclosed insider loan (the details of which Mr. Stolz was unable to recount), failed to establish postpetition debtor-in-possession accounts, and refused to acknowledge the validity of the District Court Sale Order. Turnover simply will not serve the interests of creditors.

In the interest of preserving the record, the Receiver submits similar argument against turnover as set forth in the Receiver's Motion. As set forth below, the Sale Order entered by the District Court in November 2020 is final and non-appealable. Although the Debtors satisfied the Amended Judgment, the Debtors have not satisfied the Belaire Judgment, the Receiver's fees and expenses, and continue to drive up the cost of administration of the receivership with abusive litigation tactics. The District Court has presented a clear checklist for the Debtors to resolve the receivership that the Debtors refuse to satisfy. The only alternative is consummation of the VCY sale and retention of the receivership for the District Court "to ensure that the satisfaction of the judgments in the instant case has not prejudiced other creditors." RJN, Ex. Y (Order at 3). The Motion should be denied to preclude the Debtors from undermining the result of nearly a decade of litigation in their latest gambit to ignore the District Court's orders and evade creditors.

## II.

## STATEMENT OF FACTS

A.  **General Background**

1.  On October 19, 2021 (the "Petition Date"), the Debtors filed voluntary petitions [Docket No. 1] (the "Petitions") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[3] with the United States Bankruptcy Court for the District of Nevada (the "Court"), which initiated the above-captioned chapter 11 bankruptcy cases (the "Bankruptcy Cases").

---

[3] Unless otherwise set forth herein, all references to "Section" and "§" are to sections of the Bankruptcy Code.

3

128354302.2

1. To date, no official committee or examiner has been appointed by the Office of the United States Trustee in these Bankruptcy Cases.

2. On November 4, 2021, the Debtors filed motions to jointly administer the above-captioned cases. *See, e.g.*, Docket No. 14. On November 19, 2021, the Court entered an order [Docket No. 37] granting joint administration of the Bankruptcy Cases.

3. On November 17, 2021, the Debtors filed the Motion. The Motion seeks, *inter alia*, an order compelling the Receiver to turn over property of the estates, pursuant to § 543.

**B.    The Debtors Grossly Mischaracterize the State of the Radio Stations and Mr. Stolz's Business Mismanagement and Longstanding Litigation Misconduct.**

4. In the interest of avoiding a duplicative restatement of the lengthy factual history previously provided by the Receiver, the Receiver incorporates by this reference the factual background set forth in the *Emergency Motion to Excuse Turnover in Favor of Receiver and to Dismiss/Abstain, or, Alternatively for Stay Relief and/or Conversion* [Docket No. 45] (the "Receiver's Motion") currently pending for consideration by this Court on the same date and time as the Motion.

5. Notwithstanding the foregoing, the Receiver specifically highlights the most egregious instances in which the Debtors' unfounded allegations depart from the detailed evidentiary record submitted by the Receiver:

- **The Receiver's Ability to Pay.** The Debtors attempt to frame themselves as the financially responsible party by claiming that, while they "paid the [Amended Judgment], the Receiver has not paid a single creditor and few, if any, radio station expenses during his control of the radio stations." *See* Mot. at 4. The Debtors fail to acknowledge that the Amended Judgment was only satisfied *two years* after it was entered and after lengthy post-judgment enforcement litigation ultimately landed Mr. Stolz in jail for contempt. *See, e.g.*, RJN, Ex. J (WB Judgment), Ex. K. (Amended Judgment), Ex. U (Order at 3) (noting that "[t]he Court was forced to appoint the Receiver because Defendants failed to satisfy the Amended Judgment for two years") (emphasis in original). The Receiver has not paid creditors because of the Debtors repeated attempts to obstruct the sale to VCY, which has resulted in the Receiver incurring not less than $642,190.10 in unpaid fees and costs. *See id.*, Ex. BB. The Receiver has paid necessary operating expenses of the Debtors' assets subject

to the receivership and has obtained reimbursement for the same from VCY.  *See* Patrick Decl., ¶ 14 at 4 (detailing payments of $80,000 as of March 2021 to purchase necessary equipment to bring Radio Stations into compliance with the Licenses).

- **The Debtors' Claims Concerning Lease Payments Are Inaccurate.**  The Debtors claim that Mr. Stolz has had to pay the rent for the Radio Stations' business premises to avoid eviction because the Receiver will not make lease payments.  *See* Mot. at 5.  However, Mr. Stolz has admitted that the lease payments were not related to the operations subject to the receivership.  *See* Supp. RJN, Ex. A (Hr'g Tr. at 32) ("The payments were made by checks that were written on personal and trust accounts that do not relate to the ongoing operations of the broadcasting stations.").  Further, to the extent the leases relate to the receivership, the District Court explicitly prohibited Mr. Stolz from exercising any operational control.  To claim otherwise would violate the District Court's admonishment that Mr. Stolz maintain no operational control over the receivership assets.  *See id.* (Hr'g Tr. at 69-70).

