BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Admitted *Pro Hac Vice*
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       nkoffroth@foxrothschild.com
*Counsel for W. Lawrence Patrick*

Electronically Filed December 17, 2021

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>SILVER STATE BROADCASTING, LLC,<br><br>☐ Affects Silver State Broadcasting, LLC<br>☐ Affects Golden State Broadcasting, LLC<br>☐ Affects Major Market Radio, LLC<br>☒ Affects all Debtors | Case No. BK-21-14978-abl<br><br>Jointly Administered with:<br>Case No. BK-S-21-14979-abl<br>Case No. BK-S-21-14980-abl<br><br>Chapter 11<br><br>**OMNIBUS REPLY IN SUPPORT OF EMERGENCY MOTION TO EXCUSE TURNOVER IN FAVOR OF RECEIVER AND TO DISMISS/ABSTAIN, OR, ALTERNATIVELY, FOR STAY RELIEF AND/OR CONVERSION**<br><br>Hearing Date: December 20, 2021<br>Hearing Time: 9:30 a.m.<br>Place: Courtroom 1, Third Floor<br>    Foley Federal Building<br>    300 Las Vegas Boulevard South<br>    Las Vegas, Nevada 89101 |

1

128923224.1

W. Lawrence Patrick (the "Receiver"), the receiver of substantially all of the assets of the above-captioned the debtors and debtors-in-possession (collectively, the "Debtors"),[1] hereby files this omnibus reply (the "Reply") in support of the *Emergency Motion to Excuse Turnover in Favor of Receiver and to Dismiss/Abstain, or, Alternatively, for Stay Relief and/or Conversion* [Docket No. 45] (the "Motion")[2] and in response to the following: (i) the *Debtor's Opposition to Emergency Moton to Excuse Turnover in Favor of Receiver and to Dismiss/Abstain, or, Alternatively, for Stay Relief and/or Conversion* [Docket No. 80] (the "Debtors Opposition") filed by the Debtors; (ii) the *United States Trustee's Opposition to Emergency Motion to Excuse Turnover in Favor of Receiver and to Dismiss/Abstain, or, Alternatively, for Stay Relief and/or Conversion; and Reservation of Rights* [Docket No. 74] (the "UST Limited Opposition") filed by the United States Trustee (the "UST"); and (iii) *Mincin Law, PLLC's Response to: (1) Emergency Joint Motion for Order Directing Court Appointed Receiver to Turnover Property (2) Emergency Motion to Excuse Turnover in Favor of Receiver and to Dismiss/Abstain, or, Alternatively, for Stay Relief and/or Conversion* [Docket No. 76] (the "Mincin Response") filed by Mincin Law, PLLC ("Mincin Law").[3]  In support of the Reply, the Receiver respectfully references the Stolz Declaration [Docket No. 31], the Patrick Declaration [Docket No. 46], RJN [Docket No. 47], the Supplemental RJN [Docket No. 78], the papers and pleadings on file with the Court, and any oral arguments the Court may entertain at the hearing on the Motion, and respectfully states as follows:

## I.

## INTRODUCTION

The briefing makes clear that parties in interest—the UST, Mincin Law, Bellaire, and VCY—uniformly agree that the Debtors and their estates are not well-served by remaining debtors-in-

---

[1] The Debtors are Silver State Broadcasting, LLC ("Silver State"), Golden State Broadcasting, LLC ("Golden State"), and Major Market Radio, LLC ("Major Market").  Unless otherwise set forth herein, all "Docket" references are to the docket of the Silver State Bankruptcy Case. The docket of the Golden State Bankruptcy Case is referred to herein as the "Golden State Docket" and the docket of the Major Market Bankruptcy Case is referred to herein as the "Major Market Docket."  To the extent applicable, the Receiver respectfully requests that the Court take judicial notice of the filings on the dockets of the Bankruptcy Cases, pursuant to Rule 201(b) of the Federal Rules of Evidence.

