BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Appearing *Pro Hac Vice*
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        nkoffroth@foxrothschild.com
*Counsel for W. Lawrence Patrick*

Electronically Filed March 2, 2022

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No. BK-21-14978-abl |
| SILVER STATE BROADCASTING, LLC, | Jointly Administered with:<br>Case No. BK-S-21-14979-abl<br>Case No. BK-S-21-14980-abl |
| ☐ Affects Silver State Broadcasting, LLC<br>☐ Affects Golden State Broadcasting, LLC<br>☐ Affects Major Market Radio, LLC<br>☒ Affects all Debtors | Chapter 11<br><br>**OBJECTION TO JOINTLY ADMINISTERED DEBTORS' FIRST MOTION TO EXTEND EXCLUSIVITY PERIODS UNDER 11 U.S.C. § 1121(D)(1)**<br><br>Hearing Date:   March 16, 2022<br>Hearing Time:  1:30 p.m. |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

W. Lawrence Patrick (the "Receiver"), the receiver of substantially all of the assets of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby files this objection (the "Objection") to the *Jointly Administered Debtors' First Motion to Extend Exclusivity Periods Under 11 U.S.C. § 1121(d)(1)* [ECF No. 124] (the "Motion").  This Objection is based on the *Declaration of W. Lawrence Patrick* (the "Patrick Declaration") filed concurrently herewith, the pleadings on file in the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases"), and the following:

## I.

## INTRODUCTION

Debtors wrongfully seek extension of the 120 and 180-day periods in which they have the exclusive right to file and solicit a plan of reorganization (the "Exclusivity Periods") under 11 U.S.C. § 1121(d), without making a proper showing of "cause" under applicable and well settled case law, and with no evidence of a path forward through a viable plan of reorganization.

Debtors, through their managing member Mr. Stolz, have been engaged in a decade long saga of various litigations, due to the constant mismanagement of Debtors' assets and inability to pay their bills and fund their operations.  Debtors have a long history of using stalling tactics to avoid the enforcement of multiple judgments in various forums, which has led to multiple contempt orders being levied against Mr. Stolz, and ultimately, the appointment of the Receiver to market and sell Debtors' assets to satisfy judgment creditors. *See* Patrick Declaration, ¶ 3.

The Receiver believes this Motion to be nothing more than the latest attempt by Mr. Stolz to stall these proceedings and thwart the efforts of creditors who, unlike Debtors, are willing to submit a viable plan of reorganization that can be administered expeditiously to the benefit of the creditors. *See* Patrick Declaration, ¶ 4.

In fact, should the Court deny the Motion (which the Receiver submits it must), the Receiver intends to file a plan of reorganization substantially in the form attached as **Exhibit 1** to the Patrick Declaration (the "Receiver Plan").  Based on the aggregate amount of scheduled and filed claims, the Receiver Plan has every likelihood of providing all creditors with payment in full in cash on the effective date. *See* Patrick Declaration, ¶ 5.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131249888.3

## II.

## FACTUAL BACKGROUND

1.      The Receiver hereby incorporates the factual background and allegations as submitted to this Court through the Receiver's *Emergency Motion to Excuse Turnover in Favor of Receiver and to Dismiss/Abstain, or, Alternatively, for Stay Relief and/or Conversion* [ECF No. 45] (the "Receiver Motion").

2.      Debtors are three Nevada limited-liability companies that operated three FM radio stations and one AM radio station (collectively, the "Radio Stations")—with call signs commonly known as KFRH-FM, KREV-FM, and KRCK-FM (collectively, the "FM Stations"), and KBET-AM—that operate under Federal Communications Commission (the "FCC") licenses (collectively, the "Licenses"). The Licenses are Debtors' primary assets of value.  *See* Patrick Declaration, ¶ 6.

3.      The Receiver was appointed in July 2020 to seize operational control of the Radio Stations and directed to market Debtors' assets to satisfy two judgment liens; however, Mr. Stolz refused to comply with even the most fundamental disclosure obligations—Debtors failed to turn over even a single relevant document concerning Debtors' businesses, failed to provide keys to the Radio Stations, concealed account numbers for Debtors' bank accounts, prevented the Receiver from taking operational control of the Radio Stations, and failed to disclose the locations and lessors of the radio antennae. *See* Patrick Declaration, ¶ 7.

4.      Despite constant obstruction by Debtors and Mr. Stolz, the Receiver secured a *bona fide*, all-cash offer from VCY America, Inc. ("VCY") to purchase the Licenses for the FM Stations (the "FM Licenses") for $6 million.  On November 9, 2020, the District Court approved the sale in an order that Debtors and Mr. Stolz never appealed, instead choosing to further waste time and resources by twice appealing for termination of the receivership, which was wholly rejected both times by the District Court. *See* Patrick Declaration, ¶ 8.

5.      On October 19, 2021 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), after nearly a decade of litigation and post-judgment enforcement actions and in a transparent attempt to delay the FCC's approval of the sale of the FM Licenses to VCY.  *See* Patrick Declaration, ¶ 9.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

6.      On November 19, the Court entered its *Order Authorizing Joint Administration of Cases* [ECF No. 37], designating Silver State Broadcasting as the lead case.

7.      On February 7, 2021, the Court entered its Order [ECF No. 115] (the "Turnover Order") granting *Debtors' Emergency Joint Motion for Order Directing Court Appointed Receiver to Turnover Property Pursuant To 11 U.S.C. §§ 543(A) And (B)* [ECF No. 30].

8.      Promptly after the Court's entry of the Turnover Order, on February 11, 2022, the Receiver filed with the FCC applications for an involuntary assignment of the Licenses to Debtors (the "Assignment Applications"). On February 22, 2022, the FCC granted the Assignment Applications, and the Receiver filed the notices of consummation of the involuntary assignment of the Licenses on that same day. Accordingly, as a result of the Receiver's expeditious compliance with the Turnover Order, Debtors have exclusive possession of the Licenses. *See* Patrick Declaration, ¶ 10.

9.      As part of the Turnover Order, the Court has required the Receiver to file an accounting of all property of Debtors that was under the possession or control of the Receiver, on or before April 8, 2022 (the "Accounting Deadline"). *See* Patrick Declaration, ¶ 11.

10.     The period during which Debtors had the exclusive right to file a plan expired on February 16, 2022. On that same day, Debtors filed the Motion, seeking an order extending the Exclusivity Periods to the dates which are thirty (30) and (90) days after the Accounting Deadline.

11.     For all of the reasons and authorities set forth below, the Receiver requests that the Court deny the relief requested in the Motion, rule that Debtors' exclusive period to file a plan of reorganization expired on February 16, 2022, and permit other parties in interest to file their own plans of reorganization, including the Receiver Plan.

12.     In brief, the Receiver Plan provides for the auction of Debtors' assets, in which VCY will serve as the "stalking horse" bidder, with a bid consisting of $5 million in cash, plus waiver of its claims aggregating $627,366, for the FM Licenses. *See* Patrick Declaration, ¶ __ & Exhibit 1. In addition, the Receiver Plan provides that any other party, including equity holders, can submit a qualified bid and participate in the auction. Under the Receiver Plan, if the winning bid for Debtors' assets nets sufficient proceeds to pay all creditors in full, then Debtors can reorganize around their

131249888.3

remaining assets or liquidate such assets for the benefit of equity holders. *See* Patrick Declaration, ¶ 12.

### III.

### LEGAL ARGUMENT

**A. The Court Must Deny any Requested Extension of the Exclusivity Periods unless Debtors Meet their Heavy Burden of Establishing "Cause."**

Section 1121(d) of the Bankruptcy Code provides, in pertinent part:

> [O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

Accordingly, although section 1121(d) permits the Court to extend the periods within which a debtor has the exclusive right to file and solicit a plan of reorganization, it may only do so if the debtor establishes "cause" for the extension:

> The limited exclusivity period which is a feature of Chapter 11 proceedings under the Bankruptcy Code contrasts with the procedure under Chapter XI of the Bankruptcy Act which gave the debtor the exclusive right, throughout the ChapterXI proceedings, to propose a plan. The House Report accompanying H.R. 820 noted that **"[t]he exclusive right [under old Chapter XI] gives the debtor undue bargaining leverage, because by delay he can force a settlement out of otherwise unwilling creditors**.' Additionally, § 1121 represents a congressional acknowledgement that creditors, whose money is invested in the enterprise no less than the debtor's, have a right to a say in the future of that enterprise.
>
> . . . The bankruptcy court must avoid reinstituting the imbalance between the debtor and its creditors that characterized proceedings under the old Chapter XI. **Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors**.

*In re Timbers of Inwood Forest Assocs., Ltd*., 808 F.2d 363, 372 (5th Cir. 1987) (citations omitted) (quoting H.R. Rep. No. 95-595, at 231 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 (emphasis added)); *see also In re Tony Downs Foods Co*., 34 B.R. 405, 408 (Bankr. D. Minn. 1983)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

(expiration of the 120-day period is "intended to put a certain amount of pressure on the debtor."); S. Rep. No. 95-989, at 118 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5904 ("An extension should not be employed as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory.").

Thus, "extensions are impermissible if they are for the purpose of allowing the debtor to prolong reorganization while pressuring a creditor to accede to its point of view on an issue in dispute." *In re Lake in the Woods*, 10 B.R. 338, 345-46 (E.D. Mich. 1981).

"In most cases, 120 days will give the debtor adequate time to negotiate a settlement, without unduly delaying creditors." *See* H.R. Doc. No. 95-959 at 232. "[A]n extension of the exclusive time in which to file a plan presents an enhanced potential for skewing the bargaining balance in favor of the debtor, contrary to the intent of the legislature. If no plan is filed, the creditor body has no information upon which to formulate either a positive or negative opinion." *In re Perkins*, 71 B.R. 294, 299 (W.D. Tenn. 1987). Courts "have not favored extensions," and they are not routinely granted. *In re Sw. Oil Co. of Jourdanton, Inc.*, 84 B.R. 448, 450 (Bankr. W.D. Tex. 1987).

