1  STEPHEN R. HARRIS, ESQ.
2  Nevada Bar No. 001463
   HARRIS LAW PRACTICE LLC
3  6151 Lakeside Drive, Suite 2100
   Reno, Nevada 89511
4  Telephone:  (775) 786-7600
   E-Mail: steve@harrislawreno.com
5  Attorney for Jointly Administered Debtors

6

7              UNITED STATES BANKRUPTCY COURT

8              FOR THE DISTRICT OF NEVADA

9                      * * * * *

10

11  IN RE:                          Case No. 21-14978-abl
                                    (Chapter 11)
12
    SILVER STATE BROADCASTING, LLC   Jointly Administered with:
13
    ☐ AFFECTS THIS DEBTOR.
14                                   | 21-14979-abl | Golden State Broadcasting, LLC |
    ☐ AFFECTS GOLDEN STATE          | 21-14980-abl | Major Market Radio LLC |
15     BROADCASTING, LLC
16  ☐ AFFECTS MAJOR MARKET RADIO     Hearing Date:   TBD
       LLC                          Hearing Time:   TBD
17
18  ☒ AFFECTS ALL DEBTORS.

19  _____/

20

21       **DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION**

22

23  Dated:          September 28, 2022

24  Filed by:       STEPHEN R. HARRIS, ESQ.
25                  HARRIS LAW PRACTICE LLC
                    6151 Lakeside Drive, Suite 2100
26                  Reno, Nevada 89511
                    Telephone: (775) 786-7600
27
28                  Attorney for Jointly Administered Debtors

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

1

SILVER STATE BROADCASTING, LLC, GOLDEN STATE BROADCASTING, LLC, and MAJOR MARKET RADIO LLC, Jointly Administered Debtors and Debtors-in-Possession herein ("Debtors"), pursuant to 11 U.S.C. § 1121(a), hereby proposes the following **DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION**, by and through their undersigned attorney, and requests confirmation thereof pursuant to the provisions of 11 U.S.C. § 1129(a) and (b).

## I.

## <u>INTRODUCTION</u>

This DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION is proposed by SILVER STATE BROADCASTING, LLC, GOLDEN STATE BROADCASTING, LLC, and MAJOR MARKET RADIO LLC, Jointly Administered Debtors and Debtors-in-Possession herein, for the resolution of the Debtors' outstanding creditor obligations. DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION (the "PLAN") is offered pursuant to Chapter 11 of Title 11 of the United States Code and should be read in conjunction with the proposed DEBTORS' THIRD AMENDED DISCLOSURE STATEMENT ("DISCLOSURE STATEMENT") concerning these Debtors that will be approved by the United States Bankruptcy Court.

Along with this proposed Plan, creditors will receive a Disclosure Statement which has been approved by the United States Bankruptcy Court. The Court has determined that the Disclosure Statement is adequate to enable creditors to make an informed judgment on whether to accept or reject the Plan. The Disclosure Statement fully sets forth the Debtors' background information, an analysis of the Debtors' financial position and a summary of this Plan. The Debtors have not authorized any statement or representation, such as the value of their property or the amount of their creditors' claims, which is not contained in the Court approved Disclosure Statement.

Information as to the procedures relating to approval, confirmation and consummation of the Plan may be obtained from STEPHEN R. HARRIS, ESQ. of the law firm HARRIS LAW PRACTICE LLC, attorneys for the Debtors, upon written request.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

2

THE PROVISIONS OF THE CONFIRMED PLAN WILL LEGALLY BIND THE DEBTORS AND THEIR CREDITORS, REGARDLESS OF WHETHER THEY HAVE FILED CLAIMS OR HAVE ACCEPTED THE PLAN. Creditors should thoroughly review both the Plan and the Disclosure Statement before determining whether to accept or reject the proposed Plan.

## II.
## DEFINITIONS
## SCOPE OF DEFINITIONS

For the purposes of this DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION, all capitalized terms and otherwise defined terms shall have the meanings assigned to them in this Article II. Whenever the context requires, such terms shall include the plural number as well as the singular and the female and/or masculine gender as well as the neuter.

1. "ADMINISTRATIVE CLAIM." This term shall refer to and mean every claim that is entitled to allowance under Section 503(b) of the Bankruptcy Code or otherwise entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code, arising prior to the Effective Date, including, without limitation: **(a)** any actual, necessary expense preserving the Estate, including, without limitation, expenses necessary or appropriate to carry out, facilitate, or effectuate this Plan; **(b)** any amount required to be paid under Section 365(b) of the Bankruptcy Code in connection with the curing of defaults under executory contracts or unexpired leases; and **(c)** all allowances, including professional fees and costs, approved by the Bankruptcy Court for the Receiver and his professionals, and the Debtors' professionals and members of and professionals employed by the Unsecured Creditors' Committee, if any.

2. "ALLOWED ADMINISTRATIVE CLAIM" shall mean an Administrative Claim: **(a)** as to which no objection has been filed or, if an objection has been filed, such objection has been resolved by the allowance of such Administrative Claim by a Final Order; **(b)** which requires payment in the ordinary course of the business of the Debtor and as to which there is no order of the Bankruptcy Court in effect which prohibits any such payment; or **(c)** which requires payment pursuant to a Final Order.

3. "ALLOWED CLAIM" or "ALLOWED INTEREST" shall mean claims against or interest in the Debtors to the extent that--

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

3

(a) Proof of claim or interest was–

(I)  timely filed;

(ii)  deemed filed, if such claim or interest appears in the schedules filed herein, unless such claim or interest is scheduled as disputed, contingent, or unliquidated; or

(iii)  late filed–

(I)  with leave of the Bankruptcy Court; or

(II)  without objection by the Debtor-in-Possession within a time fixed by the Bankruptcy Court; and

(b) (I)  the Debtors-in-Possession do not file an objection within a time fixed by the Bankruptcy Court; or

(ii)  the claim or interest is allowed by a Final Order; or

(iii)  the claim or interest is allowed under this PLAN.

4.    "ALLOWED PRIORITY CLAIM" shall mean a Priority Claim which is an Allowed Claim.

5.    "ALLOWED SECURED CLAIM" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtors have an interest, or which is subject to setoff under Section 553 of the Code, to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtors' interest in such property or to the extent of the amount subject to such set-off, as the case may be.

6.    "ALLOWED SUBORDINATED CLAIM" shall mean an Allowed Claim arising from any Indebtedness evidenced by or related to the claim of a Subordinated Creditor.

7.    "DEFINITION OF THE BALLOT" shall mean the Ballot(s) for accepting or rejecting this Plan in a form(s) approved by the Bankruptcy Court.

8.    "BANKRUPTCY CODE" as used herein refers to Title I of Public Law No. 95-598, as codified in Title 11 of the United States Code, and all amendments thereto.

9.    "BANKRUPTCY COURT" (or "COURT") shall mean the United States

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

4

Bankruptcy Court, for the District of Nevada (Reno, Nevada), in which the Debtors' Chapter 11 case is pending, such other court as has jurisdiction in its Chapter 11 case, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

10.    "U.S. TRUSTEE" or "UST" or "OUST" shall mean Tracy Hope Davis, the United States Trustee for Region 17, or any successor United States Trustee as of the relevant time.

11.    "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, including any amendments thereto, which are in effect before and as of the Confirmation Date, and thereafter during the Reorganization Cases, to the extent that they are consistent with vested rights under this Plan and the Confirmation Order.

12.    "BUSINESS DAY" shall mean any day except Saturday, Sunday, or a day on which commercial banks in Washoe County, Nevada, are authorized or required by law to close.

