# EXHIBIT 4

# EXHIBIT 4

## PROGRAMMING AGREEMENT

THIS PROGRAMMING AGREEMENT ("Agreement") is executed as of April ___, 2023 ("Effective Date"), by and between Chapter 11 **Trustee Michael Carmel**, in his capacity as chapter 11 Trustee over the estates ("Estates") of debtors Silver State Broadcasting, LLC, Golden State Broadcasting, and Major Market Radio, LLC (together, the "Debtors") (altogether, the "Trustee") and **AutopilotFM LLC**, a New Mexico limited liability company ("Programmer"). Trustee and Programmer are hereafter individually referred to as a "Party" and collectively as the "Parties".

### WITNESSETH:

WHEREAS, one or more of the Debtors' Estates is the FCC licensee of FM radio station **KRCK, Palm Springs (Mecca), CA (Facility ID 52808), FM translator station K238AK, Palm Springs (Palm Desert), CA (Facility ID 147714), and FM translator station K251BX Palm Springs (Palm Desert), CA (Facility ID 150925)** (collectively, the "Station") pursuant to authorizations (the "Authorizations") issued by the Federal Communications Commission (the "FCC");

WHEREAS, the Trustee is the successor-in-interest to the Debtors and is authorized by the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court") to administer the Estates, and is using best efforts to comply with FCC laws to obtain transfer of the Station license to be in the name of the Trustee;

WHEREAS, Programmer desires to obtain programming time on the Station in order to broadcast its programming from the facilities of the Station, and Trustee desires to provide this time to Programmer; and

WHEREAS, Trustee wishes to authorize Programmer to rebroadcast its programming from the facilities of the Station, pursuant to Section 325(a) of the Communications Act of 1934, as amended (the "Communications Act"), and applicable FCC rules, regulations, and policies (together, with the Communications Act, "Communications Laws") in accordance with the terms and conditions hereinafter contained.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration received by each Party, the receipt, adequacy, and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Programming**. Subject to the terms of this Agreement, Programmer agrees to provide and authorizes Trustee to broadcast Programmer's programming comprised of a radio format Programmer feels will be best suited to the market over the Station's facilities ("Programming"). Simultaneously upon receipt of the Programming, Trustee agrees to use its best efforts to diligently broadcast the Programming on the facilities of the Station without interruption, deletion, or addition of any kind, except as otherwise expressly permitted herein.

1

2.  **Term**.  The term of this Agreement shall commence no earlier than 12:01 AM local time on the first business day following entry of an order by the Bankruptcy Court ("363 Order") authorizing the Estates to enter into this Agreement pursuant to 11 U.S.C. § 363 (the "Commencement Date") or upon such date as the Parties mutually agree and, unless earlier terminated as provided in this Agreement, shall continue until the consummation of a sale to a buyer of the Station unless the FCC or some other Federal or State governmental or quasi-governmental agency requires that the broadcast of Programmer's content be terminated ("Term").

3.  **Hours of Programming**.  Programmer shall be responsible for and shall supply the Programming during all hours of the Station's operations for the Term of this Agreement, and Trustee shall, subject to the provisions set forth in **Section 17** below with respect to force majeure, transmit the Programming supplied by Programmer, except as otherwise provided in **Sections 5 and 6** below.  Programmer shall produce and deliver all Programming to the Station at Programmer's own cost and expense and deliver Programming to the Estates' facilities in a format suitable for immediate rebroadcast.

4.  **Reservation of Time**.  Trustee specifically reserves, at its option, for its own use two (2) hours per week of programming time (the "Reserved Time") during which Trustee may broadcast programming addressing issues of local community concern on the Station.  Unless otherwise mutually agreed upon by the Parties, the Reserved Time shall be on Sunday mornings between the hours of 6:00 AM to 8:00 AM local time.  Programmer shall provide community service Programming during the Reserved Time in the event that Trustee elects not to broadcast its own programming on any given Sunday.

