1  GARMAN TURNER GORDON LLP
   GREGORY GARMAN, ESQ.
2  Nevada Bar No. 6654
   Email: ggarman@gtg.legal
3  TALITHA GRAY KOZLOWSKI, ESQ.
   Nevada Bar No. 9040
4  Email: tgray@gtg.legal
   MARY LANGSNER, Ph.D.
5  Nevada Bar No. 13707
   Email: mlangsner@gtg.legal
6  7251 Amigo Street, Suite 210
   Las Vegas, Nevada 89119
7  Tel: 725.777.3000
   [Proposed] *Attorneys for Michael Carmel,*
8  *Chapter 11 Trustee*

9              **UNITED STATES BANKRUPTCY COURT**

10                  **DISTRICT OF NEVADA**

11  In re:                                CASE NO. BK-21-14978-ABL

12  SILVER STATE BROADCASTING, LLC,       Chapter 11

13      AFFECTS THIS DEBTOR        ☐      *Jointly Administered with:*

14      AFFECTS GOLDEN STATE       ☐      Golden State Broadcasting, LLC
        BROADCASTING, LLC                 Case No. 21-14979-ABL
15
        AFFECTS MAJOR MARKET       ☐      Major Market Radio, LLC
16      RADIO, LLC                        Case No. 21-14980-ABL

17      AFFECTS ALL DEBTORS        ☒

18

19           **DECLARATION OF MICHAEL CARMEL IN SUPPORT OF**
20      **MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 105 AND**
     **BANKRUPTCY RULES 6004 AND 2002 AUTHORIZING CHAPTER 11 TRUSTEE TO**
21   **ENTER INTO PROGRAMMING AGREEMENTS AND USE REVENUE GENERATED**
        **TO RECOUP OPERATIONAL COSTS OF THE RESPECTIVE STATIONS**
22
         I, Michael Carmel, Esq., hereby declare as follows:
23
         1.      I am over the age of 18 and mentally competent.  I have personal knowledge of the
24
     facts in this matter and, if called upon to testify, could and would do so.
25
         2.      I make this declaration in support of the *Motion for Order Pursuant to 11 U.S.C.*
26
     *§§ 363 and 105 and Bankruptcy Rules 6004 and 2002 Authorizing Chapter 11 Trustee to Enter*
27
     *Into Programming Agreements and Use Revenue Generated to Recoup Operational Costs of the*
28

*Respective Stations* ("Motion").[1]

3.    I am the duly appointed Chapter 11 trustee ("Trustee") over the estates of debtors Silver State Broadcasting, LLC, Golden State Broadcasting, LLC, and Major Market Radio, LLC (collectively, the "Debtors").

4.    I have recently been appointed and, in my investigations to date, have come to be aware that certain of the Estates' valuable radio station assets are dormant and not generating revenue.

5.    My preliminary investigations indicate that the FM radio station at 92.7 FM, call sign KREV ("SF Radio Station"); the FM radio station at 104.3 FM, call sign KFRH ("Vegas FM Station"); the FM radio station at 97.7 FM, call sign KRCK ("Palm Springs Station"); the AM radio station at 790 AM, call sign KBET ("Vegas AM Station"); and their affiliated translator stations (altogether with the SF Radio Station, the Vegas FM Station, the Palm Springs Station, and the Vegas AM Station, the "Radio Stations") are valuable assets of the Debtors' Estates.

6.    My preliminary investigations also indicate that the Radio Stations, although themselves assets of the Estates, are not currently generating revenue for the Estates.

7.    My investigations indicate that the Estates have a number of expenses, including (but not limited to) ongoing payments to C&E pursuant to prior order of this Court.[2]  In addition, among the limited documents I have received to date from the Debtors' prior counsel are insurance policy information, some of which indicates at least one policy must be renewed in June of 2023.

8.    Additionally, I have had conversations with potential purchasers expressing interest in acquiring one or more of the Debtors' assets and, therefore, am in the process of formulating bidding procedures for a potential 11 U.S.C. § 363 auction and sale process to generate revenue for the Debtors' Estates.

9.    Although I very recently signed a non-binding letter of intent with a stalking horse,

---

[1] Unless otherwise expressly stated herein, all undefined, capitalized terms have the meaning ascribed to them in the Motion.

[2] *See, e.g., Order Granting in Part and Denying in Part Motion* [ECF No. 346] ("Stay Relief Order").  The Stay Relief Order is the subject of the Trustee's SF Tower Site Motion.

a Court-conducted auction and sale must still take place, and successfully closing on any sale of assets of the Debtors will take time due to, among other things, the need to obtain FCC approval of any such sale.

10.    Therefore, it is in the best interests of the Debtors' Estates to generate revenue immediately, and the Agreements are, in my business judgment, an effective means of generating revenue without creating expenses for the Estates.

11.    The Programmer has offered to front the expenses necessary to bring the radio stations up to par and immediately broadcast programming on them, which will generate revenue. From this revenue, both Programmer's and the Estates' expenses will be first recouped, after which the revenue remaining will be split equally between the Estates and the Programmer, with my handling all disbursements of revenue earned.

12.    The Agreements present a unique opportunity to obtain immediate value from the Radio Stations as I prepare for an eventual auction and sale of assets under Section 363 of the Bankruptcy Code, without the Estates directly incurring the expenses of getting the stations broadcasting.

13.    I specifically negotiated the sixty-day termination provision in each of the Agreements.

14.    As provided in the Agreements, there is a specific waterfall of payments to be made from revenue, as revenue is generated, and the Estates' expenses are repaid first.  Additionally, net revenue remaining after Estate expenses are paid is split with the Programmer—without whose collaboration and efforts there would be no broadcasting to generate revenue in the first instance.

DATED this 25th day of April, 2023.

MICHAEL CARMEL, ESQ.