GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel,
Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>SILVER STATE BROADCASTING, LLC,<br><br>☐ AFFECTS THIS DEBTOR<br><br>☐ AFFECTS GOLDEN STATE BROADCASTING, LLC<br><br>☐ AFFECTS MAJOR MARKET RADIO, LLC<br><br>☒ AFFECTS ALL DEBTORS | CASE NO. BK-21-14978-ABL<br><br>Chapter 11<br><br>*Jointly Administered with:*<br><br>Golden State Broadcasting, LLC<br>Case No. 21-14979-ABL<br><br>Major Market Radio, LLC<br>Case No. 21-14980-ABL<br><br>Hearing Date: **OST REQUESTED** |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS:
(A) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION
FINANCING, (B) GRANTING LIENS AND PROVIDING ADMINISTRATIVE
EXPENSE STATUS, AND (C) GRANTING RELATED RELIEF**

Michael Carmel, in his capacity as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of Silver State Broadcasting, LLC ("Silver State"), Golden State Broadcasting, LLC ("Golden State"), and Major Market Radio, LLC ("Major Market," and collectively, the "Debtors"), hereby respectfully submits this motion (the "Motion") for the entry of interim and final orders (respectively, the "Interim Financing Order" and "Final Financing Order"), substantially in the forms attached hereto as **Exhibits 1** and **2** pursuant to Sections[1] 105, 361,

---

[1] Unless otherwise stated, all references to "Section" herein shall be to title 11 of the U.S. Code (the "Bankruptcy

362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001, authorizing Debtors to obtain secured post-petition financing from YH Advisor Group Inc. ("Lender") in the aggregate amount of $342,000, with $51,700 (the "Initial Advance") funded on an interim basis, to be used in accordance with the Budget, and provide priority administrative expense status pursuant to Section 364(c)(1) and automatically perfected non-priming liens pursuant to Section 364(c)(2) and (c)(3).

This Motion is made and based upon the following memorandum of points and authorities, the declaration of Michael Carmel filed herewith (the "Carmel Decl."), the papers and pleadings on file herein, judicial notice of which is hereby respectfully requested, and the argument of counsel entertained by the Court at the time of the hearing of the Motion.

# I.
## BANKRUPTCY RULE 4001 CONCISE STATEMENT

The following summarizes the material provisions of the proposed post-petition loans sought by each of the Debtors (the "Loans"), which will be made pursuant to the terms of the Loan Agreements[2] attached to the Carmel Decl. as **Exhibits 2 - 4.**

| | |
|---|---|
| **Borrowers** | Debtors |
| **Lender** | YH Advisor Group, Inc. |
| **Initial Advance (Interim Order)** | Golden State - $18,700; Silver State - $15,000; Major Market - $18,000 |
| **Total Loans (Final Order)** | Golden State - $150,000; Silver State - $86,000; Major Market - $106,000 |
| **Interest Rate & Points** | Interest Rate: Prime + 8%<br>Points: 1% |
| **Maturity**<br><br>**(Section 1 of the Loan Agreement)** | The earlier of: (i) twelve (12) months after entry of the Final Financing Order; (ii) the date of acceleration of any of the Obligations pursuant to Section 8(a) of the Loan Agreement; or (iii) thirty (30) days after the consummation of a sale of substantially all of the Debtor's assets. |

_____ (continued)
Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

[2] All capitalized, undefined terms shall have those meanings ascribed to them in the Loan Agreements.

| | | |
|---|---|---|
| **Grant of Superpriority Claims and Security Interests**<br><br>**(Section 2(g) of the Loan Agreement)** | 1) An allowed super-priority administrative claim under Section 364(c)(1);<br><br>2) valid, binding, enforceable, and first-priority liens on the applicable Debtor's assets (except Chapter 5 Claims) not encumbered as of the Petition Date under Section 364(c)(2); and<br><br>3) valid, binding, enforceable, and perfected junior liens the applicable Debtor's assets (except Chapter 5 claims) that are subject to valid, binding, perfected, enforceable, and non-avoidable liens immediately prior to the Petition Date under Section 364(c)(3).<br><br>\*\* Only one creditor has asserted a secured claim against Debtors' estates. That creditor is Bellaire Towers Homeowners Association, which has asserted a judgment lien in the amount of $364,003.32 against Golden State. <u>See</u> Claim No. 2-1, in Case No. 21-14979-ABL. The proposed Loans do not seek to prime Bellaire Towers Homeowners Association's asserted secured claim. | |
| **Events of Default**<br><br>**(Section 6 of the Loan Agreement)** | Each of the following events, if it occurs before all the Obligations under the Loan Agreements have been paid in full, shall constitute an "Event of Default":<br><br>• <u>Payment Default</u>. Failure of Debtor to pay all outstanding Obligations due under the Loan Documents on the Maturity Date.<br><br>• <u>Specified Defaults</u>. Failure of Debtors to: (i) perform or observe any term, covenant, or agreement contained in <u>Section 5</u> of the Loan Agreement; or (ii) perform or observe any other term or covenant contained in the Loan Documents and, in the case of the foregoing <u>clauses (i) & (ii)</u>, such default shall continue unremedied for a period of the later of (x) ten (10) Business Days after Lender sends a notice of default to Debtor, and (y) the applicable cure period specifically enumerated in this Loan Agreement;<br><br>• <u>Bankruptcy Specific Defaults</u>. The occurrence of any of the following in the Chapter 11 Case:<br><br>    • a violation of the Financing Orders or the entry of an order amending, supplementing, staying, vacating, reversing or otherwise modifying the Loan Documents without the written consent of Lender;<br><br>    • the dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code;<br><br>    • the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section | |