- **The Receiver Cannot Prepare a Final Accounting Until the Debtors Stop Litigating.**  The Debtors claim that the Receiver has not yet provided an adequate accounting to the District Court.  *See* Mot. at 4.  However, the District Court acknowledged that the Receiver could not prepare a final accounting—and has not prepared a final accounting—because the Debtors continue their meritless litigation tactics.  *See* RJN, Ex. BB (Order at 7) ("To reiterate: under prevailing caselaw, the Court cannot terminate the Receivership until the Receiver's accounting has been satisfied. To achieve this, the Court must have a final accounting – which the Receiver cannot prepare if Defendants continue to litigate. Defendants contemplate extending this litigation through the end of the year.").

- **The Debtors Fail to Attend *In Camera* Status Conferences.**  The Debtors claim that the *in camera* review process provided for in the District Court resulted in the Debtors having "no idea what the Receiver has done with the proceeds from their assets during the receivership." Mot. at 5.  As an initial matter, with the sale still pending, there are no proceeds from the Debtors' assets.  More importantly, the District Court has already observed that the Debtors failed to engage in the *in camera* process.  *See, e.g.*, RJN, Ex. X (Order at 3) ("[T]he Receiver submitted a

1  request for in camera review of the offer. [] Defendants did not respond to the Receiver's notification of an offer or to their request for in camera review for more than three weeks, after the Court granted the in camera request.").

- **The FCC Proceedings Are Pending.** The Debtors offer baseless hearsay speculation that "[u]pon information and belief, the Debtors have also been advised that the Receiver . . . [is] continuing the process of trying the sell the Debtors' FCC licenses without . . . relief from [stay]." Mot. at 6. The statement is patently false. In a status report recently filed with the FCC, the Receiver acknowledges the pending Bankruptcy Cases and its effect on staying the FCC proceedings. *See* Supp. RJN, Ex. C (Status Report at 4) ("The Applicants acknowledge that the filing of the Bankruptcy Cases will temporarily delay the assignment of the Stations from Mr. Patrick to VCY."). The Debtors were served with a copy of the Status Report and failed to correct their clearly inaccurate representation. *See id.* (Status Report at 6).

6.  Importantly, the Debtors' mischaracterization of the District Court process omits a fundamental fact: the November 9, 2020 Sale Order is final, non-appealable, and the Debtors did not appeal the Sale Order. The underpinning of the Debtors' Motion is, thus, premised on a critical flaw. The Debtors do not offer any potential path forward if turnover is granted where a final and non-appealable order of the District Court directs the sale of the Radio Stations to VCY.

C.  **The Debtors Continue to Defy Fundamental Bankruptcy Disclosure Requirements in These Bankruptcy Cases.**

7.  On December 2, 2021, the Office of the United States Trustee held the first meeting of creditors, pursuant to § 341(a) (the "Creditors Meeting"). At the Creditors Meeting, the Debtors' principal, Mr. Stolz, admitted that the Debtors were not compliant with basic expectations of debtors-in-possession:

- **Undisclosed Postpetition Loan.** After significant obfuscation—namely, attempting to avoid questions regarding postpetition financing by suggesting that he did not understand the meaning of a "loan"—Mr. Stolz admitted that he provided the Debtors with a postpetition loan that has not been disclosed to this Court for approval. *See* Supp. RJN, Ex. B (Dec. 2, 2021 Hr'g Tr. at 29:13-18). Mr. Stolz could not answer basic questions concerning the terms of

6

128354302.2

the loan, including the amount of the loan. *See, e.g.*, *id.* (Dec. 2, 2021 Hr'g Tr. at 29:17-32:7, 33:1-41:12). Mr. Stolz repeatedly contradicted himself, including whether the loan was formally documented. *Compare id.* (Dec. 2, 2021 Hr'g Tr. at 31:3-31:14) (claiming that the loan was documented) *with id.* (Dec. 2, 2021 Hr'g Tr. at 38:20-39:2) (claiming only documentation of loan were bank statements reflecting transfers).

- **No Postpetition DIP Accounts.** Mr. Stolz admitted that the Debtors have not established postpetition debtor-in-possession bank accounts, as required by the United States Trustee, and do not intend to do so unless the Motion is granted. *See id.*, Ex. B (Dec. 2, 2021 Hr'g Tr. at 27:4-8). Notably, the receivership estate does not encompass certain of the Debtors' assets—such as the AM radio station—that Mr. Stolz admittedly continues to operate and fund. *See, e.g.*, *id.* (Dec. 2, 2021 Hr'g Tr. at 26:2-9).

- **Refusal to Acknowledge or Disclose the District Court's Sale Order and Pending FCC Proceedings.** Mr. Stolz refused to acknowledge that the District Court had entered the Sale Order—claiming that "there is no such order"—and refused to acknowledge the admittedly pending FCC proceedings concerning transfer of the Licenses in which Mr. Stolz has filed pleadings. *See id.*, Ex. B (Dec. 2, 2021 Hr'g Tr. at 44:22-47:22).

8. The United States Trustee continued the Creditors Meeting to December 23, 2021, at 2:00 p.m., to obtain additional information concerning postpetition lending. *See id.*, Ex. B (Dec. 2, 2021 Hr'g Tr. at 62:18-22).