[2] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

2

128923224.1

possession. The UST Limited Opposition to the Motion caveats that the Receiver should turn over the Radio Stations *only if* the Debtors remain debtors-in-possession in chapter 11 but ***does not oppose*** the balance of relief requested by the Receiver. *See* UST Limited Opp'n at 7 (solely opposing "the portion of the Receiver's motion requesting that Mr. Patrick be excused from complying with 11 U.S.C. § 543"). Bellaire and VCY joined the Receiver's requested relief without limitation. And, Mincin Law proposed an alternative outcome that would allow the VCY Sale to proceed and the receivership to be concluded with the remaining proceeds of the Sale to be administered in a chapter 7 proceeding. In the interest of a consensual resolution of the Motion and Turnover Motion, the Receiver contacted all parties in interest (other than the Debtors) to build consensus around the Mincin Law proposal.

The Receiver's efforts to reach a consensual resolution were fruitful and pave a path forward that preserves the value-maximizing VCY Sale, under the protection of the receivership, while ensuring that the estates preserve the residual value for the Debtors' other creditors, under the stewardship of a chapter 7 trustee. The Receiver's proposal (the "Consensual Resolution") is specifically as follows:

- Convert the Bankruptcy Cases to bankruptcy cases under chapter 7 of the Bankruptcy Code and appoint a chapter 7 trustee;

- Excuse the Receiver from turnover and grant relief from the automatic stay to permit the Receiver: (i) to complete the VCY Sale (under the Receiver's supervision and subject to the prior approval of the Federal Communications Commission); and (ii) make distributions sufficient to satisfy the receivership and discharge the Receiver, as outlined by the District Court and State Court, including payment of the Bellaire Judgment and the Receiver's administrative claims; and

- Order that any remaining proceeds of the VCY Sale (which the Debtors estimate to be in the millions of dollars) be transferred to the Debtors' chapter 7 estate for administration by a chapter 7 trustee.

---

[3] The Reply also references the *Bellaire Tower Homeowners Association's Joinder to Receiver's Opposition to Debtors' Emergency Joint Motion for Order directing Court Appointed Receiver to Turnover Property Pursuant to 11 U.S.C. § 543(a) and (b)* [Docket No. 82] (the "Bellaire Joinder") filed by Bellaire Tower Homeowners Association ("Bellaire") and *VCY America, Inc.'s Joinder to Receiver W. Lawrence Patrick's Opposition to Debtors' Emergency Joint Motion for Order directing Court Appointed Receiver to Turnover Property Pursuant to 11 U.S.C. § 543(a) and (b)* [Docket No. 84] (the "VCY Joinder") filed by VCY America, Inc. ("VCY").

3

128923224.1

The Consensual Resolution is consistent with the Mincin Limited Objection and has the express support of both Bellaire and VCY. Further, the Receiver understands that the UST would not oppose such relief given the limited nature of the UST Limited Opposition. For the reasons more fully set forth below, the Receiver submits that the Court should adopt the foregoing Consensual Resolution to the Motion, or, in the alternative, dismiss (or abstain from hearing) the Bankruptcy Cases with a bar to refiling.

The Debtors Opposition offers further evidence that they lack the perspective necessary to serve the best interests of their estates as debtors-in-possession. Most notably, the Debtors refuse to offer a meaningful excuse for their well-documented history of misconduct, which they brush aside as merely "colorful allegations." However, unique to the Debtors' lengthy history of prepetition litigation, the factual background of the Motion is based principally on *findings* of the District Court and State Court *holding* the Debtors and Mr. Stolz in contempt and *ruling* that their repeated attempts to subvert the receivership and VCY Sale were baseless. As set forth more fully below, the Debtors' (and Mr. Stolz's) pathological inability to abide by Court orders aimed at protecting their judgment creditors evidences their unpreparedness to serve the interests of all their creditors in chapter 11. Accordingly, the proposed Consensual Resolution of the Motion is in the best interests of the Debtors and their estates because it will permit the Receiver and a chapter 7 trustee to oversee a deliberate process designed to protect the interests of creditors that the Debtors have long ignored.

## II.

## THE UST LIMITED OBJECTION

The UST Limited Objection is specifically limited to an outcome in which the Court permits the Debtors to remain debtors-in-possession. Under that scenario, the UST requests that the Receiver turnover the Radio Stations. *See, e.g.*, UST Limited Opp'n at 4 ("the Bankruptcy Code expressly provides that a *chapter 11 bankruptcy case* may only proceed under the direction of a debtor in possession") (emphasis added). The UST does not oppose any other grounds for relief sought by the Receiver in the Motion, including the Receiver's request to dismiss the Bankruptcy Cases or abstain from hearing them, terminate the automatic stay, or convert the Bankruptcy Cases to cases under chapter 7. *See id.* at 7 (solely opposing "the portion of the Receiver's motion requesting that Mr.