The debtor's burden of proof is a "heavy one." *In re Dow Corning Corp.*, 208 B.R. 661, 663-64 (Bankr. E.D. Mich. 1997). "The mere recitations of allegations deemed by a debtor to constitute cause of an extension of the exclusive period is insufficient to allow such an extension." *Ravenna Indus., Inc.,* 20 B.R. 886, 889 (Bankr. N.D. Ohio 1982); *In re Nicolet, Inc.*, 80 B.R. 733, 741 (Bankr. E.D. Pa. 1987) (there must be a "showing of cause"). "Section 1121(d) requires that an affirmative showing of cause, supported by evidence, be made by the party seeking the extension … of time." *In re R.G. Pharmacy, Inc*, 374 B.R. 484, 487 (Bankr. D. Conn. 2007) (internal quotation marks omitted); *see also Nicolet*, 80 B.R. at 742 ("[S]ubmission of evidence to support the allegations of cause is a prerequisite.").

Bankruptcy courts typically examine several non-exclusive factors in determining whether there is "cause" to extend the exclusivity periods, including:

a.    the size and complexity of a debtor's case;

b.    the necessity for sufficient time to permit a debtor to negotiate a plan of reorganization and prepare adequate information;

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131249888.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

c.      the existence of good faith progress towards reorganization;

d.      the fact that a debtor is paying its bills as they become due;

e.      whether a debtor has demonstrated reasonable prospects for filing a viable plan;

f.      whether a debtor has made progress in negotiations with its creditors;

g.      the amount of time which has elapsed in the case;

h.      whether a debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtors' reorganization demands; and

i.      whether an unresolved contingency exists.

*Adelphia*, 352 B.R. at 587 (listing all nine factors) (*citing In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) ("Dow Corning")); *In re Henry Mayo Newhall Memorial Hospital*, 282 B.R. 444, 452 (9th Cir. 2002) (Dow Corning factors are "standardly considered").

## B. Debtors have Failed to Establish Cause to Extend the Exclusivity Periods, and Seek to Needlessly Prolong the Reorganization Process.

Debtors' requested extension of the Exclusivity Periods is unreasonable and inappropriate under the circumstances, especially considering that Debtors' Radio Stations are incapable of funding a plan of reorganization, and Mr. Stolz has repeatedly shown an inability to sell the Radio Stations or bring in additional financing to pay creditors. *See* Patrick Declaration, ¶ 13. An analysis of the Dow Corning factors clearly illustrates that Debtors have not met their "heavy burden" of establishing "cause," and are engaging in simple stall tactics to further prevent recovery for creditors.

***First,*** Debtors' Chapter 11 Cases are not large or complex.  They are centered on whatever value can be extracted from the sale of the Licenses.  Aside from the Licenses, Debtors' remaining assets consist largely of equipment that is inoperable or unsuitable for the efficient operation of the Radio Stations. *See* Patrick Declaration, ¶ 13. Further, the District Court already approved the sale of the FM Licenses to VCY and determined that the purchase price was a fair reflection of the actual value of the FM Licenses.  Debtors should sell the Licenses and distribute the proceeds to their creditors.

131249888.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

***Second***, the District and State Court pleadings, referenced repeatedly in this case (*see, e.g.,* the Receiver Motion), demonstrate that for years Debtors have been incapable of finding a buyer for, or arranging to acquire additional financing to operate, the Radio Stations. No additional time should be given to Debtors exclusively to negotiate a plan of reorganization when the record is clear that they are incapable of doing so.

***Third***, Debtors have exhibited no signs of good faith progress towards reorganization. In fact, Debtors as led by Mr. Stolz, have a detailed history of stalling and taking actions detrimental to the best interests of the operation of the Radio Stations and the payment of creditors. Mr. Stolz has been held in contempt of court for his refusal to deliver possession and control of assets and financial information to the Receiver. The Chapter 11 Cases are simply another means by which Mr. Stolz is attempting to stall the sale of the Licenses and provide payment to creditors. *See* Patrick Declaration, ¶ 14.

***Fourth***, Debtors have a long history of refusing to pay bills and expenses associated with the operations of the Radio Stations. Debtors have repeatedly refused to pay rents, as reflected by the multiple proofs of claims filed by landlords in this case. Debtors have also refused to pay judgment creditors. Due to the lack of revenues generated by the operation of the Radio Stations, Debtors will assuredly be unable to pay any bills moving forward as they come due, resulting in further claims against Debtors' estate. *See* Patrick Declaration, ¶ 15.

***Fifth***, Debtors and Mr. Stolz have not shown an ability to raise financing or operate the Radio Stations at a level to consistently pay creditors. This directly resulted in the District Court's order for the sale of the Radio Stations and all of their assets. Debtors will be unable to fund a plan of reorganization through the profits of the Radio Stations and have made no other strides in bringing in additional financing or equity contributions to pay creditors and operate the Radio Stations successfully. *See* Patrick Declaration, ¶ 16.

***Sixth***, Debtors have made no attempt whatsoever to negotiate with their creditors. Debtors' history of not paying rents and judgement liens will likely be a determining factor in their inability to successfully negotiate with creditors. *See* Patrick Declaration, ¶ 17.

131249888.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**Seventh,** this case has been pending since October 19, 2021, and no representations have been made to the Court regarding Debtors' efforts to value the Licenses, acquire additional financing, or progress towards a viable plan of reorganization in any way.  As previously stated, the Receiver believes the Motion is another effort of Mr. Stolz to stall the inevitable sale of the Licenses. *See* Patrick Declaration, ¶ 18.

**Eighth,** there are no unresolved contingencies in this case. The FCC has transferred possession and control of the Licenses back to Debtors, and all pending litigations have been effectively stayed.

Further, this Court has recognized the actions that Debtors, through Mr. Stolz, have taken to undermine the orders of the District and State Courts, including by impeding the Receiver from effectively operating the Radio Stations or consummating a sale of the Licenses. During the Hearing on *Debtors' Emergency Motion for Turnover* [ECF No. 113], conducted on January 31, 2022, this Court noted that it was "mindful of the duration of the exclusivity periods for debtors in connection with these cases," and "unlikely to extend them, given the history of these matters." *See* Hearing Transcript, pg. 87.

In sum, the Dow Corning factors overwhelming weigh against, and Debtors have not met the heavy burden to show cause for, any extension of the Exclusivity Periods in this case.

## C.  The Receiver is Prepared to File A Plan Today that Pays Creditors in Full

As noted above, if the Court denies the Motion, the Receiver intends to file the Receiver Plan, providing for the auction of Debtors' assets.  VCY is willing to serve as the "stalking horse" bidder, with a bid consisting of $5 million in cash, plus waiver of its claims aggregating $627,366, for the FM Licenses.  *See* Patrick Declaration, ¶ 19 & Exhibit 1.

Examination of Debtors' schedules [ECF No. 28] and the filed proofs of claim shows an aggregate of $4,392,484 in claims against Debtors, including the VCY claims.  If VCY is the winning bidder and waives its claims, the aggregate will drop to $3,765,118.  Accordingly, the Receiver Plan has every likelihood of providing all creditors with payment in full in cash on the effective date, bringing these Chapter 11 Cases to a prompt and just resolution.  *See* Patrick Declaration, ¶ 20.

131249888.3

**D. Alternatively, Debtors Should be Required to File Any Plan of Reorganization on an Expedited Basis, to be Considered in Parallel with the Receiver Plan.**

Alternatively, the Court should require Debtors to file any plan of reorganization on an expedited basis, to be considered in parallel with the Receiver Plan. The Receiver Plan contemplates that all creditors will be paid in full and can bring the Chapter 11 Case to a swift conclusion for the benefit of the creditors. Therefore, the Court should, at a minimum, require that any plan of reorganization submitted by Debtors provide for payment in full of all creditors in cash on the effective date.

## <u>CONCLUSION</u>

For the foregoing reasons and based on the authorities cited above, the Receiver respectfully requests that the Court enter an Order denying the Motion and determining that the period during which Debtors may exclusively file a plan under 11 U.S.C. § 1121 expired as of February 16, 2022. Alternatively, the Receiver respectfully requests that this Court require Debtors to file any plan of reorganization on an expedited basis, to be considered in parallel with the Receiver Plan.

DATED this 2nd day of March 2022.

**FOX ROTHSCHILD LLP**

By *s/Brett A. Axelrod*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    NICHOLAS A. KOFFROTH, ESQ.
    Appearing *Pro Hac Vice*
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    *Counsel for W. Lawrence Patrick*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131249888.3

**EXHIBIT 1**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131249888.3

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
*Pro Hac Vice*
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
nkoffroth@foxrothschild.com
*Counsel for W. Lawrence Patrick*

| Electronically Filed March __, 2022 |

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re | Cases No. BK-21-14978-abl |
|---|---|
| SILVER STATE BROADCASTING, LLC, | Jointly Administered with: Cases No. BK-S-21-14979-abl Cases No. BK-S-21-14980-abl |
| Affects Silver State Broadcasting, LLC Affects Golden State Broadcasting, LLC Affects Major Market Radio, LLC Affects all Debtors | Chapter 11 **JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED AS OF MARCH __, 2022 PROPOSED BY W. LAWRENCE PATRICK** |

**ANY OFFER OR SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE ABOVE-REFERENCED PLAN WILL COMPLY WITH ALL APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE ONCE A DISCLOSURE STATEMENT TO ACCOMPANY SUCH PLAN HAS BEEN APPROVED BY THIS COURT. ALL REFERENCES TO THE DISCLOSURE STATEMENT CONTAINED HEREIN ARE TO SUCH DISCLOSURE STATEMENT AND THE EXHIBITS TO BE ATTACHED THERETO THAT WILL CONTAIN MATERIAL INFORMATION ABOUT DEBTORS AND WILL BE SUBMITTED FOR COURT APPROVAL AT THE EARLIEST POSSIBLE OPPORTUNITY**

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131469166.1

W. Lawrence Patrick (the "<u>Proponent</u>") hereby proposes this *Joint Chapter 11 Plan of Reorganization Dated as of March __, 2022* (the "<u>Plan</u>") for Silver State Broadcasting, LLC, Golden State Broadcasting, LLC and Major Market Radio, LLC (collectively, "<u>Debtors</u>"), debtors and debtors in possession in the above-captioned jointly administered chapter 11 cases (the "<u>Chapter 11 Cases</u>"), pursuant to section 1121(c) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

### DISCLAIMER

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits appended thereto, for a discussion of Debtors' history, business, results of operations and properties, and brief summary and detailed analysis of this Plan. All creditors are encouraged to consult the Disclosure Statement and to read this Plan carefully and completely before voting to accept or reject this Plan.