13.    "CLAIM" shall mean:  **(a)** any right to payment from the Debtors or their Estates, including an Administrative Claim, whether or not such right is reduced to judgment, or is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; and **(b)** any right to an equitable remedy for breach of performance of such breach gives rise to a right to payment from the Debtors or their Estates, including an Administrative Claim, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, secured or unsecured.

14.    "CLAIMANT" shall mean the holder of an Allowed Claim or an Allowed Administrative Claim.

15.    "CLASS" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article IV.

16.    "COMMENCEMENT DATE" (or "PETITION DATE") shall mean the date the Debtors filed their Petition for Relief [October 19, 2021], which date shall be utilized to determine the cessation of interest on certain claims and the date of commencement of the rights of certain creditors to make claim for administrative expenses and allowances, among other rights that are determined by relation to said date.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

17.    "CONFIRMATION" shall mean the entry of the Confirmation Order by the United States Bankruptcy Court.

18.    "CONFIRMATION DATE" shall mean the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

19.    "CONFIRMATION ORDER" shall mean the Order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code and approving the transactions contemplated herein, which shall be in form and substance acceptable to the proponents.

20.    "CREDITOR" shall mean any entity that has a claim against the Debtors, which claim arose to or before the order for relief concerning the Debtors, including any claim that may arise under 11 U.S.C. Sections 502(f), 502(g), 502(h) and 502(I).

21.    "DEBTORS" shall mean SILVER STATE BROADCASTING, LLC, GOLDEN STATE BROADCASTING, LLC, and MAJOR MARKET RADIO LLC, Jointly Administered Debtors and Debtors-in-Possession herein.

22.    "DEBTORS' ASSETS" shall mean all assets and property of every kind, nature and description of which the Debtors or their Estates have any right, title or interest, including but not limited to: real property, personal property, including but not limited to bank deposits, instruments, credit of instruments, certificates of deposit and drafts; all executory contracts which are not and have not been rejected; all choses in action; and all claims, demands, causes of action, damages and obligations of any nature whatsoever, known or unknown in law or in equity, including, without limitation, claims or causes of action arising under the Bankruptcy Code (including, without limitation, Sections 362, 510, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code), or under any Nevada statute or regulation.

23.    "DEBTORS' PROFESSIONALS" shall mean  STEPHEN R. HARRIS, ESQ., of the law firm of HARRIS LAW PRACTICE LLC, as Debtors' general bankruptcy counsel; and all other professionals retained and employed by the Debtors.

24.    "DISCLOSURE STATEMENT" means the written DEBTORS' THIRD AMENDED DISCLOSURE STATEMENT, as may be amended, with respect to this Plan which

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

6

is approved by the Bankruptcy Court under Section 1125 of the Bankruptcy Code.

25. "DISPUTED CLAIM" shall mean every claim that is not an Allowed Claim or an Allowed Administrative Claim or to which the Debtors or the Unsecured Creditors' Committee or Party-in-Interest files an objection before the deadline for objection set forth in this Plan or an operative order of the Bankruptcy Court.

26. "EFFECTIVE DATE of the PLAN and NOTICE of EFFECTIVE DATE" shall mean thirty (30) calendar days after all of the following have occurred (so long as they remain in effect): **(a)** this Plan has been confirmed pursuant to the Confirmation Order and the Confirmation Order remains in full force and effect without material modification thereof; **(b)** there is not in effect any stay, injunction or restraining order or any other order of any kind which has been issued by a Court of competent jurisdiction or other governmental entity staying, restricting or prohibiting the effectuation of this Plan; **(c)** there is not in effect any statute, rule, regulation or order enacted, promulgated or entered which is applicable to the effectuation of this Plan of which results in the consequences referred to in subsection (b) immediately above; and **(d)** a sale and transfer to a purchaser of one of the Debtors' FM broadcasting licenses has been approved on a final basis by the Federal Communications Commission ("FCC"). The Effective Date must occur within one (1) calendar year after entry of a Confirmation Order confirming this Plan, except that if a sale of KREV FM or another of the Debtors' FCC licenses is pending at the one-year mark with the required sale and transfer applications on file with the FCC, the Effective Date shall automatically extend beyond one (1) year from the Confirmation Order so that the new Effective Date shall remain as thirty (30) calendar days after FCC final approval of the pending sale and transfer. If no sale of KREV FM or another of the Debtors' FCC licenses is pending on or before one year from entry of the Confirmation Order, then the Effective Date shall be one year plus thirty (30) calendar days after entry of the Confirmation Order.

Within two business days of the Effective Date, the Reorganized Debtor(s) or any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date with the Bankruptcy Court indicating that the conditions precedent in this section have occurred, identifying the Effective Date and indicating

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

1    that it has occurred.

2        27.    "EQUITY HOLDINGS" shall mean the Debtors' equity members' interests

3    retained in the PLAN, after payment of all allowed creditors' claims.

4        28.    "ESTATE" shall mean the Estate created in the Reorganization Case pursuant to

5    Section 541 of the Bankruptcy Code.

6        29.    "EXPIRATION DATE" shall mean the last date determined by the Bankruptcy

7    Court for the casting of Ballots, which date shall be acceptable to the proponents.

8        30.    "FINAL ORDER" shall mean a final order, judgment or other decree of the

9    Bankruptcy Court or other Court of competent jurisdiction which has not been vacated, reversed,

10    saved, modified or amended **(a)** as to which **(i)** the time to appeal or seek review or rehearing has

11    expired and as to which no appeal, petition for certiorari, request for review or rehearing is

12    pending, or **(ii)** if appeal, review, rehearing or certiorari of the order has been sought, the order

13    has been affirmed or the request for review, rehearing or certiorari has been denied, the time to

14    seek a further appeal, review, rehearing or certiorari has expired, and **(b)** as a result of which such

15    orders shall become final and not appealable in accordance with applicable law.

16        31.    "LIEN" shall mean a charge or encumbrance against or interest in property of the

17    Debtors or the Estate, including Debtors' Property, to secure the payment of a debt or performance

18    of an obligation, and includes any right of setoff under Section 553 of the Bankruptcy Code.

19        32.    "PERSON" includes individual, partnership, corporation, association, joint stock

20    company, joint venture, estate, trust, unincorporated organization, any governmental unit, or

21    political subdivision thereof, or other entity, and all of the respective heirs, personal

22    representatives, successors and assigns.

23        33.    "PETITION DATE" shall mean October 19, 2021, the date on which a Petition

24    for Relief under Chapter 11 of the Bankruptcy Code was filed by the Debtors commencing their

25    reorganization cases.

26        34.    "PLAN" means the DEBTORS' SECOND AMENDED PLAN OF

27    REORGANIZATION, in the form filed by the proponents and any amendments or modifications

28    thereof or supplements thereto filed by the proponent and permitted by Article X hereof or the

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

8

Bankruptcy Court.

35.    "PRIORITY CLAIM" shall mean a claim entitled to priority under Section 507(a)(2)-(8) of the Bankruptcy Code.

36.    "PROPONENT" shall mean the Debtors acting as the proponents of this Plan.

37.    "*PRO RATA* SHARE" shall mean the proportion that an Allowed Claim in a particular class bears to the aggregate amount of all Allowed Claims in such class.

38.    "PURCHASER" shall mean the transferee(s) of a voluntary transfer(s).

39.    "RECORD DATE" shall mean, for purposes of voting, the date of entry by the Bankruptcy Court of the Order Approving the Disclosure Statement and, for purposes of distribution, the Confirmation Date.

40.    "REORGANIZATION CASES" shall mean the Debtors' cases under Chapter 11 of the Bankruptcy Code, which are currently pending before the Bankruptcy Court as Case Nos. 21-14978-abl, 21-14979-abl, and 21-14980-abl, and jointly administered under the lead case 21-14978-abl.