5.  **Trustee's Regulatory Obligations**.

    a.  Nothing herein shall be construed as limiting in any way Trustee's rights and obligations as an FCC Trustee to make the ultimate programming decisions for the Station and to exercise ultimate control and responsibility with respect to the operations of the Station.  Trustee shall be responsible for ensuring that the Station's overall programming is responsive to community needs and in the public interest.  Trustee has the authority, in its sole discretion, to:

        i.  reject and refuse to transmit any Programming produced or proposed by Programmer that Trustee in its good faith deems to be unsatisfactory, unsuitable, or contrary to the public interest, as determined by Trustee in its sole discretion;

        ii.  originate or rebroadcast from any source any Programming which Trustee, in its sole, good faith discretion, deems to be of greater local or national importance than the Programming supplied by Programmer or which Trustee believes will better serve the needs and interests of any the Station's service areas, as determined by Trustee in its sole discretion;

        iii.  interrupt the Programming in case of an emergency; and

    **iv.** insert any station identification, sponsorship, and/or Emergency Alert System ("EAS") announcements or tests that Programmer fails to transmit as required.

  **b.** In the event that Trustee rejects any of the Programming pursuant to **Section 5(a)(i)** above, Trustee shall, insofar as practicable, give Programmer reasonable prior notice of its objection to Programmer's proposed programs, including the basis for such objection, and shall use all reasonable efforts to give Programmer a reasonable opportunity to substitute acceptable Programming.

  **c.** Trustee, solely for the purpose of ensuring Programmer's compliance with applicable law including without limitation the Communications Laws, shall be entitled to review on a confidential basis any programming material relating to Programmer broadcasts as Trustee may reasonably request. Programmer shall provide Trustee, at Trustee's request, copies of all correspondence relating to Programmer's broadcasts on the Station and all complaints received from the public that pertain to the Station.

  **d.** Programmer shall not offer any broadcast time to political candidates during the Programming that would trigger any equal opportunity or political file obligations for the Trustee and shall otherwise cooperate with Trustee to assist Trustee in complying with the provisions of the Communications Laws regarding political advertising as required by the Communications Laws.

 **6.** **Operation of the Station**.

  **a.** Trustee shall use best efforts to comply with the Communications Laws, including employ or contract at its expense such employees or independent contractors to direct the day-to-day operations of the Station as may be necessary to comply with the provisions of the Communications Laws, and such personnel as shall be necessary to enable Trustee to perform its obligations under this Agreement. All such employees or independent contractors will report to and be accountable solely to Trustee.

  **b.** Trustee shall be solely responsible for and shall pay in a timely manner the direct operating costs of the Station as set forth in **Exhibit 1** to this Agreement.

  **c.** At Programmer's expense, and in compliance with the Communications Laws, subject to Trustee's consent and approval, Trustee will cooperate with Programmer to allow the installation of any equipment on Trustee's premises necessary or useful to supply the Programming to the Station, under the supervision of Trustee. Upon the termination of this Agreement, Programmer shall promptly remove all such equipment from the Programmer's premises or forfeit the equipment to Trustee.

  **d.** Programmer shall comply with all station identification and other announcements as required by the Communications Laws.

   **e.** Programmer shall market advertising (commercials, events, programs) on the Station.

   **f.** Trustee shall insert any EAS messages or tests that the Station is required to transmit under the Communications Laws.

  7. **Deposit Account**.  As revenue is received by Programmer, Programmer shall, on a rolling and continual basis but not less frequently than one per calendar week, deposit all revenue of any kind generated pursuant to this Agreement ("Revenue") into the following deposit account ("Deposit Account"), which Deposit Account is controlled solely by the Trustee and over which the Trustee has sole authority to make or authorize withdrawals, debits, or any other transfer of any kind *from* the Deposit Account *to* any party or any other account:

> Trustee's Account (similar to a debtor-in-possession account), which shall be at an Authorized Depository authorized by the Office of the United States Trustee for Region 17, and for which account information shall be separately provided by Trustee to Programmer not later than one business day after entry of the 363 Order.

  8. **Deposit Account Reporting**.  On or before the seventh (7th) calendar day following the conclusion of any calendar month in which this Agreement's Term is in effect, Programmer shall provide the Trustee a written report of all Revenue generated and all Revenue deposited into the Deposit Account ("Monthly Revenue Report").

  9. **Expenses**.

   **a.** Notwithstanding attorney fees and costs, the actual expenses incurred by the Trustee and by Programmer in connection with performing their obligations under this Agreement shall be reimbursable exclusively from Revenue and paid only pursuant to the waterfall described herein at **Section 11**.

   **b.** In the event no Revenue is generated during the Term, Programmer shall be authorized to file a proof of claim for the total expenses incurred in generating Programming, which proof of claim shall be filed within twenty (20) days of the issuance of any notice terminating this Agreement or in any event prior to the expiration of the Term.