| | |
|---|---|
| | 362 of the Bankruptcy Code (x) to allow any creditor to execute upon or enforce a Lien on any Collateral with respect to assets of any Debtor exceeding Fifty Thousand and No/100 Dollars ($50,000.00) in value; or (y) to permit the perfection of any Lien on the Collateral;<br><br>• Debtor seeks to sell any of its assets outside of the ordinary course of business without full repayment of the Loan to Lender;<br><br>• the allowance of any claim or claims under Section 506(c) or 552(b) of the Bankruptcy Code against or with respect to any of the Collateral; or<br><br>• the entry by the Bankruptcy Court of a debtor-in-possession financing order or amendment thereto that does not fully repay the Loan, the form and substance of which is not consented to in writing by Lender. |
| **Debtors' Stipulations and Waiver of Claims** | None. |

## II.
## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134 and Local Rule 1001(b)(1). Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9014.2, the Trustee consent to entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the U.S. Constitution.

2. Venue of the Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief sought herein arises from Sections 105(a), 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, 6004, and 9014, and LR 4001.

. . .

. . .

. . .

# III.
# BACKGROUND

A.  **The Trustee's Appointment.**

3.  On October 19, 2021 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). See, e.g., ECF No. 1.

4.  On November 19, 2021, this Court entered its Order jointly administering the Chapter 11 Cases. See ECF No. 37 at p. 2 of 4.

5.  On March 6, 2023, this Court entered its Order directing the appointment of a Chapter 11 trustee for the Debtors' estates and on March 10, 2023, Michael Carmel was appointed as the Chapter 11 trustee for the Debtors' estates. See ECF Nos. 419, 420, and 422.

6.  On March 13, 2023, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee*, accepting his appointment as the Chapter 11 trustee for the Debtors' estates. See ECF No. 424.

B.  **The Programming Order, Assignment of the FCC Licenses, and Pending Sale.**

7.  Based on the Trustee's investigation to date, the Debtors' primary assets are the following radio and translator stations (the "Stations") and the associated equipment and personal property:

- Golden State - KRCK-FM, Mecca, California (FCC Facility ID No. 52808)
- Golden State - KREV(FM), Alameda, California (FCC Facility ID No. 36029)
- Silver State - KFRH(FM), North Las Vegas, Nevada (FCC Facility ID No. 19062)
- Silver State - KBET(AM), Winchester, Nevada (FCC Facility ID No. 136292)
- Silver State - K276GX, Las Vegas, Nevada (FCC Facility ID No. 203222)
- Major Market - K251BX, Palm Desert, California (FCC Facility ID No. 150925)
- Major Market - K238AK, Palm Desert, California (FCC Facility ID No. 147714)

Carmel Decl. ¶ 5.

8.  On May 17, 2023, the Court entered its Order authorizing the Trustee to engage AutopilotFM, LLC ("AutopilotFM") to broadcast programming on the Stations and generate

revenue for the Debtors' estates (the "Programing Order"). See ECF No. 566.

9. However, as a result of Edward Stolz lack of cooperation and interference, there has been delay in AutopilotFM getting access to, and pertinent information about, the Stations. See Carmel Decl. ¶ 6.

10. Additionally, before AutopilotFM could actually begin broadcasting pursuant to the Programming Agreements and Programming Order, the Trustee was required to obtain FCC approval of the involuntary assignment of the Station licenses from the debtors-in-possession to the Debtors' bankruptcy estates under the control of the Trustee. This FCC approval process took longer than expected. The FCC provided the requisite assignment authorization on June 20, 2023. As such, AutopilotFM can now begin the programming authorized by the Programming Order. However, because of the delay in entry of the FCC consents, the Debtors' estates will not generate revenue immediately, thereby necessitating the Loans. See Carmel Decl. ¶ 7.