## III.

## LEGAL ARGUMENT

**A.** **The Receiver Should be Excused from Turnover under 11 U.S.C. § 543(d).**

Section 543 requires a custodian with knowledge of a pending bankruptcy case to refrain from the administration of property of the estate except to the extent its efforts are to preserve the property. *See* 11 U.S.C. § 543(a). Additionally, the custodian must transfer property it holds to the trustee and file an accounting. *See* 11 U.S.C. § 543(b). However, § 543(d)(1) permits a bankruptcy court to excuse a custodian from the requirements of § 543 "if the interests of the creditors . . . would be better served by permitting a custodian to continue in possession, custody, or control of such

7

property." 11 U.S.C. § 543(d)(1).  Consider the following factors to determine whether the interests of creditors would be served by exempting a custodian from the requirements of § 543(a) and (b): (i) whether there will be sufficient income to fund a successful reorganization; (ii) whether the debtor will use the property for the benefit of creditors; (iii) whether there has been mismanagement by the debtor; and (iv) whether there are preferences which a receiver is not empowered to avoid.  *See In re Orchards Vill. Invs., LLC*, 405 B.R. 341, 351-52 (Bankr. D. Ore. 2009) (citing *Dill v. Dime Savings Bank, FSB (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y. 1994)).  The interests of the debtor are not a relevant consideration to the analysis under § 543(d).  *Dill*, 163 B.R. at 225.  Case law addressing section 543(d) overwhelmingly arises in the context of chapter 11 where courts weigh the importance of the assets at issue in the debtor's ability to reorganize.  *See, e.g., In re KCC-Fund V, Ltd.*, 96 B.R. 237, 239-40 (W.D. Mo. 1989); *Dill*, 163 B.R. at 226.  Bankruptcy courts have broad discretion to excuse turnover based on the specific facts and circumstances of the case.  *See In re Uno Broadcasting Corp.*, 167 B.R. 189, 200 (Bankr. D. Ariz. 1994).  As set forth below, each factor weighs in favor of excusing the Receiver from turnover under § 543(d)(1).

> **1.    The Debtors Have No Hope of Reorganization Because They Admittedly Generate Only "Meager" Revenue and the Debtors Have Proven Incapable of Selling Their Assets.**

The first factor weighs in favor of excusing the Receiver from turnover because the Debtors admit that they do not generate significant revenue with which to fund a reorganization.  *In re Skymark Properties II, LLC,* 597 B.R. 391, 400 (Bankr. E.D. Mich. 2019).  A debtor must be capable of demonstrating a likelihood of reorganization based on more than "wishful thinking."  *See In re Powers Aero Marine Servs., Inc.*, 42 B.R. 540, 546 (Bankr. S.D. Tex. 1984).  The Debtors admit that they are barely operational and that their "relatively meager revenues" are at least in part the result of significant gaps in their operations.  *See* RJN, Ex. CC (Stolz Decl., ¶ 8).  None of the Debtors report income on their schedules.  *See* Docket No. 28 at 13 (SOFA, Pt. 1 at 1); Golden State Docket No. 31 at 13 (SOFA, Pt. 1 at 1); Major Market Docket No. 29 at 13 (SOFA, Pt. 1 at 1).  The Debtors' admissions, alone, demonstrate that the Bankruptcy Cases cannot result in a reorganization premised on revenue.

8

128354302.2

The hope of a liquidating chapter 11 case—even assuming *arguendo* that it would satisfy the reorganizational factor—is likewise bleak. The Debtors admit that the Licenses represent the only material value of their estates but floundered for years when the District Court permitted them to attempt to monetize the Licenses. *See See* RJN, Ex. DD (Stolz Decl., ¶ 6); *see also id.* (Stolz Decl., ¶ 4); RJN, Ex. X (Order at 3) ("The Court appointed a Receiver only after providing Defendants ample opportunity to sell the radio stations through their chosen broker to satisfy the Amended Judgment, to no avail."). Even if the Debtors could monetize their assets, the District Court has already cast substantial doubt that they would actually do so. *See* RJN, Ex. Y (Order at 3). Accordingly, the Debtors cannot (by their own admissions) demonstrate any prospect for reorganization.

> **2.    The Debtors Clearly Demonstrated—and the District Court Found—That They Will Not Use Their Assets to Pay Creditors.**

The lengthy record of delay and interference by the Debtors and Mr. Stolz in the Bellaire Case and the WB Case demonstrate that they will not utilize these Bankruptcy Cases for the benefit of creditors. The District Court specifically found that the Receiver should not be discharged because, based on the parties' conduct, "[t]he Court simply cannot trust Defendant Ed Stolz's representations that he will satisfy amounts due in the future." RJN, Ex. Y (Order at 3); *see also id.*, Ex. X (Order at 3). Indeed, the Debtors repeatedly ignored orders of the District Court and incurred sanctions from both the State Court and District Court in their gambit to avoid payment to their two most significant creditors, Bellaire and the Plaintiffs. The record eliminates nearly all doubt that these Bankruptcy Cases would be used for anything other than another artifice by which to avoid payment of the Debtors' obligations.