4

Patrick be excused from complying with 11 U.S.C. § 543"). As set forth above, the Consensual Resolution does not contemplate that the Debtors should remain debtors-in-possession and, alternatively, the Receiver continues to support dismissal of the Bankruptcy Cases or abstention. None of these outcomes are opposed by the UST.

In the unlikely event that the Debtors remain debtors-in-possession in chapter 11, the Receiver submits that the Motion ably meets the Receiver's burden of proof to demonstrate (by only a preponderance of the evidence) that the Receiver should be excused from turnover. *See In re Skymark Props. II, LLC*, 597 B.R. 391, 397 (Bankr. E.D. Mich. 2019) ("A party seeking such relief has the burden of establishing **by a preponderance of the evidence** that the best interests of the creditors [and if the debtor is insolvent, the best interest of equity security holders of the Debtor] are served by permitting a custodian to retain control of the estate.") (citation omitted; emphasis added). Notably, the UST Limited Opposition is devoid of analysis of the factors relevant to excuse the Receiver from turnover and presents no evidentiary challenge to the evidence submitted by the Receiver. *See* UST Limited Opp'n at 5-6 (listing the factors without analysis and summarily concluding that "[a]s set forth above, the Receiver has not met his burden of proof in determining whether Mr. Patrick, as custodian, should be excused from compliance with section 543"). Indeed, given that excusal from turnover is a fact-intensive inquiry, the UST's omission of any factual analysis or reference to evidence is dispositive in the face of substantial evidence and analysis submitted with the Motion. *See, e.g.*, *In re Uno Broadcasting Corp.*, 167 B.R. 189, 200 (Bankr. D. Ariz. 1994) ("Section 543(d) cases are fact intensive, turning upon whether the assets of the particular debtor should be administered by the existing custodian or returned to the debtor.") (citation omitted). Accordingly, to the extent the Court finds that the Debtors should remain debtors-in-possession, the Receiver respectfully requests that the Court overrule the UST Limited Opposition and excuse the Receiver from turnover for the reasons (and based on the evidence) set forth more fully in the Motion.

### III.

### THE MINCIN RESPONSE

As set forth above, the Consensual Resolution supported by the Receiver, VCY, and Bellaire follows the proposal supported by Mincin Law in the Mincin Response. *See* Mincin Resp. at 7.

5

128923224.1

Accordingly, if the Court adopts the Consensual Resolution, the Mincin Response should be overruled as moot with respect to the Motion and sustained with respect to its objections to the Debtors' Turnover Motion. In the alternative, the Receiver reserves all alternative forms of relief set forth in the Motion, including for dismissal of the Bankruptcy Cases or abstention.

### IV.

### THE DEBTORS OBJECTION

**A.    The Debtors' Analysis of the Factors Relevant to Excuse from Turnover Side-Step Factual *Determinations* Made by the District Court and Hinge on the Demonstrably Inaccurate Assumption That the Debtors Will Serve the Interests of Their Creditors.**

    **1.    The Debtors Are Incapable of Reorganization Because They Refuse to Serve the Interests of Their Creditors and Remain Unwilling to Pay Their Creditors in the Receivership (Factors 1 and 2).**

The Debtors rely on an inaccurate recounting of their conduct in the WB Case to suggest that they were afforded an inadequate amount of time to liquidate their assets and timely satisfied the Amended Judgment. The Debtors claim that they failed to sell the Radio Stations because they were pursuing a meritorious appeal of the Amended Judgment and that they were robbed of their opportunity to market the Radio Stations once the Amended Judgment was affirmed on appeal because, by that time, the Receiver had already been appointed. *See* Debtors Opp'n at 10. This retelling omits critical facts: (i) the Debtors never obtained a stay pending appeal of the Amended Judgment because they failed to post the necessary $1.562 million supersedeas bond (*see* WB Case, Docket No. 223); (ii) the Debtors and Mr. Stolz engaged in repeated postjudgment discovery abuses that were sanctioned by the District Court while the Amended Judgment remained on appeal but unstayed (*see* RJN, Exs. L, L-1, M); (iii) despite discovery abuses the District Court explained that it "appointed a Receiver only after providing Defendants ample opportunity to sell the radio stations through their chosen broker to satisfy the [*unstayed*] Amended Judgment, to no avail" (RJN, Ex. X (Order at 3)). Contrary to the Debtors' claims, the Debtors' and Mr. Stolz's inability to sell the Radio Stations was, at best, the result of intentional foot-dragging designed to delay enforcement of the