THIS PLAN AND THE EXHIBITS APPENDED HERETO, AND THE ACCOMPANYING DISCLOSURE STATEMENT AND THE EXHIBITS APPENDED THERETO, ALL REMAIN SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND HAVE NOT BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

### ARTICLE I

### <u>DEFINITIONS AND RULES OF INTERPRETATION</u>

**A.    Definitions.**

1.1    For the purposes of this Plan and the accompanying Disclosure Statement, the following terms (which appear herein as capitalized terms) shall have the respective meanings as hereinafter set forth; such meanings to be equally applicable to the singular and the plural forms of the terms defined, unless the context otherwise requires. Capitalized terms used in this Plan at all times shall refer to terms defined in this Article I, or, if not defined in this Article I, then as defined in any other section of this Plan. Capitalized terms used but not immediately defined in this Plan shall have the meanings ascribed to them later in this Plan. Unless otherwise provided in this Plan, all terms used herein shall have the meaning assigned to them under the Bankruptcy Code or Bankruptcy Rules. The rules of construction applicable to the Bankruptcy Code and the Bankruptcy

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

2

Rules shall be applicable to this Plan.

1.2    **"Administrative Claim"** means a Claim for costs and expenses of administration, pursuant to Bankruptcy Code sections 503(b), 507(a)(2) or 507(b), including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates; (b) Allowed Professional Fees, pursuant to Bankruptcy Code sections 328, 330(a), or 331 for the period commencing on the Petition Date and ending on the Effective Date; and (c) all Bankruptcy Court approved requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases, pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5).

1.3    **"Administrative Claim Bar Date"** means the deadline for filing requests for payment of Administrative Claims, which shall be twenty (20) days prior to the Confirmation Hearing.  The Administrative Claim Bar Date does not apply to the fees and charges assessed against the Estates pursuant to Section 123 of the Judicial Code and 28 U.S.C. § 1930.  Such fees and charges are not subject to an allowance procedure under 11 U.S.C. § 503(b).

1.4    **"Allowed"** means, with reference to any Claim or Interest and with respect to Debtors: (a) any Claim against or Interest in Debtors that has been listed by Debtors in their Schedules, as such Schedules may be amended by Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim or Interest has been Filed; (b) any Claim or Interest allowed (i) under this Plan, (ii) by Final Order, or (iii) as to which the liability of Debtors and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Bankruptcy Court; or (c) as to which a Proof of Claim has been timely Filed in a liquidated amount with the Bankruptcy Court, pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or has been Filed with leave of the Bankruptcy Court after notice and a hearing, provided that no objection to the allowance of such Claim or motion to expunge such Claim has been interposed by any party in interest before any final date for the filing of such objections or motions set forth in this Plan, the Confirmation Order or other order of the Bankruptcy Court.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any valid and enforceable Claim that Debtors

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131469166.1

may hold against the Holder thereof, to the extent such Claim may be validly offset, recouped, or otherwise reduced under applicable law.

1.5    **"Assets"** means all of the assets, property, interests, and effects, Cash, receivables, real and personal, tangible and intangible, wherever situated, of Debtors, as they existed on the Effective Date or thereafter, including all of the Debtors' other non-Cash property and assets, including the Licenses and all of the Causes of Action.

1.6    **"Auction"** shall have the meaning assigned to it in Section 5.2 of this Plan.

1.7    **"Authorized Receiver Fees"** means the fees and expenses ordered to be paid to the Proponent by the United States District Court in its *Order Appointing W. Lawrence Patrick as Receiver in Aid of Post-Judgment Execution,* entered on July 6, 2020 in Case No: 5:16-cv-00600-JBG, a true and correct copy of which is attached as **Exhibit __** to the Disclosure Statement.

1.8    **"Avoidance Actions"** means all claims, rights, and causes of action of Debtors' Estates under the Bankruptcy Code, including but not limited to those set forth in sections 506(c), 506(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or their state law analogs, regardless of whether or not such actions have been commenced prior to the Effective Date.

1.9    **"Bankruptcy Code"** means Title 11 of the United States Code, as amended from time to time, as applicable to this Chapter 11 Case.

1.10    **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Nevada, or such other court as may from time to time have jurisdiction over the Chapter 11 Cases.

1.11    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as heretofore or hereafter amended and the general, local and chambers rules and orders of the Bankruptcy Court.

1.12    **"Bar Date"** means February 16, 2022, the date established by the Bankruptcy Court by which non-governmental Creditors were required to file proofs of claim with respect to pre-petition Claims, including Claims asserted pursuant to Bankruptcy Code section 503(b)(9), except with respect to Administrative Claims, Claims arising from the rejection of any executory contracts and unexpired leases, and Claims that were scheduled by the Debtors as undisputed, non-contingent, and unliquidated; and April 18, 2022, the date set by the Bankruptcy Rules by which governmental Creditors are required to file proofs of claim with respect to pre-petition Claims.

4

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1.13 **"Business Day"** means a day, other than a Saturday, Sunday, or other day on which commercial banks in Las Vegas, Nevada are authorized or required by law to close.

1.14 **"Cash"** means legal tender of the United States of America, which may be conveyed by check or wire transfer.

1.15 **"Causes of Action"** means any Claim, Avoidance Action, cause of action, controversy, demand, right,  action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

1.16 **"Chapter 11 Cases"** means the Chapter 11 Cases filed by Debtors as set forth in the caption to this Plan.

1.17 **"Claim"** has the meaning set forth in Bankruptcy Code section 101(5).

1.18 **"Claims Register"** means the official register of Claims and Interests maintained by the Court.

1.19 **"Class"** means a class of Holders of Claims or Interests as described in Article II of the Plan.

1.20 **"Communications Act"** means 47 U.S.C. § 151 *et seq*., as amended.

1.21 **"Confirmation"** means the entry by the Bankruptcy Court of the Confirmation Order.

1.22 **"Confirmation Date"** means the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

1.23 **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

1.24 **"Confirmation Order"** means the order entered by the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code, which shall be in form and substance reasonably

5

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

acceptable to the Proponent.

1.25    **"Creditor"** means a Holder of a Claim.

1.26    **"Debtors"** mean Silver State Broadcasting, LLC, Golden State Broadcasting, LLC and Major Market Radio, LLC.

1.27    **"Debtors in Possession"** mean the Debtors, as debtors in possession in the Chapter 11 Case, pursuant to Bankruptcy Code sections 1107 and 1108.

1.28    **"Definitive Agreement"** shall have the meaning assigned to it in Section 5.2 of this Plan.

1.29    **"Disallowed Claim"** means any Claim or portion thereof that has been disallowed by a Final Order of the Bankruptcy Court.

1.30    **"Disclosure Statement"** means the solicitation and disclosure statement for this Plan, including all exhibits and schedules thereto.

1.31    **"Disputed Claim"** means: (a) any Claim or portion of a Claim (including any Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim) listed in the Schedules as disputed, contingent or unliquidated; or (b) any Claim, as to which an objection to the allowance thereof has been filed with the Bankruptcy Court within any time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or an order of the Bankruptcy Court, which objection has not been settled, withdrawn, or determined, in whole or in part, by a Final Order.

1.32    **"Disputed Claims Reserve"** means the Distribution Agent's segregated reserve account for disputed claims, as defined in Section 7.6 of this Plan.

1.33    **"Distribution"** means any distribution made by the Distribution Agent pursuant to the terms of this Plan.

1.34    **"Distribution Agent"** means the Proponent.

1.35    **"Distribution Record Date"** means the Confirmation Date unless the Bankruptcy Court establishes a different date for the Distribution Record Date in the Confirmation Order.

1.36    **"Effective Date"** means fourteen (14) days after the Court enters the Confirmation Order.

1.37    **"Entity"** has the meaning as set forth in Bankruptcy Code section 101(15).

6

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131469166.1

1.38 **"Estates"** means the estates of Debtors that were created by the commencement of the Chapter 11 Cases pursuant to Bankruptcy Code section 541, and shall be deemed to include any and all privileges and incorporeal hereditaments of Debtors and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, avoidance powers or extensions of time that Debtors or the estates shall have had effective as of the Petition Date or thereafter, whether by virtue of Bankruptcy Code sections 544, 545, 546, 547, 548, 549 or 550 or otherwise.

1.39 **"FCC"** means the Federal Communications Commission.

1.40 **"File"** means to file with the Bankruptcy Court in the Chapter 11 Case.

1.41 **"Final Decree"** means an order of the Bankruptcy Court closing the Chapter 11 Cases pursuant to Bankruptcy Code section 350.

1.42 **"Final Order"** means an order or judgment entered by the Bankruptcy Court:  (a) that has not been reversed, stayed, modified, amended, revoked, varied or set aside, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived, or (ii) the time to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed, and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought, and (ii) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has been waived or expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending; *provided, however,* that no order or judgment shall fail to be a "Final Order" hereunder solely because of the possibility that a motion pursuant to Bankruptcy Code sections 502(j) or 1144, Federal Rules of Civil Procedure 59 or 60, or Bankruptcy Rule 9024 may be Filed with respect to such order or judgment.

1.43 **"General Unsecured Claims"** means all Claims against Debtors, including Claims resulting from rejection of executory contracts and unexpired leases, that are not Secured, Administrative, and Priority and that are not subject to subordination by agreement or otherwise.

1.44 **"Holder"** means any Person or Entity that is the owner of a Claim or Interest in the

131469166.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Chapter 11 Case.

1.45    **"Impaired"** means with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

1.46    **"Initial Bid Deadline"** means no later than 4:00 p.m., Prevailing Pacific Time, at least fourteen (14) days prior to the Confirmation Hearing.

1.47    **"Interest"** means any: (i) any equity or other ownership interest in any Person or Entity, including, but not limited to, all issued and outstanding or reserved for issuance, common stock, preferred stock, membership interests, warrants, options, or other ownership rights or rights to purchase or receive additional shares of stock or membership interests in any Person or Entity, and/or any other instrument or document to the extent that it directly or indirectly evidences, creates or reserves any equity or ownership interest in any Person or Entity giving rise to any Claim or Interest, (ii) equity security, including all membership interests together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto, and (iii) partnership, limited liability company or similar interest.