41.    "REORGANIZED DEBTORS" shall mean SILVER STATE BROADCASTING, LLC, GOLDEN STATE BROADCASTING, LLC, and MAJOR MARKET RADIO LLC, Nevada limited liability companies, on and after the Effective Date of the PLAN.

42.    "SECURED CLAIM" shall mean any claim secured by a lien which is valid, perfected, enforceable, and not avoidable.  If the value of the creditors' interest and the Estate's interest in the property securing a claim is not sufficient to satisfy such claim, then in accordance with Section 506 of the Bankruptcy Code and subject to Section 1111(b) of the Bankruptcy Code, such claim shall be deemed to be an unsecured claim under this Plan to the extent of any insufficiency in the value of the creditors' interest.

43.    "UNSECURED CLAIM" shall mean any claim which is not a Secured Claim, Priority Claim, Administrative Claim, or an unclassified claim or the kind described in Section 507(a)(7) of the Bankruptcy Code.

44.    "UNSECURED CREDITORS' COMMITTEE" means the Unsecured Creditors' Committee appointed by the Bankruptcy Court in this Reorganization Case, if any, as modified

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

9

by the addition or removal of members from time to time by the Bankruptcy Court. A term used in this PLAN that is not defined in this PLAN but that is used in the Bankruptcy Code has the meaning assigned to the term.

### III. ADMINISTRATIVE AND UNCLASSIFIED CLAIMS

### ADMINISTRATIVE CLAIMS:

All costs and expenses of administration in this case, including any actual and necessary expenses of preserving or liquidating the assets of the Debtors' estate, all allowances, including professional fees and costs, approved by the Court, and any other costs and expenses entitled to priority pursuant to 11 U.S.C. § 507(a)(1) of the Bankruptcy Code and 28 U.S.C. § 1930, shall be paid in full on or before the Effective Date[1] of the Plan. The holders of these claims include the attorneys and accountants for the Debtors, unpaid post-petition accounts payable (if any), and all fees to be paid to the Office of the United States Trustee. The estimated administrative expenses for the Debtors' reorganization proceeding are collectively $715,000 to $1,295,000, and consist of the following:

| | |
|---|---|
| $0.00 | Trustees fees that are owed the U.S. Trustee's Office for the applicable quarters of 2021 and 2022 prior the Confirmation Date [payment is anticipated to be made when due]; |
| $75,000 $250,000 per Debtor | Estimated administrative Professional Legal Fees for the to Debtors' general bankruptcy attorney, Stephen R. Harris, Esq., of Harris Law Practice LLC, calculated as of the Confirmation Date; |
| $30,000 to $40,000 per Debtor | Estimated professional fees for the Debtors' special FCC counsel, Wood & Maines, PC, calculated as of the Confirmation Date; |
| $0.00 | Estimated administrative claims of Edward Stolz and Royce International Broadcasting for purported post-petition loans made to Debtors in the ordinary course of business under 11 U.S.C. § 364(a), calculated as of the Confirmation Date. By way of explanation, for the $0.00 estimate on these potential administrative expense loans, Edward Stolz and Royce International Broadcasting have and will continue to contribute monies to |

---

[1] Effective Date is defined in Section II(26) of the Plan and is estimated to occur one year plus thirty (30) calendar days after entry of the Confirmation Order subject to certain possible extensions.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

the Debtors, as needed, so that each of the Debtors can operate its radio station(s). Therefore, these contributions to each of the Debtors pre-confirmation and post-confirmation, will not be deemed made with administrative claim status, but as contributions, with no repayment obligations by the Debtor(s) receiving the contributions;

$400,000    Estimated administrative Professional Legal Fees owing Carl M. Hébert, Esq. based on contingency fee agreement of 33-1/3% of the total amount of any settlement, arbitration award, verdict or judgment obtained in the Malpractice Case against Jeffrey Whitehead, Esq.;

$0.00    Estimated administrative expense owing to C&E Haas for San Francisco tower site Agreement with Golden State [all post-petition expenses are expected to be paid in full in the ordinary course of business prior to the Confirmation Date].

$25,000    Estimated administrative fees and expenses for former federal Receiver for preparation of accounting required under 11 U.S.C. § 543 (the Receiver has alleged that he should have an allowed administrative claim but to date he has failed to file an application for allowance of an administrative claim.); and

$0.00    Post-petition accounts payable with [all post-petition administrative expenses are expected to be paid in full in the ordinary course of business prior to the Confirmation Date].

Professional fees, both legal and accounting, shall continue to accrue up through and subsequent to the Confirmation Date, with final amounts owing subject to Court approval.

<u>UNCLASSIFIED PRIORITY CLAIMS</u>:

1. **Description**. The Debtors' priority claims are as follows:

| Name | Scheduled Amount | Proof of Claim Amount | Allowed Priority Amount |
|------|------------------|-----------------------|-------------------------|
|      |                  |                       |                         |

Pursuant to the Debtors' Plan, the treatment and disposition of the unclassified priority claims, now totaling $0, will be as follows: Any claim discrepancy will be resolved by the claim objection process, with the stipulated amount and/or Court decreed amount owing used to calculate that

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

11

particular creditors' allowed claim being paid by the Debtors.   All unclassified priority creditors shall be paid 100% of their allowed claim amount, with statutory interest thereon, over a one (1) year time period commencing on the Effective Date of the Plan.  The payments shall be made monthly, equally amortized over twelve (12) months, with statutory interest accrued thereon, but without any penalties. At the option of the Debtors, any allowed priority claims may be paid on a shortened time schedule from the one (1) year described hereinabove. In the event the Debtors fail to make the payments as set forth hereinabove, the allowed priority creditors, if any, shall have the right to proceed with any administrative remedies available to them, fifteen (15) days after written notice of default has been given to the Debtors and their attorney, Stephen R. Harris, Esq.

## IV. CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, claims against the estate have been divided into the following classifications for purposes of administration and voting on the Plan:

1.    **CLASS 1 CLAIM [ALLOWED UNSECURED CLAIM OF BELLAIRE TOWERS HOMEOWNERS ASSOCIATION AGAINST DEBTOR GOLDEN STATE]:** This Class consists of the allowed unsecured claim of Bellaire Towers Homeowners Association in the amount of $364,003.32 as of February 7, 2022, arising from a judgment entered against Golden State on July 22, 2014, and recorded with the California Secretary of State on November 21, 2014.

2.    **CLASS 2A CLAIMS [DISPUTED UNSECURED CLAIMS AGAINST ALL DEBTORS]:** This class consists of disputed unsecured claims collectively against all three Debtors to the extent such disputed unsecured claims may be proven and allowed by the Court. The Class 2A Claims, calculated as of the Petition Date and filed in each of the Debtor cases, are detailed as follows:

| Creditor Claims: | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| W. Lawrence Patrick | $0.00 | $1,248,348.09 | $0.00 |

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

| | Scheduled | Proof of Claim | Allowed |
|---|---|---|---|
| VCY America, Inc. | $0.00 | $ 627,366.06 | $0.00 |
| Total | $0.00 | $1,875,714.15 | $0.00 |

Debtors have objected to each of these creditor claims. The Court held a preliminary hearing on August 24, 2022, at 1:30 p.m., at which time it scheduled future evidentiary hearings to be conducted on January 12, 2023, at 9:30 a.m., and January 23, 2023, at 9:30 a.m.