  10. **Expense Reimbursement**.  In the event Revenue is generated, Revenue shall *first* be paid to Trustee and to Programmer for the reimbursement of expenses in the following priority and pursuant to the occurrence of the following:

   **a.** The Estates shall be reimbursed in the ordinary course for actual expenses incurred by the Trustee on behalf of the Estates in connection with performing the obligations under this Agreement ("Monthly Estate Expenses").

> **i.** The payment of any Monthly Estate Expenses for any calendar month shall be reported in the applicable Monthly Operating Report filed by the Trustee with the Bankruptcy Court, for that reporting period.

    **b.**  Programmer shall be reimbursed for its actual expenses incurred in connection with the origination and delivery of the Programming and according to the "Allowed Expenses" set forth in **Exhibit 1** hereto (which may be modified during the Term upon written agreement of the Parties but under no circumstances shall include the "Disallowed Expenses" set forth in **Exhibit 1** hereto) ("Allowed Monthly Programmer Expenses"), as follows:

      i. On or before the 10th calendar day following the conclusion of any calendar month in which this Agreement's Term is in effect, Programmer shall provide the Trustee a written report of all Allowed Monthly Programmer Expenses incurred during the preceding calendar month ("Programmer Expenses Report").

      ii. Within twenty (20) calendar days of the Trustee receiving a Programmer Expenses Report, the Trustee shall pay to Programmer applicable reimbursement for the reasonable expenses set forth therein ("Monthly Programmer Reimbursement"), the payment of which by the Trustee shall be paid to Programmer pursuant to the payments priority waterfall provision **Section 11**.

    **c.**  Any Monthly Estate Expenses and any Allowed Monthly Programmer Expenses which are not recouped by either Party for any month of the Term shall roll forward to the following calendar month on a rolling basis ("Rolled-Forward Expenses") until sufficient Revenue is available to pay any subsequent Net Revenue Allocation. The payment of any Rolled-Forward Expenses shall be made solely by the Trustee from net available Revenue and paid pursuant to the payments priority waterfall provision **Section 11**.

  **11.**  **Payments Priority**.

    **a.**  Any payments from Revenue shall be made solely by the Trustee and in the following priority:

      i. The Monthly Estate Expenses;

      ii. The Monthly Programmer Reimbursement;

      iii. Any Rolled-Forward Expenses (paid pro rata); and

      iv. Fifty percent (50.0%) of net Revenue remaining shall be paid each to the Programmer and to the Trustee on behalf of the Estates ("Net Revenue Allocation"), on a monthly basis.

    **b.**  Notwithstanding any other term herein, neither the Trustee nor the Estates shall not have any obligation to pay Programmer any Net Revenue Allocation for the Term in the event insufficient Revenue is generated to pay a Net Revenue Allocation.

5

   **c.** Any payments made from Revenue shall be made by electronic transfer to the extent authorized by the Office of the United States Trustee for Region 17, or other means as desired by Trustee, but not in cash.

  **12.** **Representations, Warranties, and Covenants of Trustee**. Trustee hereby makes the following representations, warranties, and covenants to Programmer:

   **a.** This Agreement constitutes the legal, valid, and binding obligation of Trustee, enforceable in accordance with its terms.

   **b.** To the best of the Trustee's knowledge, the execution and performance of this Agreement will not violate any order, rule, judgment, or decree to which Trustee is subject or constitute a breach of or default under any contract, agreement, or other commitment to which Trustee is a Party.

   **c.** Subject to the fact that Trustee will broadcast the Programming, Trustee shall operate the Station and shall maintain the Station's facilities in material compliance with the Communications Laws, including but not limited to the FCC's sponsorship identification rules. Trustee shall maintain the Station's facilities in good working order and shall, in his discretion, delegate, to Programmer, the repair and update of the Station's equipment as reasonably necessary, with Trustee's prior approval required for acquisition of equipment. The Station will continue to be authorized to operate as a commercial FM radio broadcast station by the FCC during the Term.

   **d.** Trustee shall maintain the FCC-mandated public inspection file and shall maintain that file as may be required by present or future FCC rules and regulations.

   **e.** Trustee shall maintain valid agreements for the licensing of music performances with one or more of the following: "GMR", "ASCAP", "BMI", and "SESAC", and the amounts due for such agreements will be timely paid. In no event will Programmer be liable for any payments to such music licensors.