11. Moreover, the Trustee has filed his Bid Procedures Motion [ECF No. 627] (the "Bid Procedures Motion"). Through the Bid Procedures Motion, the Trustee seeks approval of the proposed procedures to sell all of the Stations and their associated equipment and personal property after an auction. VCY America, Inc. is the proposed stalking horse for five of the seven Stations with a bid of $4.5 million. The Bid Procedures Motion is set for hearing on August 9, 2023. See ECF No. 629.

C. **The Loans Are Necessary and in the Estates and Creditors' Best Interest.**

12. The Trustee seeks: (i) $150,000 in total financing for Golden State, $18,700 of which is sought on an emergency basis; (ii) $86,000 in total financing for Silver State, $15,000 of which is sought on an emergency basis; and (iii) $106,000 in total financing for Major Market, $18,000 of which is sought on an emergency basis. See Carmel Decl. ¶ 8; **Ex. 2-4** to the Carmel Decl.

13. The relatively nominal amount of the Loans ($342,000 in the aggregate) is in the best interest of the Debtors, their estates, and creditors as it will allow the Trustee to operate the Stations, pay for necessary insurance, and fund marketing expenses for the pending sale of the Stations. See Carmel Decl. ¶ 9.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

6

14. When the Trustee was appointed, the three estates had less than $10,000 combined, the majority of which funds have been used to pay FCC filing fees to obtain assignment of the FCC licenses to the Debtors' estates under the control of the Trustee. Thus, the Debtors do not have sufficient funds to operate the Stations in the ordinary course of business without the Loans. See id. ¶ 11.

15. As more fully set forth in the Budget attached to the Carmel Decl. as **Exhibit 1**, the three Loans are allocated as follows between the three Debtors as follows:

| Debtor | Golden State | Silver State | Major Market | *Total* |
|---|---|---|---|---|
| **Emergency Loans Budgeted** | $18.700 | $15,000 | $18,000 | *$51,700* |
| **Remaining Loans Budgeted** | $131,300 | $71,000 | $88,000 | *$290,300* |
| **Total Loans Per Debtor** | *$150,000* | *$86,000* | *$106,000* | *$342,000* |

16. The Budget takes into account that AutopilotFM was able to initiate programming with respect to the radio station owned by Golden State immediately upon FCC approval on June 20, 2023, and will next proceed to establish programming for Silver State and Major Market's radio stations. The Budget also takes into consideration the market size and correlative ability to generate revenue for these Stations. See id. ¶ 12.

17. As set forth in the Budget, the emergency financing is necessary to pay outstanding post-petition rent for the studios and antennas, utilities,[3] and insurance premiums for current polices that terminate in early July. See id. ¶ 13.

18. Without immediate funding, the Debtors may face eviction proceedings, lose necessary utility services, and be unable to renew insurance policies, all of which will immediately harm the value of Debtors' Stations and could impair the Debtors' FCC licenses. See id. ¶ 14.

---

[3] The Trustee has discovered that certain of the utilities utilized by some of the Stations are not in the Debtors' names and have arrearages, thereby requiring new utility services to be established in the names of the Debtors.

19. The ability of the Trustee to preserve the value of the estates' assets and otherwise finance their operations until AutopilotFM is able to generate sufficient programming revenue and the pending sale of the Stations is consummated requires the availability of working capital from the Loans, the absence of which will immediately and irreparably harm the Debtors' estates and creditors. See id. ¶ 15.

20. Given the Debtors' current financial condition, the Trustee has been unable to obtain financing from sources other than Lender on more favorable terms. Specifically, the Trustee has been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or unsecured credit having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code. Id. at ¶ 16.

21. The proposed Loans does not seek to prime the sole asserted secured claim held by Bellaire Towers Homeowners Association, which has asserted a judgment lien in the amount of $364,003.32 against Golden State. See Claim No. 2-1, in Case No. 21-14979-ABL.

22. The Loans were negotiated in good faith and at arms-length between the Trustee and Lender, and advances under the Loans will be provided in good faith, such that the Lender should be entitled to the protections and benefits of Section 364(e) of the Bankruptcy Code. Id. at ¶ 17.

## IV.
## RELIEF REQUESTED

A.  **Summary of Relief Sought.**

The Trustee seeks interim and final orders authorizing Debtors to obtain secured post-petition financing from Lender in the aggregate amount of $342,000 to be used in accordance with the Budget, and provide priority administrative expense status pursuant to Section 364(c)(1) and liens pursuant to Section 364(c)(2) and (c)(3).