> **3.    Mr. Stolz Has Grossly Mismanaged the Debtors by Failing to Abide by Sound Business Practices, Failing to Maintain the Licenses, Failing to Provide Basic Disclosures to the Receiver, and Causing the Debtors to Incur Thousands of Dollars of Unnecessary Sanctions.**

The Debtors were grossly mismanaged by Mr. Stolz—the sole manager and ultimate sole equity interest holder in the Debtors. The Debtors admit that Mr. Stolz is their sole control person.

128354302.2

*See* Stolz Decl., ¶ 2 at 1. At the hands of Stolz, the Debtors refused to pay Bellaire under its antenna license and committed blatant copyright infringement, which resulted in substantial litigation and judgments against the Debtors. Aside from the merits of the cases, the lengthy records in the Bellaire Case and WB Case make clear that Mr. Stolz is the sole cause of the additional sanctions imposed by the Debtors by the State Court and District Court by interfering with even the most basic of the Debtors' discovery obligations. *See, e.g.*, RJN, Ex. B (Order at 2); *id.*, Ex. M (OSC at 7). Indeed, the District Court found that Mr. Stolz's litigation conduct was to blame to the extent the Debtors were devalued. *See id.*, Ex. X (Order at 3) (finding that, due to the Debtors' "repeated stonewalling and non-compliance, any harm to Defendants by the Receiver's sale of the radio stations would be self-inflicted"). However, the harm visited on the Debtors by Mr. Stolz's mismanagement is not merely contained to litigation misconduct.

The Court can excuse turnover simply considering the poor business condition in which Mr. Stolz operated the Radio Stations prior to the appointment of the Receiver. *See, e.g.*, *In re KCC-Fund V, Ltd.*, 96 B.R. at 240; *Dill*, 163 B.R. at 224-225. As set forth above, the Debtor reports no income and admits that its revenues were "meager" because the Debtors failed to commit necessary resources to advertising. *See, e.g.*, RJN, Ex. CC (Stolz Decl., ¶ 8); Docket No. 28 at 13 (SOFA, Pt. 1 at 1). Further, VCY reported that it has been forced to expend substantial resources for engineering to bring the Radio stations into working order and to purchase equipment necessary to bring the Radio Stations into compliance with their Licenses. *See* Patrick Decl., ¶ 14 at 4. Put simply, the Debtors' Radio Stations are in shambles as the direct result of Mr. Stolz's poor management.

Mr. Stolz's conduct since the appointment of the Receiver further demonstrates he is incapable of placing the interests of the Debtors over his personal vendettas. As the District Court observed, Mr. Stolz repeatedly refused to provide basic operational information to the Receiver—even under penalty of being jailed. RJN Exs. P-T. The information requests that Mr. Stolz refused to provide, and eventually landed him in the custody of the United States Marshals Service include failing to provide a single relevant document concerning the Debtors' businesses, failing to provide keys to the Radio Stations, concealing account numbers for the Debtors' bank accounts, preventing the receiver from taking operational control of the Radio Stations, and failing to disclose the locations and lessors

10

128354302.2

of the radio antennae. *See* RJN Exs. P, Q. The Receiver doubts that Mr. Stolz will fulfill the similar and fundamental disclosure requirements expected of debtors-in-possession in these Bankruptcy Cases. Turnover should be excused to preclude Mr. Stolz from assuming any control over the Debtors wayward litigation strategy (such that it is) and business operations.

### 4. The Debtors Do Not Schedule Preferences or Require Any Other Special Benefit Conferred Under the Bankruptcy Code to Maximize the Value of Their Estates.

The Debtors and their estates will not require the protections or benefits conferred to debtors under the Bankruptcy Code to maximize the value of their estates. By way of example, the Debtors admit that they did not make any transfers during the preference period that the Receiver would not otherwise be able to recover under applicable nonbankruptcy law. *See* Docket No. 28 at 13 (SOFA, Pt. 4 at 1); Golden State Docket No. 31 at 13 (SOFA, Pt. 4 at 1); Major Market Docket No. 29 at 13 (SOFA, Pt. 4 at 1); *cf In re Prop. Mgmt. & Inv., Inc.*, 19 B.R. 202, 206 (Bankr. M.d. Fla. 1982). Indeed, the District Court recognized that the Receiver's continued efforts are necessary "to ensure that the satisfaction of the judgments in the instant case has not prejudiced other creditors." RJN, Ex. Y (Order at 3). Accordingly, the interests of creditors are not better served by allowing the Bankruptcy Cases to proceed in lieu of the receivership. Based on the foregoing, the Court should grant the Receiver's request to be excused from turnover, pursuant to § 543(d)(1).