128923224.1

unstayed Amended Judgment and, at worst, due to the Debtors' and Mr. Stolz's inability to negotiate a value-maximizing sale.

Further, the Debtors' attempt to frame Mr. Stolz as a white knight fastidiously serving the interests of the judgment creditors is belied by the District Court's own findings. The Debtors rhetorically suggest that Mr. Stolz's eventual payment of the Amended Judgment "are not the actions of a party who does not intend to pay his debts." Debtors Opp'n at 11. However, the District Court specifically found that Mr. Stolz was only forced to do so as a gambit to discharge the receivership—a ploy twice rejected by the District Court. *See* RJN, Exs. Y, Z. Indeed, the Debtors *twice* requested discharge of the receivership *without* first satisfying other creditor claims, including the Bellaire Judgment and the Receiver's administrative claims. *See id.* Those claims remain outstanding, and, despite the Debtors' grousing over their amounts, are increasing as the direct result of the Debtors' continued litigation misconduct. *See* RJN, Ex. BB (Order at 7) (discharge of the receivership may only occur if the District Court has "a final accounting—which the Receiver cannot prepare if the Defendants continue to litigate" and, as such, it is the "Defendants [who] are unwilling to allow the Court to terminate the Receivership"). The Debtors' obstinate[4] unwillingness to pay its creditors (unless payment serves some perceived litigation tactic) is not the "conjecture" alleged by the Debtors—it is the Debtors' pattern and practice repeatedly observed and repudiated by the District Court.

---

[4] The Debtors appear to take umbrage at the notion that Mr. Stolz's conduct constitutes repeated "stonewalling" of creditors. *See* Debtors Opp'n at 12 ("it is ironic that the Receiver alleges Mr. Stolz's stonewalling (in the fact of what the Defendants considered inequitable rulings) is grounds for maintaining the Receiver in place"). However, as with many characterizations of Mr. Stolz's conduct in the Motion, these are **the words of the District Court** in its findings—not embellishments by the Receiver. *See* RJN Ex. X (Order at 3) ("at this stage, given their repeated stonewalling and non-compliance, any harm to Defendants by the Receiver's sale of the radio stations would be self-inflicted").

7

128923224.1

**2.     The Debtors Do Not Offer Evidence of Their Effective Management and Inaccurately Claim That the Receiver's Successfully-Negotiated Sale to VCY Constitutes Mismanagement (Factor 3).**

The Debtors Opposition is notably silent on the Debtors' ability to independently manage their Radio Stations. The Debtors opposition does not address the relevant inquiry: "whether there has been mismanagement ***by the debtor***." *In re Orchards Vill. Invs., LLC*, 405 B.R. 341, 351-52 (Bankr. D. Ore. 2009) (emphasis added). The Debtors' failure to address this issue constitutes a forfeiture of this issue. *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 733 (1993) ("forfeiture is the failure to make the timely assertion of a right") (citation omitted); *In re Google Tech. Hldgs., LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) (failure to present argument constitutes a "compels a finding of forfeiture"). On this ground alone, the Debtors cannot overcome the evidence that they have been mismanaged prior to the appointment of the Receiver.