1.48    **"Interest Holder"** means the Holder of an Interest.

1.49    **"Key Transaction Documents"** means, the Plan, the Disclosure Statement, the Ballots, and any and all Plan implementation documents filed with the Plan Supplement.

1.50    **"Licenses"** means, collectively: (a) KFRH(FM), North Las Vegas, NV (FCC FIN: 19062) (full service FM); (b) Radio License for KREV(FM), Alameda, CA (FCC FIN: 36029) (full service FM); and (c) Radio Licenses for KRCKFM, Mecca, CA (FCC FIN: 52808) (full service FM).

1.51    **"New Equity Interests"** means Interests in the Reorganized Debtors that may be authorized and issued on the Effective Date pursuant to Section 2.3(c) of this Plan.

1.52    **"Notice of Confirmation"** means that certain notice, pursuant to Bankruptcy Rule 3020(c)(2), notifying Holders of Claims and Interests that the Bankruptcy Court has confirmed this Plan.

1.53    **"Objection Deadline"** means the deadline for Filing objections to this Plan set by the Bankruptcy Court.

1.54    **"Old Equity Interests"** means Interests in Debtors.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131469166.1

1.55    **"Operative Document"** means any contract, instrument, release, settlement agreement or other agreement or document, if any, that is reasonably necessary to effectuate and implement the transactions provided for in this Plan, including the Key Transaction Documents.

1.56    **"Order"** means an order or judgment entered by the Bankruptcy Court.

1.57    **"Person"** means any individual, corporation, partnership, limited liability company, joint venture, association, trust or organization, or other "person" as defined in Bankruptcy Code section 101(41), as well as any governmental agency, governmental unit or political subdivision.

1.58    **"Petition Date"** means October 19, 2021.

1.59    **"Plan"** means this chapter 11 plan, including all documents referenced herein and all exhibits, supplements, appendices and schedules hereto or thereto, either in its present form or as the same may be altered, amended or modified from time to time pursuant to the Bankruptcy Code or Final Order.

1.60    **"Plan Supplement"** means a compilation of documents supplementing and giving effect to the terms to this Plan, which shall be filed no later than the Plan Supplement Filing Date. The Plan Supplement shall include: (i) any of the Operative Documents not attached to the Disclosure Statement, and (ii) any information required for confirmation of this Plan pursuant to the terms of the Bankruptcy Code.

1.61    **"Plan Supplement Filing Date"** means 14 days prior to the Confirmation Hearing. The Proponent reserves the right to submit amended or revised versions of the Plan Supplement up to the Confirmation Date.

1.62    **"Priority Claim"** means a Claim entitled to priority under Bankruptcy Code sections 507(a)(2) through (7), but excluding Administrative Claims.

1.63    **"Priority Tax Claims"** means any Claim that is entitled to priority under section 502(i) or Bankruptcy Code section 507(a)(8). Priority Tax Claims do not include ad valorem tax Claims if such Claims under applicable state law are Secured by a Lien on Debtors' Assets.

1.64    **"Professional"** means an Person or Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered prior to or on the Effective Date, pursuant to Bankruptcy Code sections 327, 328,

131469166.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

329, 330, or 331; or (b) awarded compensation and reimbursement by the Bankruptcy Court, pursuant to Bankruptcy Code section 503(b)(4).

1.65 **"Professional Fees"** means all reasonable fees and expenses incurred by Professionals and allowed by the Bankruptcy Court.

1.66 **"Professional Fee Claim"** means any Claim for compensation or reimbursement of fees and expenses as may be requested by a Professional to the extent such Professional is required to apply to the Bankruptcy Court for payment of such Claim pursuant to Bankruptcy Code sections 326, 328, 330 or 331 and the terms of this Plan.

1.67 **"Proof of Claim"** means a proof of claim filed against Debtors in the Chapter 11 Cases.

1.68 **"Proponent"** means W. Lawrence Patrick, in his capacity as the receiver of substantially all of the Assets that was appointed on July 6, 2020 by United States District Court for the Central District of California, as proponent of this Plan.

1.69 **"Pro Rata"** means, with respect to an amount of Cash or other consideration to be paid or distributed on a particular date to a Holder of an Allowed Claim, that such Distribution shall be made in accordance with the ratio, as of such date, of the amount such Allowed Claim is to the aggregate of the amounts of Claims in the Class to which such Allowed Claim belongs.

1.70 **"Purchase Price"** means the total consideration paid by the Winning Bidder for the Specified Assets under its Definitive Agreement, including but not limited to the Sale Proceeds.

1.71 **"Reorganized Debtors"** means, on or after the Effective Date, Silver State Broadcasting, LLC, Golden State Broadcasting, LLC and Major Market Radio, LLC, as reorganized debtors, in the event that the Sale Proceeds are sufficient to pay all Claims in full in Cash on the Effective Date.

1.72 **"Representatives"** means, with respect to a given Person or Entity, its past and current directors, officers, shareholders, members, partners, employees, agents, attorneys, professionals, advisors, trustees, consultants, accountants, contractors and other representatives.

1.73 **"Sale Hearing"** shall have the meaning assigned to it in Section 5.2 of this Plan.

1.74 **"Sale Order"** means the order entered by the Bankruptcy Court authorizing the sale

10

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

of the Specified Assets to the Winning Bidder free and clear of all claims, liens and interests, in accordance with the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Winning Bidder, and which may be the Confirmation Order.

1.75    **"Sale Proceeds"** means the Cash component of the Purchase Price.

1.76    **"Scheduled"** means, with respect to a Claim, listed by Debtors in the Schedules as non-disputed, non-contingent, and liquidated.

1.77    **"Schedules"** means the schedules of Assets and liabilities, the list of Holders of Interests and the statements of financial affairs Filed by Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

1.78    **"Secured"** means, when referring to a Claim, secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.79    **"Specified Assets"** shall have the meaning assigned to it in Section __ of this Plan.

1.80    **"Unclassified Claims"** means Administrative Claims and Priority Tax Claims.

1.81    **"US Trustee Fees"** means fees payable pursuant to 28 U.S.C. § 1930.

1.82    **"VCY"** means VCY America, Inc.

1.83    **"VCY Agreement"** means the proposed *Purchase and Sale Agreement* for the Licenses, in the form attached as **Exhibit __** to the Disclosure Statement.

1.84    **"VCY Bid"** means $5,000,000.00 in Cash, together with a waiver of the VCY Claims. For avoidance of doubt, in the event that VCY is not the Winning Bidder, the VCY Claims will not be waived in any way.

1.85    **"VCY Claims"** means the Claims filed by VCY against Debtors (Proof of Claim No. 8-1 against Silver State Broadcasting, LLC; Proof of Claim No. 4-1 against Golden State Broadcasting, LLC; and Proof of Claim No. 2-1 against Major Market Radio, LLC), in the aggregate

131469166.1

amount of $627,366.06.

    1.86   **"Winning Bid"** shall have the meaning assigned to it in Section 5.2 of this Plan.

    1.87   **"Winning Bidder"** shall have the meaning assigned to it in Section 5.2 of this Plan.

**B.**    **Rules of Interpretation.**

Any term used in this Plan that is not defined in this Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) to the extent a reference or description in this Plan to an Operative Document is inconsistent with the terms or conditions of that Operative Document, the terms and conditions of the Operative Document shall govern over the reference or description contained in this Plan; (c) any reference in this Plan to an existing document, schedule, Operative Document, or exhibit Filed or to be Filed means such document, schedule, Operative Document, or exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date in accordance with the terms hereof; (d) unless otherwise specified in a particular reference, all references in this Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to this Plan; (e) the words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan; (f) the word "all" shall mean "any and all;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of this Plan; (h) the rules of construction set forth in Bankruptcy Code section 102 shall apply, including that the terms "includes," "shall include," and "including" are not limiting; (i) reference to a pleading, request, or document being "Filed" means duly and properly filed with the Bankruptcy Court as reflected on the docket of the Bankruptcy Court; (j) all exhibits and schedules to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when they are Filed; (k) any service or notice provided for in this Plan shall be provided at the addresses specified in Article XII hereof; (1) except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent the exhibits or Operative Documents provide otherwise, the rights, duties and obligations under this Plan

131469166.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

shall be governed, construed and enforced in accordance with the laws of the State of Nevada; and (m) to the extent a reference or description in the Disclosure Statement to this Plan or an Operative Document is inconsistent with the terms or conditions of this Plan or the Operative Document, the terms and conditions of this Plan or the Operative Document, as applicable, shall govern over the reference contained in the Disclosure Statement.

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

2.1     Introduction.

(a)     All Claims and Interests, except Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims, as described below, have not been classified.

(b)     A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

2.2     Unclassified Claims.

(a)     Administrative Claims.

(i)     Deadline to File Administrative Claims.    The Holder of an Administrative Claim, other than a liability incurred and paid in the ordinary course of business by the Debtors, must File with the Bankruptcy Court and serve on the Proponent, Debtors, and their respective counsel, notice of such Administrative Claim on or before the Administrative Claim Bar Date.  Such notice must include, at minimum, (i) the name of the Holder of such Claim, (ii) the basis of the Claim, and (iii) the amount of the Claim.  All final applications for Professional Fee Claims constituting amounts due for services rendered on or before the Effective Date shall be Filed no later than the Administrative Claim Bar Date (and include estimated fees and costs through the Effective

13

Date), unless otherwise ordered by the Bankruptcy Court.  Failure to file such notice timely and properly shall result in the Administrative Expense Claim being forever barred and discharged.

(ii) <u>Payment Provisions</u>.  Subject to the provisions of Bankruptcy Code sections 330(a), 331 and 503(b), each Holder of an Administrative Claim shall, from the Confirmation Funds, be paid in Cash in the Allowed amount of any such Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the date upon which such Administrative Claim becomes Allowed.

(iii) <u>US Trustee Fees</u>.  Notwithstanding the foregoing or anything to the contrary in this Plan:

(A) Debtors shall pay, or cause to be paid, all accrued US Trustee Fees on or before the Effective Date of the Plan; and following the Effective Date, the Reorganized Debtors shall be responsible for timely payment of all US Trustee Fees until such time as the Final Decree closing this Chapter 11 Cases is entered and all US Trustee Fees due are paid in full; and

(B) Debtors or the Reorganized Debtors shall File with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the Chapter 11 Cases remains open in such format as reasonably may be required by the United States Trustee.