3.    **CLASS 2B CLAIMS [DISPUTED UNSECURED CLAIMS AGAINST DEBTOR SILVER STATE]**: This class consists of disputed unsecured claims against Silver State to the extent such disputed unsecured claims may be proven and allowed by the Court. The Class 2B Claims, calculated as of the Petition Date, are detailed as follows:

| **Creditor Claims:** | **Scheduled Amount** | **Proof of Claim Amount** | **Allowed Amount** |
|---|---|---|---|
| Dan Alpert | $0.00 | $29,102.50 | $0.00 |
| Crown Castle MU LLC | $0.00 | $1,227,872.98 | $0.00 |
| DIG MCC, LLC* | $0.00 | $69,570.22 | $0.00 |
| Clark Hill PLC (filed as Peter A. Jackson) | $0.00 | $10,075.09 | $0.00 |
| Naylor & Braster | $0.00 | $18,304.20 | $0.000 |
| Whitehead & Burnett | $0.00 | $1,000,000.00 | $0.00 |
| Total | $0.00 | $2,354,924.99 | $0.00 |

*This Proof of Claim was resolved by Stipulation between the parties. *See* DE 143.

4.    **CLASS 2C CLAIM [ALLOWED UNSECURED CLAIM AGAINST DEBTOR SILVER STATE]**: This class consists of allowed unsecured claim against Silver State in the amount of $37,644.73, as of the Petition Date. The Class 2C Claim, calculated as of the Petition Date, is detailed as follows:

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

13

| Creditor Claims: | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| Mincin Law, PLLC | $0.00 | $37,644.73 | $37,644.73 |
| Total | $0.00 | $37,644.73 | $37,644.73 |

5.    **CLASS 2D CLAIMS [DISPUTED UNSECURED CLAIMS AGAINST DEBTOR GOLDEN STATE]**: This class consists of disputed unsecured claims against Golden State to the extent such disputed unsecured claims may be proven and allowed by the Court. The Class 2D Claims, calculated as of the Petition Date, are detailed as follows:

| Creditor Claims: | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| C & E Haas Development Company, LLC | $0.00 | $226,901.37 | $0.00 |
| Total | $0.00 | $226,901.37 | $0.00 |

6.    **CLASS 3 EQUITY INTERESTS OF DEBTORS**:  This Class 3 consists of the member's equity interests in the Debtors specifically: Royce International Broadcasting, Inc. as to a 100% membership interest in each Debtor.

### V. TREATMENT OF CLASSES

1.    **CLASS 1 CLAIMS [ALLOWED UNSECURED CLAIM OF BELLAIRE TOWERS HOMEOWNERS ASSOCIATION**: The Class 1 Allowed unsecured claim in the total amount of $364,003.32, calculated as of the Petition Date, shall be paid in full, with statutory California default interest of 10% per annum from the Petition Date until paid by Golden State on or before the Effective Date of the Plan. Accordingly, the Class 1 Allowed claim is <u>unimpaired</u> under the PLAN.

2.    **CLASS 2A CLAIMS [DISPUTED UNSECURED CLAIMS AGAINST ALL DEBTORS]:**  The Class 2A Disputed Unsecured Claims, estimated in the total amount of $0.00 shall be resolved through the formal claim objection process or by agreement of the parties. Any

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

14

allowed claims that result shall be paid in full by all three Debtors equally, with interest at the contract rate if one exists, or if no contract rate, at the Nevada legal rate pursuant to NRS 17.130(2) of prime plus 2% per annum from the Petition Date until paid on the later of the Effective Date, or within five business days after any order allowing the claims becomes final and unappealable. Accordingly, the Class 2A Allowed unsecured claims are <u>unimpaired</u> under the PLAN.

     **3.**     **CLASS 2B CLAIMS [DISPUTED UNSECURED CLAIMS AGAINST DEBTOR SILVER STATE]:** The Class 2B Disputed Unsecured Claims, estimated in the total amount of $0.00 shall be resolved through the formal claim objection process or by agreement of the parties. Any allowed claims that result shall be paid in full by Silver State, with interest at the contract rate if one exists, or if no contract rate, at the Nevada legal rate pursuant to NRS 17.130(2) of prime plus 2% per annum from the Petition Date until paid on the later of the Effective Date, or within five business days after any order allowing the claims becomes final and unappealable. Accordingly, the Class 2B Allowed unsecured claims are <u>unimpaired</u> under the PLAN.

     **4.**     **CLASS 2C CLAIMS [ALLOWED UNSECURED CLAIM AGAINST DEBTOR SILVER STATE]:** The Class 2C Allowed Unsecured Claim, estimated in the total amount of $37,644.73 shall be paid in full on the Effective Date by Debtor Silver State, with interest at the contract rate if one exists, or if no contract rate, at the Nevada legal rate pursuant to NRS 17.130(2) of prime plus 2% per annum from the Petition Date until paid. Accordingly, the Class 2C Allowed claim is <u>unimpaired</u> under the PLAN.

     **5.**     **CLASS 2D CLAIMS [DISPUTED UNSECURED CLAIMS AGAINST DEBTOR GOLDEN STATE]:** The Class 2D Disputed Unsecured Claims, estimated in the total amount of $0.00 shall be resolved through the formal claim objection process or by agreement of the parties. Any allowed claims that result shall be paid in full by Golden State, with interest at the contract rate if one exists, or if no contract rate, at the Nevada legal rate pursuant to NRS 17.130(2) of prime plus 2% per annum from the Petition Date, until paid, on the later of the Effective Date, or within five business days after any order allowing the claims becomes final and unappealable. Accordingly, the Class 2D disputed unsecured claims are <u>unimpaired</u> under the PLAN.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

15

**6.    CLASS 3 EQUITY INTERESTS OF DEBTOR:**  The equity interests of the members of the Debtors existing on the Petition Date shall remain unchanged. Accordingly, the Class 3 equity interests of the Debtors are <u>unimpaired</u> under the Plan.

**VI.**

**TREATMENT OF EXECUTORY CONTRACTS, NON-EXECUTORY CONTRACTS, UNEXPIRED LEASES AND DISPUTED CLAIMS**

**1.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

<u>Reservation of Rights</u>. The Debtors reserve the right to assume or reject, pursuant to §365 of the Code, any executory contract or unexpired lease not assumed or rejected prior to the Confirmation Date. All executory contracts and unexpired leases not specifically assumed or rejected as of the Confirmation Date or as to which an application to reject shall not be pending on the Confirmation Date shall be deemed rejected by the Debtors. Debtors hereby assume or rejects their leases and executory contracts as follows:

VCY entered into a pre-petition Local Marketing and Programming Agreement ("LMA") with the Receiver to manage the Debtors' Radio Stations. The Receiver also entered into an asset purchase agreement with VCY for the sale of the Radio Stations. The Receiver was not appointed as receiver over the Debtor LLC entities, only the Radio Stations themselves. Thus, Debtors contend that the Receiver was not their agent, and they are not liable under the LMA or purchase agreement. What is more, VCY unilaterally abandoned its obligations under the LMA on or about February 1, 2022. Nonetheless, out of an abundance of caution, the Debtors hereby reject any agreements, known or unknown, that the Receiver entered into with VCY, as well as rejecting any other executory contracts or leases entered into by the Receiver which may be known or unknown to the Debtors.

On October 23, 2013, Debtor Golden State entered into a Transmitter Site Use Agreement with C& E Haas Development Company, LLC ("Haas") which granted Golden State a license to use a transmitter site located at 1 Bayview Park Road, San Francisco, CA as Golden State's auxiliary transmitter site for radio broadcast station KREV. The terms of this agreement are confidential. Golden State does not believe this agreement is an executory contract which requires

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

16

assumption under 11 U.S.C. § 365, but Haas asserts this agreement is a nonresidential real property lease or an executory contract. Haas also alleges that Golden State was required to pay post-petition rent under the Haas agreement commencing May 2022 after VCY stopped paying for the tower site. Conversely, Golden State alleges that the agreement provides for rent abatement during the time that Haas prevented Golden State from gaining access to the site and because Golden State could not use the site after it gained access in August 2022 and discovered its broadcasting equipment was damaged through no fault of its own by either the Receiver, VCY, Haas, or their agents. Notwithstanding Golden State's disagreement with Haas, Golden State is commencing payments to Haas under the agreement at the contractual monthly rate, with full reservation and without waiver of its rights under the agreement.