   **f.** Within three (3) days of execution of this Agreement, Trustee shall file a motion with the United States Bankruptcy Court for the District of Nevada seeking approval of this Agreement ("<u>Motion</u>") and may seek a hearing on the Motion on an expedited basis.

   **g.** Trustee shall maintain valid insurance related to Trustee's operation of the Station.

   **h.** Notwithstanding any other provision in this Agreement, Trustee's authority to enter into this Agreement is expressly subject to Court approval by the United States Bankruptcy Court for the District of Nevada.

  **13.** **Representations, Warranties, and Covenants of Programmer**. Programmer hereby makes the following representations, warranties, and covenants to Trustee:

   **a.** The execution, delivery, and performance of this Agreement has been duly authorized by all necessary corporate action on the part of Programmer, and this Agreement constitutes the legal, valid, and binding obligation of Programmer, enforceable in accordance with its terms.

   **b.** The execution and performance of this Agreement will not violate any order, rule, judgment, or decree to which Programmer is subject or constitute a breach or default under its charter, bylaws or any contract, agreement, or other commitment to which Programmer is a Party or may be bound.

   **c.** The Programming supplied by Programmer for broadcast on the Station shall comply with all applicable laws, including without limitation, the Communications Laws and the laws and regulations of the state(s) reached by the Station's signal.  The Programming will not violate or infringe upon the intellectual property, publicity, privacy, or any other right of any third Party.

   **d.** Programmer shall immediately send to Trustee copies of any letters or complaints concerning the Programming supplied by Programmer or the operation of the Station as they are received by Programmer.

   **e.** Not later than the seventh day of the first month of each calendar quarter, Programmer shall provide Trustee with information regarding its non-entertainment programming and community issues addressed by such programming in the calendar quarter just ended, in a format that Trustee may use for the "issues-programs list" it must place in its FCC public inspection file.

   **f.** Programmer shall not accept any consideration, compensation, or gift or gratuity of any kind whatsoever, regardless of its value or form, including, but not limited to, a commission, discount, bonus, material, supplies or other merchandise, services, or labor (collectively, "Consideration"), unless the payor is identified in the program for which Consideration was provided as having paid or furnished such Consideration, in accordance with the Communications Laws.

   **g.** Programmer certifies that it is not a "foreign government entity" as that term is defined by 47 CFR Section 73.1212(j), and no Programming to be broadcast on the Station pursuant to this Agreement has been or will be paid for or provided by a foreign government entity.

   **h.** The person signing this agreement on behalf of Programmer has the authority to bind Programmer to the terms and conditions hereof.

  **14.** **Events of Default**.  This Agreement may be terminated upon the occurrence of an "Event of Default", the occurrence of which is defined as:

   **a.** **By Programmer**.  The occurrence of any of the following will be deemed an "Event of Default" by Programmer under this Agreement:

      **i.**      Programmer fails to remit to Trustee earned revenue on a timely basis by depositing in the Deposit Account in accord with this Agreement;

      **ii.**      Programmer fails to observe or perform any other material covenant, condition, or agreement contained in this Agreement; or

      **iii.**      Programmer breaches or violates any material representation or warranty made by it under this Agreement.

    **b.**    **By Trustee**. The occurrence of any of the following will be deemed an "Event of Default" by Trustee under this Agreement:

      **i.**      Trustee fails to observe or perform any material covenant, condition, or agreement contained in this Agreement; or

      **ii.**      Trustee breaches or violates any material representation or warranty made by it under this Agreement.

    **c.**    **Cure**.

      **i.**      From the date that Trustee has provided Programmer with written notice under **Section 20** that an Event of Default under **Section 14(a)(i)** has occurred, Programmer shall have five (5) business days to cure an Event of Default.

      **ii.**      In the case of all other Events of Default, the defaulting Party shall have thirty (30) days from the date that the non-defaulting Party provides written notice of Event(s) of Default in accord with **Section 20** hereunder to cure any such Event(s) of Default. If the Event(s) of Default cannot be cured by the defaulting Party within the specified time period but commercially reasonable efforts are being made to effect a cure or otherwise secure or protect the interests of the non-defaulting Party, then the defaulting Party shall have an additional period not to exceed thirty (30) days to effect a cure. Notwithstanding these cure periods, nothing shall preclude or prohibit Trustee from immediately pre-empting any Programming that it reasonably believes is unlawful or may put Trustee's FCC license in jeopardy.