. . .

. . .

**B.     Terms of the Loans.**

    **1.     Loan Amounts and Budget.**

Under the conditions provided in the Interim and Final Orders and in exchange for the protections and other relief provided therein, the Lender has agreed to provide the Loans in the aggregate amount of $340,000, which will be advanced in two tranches. The Initial Advance of $51,700 will be advanced upon entry of the Interim Financing Order and the balance of the Loans, being $290,300, will be advanced upon entry of the Final Financing Order.

    **2.     Loan Terms and Maturity.**

Interest on the Loans will accrue at the of Prime Rate plus eight percent (8%) with twelve months guaranteed interest. The Lender will receive an origination fee equal to one percent (1%) of the Loan Amount. To provide the greatest flexibility to the Trustee in administering these Chapter 11 Cases, the Loans will mature on: (a) twelve (12) months after entry of the Final Financing Order, (b) the date of acceleration of any of the Obligations pursuant to Section 8(a) of the Loan Agreement; (c) thirty (30) days after the consummation of a sale of substantially all of the applicable Debtor's assets. See Loan Agreements §§ 1 and 2.

    **3.     Grant of Superpriority Claim and Liens.**

In exchange for the Loans, the Debtors shall grant the Lender the following claims and liens, all of which shall be self-effectuating without further action by the Lender:

(a) an allowed super-priority administrative claim having priority in right of payment over any and all other unsecured obligations, liabilities, and indebtedness of the Debtors pursuant to Section 364(c)(1) of the Bankruptcy Code (the "Superpriority Claims"); and

(b) pursuant to Section 364(c)(2) of the Bankruptcy Code, valid, binding, enforceable, and automatically perfected, first-priority liens on: (i) any of Debtors' assets not encumbered as of the Petition Date (except the Chapter 5 Claims); and (c) pursuant to Section 364(c)(3) of the Bankruptcy Code, valid, binding, enforceable, and perfected junior liens on any of Debtors' assets (except the Chapter 5 Claims), which are subject to valid, binding, perfected, enforceable, and non-avoidable liens immediately prior to the Petition Date (the liens granted under Section 364(c)(2) and (c)(3) the "Liens"). See Loan Agreements § 2(g).

**4.     Events of Default.**

The following are events of default under the Loan Agreements:

- <u>Payment Default</u>.  Failure of Debtor to pay all outstanding Obligations due under the Loan Documents on the Maturity Date.

- <u>Specified Defaults</u>.  Failure of Debtor to: (i) perform or observe any term, covenant, or agreement contained in <u>Section 5</u> of the Loan Agreements; or (ii) perform or observe any other term or covenant contained in the Loan Documents and, in the case of the foregoing <u>clauses (i) & (ii)</u>, such default shall continue unremedied for a period of the later of (x) ten (10) Business Days after Lender sends a notice of default to Debtor, and (y) the applicable cure period specifically enumerated in this Loan Agreement;

- <u>Bankruptcy Specific Defaults</u>.  The occurrence of any of the following in the Chapter 11 Case:

  - a violation of the Financing Orders or the entry of an order amending, supplementing, staying, vacating, reversing or otherwise modifying the Loan Documents without the written consent of Lender;

  - the dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code;

  - the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (x) to allow any creditor to execute upon or enforce a Lien on any Collateral with respect to assets of any Debtor exceeding Fifty Thousand and No/100 Dollars ($50,000.00) in value; or (y) to permit the perfection of any Lien on the Collateral;

  - Debtor seeks to sell any of its assets outside of the ordinary course of business without full repayment of the Loan to Lender;

  - the allowance of any claim or claims under Section 506(c) or 552(b) of the Bankruptcy Code against or with respect to any of the Collateral; or

  - the entry by the Bankruptcy Court of a debtor-in-possession financing order or amendment thereto that does not fully repay the Loan, the form and substance of which is not consented to in writing by Lender.

<u>See</u> Loan Agreements § 6.

## V.
## BASIS FOR RELIEF REQUESTED

Section 364(c) provides that if the trustee is unable to obtain unsecured credit under Section 503(b)(1), the court may authorize postpetition financing: (1) with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b); (2) secured by a

lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c). The Trustee does not seek a priming lien.