## B. The Court Should Dismiss the Bankruptcy Cases or Abstain from Hearing the Bankruptcy Cases.

### 1. The Bankruptcy Cases Should be Dismissed for Cause under 11 U.S.C. § 1112(b).

Section 1112(b)(1) provides that a court *shall* dismiss a chapter 11 case or convert it to a case under chapter 7, whichever is in the best interest of creditors and the estate, if the party requesting conversion or dismissal establishes "cause," unless the court determines that the appointment of an examiner or trustee is in the best interest of creditors and the estate. *See* 11 U.S.C. § 1112(b)(1). Under § 1112(b), a court has wide discretion to convert a chapter 11 case to chapter 7 "for cause." *See* 11 U.S.C. § 1112(b); *In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001) (citing *In re Greenfield Drive Storage Park*, 207 B.R. 913, 916 (B.A.P. 9th Cir. 1997)). Section 1112(b)(4) sets forth a non-exhaustive list of what constitutes

11

"cause" to convert or dismiss a case under § 1112(b). *In re O'Hara*, 2019 WL 3451730, at *8 (B.A.P. 9th Cir. July 30, 2019), *aff'd*, 835 F. App'x 253 (9th Cir. 2020). If cause is established, the decision whether to convert or dismiss the case falls within the sound discretion of the Court. *See In re Sullivan*, 522 B.R. 604, 612 (B.A.P. 9th Cir. 2014). Here, cause exists to dismiss the Bankruptcy Cases because they were not filed in good faith and in light of the Debtors' gross mismanagement of the Radio Stations that will cause a substantial or continuing loss to or diminution of the estate without a reasonable likelihood of rehabilitation.

> **5. The Debtors Filed the Bankruptcy Cases in Bad Faith to Further Interfere with the Receivership and the VCY Sale Intended to Maximize Value for Creditors.**

The Debtors filed the Bankruptcy Cases in bad faith, in order to circumvent the sale of the Radio Stations authorized by the District Court. Under § 1112(b)(1), a court may dismiss a Chapter 11 bankruptcy case "for cause," based on a finding the petition was filed in bad faith. *In re Prometheus Health Imaging, Inc.*, 705 F. App'x 626, 627 (9th Cir. 2017); *In re Marshall*, 721 F.3d 1032, 1047 (9th Cir. 2013); *In re Sullivan*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014). While bad faith is not an enumerated factor under § 1112(b)(4), "courts may consider any factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions," to make the bad faith determination. *Prometheus*, 705 F. App'x at 627 (citing *Marshall*, 721 F.3d at 1047). A bad faith determination depends on the totality of circumstances of the case and not a single factor alone. *In re WLB-RSK Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal. 2003). "Generally, a plan is . . . filed in [bad] faith if it represents an attempt . . . to achieve objectives outside the legitimate scope of the bankruptcy laws." *Prometheus*, 705 F. App'x at 627 (citing *Marshall*, 721 F.3d at 1047). Stated differently, the bad faith inquiry requires the court to determine whether the debtor is attempting to unreasonably deter and harass creditors instead of seeking speedy, efficient reorganization on a feasible basis. *In re Greenberg*, 2017 WL 3816042, at *4 (B.A.P. 9th Cir. Aug. 31, 2017).

A bankruptcy case is filed in bad faith, and appropriately dismissed, particularly if the primary purpose of the petition is to frustrate a contempt proceeding. *In re Winn*, 43 B.R. 25, 28 (Bankr. M.D. Fla. 1984). "[A]n attempt by a Debtor to circumvent or escape the consequences of a contempt

12

judgment issued by a court of competent jurisdiction was never a legitimate aim to be achieved by use of the rehabilitation provisions of this chapter and without doubt constitutes an impermissible use of Chapter 11 of the Bankruptcy Code." *Winn*, 43 B.R. at 28; *see also In re Chris-Marine U.S.A., Inc.*, 262 B.R. 118, 124 (Bankr. M.D. Fla. 2001); *In re Eighty South Lake Inc.*, 63 B.R. 501, 510 (Bankr. C.D. Cal. 1986). As set forth above, the Debtors filed this Bankruptcy Case in bad faith following numerous contempt proceedings and judgments that steadily increased the cost to the Debtors of satisfying their remaining obligations to the Receiver before the receivership would be dismissed. *See* RJN, Ex. BB (Order at 7). The same can be said of the Debtors' efforts to undermine the Receiver's appointment by the state court. *See In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994) ("A Chapter 11 case is filed in bad faith "where the debtor only intended to defeat state court litigation."). Here, the Debtor clearly wishes to avoid compliance with the Receivership Orders entered by the District Court and State Court and to assume control of the VCY sale without first satisfying the District Court's clear prerequisites to terminating the receivership.