The Debtors' red-herring arguments concerning the Receiver's conduct is likewise unavailing. The Debtors repeatedly challenge the Receiver's accounting; however, the District Court made clear that the Receiver is unable to present a proper accounting until the Debtors stop their litigation abuses that continue to drive-up the costs of the receivership. *See* Ex. BB (Order at 7) (quoted *supra*). Indeed, the Debtors' argument that the Receiver's management is overly costly is circular—as the District Court found, the cost of the receivership is directly attributable to the Debtors' conduct. *See id.* Further, the District Court has repeatedly and directly rejected the Debtors' claim that the VCY Sale is value-maximizing and the Debtors point to no other potential purchaser that has appeared with a better offer in the year that the Debtors have delayed the Sale. *See id.*, Ex. X (Order at 3) ("The Court is therefore unpersuaded by Defendants' characterization of this process as a 'fire sale,' or by their assertion of harm."). Yet the Debtors continue to utilize the identical catch-phrase in their unsupported conclusion that the VCY Sale is a "fire sale." *See, e.g.*, Debtors Opp'n at 3. Accordingly, the Debtors present no countervailing evidence that they have done anything other than mismanage the Radio Stations and their efforts to snipe at the Receiver's Sale efforts are explicitly contradicted by the District Court's findings.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

128923224.1

### 3. The Debtors Do Not Address the Existence of Preferences (Factor 4).

The Debtors again forfeited their arguments concerning a factor of the turnover analysis by failing to address "whether there are preferences which a receiver is not empowered to avoid." *In re Orchards Vill. Invs., LLC*, 405 B.R. 341, 351-52 (Bankr. D. Ore. 2009); *see also United States v. Olano*, 507 U.S. 725, 733 (1993) ("forfeiture is the failure to make the timely assertion of a right") (citation omitted); *In re Google Tech. Hldgs., LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020). Accordingly, as supported by the omission of preference claims from the Debtors' schedules, this factor favors excusal from turnover. *See* Docket No. 28 at 13 (SOFA, Pt. 4 at 1); Golden State Docket No. 31 at 13 (SOFA, Pt. 4 at 1); Major Market Docket No. 29 at 13 (SOFA, Pt. 4 at 1).

The Debtors' efforts to rewrite the clear narrative of their misconduct before the District Court and State Court are both inconsistent with the evidence submitted by the Receiver and irrelevant to the factor analysis for excusal from turnover. Accordingly, the Receiver has satisfied its burden to demonstrate an excuse from turnover which the Debtors have failed to rebut.

### B. The Debtors' Factual Inaccuracies Are Likewise Insufficient to Demonstrate Good Faith, and, As Such, Dismissal or Conversion Is Required.

The Debtors' past conduct makes clear that they will not prosecute their Bankruptcy Cases in good faith. By way of example, the Debtors claim (without citation to authority) that the prior contempt "proceedings" are not relevant because "none of those contempt proceedings are currently pending against the Debtors." However, they are not pending because, in each instance, the District Court and State Court have adjudicated the contempt issues and ***entered orders sanctioning the Debtors and Mr. Stolz, holding the Debtors and Mr. Stolz in contempt, and arresting Mr. Stolz***. *See, e.g.*, RJN, Exs. B, L, L-1, M, Q, R, S. The notion that these documented instances of misconduct are irrelevant does not square with the Ninth Circuit's holding that "courts may consider ***any factors*** which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions" to make the bad faith determination. *In re Prometheus Health Imaging, Inc.*, 705 F. App'x 626, 627 (9th Cir. 2017) (citing *In re Marshall*, 721 F.3d 1032, 1047 (9th Cir. 2013)). Further, despite the Debtors' bald claim to the contrary, the Debtors' years-long efforts to undermine the Amended Judgment are not analogous to debtors that utilize provisions of the Bankruptcy Code to

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

128923224.1

reorganize outstanding claims. *Compare* Debtors' Opp'n at 17 (citing *In re Sullivan*, 522 B.R. 604, 615 (B.A.P. 9th Cir. 2014)) *with In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994) ("A Chapter 11 case is filed in bad faith "where the debtor only intended to defeat state court litigation."). The Debtors' inability to excuse their history if litigation misconduct—and efforts to brush it aside—do not address the central issue underlying the Debtors' bad faith filing. Accordingly, the Debtors have not demonstrated that they filed their Bankruptcy Cases in good faith.

### C. Relief From Stay Is Appropriate Particularly under the Consensual Resolution Which Will Permit A Chapter 7 Trustee to Administer Residual Sale Proceeds.