(b) <u>Priority Tax Claims</u>.

The legal and equitable rights of the Holders of Priority Tax Claims are unaltered by this Plan.  Each Holder of an Allowed Priority Tax Claim shall be paid in Cash in the Allowed amount of such Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date, and (ii) the date upon which such Priority Tax Claim becomes Allowed.  Under the Plan, Holders of Allowed Priority Tax Claims against the Debtors shall not be entitled to any payments on account of any post-Petition Date interest or penalty with respect to or in connection with an Allowed Priority Tax Claim.  Any such Claim or demand for any post-Petition Date interest or penalty will be discharged upon the entry of the Confirmation Order by Bankruptcy Code section 1141(d)(1), and the Allowed Priority Tax Claim Holder shall not assess or attempt to collect such accrued post-Petition Date interest or penalty from the Debtors, the Reorganized Debtors, or their property.

14

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

2.3     Classified Claims and Interests

(a)     Class 1: Priority Claims

*Claims in Class:*  Class 1 consists of all Allowed Priority Claims.

*Treatment:*  Each holder of an Allowed Class 1 Priority Claim shall, in full satisfaction of such Claim, be paid in Cash in the Allowed amount of such Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the date upon which such Priority Claim becomes Allowed.

*Impairment and Voting*:  Class 1 is not Impaired.  Therefore, the Holders of the Class 1 Allowed Priority Claims are not entitled to vote to accept or reject this Plan.

(b)     Class 2: Secured Claims

*Claims in Class:*  Class 2 consists of all Allowed Secured Claims.

*Treatment:*  Each holder of an Allowed Class 2 Secured Claim shall, in full satisfaction of such Claim, be paid in Cash in the Allowed amount of such Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the date upon which such Secured Claim becomes Allowed.

*Impairment and Voting*:  Class 2 is not Impaired.  Therefore, the Holders of the Class 2 Allowed Secured Claims are not entitled to vote to accept or reject this Plan.

(c)     Class 3:  General Unsecured Claims

*Claims in Class*:  Class 3 consists of Allowed General Unsecured Claims.

*Treatment*:  Each holder of an Allowed Class 3 General Unsecured Claim shall, in full satisfaction of such Claim, be paid in Cash its Pro Rata share of the aggregate amount of Sale Proceeds remaining after payment in full of all Administrative Claims, Priority Tax Claims, Priority Claims and Allowed Secured Claims, up to the Allowed Amount of its General Unsecured Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the date upon which such General Unsecured Claim becomes Allowed.

*Impairment and Voting*:  In the event that the aggregate amount of Allowed General Unsecured Claims exceeds the aggregate amount of Sale Proceeds remaining after payment in full of all Administrative Claims, Priority Tax Claims, Priority Claims and Allowed Secured Claims, Class 3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

will be Impaired.  Therefore, Holders of Class 3 Allowed General Unsecured Claims are entitled to vote to accept or reject this Plan.

(d)    Class 4:  Interests

*Claims in Class*:  Class 4 consists of Interests.

*Treatment*:  All Old Equity Interests shall be extinguished of the Effective Date.  In the event that the Sale Proceeds are sufficient to satisfy all Claims in full in Cash on the Effective Date, the Holders of Allowed Class 4 Interests shall receive, in exchange for their Old Equity Interests, an equal number of New Equity Interests.  In the event that the Sale Proceeds are not sufficient to satisfy all Claims in full in Cash on the Effective Date, the Debtors shall be dissolved.

*Impairment and Voting*:  In the event that the Sale Proceeds are insufficient to satisfy all Claims in full in Cash on the Effective Date, Class 4 will be Impaired.  Therefore, the Holders of Class 4 Interests are entitled to vote to accept or reject the Plan.

2.4    Retention of Defenses Regarding Claims.  Except as otherwise provided in this Plan, nothing shall affect Debtors' rights and defenses, both legal and equitable, with respect to any Claims.

2.5    Voting by Impaired Classes.  Classes 3 and 4 may be impaired and are entitled to vote to reject or accept this Plan.

2.6    Disputed, Contingent and Unliquidated Claims and Interests.  Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely Filed by the Bar Date, is not considered Allowed and shall be expunged without further action by Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE III**

**ACCEPTANCE OR REJECTION OF THIS PLAN**

3.1    Acceptance by an Impaired Class.  In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall be deemed to have accepted this Plan if this Plan is accepted by the Holders of at least two-third (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.  In accordance with Bankruptcy Code

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

16

131469166.1

section 1126(d) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Interests shall be deemed to have accepted this Plan if this Plan is accepted by the Holders of at least two-third (2/3) in amount of the Allowed Interests of such Class that have timely and properly voted to accept or reject this Plan.

3.2     Summary of Classes Voting on this Plan.  Only the votes of Holders of Claims and Interests in Classes 3 and 4 will be solicited with respect to this Plan.

3.3     Tabulation of Votes.  The Proponent will tabulate all votes on this Plan for the purpose of determining whether this Plan satisfies Bankruptcy Code sections 1129(a)(8) and (10).

3.4     Nonconsensual Confirmation. If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Bankruptcy Code section 1126(c), the Proponent reserves the right to amend the Plan in accordance with Section 12.1 hereof or undertake to have the Bankruptcy Court confirm the Plan under Bankruptcy Code section 1129(b) or both.

**ARTICLE IV**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

4.1     Rejection of All Executory Contracts and Unexpired Leases.

(a)     Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), of the rejection of all executory contracts and unexpired leases

(b)     Any Creditor whose Claim arises from the rejection of an executory contract or unexpired lease with Debtors shall have the rights of a Holder of a General Unsecured Claim and shall receive the treatment provided to Holders of Class 3 General Unsecured Claims as set forth in this Plan.

4.2     Filing of Rejection Claims.  Any Person or Entity who believes they are entitled to assert a Claim against Debtors by virtue of the rejection of an executory contract or unexpired lease pursuant to this Article IV may File a Claim with the clerk of the Bankruptcy Court not later than twenty (20) days after the Effective Date.  If such Claim is not so Filed, it shall be forever barred from assertion against Debtors and the Reorganized Debtors.  Nothing in this Section 4.3 shall affect the

17

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

right of any party-in-interest to object to any Claim which has been improperly Filed or not Filed on a timely basis.

## ARTICLE V

## PLAN IMPLEMENTATION

5.1     <u>Plan Implementation</u>.

(a)     This Plan shall be implemented in all respects in a manner that is consistent with the terms and conditions of the Operative Documents, and the requirements of section 1123(a) and other applicable provisions of the Bankruptcy Code.

(b)     No later than fourteen (14) days after entry of the Confirmation Order, the Debtor shall file an application with the FCC for authority to transfer the Licenses to the Winning Bidder.

(c)     On the Effective Date, the Estates shall be substantively consolidated.

(d)     On the Effective Date, the Winning Bidder shall transfer the Purchase Price to Debtors in exchange for Debtors' transfer of the Specified Assets, free and clear of all claims, liens and interests, pursuant to Bankruptcy Code sections 363(b) and 363(f).  The Winning Bidder shall be deemed to be a good faith purchaser entitled to the protections of Bankruptcy Code section 363(m).

5.2     <u>Auction for the Assets</u>.

(a)     Persons interested in acquiring the Assets must submit a Qualifying Bid to the Bankruptcy Court, with a copy to the Proponent's counsel and Debtors' counsel, no later than the Initial Bid Deadline.  The Confirmation Hearing will also serve as the hearing to approve the sale of the Assets (or any subset thereof) (the "<u>Sale Hearing</u>").

(b)     The VCY Bid constitutes a Qualifying Bid and VCY constitutes a Qualified Bidder with respect to such Qualifying Bid.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

(c)      Any other bid submitted for the Assets (or any subset thereof) shall include the following: (i) a Cash component of at least $5,727,366.06; (ii) a description of the Assets proposed to be purchased (the "Specified Assets"); (iii) a fully executed definitive purchase agreement substantially in the form of the VCY Sale Agreement (the "Definitive Agreement"), specifying which Assets are included; (iv) evidence that the bidder has the necessary authorizations and approvals to engage in the transaction without the consent of any Entity that has not already been obtained; (v) proof that the bidder is qualified to be a licensee under the Communications Act; and (vi) such other information as the bidder believes will be helpful in demonstrating its financial capability to consummate the proposed transaction.

(d)      In order to be deemed a "Qualifying Bid," the Definitive Agreement must be accompanied by a letter affirmatively: (i) setting forth a full disclosure of the identity of the bidder (and any other person(s) subject to any agreement, arrangement or understanding with such bidder in connection with the bid), the contact information for such bidder and full disclosure of any affiliates or insiders of the Debtors involved in such bid; (ii) stating that the bidder is prepared to purchase the Specified Assets upon the terms and conditions set forth its Definitive Agreement; (iii) summarizing the consideration proposed under the Definitive Agreement (e.g., its Allowed Claim(s), Cash and assumed liabilities); and (iv) stating the aggregate value of the proposed consideration (which statement of value shall not be binding on Debtors or the Bankruptcy Court).  The Bankruptcy Court shall, in its sole discretion, determine whether any particular bid constitutes a Qualified Bid.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

19

(e)    The Confirmation Hearing shall also serve as an auction (the "Auction"), whereby Qualified Bidders may submit subsequent bids for the Assets (or subset thereof), provided that: (i) the initial bid at the Auction must exceed the VCY Bid by at least $250,000.00 in Cash; (ii) each subsequent bid at the Auction must exceed the previous bid by at least $25,000.00; and (iii) any Qualified Bidder that submits a subsequent bid at the Confirmation Hearing in excess of its Qualifying Bid must provide evidence that it has the financial capability to purchase the Specified Assets at the new, higher purchase price as set forth in its subsequent bid.  At the conclusion of the Auction, the Bankruptcy Court shall: (i) determine which bid constitutes the highest and best offer and which bidder constitutes the winning bidder (respectively, the "Winning Bid" and the "Winning Bidder"); and (ii) approve the Winning Bid at the Sale Hearing. Any Qualifying Bidder must make an initial bid in the amount of $100,000 above the VCY Bid in the amount of $5,627,366.06, which takes into account VCY's proof of claim and the $5,000,000.00 opening bid.