Finally, to the extent the Haas agreement may be deemed a lease or executory contract, Golden State hereby assumes the agreement through the Plan.

**2.   DISPUTED CLAIMS.**

Through its Disbursing Agent, the Debtors will only make distributions according to the Plan and when claims become allowed claims as such terms are defined in the Plan. There are currently claims pending against the Debtors, either filed or scheduled, which are or will become Disputed Claims. As to some Disputed Claims, the Debtors dispute only the classification of the claims asserted by the holder. With respect to other Disputed Claims, the Debtors accept the classification asserted by the holder but disputes the amount of the claim alleged by such holder. In some cases, the Debtors dispute both the asserted classification and the alleged amount. In addition, the Debtors and other parties in interest may object to certain other claims based upon equitable or contractual subordination pursuant to § 510 of the Bankruptcy Code. Specifically, such subordination claims may be asserted against any person or entity buying claim(s) for speculation and profit in Debtors' bankruptcy case. No distribution will be made with respect to any such Disputed Claims unless and until they become allowed claims.

Claims Objections. Objections to Claims shall be filed with the Court and served upon each holder of a Claim to which objection is made no later than sixty (60) days after the Confirmation Date.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

<u>Payment Procedures</u>. Payments to the holder of a Claim to which objection has been made that ultimately becomes an Allowed Claim shall be made in accordance with the provision of the PLAN with respect to the Class of Creditors to which the holder of such an Allowed Claim belongs.  However, interest, if any, on any funds reserved for a contested claim shall inure to the benefit of the holder of such an Allowed Claim.

<u>Avoidance Actions</u>. To the extent appropriate, the Debtors shall have the right to bring any and all avoidance actions, the same to be commenced with 90 days of the Confirmation date. Proceeds of all avoidance actions shall vest in the Debtor pursuant to 11 U.S.C. §1141.

**VII.**

**STATEMENT OF IMPAIRMENT**

There are no impaired classes under the Plan.

**VIII.**

**MEANS FOR EXECUTION OF THE PLAN**

**1.    Funding of Proposed Plan Payments**

The Debtors shall fund the proposed Plan payments through ongoing Radio Station Group revenues, proceeds from the sale of one or more of the Debtors' Radio Station FCC licenses and related radio station assets in a sale under 11 U.S.C. § 363(b) and (f), or funds provided by Edward Stolz and his related Trusts. Edward Stolz and/or his related Trusts has assets that he is willing to contribute to the Debtors that exceed $2,000,000 and are detailed hereinafter in Section XI(2). If claims are paid from the sale of Golden State's KREV FM license, then Golden State will advance intercompany unsecured loans to the other Debtors so that they can pay their allowed claims due under the Plan. If claims are paid from the sale of one of the other Debtors' assets, then that Debtor will advance intercompany unsecured loans to the other Debtors so that they can pay their allowed claims due under the Plan. Alternatively, the Debtor whose assets are sold  will make a distribution to its parent, Royce International Broadcasting, which in turn will make capital contributions to the other Debtors to fund their Plan payments. Debtors will consult with their tax accountant to determine which method is most appropriate for accounting purposes. But because all Debtors are solvent, their creditors are not prejudiced by distribution of excess proceeds to

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

18

fund the other Debtors' Plan payments. Although the Debtors may fund the Plan through ongoing Radio Station Group revenues as net revenues may become available, Debtors expect that all or a majority of the money to fund the Plan will come from the sale of one or more of the Radio Station assets or Edward Stolz and his related Trusts.

Despite the Receiver's actions in dismantling the Debtors' operations, the Debtors have returned two of the Radio Stations back to the airwaves, with the third Radio Station, KREV FM, to resume operations soon. The relaunch of operations has required the Debtors to resolve lease and utilities obligations that accrued under the Receiver but were not paid by Receiver; acquisition of new broadcast equipment to replace that which was dissipated, vandalized, or damaged under the Receiver's stewardship; and development of a fully featured program service, computer servers, and remote access technologies and related infrastructure. KRCK/ Mecca was restored to air and has been broadcasting since February 22, 2022. KFRH/ North Las Vegas was restored to air and has been broadcasting since April 20, 2022. KREV/ Alameda is being re-tooled and re-equipped and Golden State anticipates restoration of 24-hour broadcasting on or about October 15, 2022.

The Radio Stations are now (or in the case of KREV, soon will be) programming with desirable formats, intended to attract affluent and diverse audiences and broad acceptance by the commercial advertising and media communities. These formats are close to those built over time by Debtor's Radio Stations prior to Receiver's decimation of those formats by supplanting that programming with VCY's 24-hour religious solicitations. Debtors' Radio Stations are now programming News/Talk programming, with broad acceptance and appeal. With the first appearance of critical rating data, Debtors will recruit advertising salespeople to market the stations to the advertising community. Currently, the firm of Broadcast Investment Analysts identifies annual radio market advertising expenditures of approximately $214,000,000 per year in San Francisco, $146,000,000 in Las Vegas and $11,000,000 in Palm Springs. Silver State's KFRH FM in Las Vegas has commenced receiving advertising sales and estimates it has generated recent ad revenues of approximately $18,000. This sum is more than three times the revenue the Receiver generated for three months for all three Radio Stations from his pre-petition

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

19

1  LMA arrangement with VCY.

2      Because the Radio Stations were in the Receiver's control during the prepetition period

3  after July 20, 2020, and through the Petition Date, the Debtors do not have any financial

4  statements to show recent historical Radio Station revenues. However, the Debtors have prepared

5  projected operating budgets for the Radio Station Group, which are attached hereto as **Exhibit**

6  **A.**[2] The Debtors estimate they will have sufficient revenues to cover their operating expenses, but

7  that may not be the case because they must re-establish their regular operations, ratings, and

8  advertising revenues after the Receiver dismantled everything. Thus, Edward Stolz will provide

9  interim financing, as needed, in the form of contributions to each Debtor with no repayment

10  obligation. In addition to Edward Stolz's real property assets discussed below, Mr. Stolz also

11  owns publicly traded stock valued at approximately $1,000,000 which he can liquidate as needed

12  to cover the Debtors' short-term cash needs.

13      In order to effectuate the sale of KREV FM, Golden State has retained the services of a

14  nationally prominent broadcast media broker, Robert W. Mahlman ("Mahlman"). Golden State

15  and Mahlman have entered into an Exclusive Station Brokerage and Marketing Agreement for an

16  irrevocable period of ninety days, with the option of three additional 90-day renewal periods. The

17  brokerage agreement provides for a sales commission of 5% of the first three million in purchase

18  price, plus 2% of the remaining purchase price, or under an LMA, 5% of any monthly or quarterly

19  LMA fee, which will be applied to reduction of the brokerage fee. Golden State filed its

20  Application with the Court to employ Mahlman under 11 U.S.C. § 327(a), and that Application

21  was approved on June 15, 2022 (*See* DE 240). If the Debtors decide to sell one of their other FCC

22  licenses instead of KREV, they will employ Mr. Mahlman or another qualified broker under

23  similar customary terms to those currently in effect for the brokerage agreement with Golden

24  State for KREV FM.

25      While KREV is licensed to the community of Alameda, California, its transmitting

26  facilities are located in San Francisco, which is the nation's number four radio market by size and

---

27  [2]  The operating budgets are projections based on the Debtors' best estimates once they establish full
28  commercial operations for their Radio Stations. Debtors' actual post-petition revenues and expenses are
disclosed in their Monthly Operating Reports on file with the Court. Creditors can review the Monthly
Operating Reports on the Court's PACER docket or may request copies from Debtors' counsel.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

revenue. From its antenna location on the "Candlestick" tower, KREV reaches millions of listeners both on the Peninsula and across San Francisco Bay in Oakland, Berkeley, and other East Bay communities. KREV is expected to command a sales price of $15,000,000.00, which is commensurate with the market's three most recent (pre-Pandemic) radio broadcast transactions, namely, $25,000,000, $100,000,000, and $143,000,000, respectively. The market is dominated by large station group owners, and very few independently owned radio stations remain in the same market other than KREV. This causes KREV to be qualified as the only non-consolidated entity available for sale in the Nielsen rated number 4 market.