    **d.**    **Termination**.

      **i.**      If an Event of Default by Programmer has not been cured within the period set forth in **Section 14(c)** above, Trustee may terminate this Agreement immediately upon written notice to Programmer in accord with **Section 16** hereof and shall be entitled to pursue any remedies available at law or equity.

      **ii.**      If an Event of Default by Trustee has not been cured or deemed cured within the periods set forth in **Section 14(c)** above, then Programmer may

8

terminate this Agreement immediately upon written notice to Trustee in accord with **Section 20** hereof and shall be entitled to an administrative expenses proof of claim for hard costs incurred in connection herewith that have not been recouped from revenue prior to the date the Agreement so terminates.

  **e.** This Agreement may be terminated by either Trustee or Programmer by written notice to the other in accord with the terms of this Agreement, is terminated by operation of law upon entry of any Bankruptcy Court order authorizing the sale of the Station to a purchaser if this Agreement is not assumed and assigned to the purchaser in connection with such Bankruptcy Court sale, and is terminated in the event this Agreement is declared invalid or illegal in whole or substantial part by a court of competent jurisdiction.

  **f.** In the event of termination, all rights and privileges granted to Trustee by Programmer hereunder shall forthwith cease and terminate and revert to Programmer for Programmer's sole and exclusive use and disposition, and Trustee shall cease any further use of the Programming and signal and the content thereof, including without limitation any titles, names, logos, slogans, jingles, trademarks, copyrights, ideas, formulas, general program content and/or other literary, musical, artistic, or creative material broadcast by or associated with Programmer's programming.

  **15.** **Termination not in the Event of Default**. Without an Event of Default, this Agreement may be terminated by Programmer or Trustee upon a 60 (sixty) day written notice from one Party to the other pursuant to **Section 20** hereunder ("Section 15 Notice"). Except for the Programmer's obligation to remit all revenue earned through and including the sixtieth day following issuance of a Section 15 Notice, Trustee's reimbursement of Programmer's reasonable expenses incurred through and including the sixtieth day following issuance of a Section 15 Notice upon termination pursuant to this **Section 15**, the Parties shall have no further obligation to each other hereunder.

  **16.** **Indemnification**.

  **a.** Programmer shall indemnify, defend, and hold harmless Trustee from and against, and reimburse Trustee for any and all claims, losses, costs, liabilities, damages, expenses, fines, and forfeitures (including reasonable legal fees and other expenses incidental thereto) of every kind, nature, and description (hereinafter referred to as "Loss and Expense"), arising out of: (i) the content of the Programming furnished by Programmer under this Agreement or any actions related thereto; (ii) any misrepresentation or breach of any warranty or covenant of Programmer contained in this Agreement; (iii) actions of Programmer's employees, agents, servants, and/or representatives; and (iii) any action taken or the failure to take any action by Programmer or Programmer's employees, agents, servants, and/or representatives with respect to the Station as required hereunder.

  **b.** Trustee shall indemnify, defend and hold harmless Programmer from and against all claims, losses, costs, liabilities, damages, expenses, fines, and forfeitures of every kind, nature, and description (hereinafter referred to as "Loss and Expense"), arising out of: (i) any misrepresentation or breach of any representation, warranty or covenant of Trustee contained

9

in this Agreement. In no case will Programmer be held liable for any amounts or debts owed to others by Trustee.

17. **Force Majeure**. Trustee shall not be liable for any failure of performance hereunder due to causes beyond its commercially reasonable control, including, without limitation, acts of God, equipment malfunction, or commercial power failure or reduction. In the event of the occurrence of any such event, Trustee agrees to use commercially reasonable efforts to resume performance as promptly as practicable.

18. **Assignment**. This Agreement is assigned by the Trustee on behalf of the Estates only in the event of entry of a Bankruptcy Court order authorizing the sale of the Station to a purchaser and authorizing the assumption and assignment of this Agreement to the purchaser in connection with such Bankruptcy Court sale. Programmer may not assign its interest(s) in or delegate its duties under this Agreement without the prior written consent of the Trustee.

19. **No Joint Venture**. Nothing contained herein shall be deemed to create any joint venture, partnership, or principal-agent relationship between Programmer and Trustee, and neither shall hold itself out in any manner which indicates any such relationship with the other.