Provided that an agreement to obtain secured credit is consistent with the provisions of the Bankruptcy Code, courts grant a trustee considerable deference in acting in accordance with its reasonable business judgment in obtaining such credit. In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

Courts also have applied a three-part inquiry to a request for post-petition financing. Specifically, the courts will examine whether: (1) the debtor can obtain credit unencumbered or without superpriority status; (2) the credit transactions are necessary to preserve assets of the estate; and (3) the terms of the credit agreements are fair, reasonable, and adequate. 3 Collier on Bankruptcy ¶ 364.04[1] (15th ed. rev. 2008) (citing In re Crouse Group, Inc., 71 B.R. 544 (Bankr. E.D. Pa. 1987) modified on other grounds, 75 B.R. 553 (Bankr. E.D. Pa. 1987)); see also In re Barbara K. Enters., Inc., No. 08-11474 (MG), 2008 WL 2439649, at *10 (Bankr. S.D.N.Y. June 16, 2008).

The Loans meet the standards of Section 364(c) of the Bankruptcy Code because: (1) the Trustee has been unable to obtain necessary credit without providing the priority and non-priming liens permitted under Section 364(c); (2) the Loans are necessary to operate the Stations and preserve the Debtors' estates' assets and a sound exercise of the Trustee's business judgment; and (3) the Loans will allow the Trustee to operate the Stations and generate revenue through AutopilotFM's programming until the pending sale is closed, which timing will be largely dependent upon FCC approval of the transfer of the FCC licenses to the buyer(s).

The statutory requirement for obtaining postpetition credit under Section 364(c) is a finding, made after notice and hearing, that the trustee is "unable to obtain unsecured credit

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

allowable under section 503(b)(1) of [the Bankruptcy Code]." In re Plabell Rubber Prods., Inc., 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992) (the debtor must show "by a good faith effort that credit was not available without" the protections of Section 364(c)). Section 364(c) financing is appropriate when the trustee is unable to obtain unsecured credit allowable as an ordinary administrative claim. See In re Crouse Group, 71 B.R. at 549 (secured credit under Section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

"The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." In re Snowshoe Co., Inc., 789 F.2d 1085, 1088 (4th Cir. 1986). A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c). Id.; In re Plabell Rubber Prods., 137 B.R. at 900. Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom, Anchor Sav. Bank FSB v. Sky Valley, 99 B.R. 1997, 120 n.4 (N.D. Ga. 1989).

The Trustee's diligent search for financing on less onerous terms is sufficient under the circumstances of these Chapter 11 Cases. The Trustee sought financing from not only institutional lenders (i.e. banks and credit unions), but other lenders that more commonly provide debtor-in-possession financing. See Carmel Decl. ¶ 18. None of these potential lenders would provide any loan (and certainly not an unsecured loan) to the Debtors citing, among other reasons: (i) the Debtors have been in bankruptcy since October 2021 (over 20 months); (ii) the history of the Debtors and the Stations both pre- and post-petition; (iii) the requested loan amounts are too small, noting minimum post-petition loan amounts in the millions of dollars; and (iv) there is no real property, inventory, or receivables to serve as collateral. See id. ¶ 19.

Moreover, the proposed Loans are in the best interests of the Debtors' estates, their creditors, and other parties in interest. The Loans will provide the necessary funds to pay the Debtors' operating costs, renew their insurance, and pay marketing costs to facilitate a robust sale, thereby generating more money to pay the Debtors' creditors. The Loans are limited to

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

$342,000 because AutopilotFM is now able to begin programming for the Stations, thereby generating revenue to pay the Debtors' operating expenses in the future. The Trustee submits that the Loans are fair and reasonable under these circumstances. See id. ¶ 20.

## VI.
## EMERGENCY RELIEF AND WAIVER OF THE STAY ARE WARRANTED

Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm. FED. R. BANKR. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. See In re Ames Dep't Stores, 115 B.R. at 36, n.2 (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

As described above, the Debtors' estates will suffer immediate and irreparable harm without Court authorization for the relief requested herein, because the Debtors will be unable to pay outstanding and current rent and utilities and will be unable renew their insurance. Accordingly, the Trustee submits that Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted. For the same reasons, the Trustee also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).

## VII.
## CONCLUSION

WHEREFORE, the Trustee respectfully requests: (a) entry of an order substantially in the form of the proposed Interim Financing Order attached hereto as **Exhibit 1** on an emergency basis under Bankruptcy Rule 6003(b) and waiver of the stay imposed by Bankruptcy Rule 6004(h); (b) after a final hearing on the relief requested herein, entry of a Final Financing Order approving the relief requested herein, substantially in the form attached hereto as **Exhibit 2**; and (c) such other and further relief as is just and equitable.

DATED: June 29, 2023.

By: /s/ Gregory E. Garman
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119

*Attorneys for Michael Carmel, Chapter 11 Trustee*