      Another important factor in determining the existence of bad faith is whether a debtor has misrepresented or omitted material facts in bankruptcy filings or violated court orders. *In re Goeb*, 675 F.2d 1386, 1390 n.9 (9th Cir. 1982); *In re Charfoos*, 979 F.2d 390 (6th Cir. 1992); *In re Rognstad*, 121 B.R. 45 (Bankr. D. Haw. 1990). The finding of bad faith may rest on such nondisclosure or misrepresentation and even subsequent amendments do not vitiate bad faith in failing to disclose relevant facts. *Big Shanty Land Corp. v. Comer Properties*, 61 B.R. 272, 281 (N.D. Ga. 1985). Here, the Debtors' recently filed schedules contain multiple misrepresentations, including, most notably, failing to disclose the secured status of Bellaire in the Golden State case. *See* Golden State Docket No. 31 at 6 (Sched. D), 7 (Sched. E/F, ¶ 3.1 at 1). Further, the Debtors' schedules baselessly and grossly overestimate the value of the Debtors' Radio Stations even though the $6 million VCY offer was obtained after ***years*** of marketing and was the ***only*** all-cash *bona fide* offer of material value. *See* Docket No. 28 at 4 (Sched. A/B, ¶ 64 at 2); Golden State Docket No. 31 at 4 (Sched. A/B, ¶ 64 at 2); Major Market Docket No. 29 at 4 (Sched. A/B, ¶ 64 at 2). Based on all the foregoing, this Court should dismiss the Bankruptcy Cases as bad faith filings.

13

128354302.2

### 6. The Debtors' Litigation Conduct Presents a Continuing Loss to the Estate and Rehabilitation Remains Unlikely.

Finally, as set forth above, the Debtors are grossly mismanaged under Mr. Stolz and his conduct has (and will) caused a substantial or continuing loss to or diminution of the estate without any reasonable likelihood of rehabilitation through these Bankruptcy Cases. Section 1112(b)(4)(A) provides that "cause" for conversion exists where there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation". *In re Hassen Imports P'ship*, 2013 WL 4428508, at *13 (B.A.P. 9th Cir. Aug. 19, 2013). The loss may be either substantial or continuing, but need not be both, to constitute cause under § 1112(b)(4)(A). *Id.* (citing *In re Creekside Senior Apartments, L.P.*, 489 B.R. at 61). The substantial or continuing loss prong is demonstrated by a loss that will "materially negatively impact the bankruptcy estate and the interest of creditors," or "dwindling liquidity, or illiquidity resulting in unpaid postpetition debts which usually constitute administrative expenses that will take priority over prepetition claims." *Hassan*, 2013 WL 4428508, at * 13. To determine the existence of a continuing loss to, or diminution of, the estate, the bankruptcy court must look beyond financial statements and fully evaluate the present condition of a debtor's estate. *Id*. The absence of a reasonable likelihood of rehabilitation under § 1112(b)(4)(A) is not a technical inquiry of whether a debtor can confirm a plan, rather, the Court should analyze whether the debtor's business prospects justify continuance of the reorganization effort. *Hassan*, 2013 WL 4428508, at *14 (citing *In re Wallace*, 2010 WL 378351 at *4 (Bankr. D. Id. Jan. 26, 2010)).

Here, the Debtors admit that their businesses generate only "meager" revenue because of their mismanagement and the Debtors were incapable of obtaining any offers in their own floundering marketing efforts. Indeed, the net result of the years of litigation spearheaded by the Debtors (at Mr. Stolz's behest) has been steadily increasing judgments in the form of, among other things, attorney's fee awards, interest, and sanctions, that directly resulted from their litigation misconduct. The Debtors have opposed approval of the ***only bona-fide*** all cash offer to purchase the Radio Stations. But for the investments of VCY while FCC approval remains pending, the Debtors were operating their Radio Stations in disrepair and in violation of their Licenses. Clearly, the losses to the estate is

ongoing and significant. Furthermore, as set forth above, the Receiver the ability to achieve the same results and return for creditors as within bankruptcy. *See Skymark Props.*, 597 B.R. at 402-3 (dismissing case for cause where debtor's refinance/sale goals could be accomplished under UCRERA). Based on the foregoing, the evidence in these Bankruptcy Cases clearly demonstrates that cause exists for dismissal under § 1112(b).

## 2. Alternatively, the Court Should Abstain from Hearing the Bankruptcy Cases, Under § 305(a).

As an alternative to dismissal under § 1112(b), this Court should abstain from exercising jurisdiction over the Bankruptcy Case under § 305(a). Section 305(a) provides, in pertinent part, as follows:

> The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]

11 U.S.C. § 305(a). The Court must abstain from jurisdiction with respect to the entire bankruptcy case rather than merely portions of the case. *In re Owen-Johnson*, 115 B.R. 254, 257 (Bankr. S.D. Cal. 1990); *In re Bellucci*, 119 B.R. 763, 771 (Bankr. E.D. Cal. 1990). The standard to be applied in considering relief under § 305(a) is whether the "interests of creditors and the debtor would be better served by" abstention. *Id.* (citing statute).

It is appropriate to dismiss a chapter 11 case under § 305(a) where liquidation proceedings, such as a receivership, are pending. *2 Collier on Bankruptcy* ¶ 305.02[2][c], at 305-8 to 305-09 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2017); *See also In re Newport Offshore Ltd.*, 219 B.R. 341, 354-55 (Bankr. D.R.I. 1998); *In re Starlight Houseboats, Inc.*, 426 B.R. 375, 389 (Bankr. D. Kan. 2010); *In re Michael S. Starbuck, Inc.*, 14 B.R. 134, 135 (Bankr. S.D.N.Y. 1981) (dismissing case under § 305(a)(1) where receiver has been in place for months, many hours and fees had already been expended by receiver and counsel in administering the debtor's estate and allowing matter to continue in bankruptcy would be "terrible waste of time and resources").