The bulk of the Debtors' Opposition related to relief from stay centers around whether the Receiver and District Court can oversee the administration of the Debtors' estates for the benefit of all the Debtors' creditors. *See, e.g.*, Debtors' Opp'n at 20 ("The Receiver also cannot pay all the Debtors' creditors"); *id.* ("Receiver does not have the ability to liquidate some creditors' claims"). The Consensual Resolution presents a simple resolution to this purported concern: permit the VCY Sale to move forward and allow a chapter 7 trustee to administer the allegedly ample residual proceeds (after satisfaction of the receivership) for the benefit of creditors and interest holders of the Debtors' converted chapter 7 estates. Accordingly, relief from stay should be granted pursuant to the Consensual Resolution, which will moot the Debtors' purported concern that "the Receiver does not have authority to liquidate all claims against the Debtors." *Id.* at 19.

### IV.
### CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Receiver respectfully requests that the Court grant the Motion in its entirety, approve the Consensual Resolution, or, in the alternative, dismiss the Bankruptcy Cases or abstain, and grant the Receiver such other and further relief as may be just and proper.

///

///

///

///

128923224.1

DATED this 17th day of December 2021.

**FOX ROTHSCHILD LLP**

By:     */s/ Brett A. Axelrod*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    NICHOLAS A. KOFFROTH, ESQ.
    Appearing *Pro Hac Vice*
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    *Counsel for W. Lawrence Patrick*

128923224.1

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of December, 2021, a true and correct copy of the foregoing **OMNIBUS REPLY IN SUPPORT OF EMERGENCY MOTION TO EXCUSE TURNOVER IN FAVOR OF RECEIVER AND TO DISMISS/ABSTAIN, OR, ALTERNATIVELY, FOR STAY RELIEF AND/OR CONVERSION** was served via

☒ (ELECTRONIC SERVICE) Pursuant to Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date noted above and served through the Notice of Electronic Filing automatically generated by the Court to the following parties:

OGONNA M. BROWN on behalf of Creditor VCY AMERICA, INC.
OBrown@lrrc.com, nlord@lewisroca.com,ogonna-brown-4984@ecf.pacerpro.com,dberhanu@lewisroca.com

THOMAS H. FELL on behalf of Creditor CROWN CASTLE MU LLC
tfell@fclaw.com, clandis@fclaw.com;CourtFilings@fennemorelaw.com

STEPHEN R HARRIS on behalf of Debtor GOLDEN STATE BROADCASTING, LLC
steve@harrislawreno.com, hannah@harrislawreno.com;norma@harrislawreno.com

STEPHEN R HARRIS on behalf of Debtor MAJOR MARKET RADIO LLC
steve@harrislawreno.com, hannah@harrislawreno.com;norma@harrislawreno.com

STEPHEN R HARRIS on behalf of Debtor SILVER STATE BROADCASTING, LLC
steve@harrislawreno.com, hannah@harrislawreno.com;norma@harrislawreno.com

STEPHEN R HARRIS on behalf of Jnt Admin Debtor GOLDEN STATE BROADCASTING, LLC
steve@harrislawreno.com, hannah@harrislawreno.com;norma@harrislawreno.com

STEPHEN R HARRIS on behalf of Jnt Admin Debtor MAJOR MARKET RADIO LLC
steve@harrislawreno.com, hannah@harrislawreno.com;norma@harrislawreno.com

DAVID MINCIN on behalf of Creditor MINCIN LAW, PLLC
dmincin@mincinlaw.com, cburke@mincinlaw.com

DAVID MINCIN on behalf of Interested Party MINCIN LAW, PLLC
dmincin@mincinlaw.com, cburke@mincinlaw.com

JOHN M NAYLOR on behalf of Creditor NAYLOR & BRASTER ATTORNEYS AT LAW PLLC

128923224.1

JNAYLOR@NAYLORANDBRASTERLAW.COM, asharples@NAYLORANDBRASTERLAW.COM

STEVEN B. SCOW on behalf of Creditor BELLAIRE TOWER HOMEOWNERS ASSOCIATION sscow@kochscow.com, dscow@kochscow.com

U.S. TRUSTEE - LV - 11 USTPRegion17.lv.ecf@usdoj.gov

                                                */s/Patricia Chlum*
                                                 an employee of Fox Rothschild, LLP

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

13

128923224.1