(f)    In the event that the Winning Bidder does not close on the purchase of the Specified Assets as set forth in such Winning Bidder's Definitive Agreement, then the Proponent shall next pursue a sale of the Assets to the subsequent highest Qualified Bidders, until such time as the Assets are sold.

5.3    Cancellation of Old Equity Interests.  On the Effective Date, all Old Equity Interests shall be extinguished, canceled, terminated and of no force and effect.

5.4    Issuance of New Equity Interests.  In the event that the Sale Proceeds are sufficient to satisfy all Claims in full in Cash on the Effective Date, one hundred percent (100%) of the Reorganized Debtors New Equity Interests shall be issued to Holders of Interests in Class 4 on the Effective Date, as provided in this Plan.

5.5    Corporate Actions.

(a)    Authority to Execute Operative Documents.  The Confirmation Order shall, among other things, constitute an Order authorizing the managers, officers, and agents of Debtors and Reorganized Debtors to execute and deliver the Operative Documents, as applicable (to the extent they have not already been executed and delivered), without requiring any further corporate authorizations and notwithstanding the requirements under any applicable non-bankruptcy law.

20

5.6     Management.  In the event that the Sale Proceeds are sufficient to satisfy all Claims in full in Cash on the Effective Date, Reorganized Debtors' management will be determined on the Effective Date by the Holders of Class 4 Interests.

5.7     Exemption from Certain Transfer Taxes and Further Transactions.  Pursuant to Bankruptcy Code section 1146(a), the issuance or exchange of any security, or the making or delivery of any instrument of transfer under, in furtherance, or in connection with this Plan, including, but not limited to, any deeds, bills of sale, assignments or other instruments of transfer (including those with respect to the Properties), shall not be subject to any stamp tax, real estate transfer tax or similar tax.

5.8     Final Decree.  Notwithstanding otherwise applicable law, the Chapter 11 Cases shall be closed and a Final Decree entered as soon as possible after the occurrence of the Effective Date.

5.9     Effectuating Documents, Further Transactions.  On and after the Effective Date, the Proponent is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan in the name of and on behalf of Debtors, as applicable, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to this Plan or as required by the FCC under the Communications Act.

**ARTICLE VI**

**PROVISIONS CONCERNING PLAN DISTRIBUTIONS**

6.1     Distributions on Account of Claims Allowed as of the Effective Date.  Distributions under this Plan on account of Claims Allowed on or before the Effective Date shall be made on the Effective Date, or on the first date thereafter as is reasonably practicable.

6.2     Distributions on Account of Claims Allowed After the Effective Date.

        (a)     Payments and Distributions on Disputed Claims.  In the event that there are Disputed Claims requiring adjudication and resolution and such Claims have not become Allowed or Disallowed prior to the Effective Date, then the obligation to satisfy such Claims shall be from the Disputed Claims Reserve.  Except as otherwise provided in this Plan, or Final Order, any Disputed Claim that becomes Allowed after the Effective Date shall be satisfied from the Disputed Claims

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

21

Reserve.

(b)    Special Rules for Distributions to Holders of Disputed Claims.    Except as otherwise provided in this Plan and except as otherwise agreed by the relevant parties:  (i) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order, and (ii) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Claims have been Allowed.

6.3    Manner of Payment Under this Plan.    Distributions of Cash to be made by the Distribution Agent pursuant to this Plan shall be made, at the discretion of the Distribution Agent, by check drawn on the Reorganized Debtors' bank account or by wire transfer from a domestic bank.

6.4    Whole Dollars.    Any other provision of this Plan to the contrary notwithstanding, no payments of cents will be made.  Whenever any payment of cents would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down).

6.5    Escheat.    Holders of Allowed Claims shall have three (3) months from the check date to negotiate Distribution checks issued by the Reorganized Debtors under the terms of this Plan, otherwise payment on such checks may at the Reorganized Debtors' sole discretion be stopped and the funds shall escheat to the Reorganized Debtor.

6.6    Delivery of Distributions.

(a)    Record Date for Distributions.    On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make Distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b)    Distribution Agent.    The Distribution Agent shall make all Distributions required under this Plan.  The Distribution Agent shall be entitled to deduct from the Sale Proceeds

22

131469166.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

an amount equal to the Authorized Receiver Fees prior to making any Distributions, and apply such amount in satisfaction of the Authorized Receiver Fees owed to it as of such date.

(c)    <u>Delivery of Distributions in General</u>.  Except as otherwise provided in this Plan, and notwithstanding any authority to the contrary, Distributions to all Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if Debtors have been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to Debtors or the Reorganized Debtors after the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtors have not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf.  Except as otherwise provided in this Plan, Distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the Distributions in the manner set forth in this Plan.  Absent willful misconduct or gross negligence, Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability on account of any Distributions made under this Plan.

6.7    <u>Returned Distributions</u>.    In the Cases of Distributions to the Holders of Allowed Claims that are returned to the Distribution Agent due to an incorrect or incomplete address, the Distribution Agent shall retain any such returned Distribution in a segregated account established by the Distribution Agent to keep track of any returned Distributions.  Unless the Holder of the Allowed Claim relating to any such returned Distribution contacts the Reorganized Debtors (or its designee) within three (3) months from the date on which such Distribution was returned and provides the Reorganized Debtors (or its designee) with acceptable proof of identity and an accurate address, such Holder shall forfeit all rights thereto, and to any and all future Distributions or rights under this Plan. In such event, the Claim for which such Distribution was issued shall be treated as a Disallowed

23

131469166.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Claim.

6.8    <u>Disputed Distributions</u>.  In the event of any dispute between or among Holders of Claims as to the right to any Holder of a Claim to receive or retain any Distribution to be made to such Holder under this Plan, the Distribution Agent, in lieu of making such Distribution to such Holder, may make it instead into an escrow account for payment as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves.  Any such Holder who fails to raise such dispute by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed Distribution by the Distribution Agent shall be deemed to have forever waived any right to dispute such Distribution or to enjoin, impair or otherwise restrict the use of any such Distribution.

6.9    <u>Setoffs</u>.  The Distribution Agent may, but shall not be required to, set-off against any Distributions to be made pursuant to this Plan to a Holder of an Allowed Claim, Claims of any nature whatsoever that Debtors may have, or may have had, against such Holder that have not been previously released, but neither the failure to do so, nor the allowance of any Claim held by such Holder shall constitute a waiver or release by the Reorganized Debtors of any such Claim Debtors may have, or may have had, against such Holder.

6.10    <u>Withholding Taxes</u>.  The Reorganized Debtors or the Distribution Agent shall be entitled to deduct any applicable federal or state withholding taxes from any payments made with respect to Allowed Claims, as appropriate.

6.11    <u>Allocation of Distributions</u>.  Distributions on account of Allowed Claims shall, for tax purposes, be treated as allocated first to principal, and thereafter to interest only to the extent that the entire principal amount has been recovered, if applicable.

**ARTICLE VII**

**<u>PROCEDURES FOR RESOLVING DISPUTED CLAIMS</u>**

7.1    <u>Objection to and Resolution of Claims</u>.  Except as to applications for allowance of compensation and reimbursement of expenses under Bankruptcy Code sections 330, 331 and/or 503, in the event that the Sale Proceeds are sufficient to satisfy all Claims in full in Cash on the Effective Date, the Reorganized Debtors shall, on and after the Effective Date: (a) have the exclusive right to

24

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

make and file objections to Claims; (b) have the authority to compromise, settle, otherwise resolve or withdraw any objections to any Claims and compromise, settle or otherwise resolve Disputed Claims without approval of the Bankruptcy Court; and (c) unless otherwise ordered by the Bankruptcy Court, file all objections to Claims that are the subject of proofs of Claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses with respect to Professional Fee Claims) and serve such objections upon the Holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one (1) year after the Effective Date or such later date as may be approved by the Bankruptcy Court.  In the event that the Sale Proceeds are insufficient to satisfy all Claims in full in Cash on the Effective Date, then the Distribution Agent shall have all of the aforementioned rights.

7.2    Payments.  Payments and Distributions to each Holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provision of this Plan with respect to the Class of Creditors to which the respective Holder of an Allowed Claim belongs. Without limiting the generality of the foregoing, Debtors, Reorganized Debtors or the Distribution Agent shall not be required to object to any Claim irrespective of whether such Claim is Allowed or Disputed, whether in whole or in part.

7.3    Contingent Claims.  Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan.  The Holder of a contingent Claim will only be entitled to a Distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

7.4    Personal Injury Claims.  All objections to Claims Filed for personal injury tort damages, if any, shall be determined by the United States District Court for the District of Nevada.

7.5    Estimation of Claims.  Debtors, the Reorganized Debtors or the Distribution Agent shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section Bankruptcy Code 502(c), regardless of whether Debtors or the Reorganized Debtors previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at

25

any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on the amount of such Claim, Debtors, the Reorganized Debtors or the Distribution Agent may elect to pursue any supplemental proceedings to object to the allowance of such Claim.

7.6     Reserve for Disputed Claims. On and after the Effective Date, the Distribution Agent shall hold in a segregated reserve account (the "Disputed Claims Reserve"), Cash in an aggregate amount sufficient to make Distributions to each Holder of a Disputed Claim at the time distributions are made pursuant to the Plan in the amount that such Holder would have been entitled to receive if such Claim had been an Allowed Claim on the Effective Date. Nothing contained herein shall be deemed to entitle the Holder of a Disputed Claim to post-Petition Date or post-Effective Date interest on such Claim unless otherwise explicitly provided under this Plan. Any funds remaining in the Disputed Claims Reserve after all Distributions on account of Allowed Claims have been made shall be promptly returned to the Reorganized Debtors or, in the event that the Debtors have been dissolved, distributed to the Holders of Allowed Class 4 Interests.

**ARTICLE VIII**

**RESERVATION OF RIGHTS PENDING CONFIRMATION AND EFFECTIVE DATE**

8.1     Withdrawal of Plan; Rights if Plan Not Confirmed or Effective Date Does Not Occur. The Proponent reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Proponent revokes or withdraws this Plan, or if Confirmation of this Plan or the Effective Date does not ultimately occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), rejection of executory contracts or unexpired leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests by or against the Debtors or any Person or Entity; (b)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

26

131469166.1

prejudice in any manner the rights of the Proponent or any other Person or Entity in any further proceedings involving the Debtor; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Proponent or any other Person or Entity.