Alternatively, Golden State is also seeking to enter into an agreement with Mahlman by which to offer a Local Marketing Agreement ("LMA") for the sale of 24-hour programming time over KREV/ San Francisco. It is Golden State's understanding that various San Francisco FM stations have offered to make their airtime available under LMA arrangements for between $200,000 and $300,000 per month, per station, as was reportedly the case in 2019 with stations KOIT and KMVQ. Additionally, Golden State also intends to enter into an agreement with Mahlman by which to offer KREV's HD (high-definition digital) subchannel for lease. Currently, San Francisco FM HD subchannels generally lease for between $10,000 and $20,000 per month.

Mr. Mahlman previously provided an opinion of value in January 2021 for KREV of $15,000,000 which was filed with this Court in a declaration attached as Exhibit C to the *Debtors' Opposition to Emergency Motion to Excuse Turnover in Favor of Receiver and to Dismiss/Abstain, or, alternatively, for Stay Relief and/or Conversion. See* DE 80 Ex. C.

Mr. Mahlman likewise estimated the value of Silver State's KFRH FM in Las Vegas at $15,000,000 based on the only two comparable sales of Las Vegas full-market radio broadcast stations in the past two decades for $25,000,000 and $15,700,000.

The Debtors, through Mr. Mahlman, have identified five or six potential interested buyers for KREV or another of their Radio Stations. Discussions with interested buyers have recently progressed in a positive manner after this Court denied the Receiver's last motion seeking to convert these cases to Chapter 7. However, the identities of potential buyers are confidential until a formal purchase offer is presented and filed with the Court. Confidentiality is necessary because

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

21

1  the Receiver is a direct competitor of Mr. Mahlman and because the Receiver has repeatedly tried
2  to frustrate the Debtors' reorganization efforts.

3      **2.**    **Personal Assets of Edward Stolz and/or Related Trusts Available to Fund**
4          **Plan**

5      Edward Stolz and his related trusts and general partnership own certain improved and
6  unimproved real properties located in the State of California, which may be sold so that the net
7  sales proceeds exceeding $2,000,000 are available to contribute and fund the Debtors' post-
8  petition business operations and to pay allowed creditors' claims, if necessary. Debtors' counsel
9  has reviewed the relevant trust and general partnership documents on behalf of the Debtors and
10  has determined that Mr. Stolz has authority to sell the real properties and use the proceeds at his
11  discretion. The real properties available for sale are described as follows:

12      <u>3738 Robertson Avenue, Sacramento, California 95821 ("Property #1").</u>

13      Attached to the Disclosure Statement as Exhibit "B-1", is a broker's opinion of
14  value from Debby Naiman, of Security Pacific Real Estate, opining that the
15  improved real property residence located at 3738 Robertson Avenue, Sacramento,
16  California, should sell for approximately $600,000. Property #1 is held in the name
17  of Edward R. Stolz and Irene M. Stolz Revocable Trust, Edward R. Stolz, II,
18  Trustee, with the Trustee having the 100% right to sell Property #1 and use the
19  proceeds at any time. There is no outstanding loan recorded against Property #1.
20  Property #1 is located in a very desirable, highly sought after, neighborhood called
21  Del Paso Country Club Estates, and is an approximate 1,764 square foot house
22  with three (3) bedrooms, two (2) baths, built in swimming pool and located on .39
23  acres.

24      <u>1 Toscana Way West, Rancho Mirage, California 92270 ("Property #2").</u>

25      Attached to the Disclosure Statement as Exhibit "B-2", is a broker's opinion of
26  value from Debby Naiman, of Security Pacific Real Estate, opining that the
27  improved real property residence located at 1 Toscana Way West, Rancho Mirage,
28  California, should sell for approximately $1,300,000. Property #2 is held in the

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

22

name of Dominic Rose Trust, Edward R. Stolz as Successor Trustee, with the Trustee having the 100% right to sell Property #2 and use the proceeds at any time. Property #2 is encumbered by an approximate $500,000 loan recorded against it, with net available proceeds of approximately $800,000. Property #2 is located in a beautiful, private, gated community known as La Toscana, in a high prestige, highly sought after, Rancho Mirage location. Property #2 is 4,159 square feet living space, includes a separate casita with a kitchenette, living area and full bathroom. The main home has four (4) bedrooms, four (4) full bathrooms and one-half bath.

40 acres of unimproved real property located at Hawk Trail, Shingle Springs, California ("Property #3").

Attached to the Disclosure Statement as Exhibit "B-3", is a broker's opinion of value from Debby Naiman, of Security Pacific Real Estate, opining that the unimproved 40 acres located at Hawk Trail, Shingle Springs, California, should sell for approximately $650,000. Property #3 is held in the name of Zenith, GP, a California general partnership, and Edward R. Stolz has the right to sell Property #3 at any time, given his 100% ownership interest in Zenith, GP. Property #3 has no loan recorded against it, and Property #3 consists of 40.08 acres of prime open land situated in El Dorado County, California and is located at the end of South Shingle Road, and is surrounded by over $1,000,000 plus homes, horse ranch estates and gated communities.

3369 Patterson Way, El Dorado Hills, California 95672 ("Property #4").

Attached to the Disclosure Statement as Exhibit "B-4", is a broker's opinion of value from Debby Naiman, of Security Pacific Real Estate, opining that the improved real property residence located at 3369 Patterson Way, El Dorado Hills, California, should sell for approximately $1,190,000. Property #4 is held in the name of Tours Irene/Ravenswood Investments Revocable Trust, Edward R. Stolz, II, Trustee, with the Trustee having the 100% right to sell Property #4 at any time.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

23

There is no outstanding loan recorded against Property #4. Property #4 is a unique custom home, which is one of the first architectural designs in the neighborhood, built in 1976. Property #4 is built on a great boulder, piers and has many levels inside and outside of the home and has three (3) bedrooms.

All of the real properties listed and described above are currently being offered for sale.

**3.    Post-Confirmation Default**

In the event the Debtors become delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtors and their counsel. The Debtors shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default. In the event such default remains uncured, the affected creditor or creditors shall be entitled to foreclose upon any collateral (if a secured creditor) or take other appropriate action. The Debtors shall have the right to bring the issue of default before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtors to cure the default in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Bankruptcy Code or dismissal of the same is in the best interest of creditors.

**4.    Professionals' Fees**

After the Confirmation Date of the Plan, the Debtors and any other professional, such as Debtors' general bankruptcy counsel, any special purpose counsel, or accountants, will not be required to apply to the Court for compensation for services rendered post-confirmation. Post-confirmation compensation of the Debtors' professionals shall be at their normal hourly rate(s) and customary cost charges.