20. **Notices**. All notices and other communications permitted or required under this Agreement shall be in writing and shall be deemed effectively given or delivered upon personal delivery, on the first business day of attempted delivery by a courier service, or five (5) business days after deposit with the U.S. Post Office, by registered or certified mail, postage prepaid, and, in the case of courier or mail delivery, addressed as follows (or at such other address for a Party as shall be specified by like notice):

<u>If to Trustee</u>:

    Michael Carmel
    80 E Columbus
    Phoenix, AZ 85012
    michael@mcarmellaw.com
    (602) 264-4965

    *With a copy to:*
    Gregory E. Garman, Esq.
    Talitha Gray Kozlowski, Esq.
    Garman Turner Gordon LLP
    7251 Amigo Street
    Las Vegas, NV 89119
    ggarman@gtg.legal and tgray@gtg.legal

<u>If to Programmer</u>:

    AutopilotFM LLC
    1213 San Pedro NE
    Albuquerque, NM  87110
    kurt@mymediapartners.com
    (505) 264-0944

**21.** **Headings**. The headings and captions in this Agreement are for only the convenience of the Parties and may not be deemed to affect the substantive terms of this Agreement.

**22.** **Governing Law**. This Agreement shall be governed by, construed, and enforced in accordance with, the laws of the State of Nevada, without giving effect to the State's choice or conflicts of law provisions.

**23.** **Counterparts**. This Agreement may be executed in counterparts, each of which will be deemed to be an original but both of which together will constitute one and the same instrument. This Agreement may be executed manually or digitally, and signatures pages may be exchanged by facsimile or other electronic transmission with the same legal effect as if the signatures had appeared in original handwriting on the same physical document, and the Parties agree the use of manually or digitally executed signatures, and signature pages exchanged by facsimile or other electronic transmission is not a defense to the formation of this Agreement, and each such Party forever waives any such defense as to this Agreement. At the request of any Party hereto, each other Party hereto shall re-execute original forms thereof and deliver them to the requesting Party.

**24.** **Entire Agreement**. This Agreement supersedes all prior agreements and understandings between the Parties with respect to the subject matter hereof and may not be changed or terminated verbally. No attempted change, amendment, or waiver of any of the provisions hereof shall be binding unless in writing signed by both Parties.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

**IN WITNESS WHEREOF**, the Parties hereto have executed the foregoing Programming Agreement as of the date first above written.

**Michael Carmel**

By: *Michael Carmel*  04/19/23  8:33 AM
Name: Michael Carmel
Title: Chapter 11 Trustee of the estates of Silver State Broadcasting, LLC, Golden State Broadcasting, and Major Market Radio, LLC

**AutopilotFM LLC**

By: *Kurt Nilson*  04/18/23  10:50 PM
Name: Kurt Nilson
Title: Managing Member, AutopilotFM LLC

## Exhibit 1

**"Allowed Expenses" of Programmer**

1. Personnel expenses related to the preparation and execution of Programming (non-sales contractors and employees, content and operations manager, consultants if any).

2. Business office personnel (Traffic, Billing, A/R).

3. Sales commissions paid on deposited receipts from advertising sales, to be a maximum of 15%.

4. New Mexico Gross Receipts Taxes (GRT) as may be applicable.

5. Media Monitors.

6. Nielsen Ratings if selected.

7. Commercially reasonable promotions expenses (social media management, etc.)

8. Direct costs of sales (travel, sponsored events, on-site promotions etc.)  Such costs shall be approved by Trustee on a case-by-case basis.

9. Prorated operating costs of Programmer facilities such as office space and utilities, telephone, and internet.

10. Expenses directly related to the technical restoration and maintenance of operation of the Station, including the acquisition of equipment necessary to deliver Programmer's programming to the Station and to comply with the Communications Laws, travel, consultant fees and other necessary expenses.  Programmer will provide Trustee with an estimate of the proposed expenses before they are incurred.


**"Disallowed Expenses" of Programmer**

1. Direct compensation to Programmer principals other than from Programmer's portion of the Net Revenue Allocation.

2. Sales, property, and other taxes which may be levied against Programmer.

3. Programmer's business operating taxes.

4. The acquisition and maintenance of programming content, equipment and software used and useful in the programming and business operation of Programmer.