In these Bankrutpcy Cases, the interests of creditors and the Debtors would be better served if the Court abstains under § 305(a). It would be inefficient and a waste of time and resources to start

15

over in bankruptcy when a receivership proceeding has been pending in the District Court for nearly a year-and-a-half and has been pending in the State Court for over one year and one month. *See* RJN, Exs. N, O. As courts observe, restarting anew in the Bankruptcy Cases would constitute a "terrible waste of time and resources" where the Receiver has already incurred over $600,000 in fees largely due to the Debtors' misconduct. *See* RJN, Ex. BB. Moreover, as set forth above, the Bankruptcy Cases were filed in bad faith, as an end-run around the District Court's conditions to termination of the receivership and to avoid the District Court's ongoing monitoring of Mr. Stolz's contemptuous conduct. As such, this Court should abstain from exercising jurisdiction over the Bankruptcy Cases and dismiss the Bankruptcy Cases in their entirety, under § 305(a), to allow the VCY sale to proceed to consummation.

## C. Alternatively, the Court Should Terminate the Automatic Stay to Allow the Receiver to Take Control of the Debtors' Assets.

In the alternative, if the Court declines to excuse turnover, dismissal, or abstention, the Court should determine that cause exists to terminate the automatic stay under § 362(d) to allow the Receiver to proceed with fulfilling his duties under the Receivership Order, including consummating the VCY sale. Section 362(d)(1) provides that the Court "shall" grant relief from stay to pursue litigation for cause. *See* 11 U.S.C. § 362(d)(1) ("the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause"). To obtain relief from the automatic stay, the party seeking relief must first establish a *prima facie* case that "cause" exists for relief under § 362(d)(1). *See Duvar Apt., Inc. v. F.D.I.C. (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996). Once a *prima facie* case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted. *See* 11 U.S.C. § 362(g)(2); *see also In re Danzik*, 549 B.R. 804, 808 (Bankr. D. Wy. 2016).

"'Cause' is determined on a case-by-case basis." *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). In determining whether "cause" exists to grant relief from the automatic stay to allow a movant to pursue litigation, courts in the Ninth Circuit have examined the factors set forth in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). *See In re Kronemyer*, 405 B.R. 915

16

128354302.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

(B.A.P. 9th Cir. 2009); *see also In re EB Holdings II, Inc.*, 591 B.R. 10, 16 (Bankr. D. Nev. 2018); *In re Altman*, 2018 WL 3133164, at *6 (B.A.P. 9th Cir. June 26, 2018) (applying *Curtiss* factors to receivership action). The *Curtis* factors are: (i) whether the relief will result in a partial or complete resolution of the issues; (ii) the lack of any connection with or interference with the bankruptcy case; (iii) whether the foreign proceeding involves the debtor as a fiduciary; (iv) whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (v) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (vi) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (vii) whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (viii) whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (ix) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under § 522(f); (x) the interests of judicial economy and the expeditious and economical determination of litigation for the parties; (xi) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (xii) the impact of the stay on the parties and the "balance of hurt." *See In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004). "[W]hile the *Curtis* factors are widely used to determine the existence of 'cause,' not all of the factors are relevant in every case, nor is a court required to give each factor equal weight." *In re Landmark Fence Co., Inc.*, 2011 WL 6826253 at *4 (C.D. Cal. Dec. 9, 2011).

"Cause" exists, under the *Curtis* factors, to grant relief from stay with respect to the Claims. The *Curtis* factors are analyzed as follows:

- **Factor 1: Partial or Complete Resolution of the Issues.** The Claims will resolve all disputes between the Receiver and the Debtors, namely the resolution of the pending VCY sale to satisfy the outstanding claims of creditors. *See In re Korean Western Presbyterian Church of Los Angeles*, 618 B.R. 282, 289 (Bankr. C.D. Cal. 2020) ("The State Court appears to have all the parties before it, and to be addressing the same governance/control issues that this Bankruptcy Court would have to address, so it can completely resolve these issues."). Accordingly, this factor weighs

17

in favor of relief from stay because completion of the receivership sale and distributions will finally resolve all outstanding issues among the Debtors, the Receiver, and the Debtors' sole secured creditor.

- **Factor 2: Lack of Connection With or Interference in Bankruptcy Case.** The Bankruptcy Cases were filed specifically to forestall the VCY sale and usurp control over the Debtors from the Receiver. The Court will be presented with the same misconduct that the District Court and State Court have addressed for years, and, as set forth below, the appointment of a trustee (similar to the Receiver) will ultimately be necessary to the extent the Bankruptcy Cases are not dismissed. *See Korean Western Presbyterian Church of Los Angeles*, 618 B.R. at 289 (holding that "far from interfering with this bankruptcy case or causing prejudice, resolution of the issues that are already well underway in the State Court is essential to determine the bankruptcy issues" in the pending case). Accordingly, resolution of the receivership will further the interests of these Bankruptcy Cases, namely allowing continued independent monitoring of the Debtors and ensuring payment to creditors.