8.2    No Admissions or Waiver.  Without limiting the generality of any similar provision in this Plan, notwithstanding anything in the Plan to the contrary, nothing contained in the Plan, Plan Supplement or in the Disclosure Statement shall be deemed an admission by the Proponent or any Person or Entity with respect to any matter set forth herein.  If Confirmation of this Plan or the Effective Date does not ultimately occur, no statement contained in the Plan, Plan Supplement or in the Disclosure Statement may be used or relied on in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 Cases against the Proponent.  Without in any way limiting the provisions set forth in Section 8.1, the Proponent reserves any and all of its rights as against all Persons and Entities in the event Confirmation of this Plan or the Effective Date does not ultimately occur.

8.3    Term of Bankruptcy Injunction or Stays.  All injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date unless the Bankruptcy Court shall order otherwise.

## ARTICLE IX

## CONDITIONS TO EFFECTIVE DATE

9.1    Conditions to Occurrence of Effective Date.  Each of the following are conditions to be met on or before the Effective Date, which conditions must be satisfied or waived in writing by the Proponent:

(a)    The Confirmation Order shall be entered by the Bankruptcy Court and shall have become a Final Order;

(b)    The Sale Order shall be entered by the Bankruptcy Court and shall have become a Final Order;

(c)    The FCC shall have consented to the assignment of the Licenses to the Winning Bidder;

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

27

131469166.1

(d)     The Winning Bidder shall pay the Purchase Price to the Distribution Agent;

(e)     Debtors shall transfer and assign the Specified Assets to the Winning Bidder free and clear of all claims, liens and interests; and

(f)     Any outstanding US Trustee Fees shall have been paid in full.

The Proponent, in its sole discretion, may waive the Final Order condition in subparts (a) and/or (b) above at any time from and after the Confirmation Date.  In that event, Debtors and the Distribution Agent will be entitled to render any or all performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced condition was not waived; including, but not limited to, the right to perform under any circumstances which would moot any appeal, review or other challenge of any kind to the Confirmation Order or the Sale Order if the Confirmation Order or the Sale Order is not stayed pending such appeal, review or other challenge.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1    <u>Retention of Jurisdiction</u>.  Except to the extent otherwise expressly set forth herein, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Cases following the Confirmation Date for the following purposes, it being expressly intended that such retention of jurisdiction shall in all cases hereafter set forth, extend to any actions or proceedings commenced prior or subsequent to the Confirmation Date and/or the Effective Date whether by Debtors, the Distribution Agent, or the parties specified herein:

(a)     To hear and determine any objections to the allowance of Claims, including any objections by the Reorganized Debtors or the Distribution Agent with respect to any Claims which have been reinstated or assumed in accordance with the terms of this Plan;

(b)     To determine any and all applications for compensation for any Professionals and similar fees to the extent made specifically subject to a hearing under this Plan and applicable provisions of the Bankruptcy Code;

(c)     To modify this Plan pursuant to Bankruptcy Code section 1127 or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

(d)     To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of this Plan;

(e)     To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Bankruptcy Court entered in the Chapter 11 Cases;

(f)     To adjudicate all controversies concerning the classification of any Claim or Interest;

(g)     To liquidate damages in connection with any disputed, contingent or unliquidated Claim;

(h)     To adjudicate all Claims to a security or ownership interest in any of the Assets, or in any proceeds thereof,

(i)     To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by Debtors;

(j)     To determine all questions and disputes regarding recovery of and entitlement to any property of Debtors, or in any proceeds thereof;

(k)     To adjudicate all Causes of Action with respect to which Debtors and/or the Reorganized Debtors are a party, whether or not such Claim or controversy is raised or filed before or after the Effective Date;

(l)     To determine issues and disputes concerning entitlement to Distributions to be made under and pursuant to this Plan;

(m)     To enter any order, including injunctions, necessary to enforce the title, rights and powers of Debtors, the Reorganized Debtors, the Distribution Agent or the rights of any Person or Entity hereunder and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary or appropriate;

(n)     To determine such other matters as may be provided for in the Confirmation Order, the Sale Order and this Plan, or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(o)     To enter a Final Decree closing the Chapter 11 Cases;

(p)     To enforce the provisions of any Administrative Claim Bar Date entered by the

29

131469166.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Bankruptcy Court;

(q)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof; and

(r)     Without limiting the generality of any of the foregoing, to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 345, 505, and 1146.

10.2    Consent.  Unless a timely objection is filed to this Plan and approved as part of the Confirmation Order, to the extent the Court has retained jurisdiction over any matter described in Section 10.1 above, all parties who have participated in this Bankruptcy Case, including, without limitation, any party who has filed a Proof of Claim, whether or not such Proof of Claim has been withdrawn, shall be deemed to have consented to the Bankruptcy Court's jurisdiction of any matter retained pursuant to this Plan.

10.3    Jurisdiction Unaffected.  The occurrence of the Effective Date and/or the entry of a Final Decree shall not divest the Bankruptcy Court of any jurisdiction otherwise retained under this Article X or the Confirmation Order.

10.4    Failure of Bankruptcy Court To Exercise Jurisdiction.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising under, arising in or related to the Bankruptcy Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131469166.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**ARTICLE XI**

**EFFECT OF CONFIRMATION OF PLAN**

11.1    <u>Discharge</u>.

(a)    IN CONJUNCTION WITH BANKRUPTCY CODE SECTION 1141, EXCEPT AS OTHERWISE PROVIDED FOR HEREIN, THE RIGHTS AFFORDED HEREIN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE AND RELEASE OF CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER AGAINST THE DEBTORS, AND OF THE ASSETS OR PROPERTY OF THE ESTATES, INCLUDING ANY INTEREST ACCRUED ON SUCH CLAIMS FROM AND AFTER THE PETITION DATE.

(b)    WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS PROVIDED IN THE CONFIRMATION ORDER, CONFIRMATION DISCHARGES THE DEBTORS FROM ALL CLAIMS, OR OTHER DEBTS THAT AROSE BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN SECTIONS 502(G), 502(H) OR 502(I) OF THE BANKRUPTCY CODE, WHETHER OR NOT:  (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(A); (Y) A CLAIM BASED ON SUCH DEBT IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502 OF THE BANKRUPTCY CODE; OR (Z) THE HOLDER OF A CLAIM BASED ON SUCH DEBT HAS ACCEPTED THE PLAN.

(c)    EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, (I) ON THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTORS WHICH AROSE BEFORE THE EFFECTIVE DATE SHALL BE SATISFIED, DISCHARGED AND RELEASED IN FULL, (II) ON THE EFFECTIVE DATE, THE RIGHTS AND INTERESTS OF ALL HOLDERS OF OLD EQUITY INTERESTS SHALL BE TERMINATED, CANCELED AND OF NO FORCE AND EFFECT, AND (III) ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE DISTRIBUTION AGENT, THE PLAN PROPONENT, THEIR SUCCESSORS, OR ANY OF THEIR ASSETS OR PROPERTIES, ANY

31

1   OTHER OR FURTHER CLAIMS OR INTERESTS BASED UPON ANY ACT OR OMISSION,

2   TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED

3   BEFORE THE EFFECTIVE DATE, AS WELL AS ANY DEBT OF A KIND SPECIFIED IN

4   BANKRUPTCY CODE SECTIONS 502(G), 502(H), OR 502(I), IRRESPECTIVE OF WHETHER

5   (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO

6   HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(a), (Y) SUCH

7   CLAIM IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502, OR (Z) THE HOLDER

8   OF THE CLAIM HAS ACCEPTED THE PLAN.

9        11.2    Binding Effect of Plan/Injunction.

10       (a)    UPON THE EFFECTIVE DATE, BANKRUPTCY CODE SECTION 1141

11  SHALL BECOME APPLICABLE WITH RESPECT TO THE PLAN AND THE PLAN SHALL BE

12  BINDING ON ALL PARTIES TO THE FULLEST EXTENT PERMITTED BY BANKRUPTCY

13  CODE SECTION 1141(A).

14       (b)    UPON THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL

15  BE PERMANENTLY ENJOINED BY THE PLAN FROM (I) COMMENCING OR CONTINUING

16  ANY ACTION, EMPLOYING ANY PROCESS, ASSERTING OR UNDERTAKING AN ACT TO

17  COLLECT, RECOVER, OR OFFSET, DIRECTLY OR INDIRECTLY, ANY CLAIM, RIGHTS,

18  CAUSES OF ACTION, LIABILITIES, OR INTERESTS IN OR AGAINST ANY PROPERTY

19  DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN, OR TRANSFERRED TO THE

20  REORGANIZED DEBTORS OR DISTRIBUTION AGENT, BASED UPON ANY ACT,

21  OMISSION, TRANSACTION, OR OTHER ACTIVITY THAT OCCURRED BEFORE THE

22  EFFECTIVE DATE, (II) CREATING, PERFECTING OR ENFORCING ANY LIEN OR

23  ENCUMBRANCE AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED

24  UNDER THE PLAN OTHER THAN AS PERMITTED UNDER THE PLAN, AND (III) WITHOUT

25  LIMITING THE GENERALITY OF THE FOREGOING, ASSERTING ANY CLAIMS AGAINST

26  THE REORGANIZED DEBTORS OR THE DISTRIBUTION AGENT BASED ON SUCCESSOR

27  LIABILITY OR SIMILAR OR RELATED THEORY, EXCEPT TO THE EXTENT A PERSON OR

28  ENTITY HOLDS AN ALLOWED CLAIM UNDER THE PLAN AND IS ENTITLED TO A

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

32

131469166.1

DISTRIBUTION AND/OR LIEN UNDER THE PLAN IN ACCORDANCE WITH ITS TERMS, AND TO ENFORCE ITS RIGHTS TO DISTRIBUTION UNDER THE PLAN.

(c)     ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF ANY CLAIM AGAINST OR INTEREST IN DEBTORS IS PERMANENTLY ENJOINED FROM TAKING OR PARTICIPATING IN ANY ACTION THAT WOULD INTERFERE OR OTHERWISE HINDER DEBTORS, THE REORGANIZED DEBTORS OR THE DISTRIBUTION AGENT FROM IMPLEMENTING THIS PLAN, THE CONFIRMATION ORDER OR ANY OPERATIVE DOCUMENTS IN ACCORDANCE WITH THE TERMS THEREOF.