**5.    Distribution**

All cash proceeds shall be distributed in the foregoing manner except amounts necessary to pay disputed claims against the Debtors in the event they are allowed, which shall be held as a reserve and paid as such claims are determined by agreement between the parties or as are judicially determined.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

24

6.    **Taxes**

Unless otherwise provided in the Plan, all taxes are paid current and there are no tax liens on real or personal property owned by the Debtors. The Debtors are not aware of any material tax consequences from the proposed Plan that would affect them because they are limited liability companies. All tax benefits and liabilities flow through to the Debtors' equity holders.

## IX.

## MISCELLANEOUS PROVISIONS

1.    <u>THE DISBURSING AGENT</u>.

The Debtors are ultimately responsible for making all distributions pursuant to the Plan. To assist it in discharging those responsibilities, Debtors shall use their Debtor-in-Possession bank accounts for all funds which are to be distributed to creditors under this Plan.

2.    <u>UNCLAIMED DISTRIBUTIONS</u>.

Any property to be distributed pursuant to the Plan, if not claimed by the distributee within one (1) year after the payment, shall be returned to the Debtors.

3.    <u>EFFECT OF CONFIRMATION</u>.

Upon confirmation and performance of the Plan, the Debtors shall be discharged from any debt that arose before the date of Confirmation, and any debt of a kind specified in §§ 502(g), 502(h), or 502(I) of the Bankruptcy Code, to the full extent permitted by Bankruptcy Code § 1141(d). In addition, pending execution of the Plan, and unless the Court has otherwise expressly ordered or the Plan otherwise expressly provides, all creditors and parties in interest shall be stayed from proceeding against the Debtors' assets including stay of default proceedings.

4.    <u>EXCULPATION</u>.

Neither the Unsecured Creditors' Committee, if any, nor Debtors nor any of their respective members, officers, directors, employees, representatives, professionals or agents, will have or incur any liability to any Creditor for any act or omission in connection with or arising out of the Reorganization Case, including, without limitation, prosecuting confirmation of this Plan, consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for breach of fiduciary duty, gross negligence, willful misconduct or fraud.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

25

5.    NOTICE.  Any notice described in or required by the terms of this PLAN, or the Code and Rules shall be deemed to have been properly given when actually received or if mailed, five days after the date of mailing, if such shall have been sent by certified mail, return receipt requested, and if sent to:

The Debtors, addressed to:
STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511

6.    HEADINGS.  the headings used herein are inserted for convenience only and neither constitute a portion of the PLAN nor in any manner affect the construction of the provisions of the PLAN.

7.    SEVERABILITY.  Should any provision of this Plan be determined to be unenforceable following the Effective date, such determination shall in no way limit or affect the enforceability of any and all other provisions of this Plan.

8.    GOVERNING LAW.  Except to the extent that the Code or other applicable federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed in accordance with the laws of the State of Nevada.

9.    SUCCESSORS AND ASSIGNS.  The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such person.

10.    DESIGNATION OF MANAGERS.  Edward Stolz and Debby Naiman shall continue to serve as the Co-Managers of the Debtors and shall be initially compensated with a gross salary of $0 from the Debtors, although they may be paid a salary by the Debtors' parent company, Royce International Broadcasting, Inc.

11.    POST CONFIRMATION REPORTING AND PAYMENT OF UST FEES.

Post confirmation, the Reorganized Debtor(s) shall continue to file monthly operating reports through the Effective Date. After the Effective Date, the Reorganized Debtor(s) and any other authorized parties who have been charged administering the confirmed plan shall file post

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

26

1  confirmation reports in the manner prescribed by 11 U.S.C. § 1106(a)(7) and Fed. R. Bankr. P.

2  2015(a)(5) for every calendar quarter through the date the Court enters a final decree closing these

3  cases, an order dismissing the case(s), or an order converting the case(s) to another chapter in

4  bankruptcy.

5      Until the Effective Date of a confirmed plan, the Debtor(s) shall timely pay the U.S.

6  Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6). After the Effective

7  Date, the Reorganized Debtor(s) and any other authorized parties who have been charged with

8  administering the confirmed plan shall be responsible for the timely payment of all fees incurred

9  after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6) until the Court enters a final decree

10 closing the case(s), an order dismissing the case(s), or an order converting the case(s) to another

11 chapter in bankruptcy.

12     The resumption of the filing of post confirmation reports and the payment of fees shall

13 occur if an order has been entered on the docket that vacates any of the above orders or reopens

14 the case(s) for a reason other than that which is purely administrative.

15                                    **X.**

16                    **MODIFICATION OF THE PLAN**

17     The Debtors will have the right to modify this Plan in accordance with the provisions of

18 the Bankruptcy Code and Chapter 11.  In this regard:

19     1.    In accordance with Section 1127(a) of the Bankruptcy Code and Chapter 11, 11

20 U.S.C. § 1127(a), modification(s) of this Plan may be proposed in writing by the Debtors at any

21 time(s) before confirmation, provided that the Plan, as thus modified, meets the requirements of

22 Sections 1122 and 1123 of the Bankruptcy Code and Chapter 11, 11 U.S.C. §§ 1122 and 1123,

23 and the Debtor complies with Section 1125 of the Bankruptcy Code and Chapter 11, 11 U.S.C.

24 § 1125.

25     2.    In accordance with Section 1127(b) of the Bankruptcy Code and Chapter 11, this

26 Plan also may be modified by the Debtors at any time(s) after confirmation and before substantial

27 consummation of this Plan, provided that the Plan, as thus modified, meets the requirements of

28 Sections 1122 and 1123 of the Bankruptcy Code as more fully set forth in Section 1127.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

27

3.    Any holder(s) of a claim that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Court for doing so, such holder(s) changes their previous acceptance(s) or rejection(s).

4.    Every modification of this Plan will supersede the previous version(s) of the Plan as and whenever each such modification is effective as provided in this Article X.   When superseded, the previous version(s) of the Plan will be in the nature of withdrawn or rejected settlement proposal(s), and will be null, void, and unusable by the Debtor or any other party for any purpose(s) whatsoever with respect to any of the contents of such version(s) of the Plan.

## XI.

## DISCHARGE AND STAY CONTINUATION

Confirmation and performance of this Plan will not discharge the Debtors from any and all debts dischargeable under Section 1141(d) of the Bankruptcy Code and Chapter 11, 11 U.S.C. § 1141(d), and will otherwise have all effects provided in such 11 U.S.C. § 1141, which are not expressly inconsistent with the provisions of this Plan.  Pending execution of this Plan and unless: (a) the Court has otherwise expressly ordered; or (b) this Plan otherwise expressly provides, all creditors will continue to be stayed from proceeding against the Debtors or their assets.

### Post Confirmation Injunction

No entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of the PLAN and the payments to be made thereunder; or (ii) assert any claim, counter-claim, cross-claim, affirmative defense, defense, set off, recoupment or any action of any kind or nature (collectively "Potential Actions") against Debtors, or any of their successors or assigns, except as authorized by the Court, or as necessary to adjudicate the Allowance of Claims.

Except as otherwise provided herein, confirmation of the PLAN shall constitute a permanent injunction against and irrevocable release of any and all Potential Actions.

## XII.

## RETENTION OF JURISDICTION

Notwithstanding confirmation of this PLAN, the Court will retain jurisdiction for the

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

28

following purposes, and each of them:

1.     The Court will retain jurisdiction to determine the allowability and payment of any claim(s) upon any objection(s) thereto (or other appropriate proceedings) by the Debtor or by any other party in interest entitled to proceed in that manner.  As part of such retained jurisdiction, the Court will continue to determine the allowability of Administrative Claims and any request(s) for payment(s) thereof, including professional fees and costs which are Administrative Claims.

2.     The Court will retain jurisdiction to determine any dispute(s) which may arise regarding the interpretation of any provision(s) of this PLAN.