- **Factor 4: Specialized Tribunal; Factor 10: Judicial Economy; Factor 11: Preparation for Trial.** The District Court and State Court each have years of experience with the ongoing litigation and post-judgment enforcement actions against the Debtors. The receivership is at the precipice of completion once the FCC authorizes the VCY sale already approved by the District Court. Accordingly, the Court should not undertake renewed efforts to marshal and dispose of estate assets late in the receivership process.

- **Factor 7: Prejudice to Creditors.** The continuation of the receivership will not prejudice creditors of the Bankruptcy Case. The Debtors admit that the Receiver and Bellaire are the only significant creditors of the Bankruptcy Cases. By way of example, the Receiver's fees are the only unsecured claim listed in a specific amount on each of the Debtors' bankruptcy schedules—all others are listed as "unknown," contingent, unliquidated and disputed. *See* Docket No. 28 at 9-10 (Sched. E/F, Pt. 3 at 1-2); Golden State Docket No. 31 at 9-10 (Sched. E/F, Pt. 3 at 1-2); Major Market Docket No. 29 at 9-10 (Sched. E/F, Pt. 3 at 1-2). Further, though incorrectly scheduled, Bellaire is the only secured claimant. Accordingly, the Debtors' only significant creditors are already protected by the Receivership Orders.

18

- **Factor 3: The Debtor As a Fiduciary.** The Receiver was acting as a fiduciary to the Debtors prepetition. Further, as set forth herein, Mr. Stolz is incapable as acting as a competent fiduciary for the benefit of the Debtors creditors.

- **Factor 12: The Balance of the Hurt.** The Receiver and the Debtors' creditors will suffer substantial harm if they are precluded from completing the receivership and the VCY sale. The Debtors assets must be liquidated in bankruptcy in any event to produce a recovery to creditors—an eventuality the Debtors cannot forestall in perpetuity. *First Fed. Bank of Cal. v. Robbins (In re Robbins),* 310 B.R. 626, 631 (B.A.P. 9th Cir. 2004) (holding that "the court was not at liberty to moot this dispute by denying stay relief in perpetuity"). The Receiver has already expended substantial effort to liquidate the Debtors' assets for the benefit of creditors, which should not be rehashed again in these Bankruptcy Cases, particularly with Mr. Stolz at the helm.

- **The Remaining Factors 5, 6, 8, and 9.** The receivership does not implicate insurance (Factor 5); Mr. Holman is one of a number of defendants (Factor 6); the judgments and receivership recoveries are not subject to equitable subordination, under § 510(c) (Factor 8); and the judicial lien of Bellaire is not avoidable, under § 522(f) (Factor 9).

Based on the foregoing, the Movants submit that the *Curtis* Factors overwhelmingly weigh in favor of granting relief from stay to allow the receivership to proceed with the VCY sale.

Further, to the extent the Court grants relief from stay, the Receiver respectfully requests that any such order be effective immediately notwithstanding Bankruptcy Rule 4001(a)(3). *See* FED. R. BANKR. P. 4001(a)(3) ("An order granting motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."). The 14-day stay is unnecessary because—although the completion of the FCC approval process is necessary to consummate the sale—the FCC approval process will not be immediately concluded in light of the Debtors' litigation tactics. *See, e.g.*, *In re A Partners, LLC*, 344 B.R. 114, 128 (Bankr. E.D. Cal. 2006) (waiving Bankruptcy Rule 4001(a)(3) where "the timing and delay inherent in the State's statutory foreclosure scheme give the Debtor all of the protection intended by Rule 4001(a)(3)"). Accordingly, waiver of the 14-day stay is appropriate to allow the FCC approval process to conclude.

128354302.2

**7.      Alternatively, the Court Should Convert the Bankruptcy Cases to Chapter 7 for Cause.**

As stated above, Section 1112(b)(1) of the Bankruptcy Code provides that, absent unusual circumstances, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1) (emphasis added). The reasons listed for dismissal of these Bankruptcy Cases also constitute cause for conversion of the Bankruptcy Cases to chapter 7. In the event this Court declines to dismiss or abstain, the Receiver respectfully requests that it convert the Bankruptcy Cases for cause.

## IV.
## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Receiver respectfully requests that the Court deny the Motion in its entirety and grant the Receiver such other and further relief as may be just and proper.

DATED this 13th day of December 2021.

>                    **FOX ROTHSCHILD LLP**
>
> By:      */s/ Brett A. Axelrod*
>          BRETT A. AXELROD, ESQ.
>          Nevada Bar No. 5859
>          NICHOLAS A. KOFFROTH, ESQ.
>          Appearing *Pro Hac Vice*
>          1980 Festival Plaza Drive, Suite 700
>          Las Vegas, Nevada 89135
>          *Counsel for W. Lawrence Patrick*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

128354302.2