11.3    Exculpation.  The Proponent and the Distribution Agent shall not have or incur any liability to any Holder of a Claim against or Interest in Debtors, or any other party-in-interest, or any of their Representatives, or any of their successors or assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Cases, the pursuit of confirmation of this Plan, or the consummation of this Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct.  The Proponent and the Distribution Agent shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under this Plan or in the context of the Chapter 11 Cases.  No Holder of a Claim against or Interest in Debtors, or any other party-in-interest, including their respective Representatives, shall have any right of action against the Proponent or the Distribution Agent for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan, except to the extent arising from fraud, gross negligence or willful misconduct.

11.4    Injunction.  All Holders of Claims against or Interests in Debtors and any other parties-in-interest, along with any of their Representatives and any of their successors or assigns, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Proponent or the Distribution Agent in respect of any potential liability for which exculpation is granted pursuant to Section 11.3 of this Plan, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award,

33

decree or order against the Proponent or the Distribution Agent in respect of any potential liability for which exculpation is granted pursuant to Section 11.3 of this Plan, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Proponent or the Distribution Agent in respect of any potential liability for which exculpation is granted pursuant to Section 11.3 of this Plan, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against the Proponent or the Distribution Agent or against the property or interests in property of the Proponent or the Distribution Agent, in respect of any potential liability for which exculpation is granted pursuant to Section 11.3 of this Plan.

(a)     Injunction Against Interference With Plan.  Upon the Effective Date, all Holders of Claims against or Interests in Debtors and their respective Representatives and any of their successors or assigns shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

11.5     Termination of Debt Instruments.  On the Effective Date, all instruments evidencing indebtedness of Debtors held by Holders of Claims that are Impaired by this Plan or have been paid in full pursuant thereto shall be deemed canceled as against Debtors and the Reorganized Debtor.

11.6     Judgments Void.  Any judgment obtained before or after the Effective Date in any court other than the Bankruptcy Court shall be null and void as a determination of liability of the Debtors or the Reorganized Debtors with respect to any debt treated by the Plan.

11.7     Revesting of Assets in Reorganized Debtors.  In the event that the Sale Proceeds are sufficient to satisfy all Claims in full in Cash on the Effective Date: (a) except as otherwise expressly provided herein or in the Confirmation Order, on the Effective Date, but retroactive to the Confirmation Date, without any further action, the Reorganized Debtors will be vested with all of the property of the Estates, wherever situated, free and clear of all Claims, Liens and Old Equity Interests (except for Liens provided or authorized pursuant to this Plan); (b) on and after the Effective Date, the Reorganized Debtors shall be vested with all of the property of the Estates, wherever situated, free and clear of any Claims based on any form of successor liability or similar or related theory of liability; and (c) on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of their assets free of any restrictions imposed by the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

34

131469166.1

Bankruptcy Code and the Bankruptcy Rules and without supervision or approval by the Bankruptcy Court, other than the obligations set forth in this Plan, or the Confirmation Order.

11.8    <u>Preservation of Causes of Action</u>.  Pursuant to Bankruptcy Code section 1123(b), in the event that the Sale Proceeds are sufficient to satisfy all Claims in full in Cash on the Effective Date, Debtors as the Reorganized Debtors shall retain and reserve the right to enforce all rights to commence and pursue Causes of Action whether arising before or after the Petition Date, and whether pending as of or Filed after the Effective Date, in any court or other tribunal.  In the event that the Sale Proceeds are insufficient to satisfy all Claims in full in Cash on the Effective Date, then the Distribution Agent shall have all of the aforementioned rights.

11.9    <u>Maintenance of Administrative Claim Status Post Discharge</u>.  Notwithstanding any discharge granted to the Debtors, Allowed Administrative Claims shall maintain their administrative priority status under Bankruptcy Code section 507(a)(2) until paid in full.

11.10    <u>No Limitation on Effect of Confirmation</u>.  Nothing contained in the Plan or the Disclosure Statement will limit, waive or restrict in any way the effect of Confirmation as set forth in Bankruptcy Code section 1141.  Confirmation will bind the Debtors, all Creditors, Interest Holders and other parties in interest to the provisions of the Plan, whether or not the Claim or Interest of such Creditor or Interest Holder is Impaired under the Plan and whether or not such Creditor or Interest Holder has accepted the Plan and whether or not a proof of Claim or Interest has been filed or deemed to have been filed under Bankruptcy Code sections 501 or 1111(a), or such Claim or Interest is allowed under Bankruptcy Code section 502.

## ARTICLE XII

## <u>MISCELLANEOUS PROVISIONS</u>

12.1    <u>Modification of this Plan</u>.

(a)    The Proponent may alter, amend or modify the Plan at any time before the entry of the Confirmation Order, provided that the Plan, as altered, amended or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123, and the Propenent shall have complied with Bankruptcy Code section 1125.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Proponent modifies the Plan before Confirmation.

35

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131469166.1

(b)    A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder. Prior to the Effective Date, the Proponent may make appropriate technical non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of Holders of Claims or Interests.

(c)    The Proponent reserves the right, in accordance with the Bankruptcy Code, to amend or modify this Plan before or after the Confirmation Date, including to make any amendments or modifications to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

12.2    <u>Notices</u>.  Except as otherwise set forth in Section 12.3 below, all notices, requests, elections or demands in connection with this Plan, including any change of address of any Holder of a Claim for the purposes of receiving any Distributions under this Plan, shall be in writing and shall be delivered personally or by facsimile, electronic mail or overnight courier (confirmed by first class mail or express mail) or mailed by first class mail.  Such notice shall be deemed to have been given when received or, if mailed by first class mail, seven (7) days after the date of mailing, or if express mailed, the next Business Day following the date of mailing and addressed to the Proponent and its counsel as follows:

> W. Lawrence Patrick
> Managing Partner
> Patrick Communications
> and Legend Communications
> 199 Carter View Drive
> Cody, WY  82414
> Telephone: 410-707-4602
> Email:  larry@patcomm.com
>
> with a copy to:
>
> Fox Rothschild LLP
> 1980 Festival Plaza Drive, Suite 700
> Las Vegas, NV 89135
> Attn:  Brett A. Axelrod
> Email:  baxelrod@foxrothschild.com

36

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

131469166.1

Facsimile:  702-597-5503

All notices and requests to Holders of Claims of any Class shall be sent to them at their known address.  Any Holder of a Claim of any Class may designate in writing any other address for purposes of this Section 12.2, which designation shall be effective upon receipt.

12.3    <u>Limitation of Notice</u>.  The Proponent shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of such matters, with no requirement for any additional or further notice:

(a)    Notice of Entry of Confirmation Order.  Notice of the entry of the Confirmation Order shall be sufficient if mailed to all known Holders of Claims (which have not become Disallowed Claims) and Interests within five (5) Business Days of the entry of Confirmation Order.

(b)    Post-Confirmation Date Service List - Additional Persons Entitled to Notice. Except as set forth in Section 12.2 hereof, from and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process Filed with the Bankruptcy Court prior to such date shall no longer be effective, and no further notices, other than Notice of Confirmation Order, shall be required to be sent to such parties, unless such parties File a new notice of appearance and demand for service of process dated subsequent to the Effective Date, which subsequent notice and demand must be Filed with the Bankruptcy Court and served upon the Persons and Entities listed in Section 12.2 above.

12.4    <u>Headings</u>.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

12.5    <u>Exhibits</u>.    All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan, as if set forth in full in this Plan.  Except as otherwise provided in this Plan, such exhibits and documents included in the Plan Supplement shall be Filed with the Bankruptcy Court on or before the Plan Supplement Filing Date.  After the exhibits and documents are Filed, copies of such exhibits and documents shall have been available upon written request to Debtors' counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.nvb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy

37

131469166.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Court, the non-exhibit or non-document portion of this Plan shall control.

12.6    <u>Nonseverability of Plan Provisions</u>.  If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, at the request of the Proponent and subject to the consent of any party adversely affected thereby, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to this Plan and may not be deleted or modified without the consent of the Proponent and any other Person or Entity affected by such provision; and (c) nonseverable and mutually dependent.

12.7    <u>Waiver or Estoppel</u>.  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with Debtors, its counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

12.8    <u>Conflicts</u>.  To the extent that any provision of the Disclosure Statement, the Plan Supplement (other than any amendments to the Plan), or any other order (other than the Confirmation Order and the Sale Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any inconsistent with any provision of this Plan, this Plan shall govern and control, unless expressly set forth herein.

12.9    <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

38

131469166.1

12.10  <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or any other Federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada.

12.11  <u>Successors and Assigns</u>.  The rights and obligations of any Person or Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Entity.

12.12  <u>Good Faith</u>.  Confirmation of the Plan will constitute a finding that the Plan has been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code.

12.13  <u>Post Confirmation Conversion or Dismissal</u>.  A creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Cases under Bankruptcy Code section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Bankruptcy Code section 1112(b).  If the Bankruptcy Court orders the Chapter 11 Cases converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Estates, and that has not been disbursed or distributed pursuant to the Plan, will revest in the chapter 7 estates, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during the Chapter 11 Cases.  In addition, any Allowed Administrative Claims which are not paid on the Effective Date shall continue to be entitled to administrative priority, under Bankruptcy Code section 507(a)(1) in any such subsequent Chapter 7 Cases to which this Cases is converted.

12.14  <u>Post Confirmation Quarterly Fees</u>.  US Trustee Fees continue to be payable to the Office of the United States Trustee post-confirmation until such time as the Cases is converted, dismissed, or closed pursuant to Final Decree.

12.15  <u>Entire Agreement</u>.  The Plan, as described herein, the Disclosure Statement and exhibits thereto, and the Plan Supplement set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as in expressly provided for herein or as may hereafter be agreed by the parties in writing.

39

131469166.1

DATED this ____ day of March, 2022.


By: _____
        W. Lawrence Patrick

Respectfully submitted by:

**FOX ROTHSCHILD LLP**

By____*s/Brett A. Axelrod*____
    BRETT A. AXELROD
    Nevada Bar No. 16023
    ZACHARY WILLIAMS, ESQ.
    Nevada Bar No. 16023
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    *Counsel for W. Lawrence Patrick*



FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

40

131469166.1