3.     The Court will retain jurisdiction to facilitate the consummation of this PLAN by entering, consistent with the provisions of this PLAN, any further necessary or appropriate order(s) regarding the enforcement of this PLAN and any provision(s) thereof.

4.     The Court will retain jurisdiction to adjudicate any cause(s) of action or other proceeding(s) presently pending or otherwise referenced here or elsewhere in this PLAN, including, but not limited to, the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b), which may be pertinent to this Reorganization Case, and which the Debtor may deem it appropriate to initiate and prosecute in aid of its reorganization.

5.     The Court will retain jurisdiction to enter an appropriate final decree in this Reorganization Case.

6.     The Court will retain jurisdiction to enter an appropriate final decree, and any interim order(s), in any adversary proceedings which may be initiated during this Chapter 11 proceeding.

## XIII.

## **FEASIBILITY OF DEBTORS' PLAN**

Debtors believe that the PLAN is feasible based on the desirable location of the Debtors' FCC broadcasting licenses and the millions of people reached by their signals. It will take some time for the Debtors to return their Radio Station operations and revenues to the levels they were before the Receiver dismantled the operations. However, they have already succeeded in putting all but one of the Radio Stations back on the air. The last of the Radio Stations will return to the

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

air very shortly. Once their regular programming is rated by listeners, the Debtors will be in a position to sell advertising to generate revenues and the Las Vegas station has already started generated advertising sales. Additionally, the liquidation value of any one of the Debtors' Radio Stations is estimated to be valued at significantly more than the amount required to pay all allowed creditors' claims.

**XIV.**

**LIQUIDATION ANALYSIS**

Debtors are proposing a PLAN based partially on business revenues and on a partial liquidation of assets.

The PLAN must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the debtor filed a Chapter 7 petition instead.

In a Chapter 7 case, the general rule is that the Debtors' assets are sold by a trustee. Unsecured creditors share in the proceeds of sale only after secured creditors and administrative claimants are paid. Certain unsecured creditors get paid before other unsecured creditors do. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims. A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for two reasons. First, the Debtors' Plan proposes to pay all allowed unsecured creditors in full, which is not guaranteed in a Chapter 7 case. Second, in a Chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all money disbursed, 10% on any amount over $5,000 but less than $1,000,000, 5% on all amounts over $1,000,000 but less than $3,000,000, and reasonable compensation not to exceed 3% on any amount over $3,000,000, thus diminishing monies available for payment to unsecured creditors. In a Chapter 7 case, the general rule is that the Debtors' assets are sold by a trustee. Unsecured creditors share in the proceeds of sale only after secured creditors and administrative claimants are paid. Certain unsecured creditors get paid before other unsecured creditors do. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

30

relationship to the total amount of allowed claims.

Debtors' Plan proposes 100% payment of allowed unsecured claims, with post-petition interest at the legal or contract rate until paid. Thus, unsecured creditors would not receive more in Chapter 7 liquidation. Allowed interest holders will also receive more through the Plan than in Chapter 7 because the Debtors are not required to liquidate all their assets through the Plan to pay allowed unsecured creditors, thus retaining more value for interest holders. Additionally, the Debtors can more likely obtain a higher sale price in the ordinary course through Chapter 11 than a trustee could through a Chapter 7 liquidation.

## XV.

## DISCLOSURE STATEMENT

When the Debtors solicit the requisite acceptance(s) of this Plan, it will be accompanied by a Disclosure Statement that will have been approved by the Court, as amended, prior to such solicitation.  The Debtors request that all parties whose acceptance(s) of this Plan are solicited should direct their attention to the Disclosure Statement.

## XVI.

## CONFIRMATION REQUEST

WHEREFORE, SILVER STATE BROADCASTING, LLC, GOLDEN STATE BROADCASTING, LLC, and MAJOR MARKET RADIO LLC, as proponents of this Plan, request confirmation of this Plan pursuant to §§ 1129(a) and/or 1129(b) of the Bankruptcy Code.

DATED this 28th day of September 2022.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC

/s/ Stephen R. Harris

_____

Attorney for Jointly Administered Debtors

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

### SG&A OPERATING EXPENSES

### KFRH

| | 3RD, 4TH Q 2022 | 2023 | 2024 |
|---|---|---|---|
| BLDGS / LEASES | 14,400 | 28,800 | 28,800 |
| UTILITIES | 1,080 | 2,160 | 2,160 |
| SALARIES | 22,800 | 40,600 | 53,800 |
| PYRL TAX | 1,824 | 3,648 | 4,704 |
| EQUIP / TOOLS | 2,000 | 4,000 | 4,000 |
| INSUR | 2,000 | 4,000 | 4,000 |
| LICENSES | 2,040 | 8,160 | 12,240 |
| MAINT | 1,000 | 2,000 | 2,000 |
| MKTG | 1,000 | 2,000 | 2,000 |
| OFC EXP / SUPPLIES | 500 | 1,000 | 1,000 |
| TVL / ENT | 500 | 1,000 | 1,000 |

PROJECTED MONTHLY OPEX     4,095        8,114        9,642

PROJECTED MONTHLY GRS     95,000       104,500      120,175

BIA/KELSEY PROJECTED NATIONAL/LOCAL RADIO REVENUE, LAS VEGAS NV

                85,000,000       90,100,000       95,506,000

**SG&A OPERATING EXPENSES**

**KRCK**

|  | 3RD, 4TH Q 2022 | 2023 | 2024 |
|---|---|---|---|
| BLDGS / LEASES | 23,466 | 46,932 | 46,932 |
| UTILITIES | 4,200 | 8,400 | 8,400 |
| SALARIES | 0 | 18,000 | 18,000 |
| PYRL TAX | 0 | 350 | 350 |
| EQUIP / TOOLS | 2,000 | 2,000 | 2,000 |
| INSUR | 1,000 | 3,500 | 3,500 |
| LICENSES | 500 | 3,800 | 4,100 |
| MAINT | 1,000 | 1,000 | 1,000 |
| MKTG | 1,000 | 2,000 | 2,000 |
| OFC EXP / SUPPLIES | 500 | 200 | 200 |
| TVL / ENT | 500 | 500 | 500 |

PROJECTED MONTHLY OPEX  5,694  7,223  7,249

PROJECTED MONTHLY GRS  40,000  47,250  50,000

BIA/KELSEY PROJECTED NATIONAL/LOCAL RADIO REVENUE, PALM SPRINGS, CA

    11,000,000  11,550,000  12,127,500

**SG&A OPERATING EXPENSES**

**KREV**

|                     | 3RD, 4TH Q 2022 | 2023   | 2024   |
|---------------------|-----------------|--------|--------|
| BLDGS / LEASES      | 36,000          | 72,000 | 72,000 |
| UTILITIES           | 7,040           | 15,550 | 15,550 |
| SALARIES            | 0               | 18,000 | 18,000 |
| PYRL TAX            | 0               | 350    | 350    |
| EQUIP / TOOLS       | 2,000           | 2,000  | 2,000  |
| INSUR               | 1,000           | 3,500  | 3,500  |
| LICENSES            | 500             | 3,800  | 4,100  |
| MAINT               | 1,000           | 1,000  | 1,000  |
| MKTG                | 1,000           | 2,000  | 2,000  |
| OFC EXP / SUPPLIES  | 500             | 200    | 200    |
| TVL / ENT           | 500             | 500    | 500    |

PROJECTED MONTHLY OPEX      8,257          9,908          9,817

PROJECTED MONTHLY GRS    100,000        224,000        246,400

BIA/KELSEY PROJECTED NATIONAL/LOCAL RADIO REVENUE, SAN FRANCISCO, CA:

                204,400,000        214.500.000        223.900.000