GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel,
Chapter 11 Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re:<br><br>SILVER STATE BROADCASTING, LLC,<br><br>☐ AFFECTS THIS DEBTOR<br>☒ AFFECTS GOLDEN STATE BROADCASTING, LLC<br>☐ AFFECTS MAJOR MARKET RADIO, LLC<br>☐ AFFECTS ALL DEBTORS | CASE NO. BK-21-14978-ABL<br><br>Chapter 11<br><br>*Jointly Administered with:*<br><br>Golden State Broadcasting, LLC<br>Case No. 21-14979-ABL<br><br>Major Market Radio, LLC<br>Case No. 21-14980-ABL<br><br>Hearing Date:<br>Date:  August 9, 2023<br>Time: 1:30 p.m. |
|---|---|

**MOTION PURSUANT TO FED. R. BANKR. P. 9019 TO AUTHORIZE AND APPROVE STIPULATED SETTLEMENT WITH C&E HAAS DEVELOPMENT COMPANY, LLC REGARDING THE EMERGENCY MOTION FOR MODIFICATION OF THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, RELIEF FROM CURRENT STAY MODIFICATION ORDER AND TO REINSTATE AUTOMATIC STAY**

Michael Carmel, in his capacity as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of Silver State Broadcasting, LLC ("Silver State"), Golden State Broadcasting, LLC ("Golden State"), and Major Market Radio, LLC (collectively with Silver State and Golden State, the "Debtors"), by and through his counsel, Garman Turner Gordon LLP, hereby submits his motion (the "Motion") for entry of order pursuant to Bankruptcy Rule[1] 9019, substantially in the

---
[1] Unless otherwise stated, all references to "Section" herein shall be to title 11 of the U.S. Code (the "Bankruptcy

form attached hereto as **Exhibit 1** (the "9019 Order"), approving the proposed *Stipulation Regarding C&E Claims and to Resolve Pending Motion* [ECF No. 632] (the "Stipulated Resolution") by and between Michael Carmel, as the Trustee for Golden State, and C&E Haas Development, LLC ("C&E"), attached hereto as **Exhibit 2**.

This Motion is made and based upon the Memorandum of Points and Authorities herein; the Declaration of Chapter 11 Trustee Michael Carmel, Esq. ("Carmel Decl.") filed contemporaneously herewith pursuant to Local Rule 9014(c); as well as the papers and pleadings on file herein, judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and any further argument and evidence presented at the time of the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**I.**
**INTRODUCTION**

The Trustee inherited Golden State's long-running dispute with C&E, stemming at least as far back as 2015 and related in part to matters involving Golden State's original principal, Mr. Stolz. Golden State has quibbled with C&E over rent, maintenance, antenna, site use, and payments over the course of more than eight years. These disputes are resolved through the Stipulated Resolution the Trustee has reached with C&E that is the subject of this Motion.

Commensurate with entering into the Agreement (defined *infra*) with C&E,[2] Golden State's FM radio station at 92.7 FM, call sign KREV ("SF Radio Station") utilized C&E's non-residential real property consisting of a transmitter site located at 1 Bayview Park Road, San Francisco, California (the "Tower Site") as its transmitter site. This use continues today. In order for the Trustee to successfully market and eventually sell the SF Radio Station (one of the most valuable assets of these Debtors' estates), Golden State's ongoing disputes with C&E must be

---

Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" or "LR" shall refer to the Local Rules of Bankruptcy Practice of the U.S. Bankruptcy Court for the District of Nevada.

[2] One of the many disputes Golden State had with C&E was the true commencement date under the Agreement and the date(s) by which Golden State owed C&E rent for occupying the Tower Site. This dispute is resolved through the Trustee's settlement with C&E, memorialized in the Stipulated Resolution. *See* Carmel Decl. ¶ 13.

brought to a close, and a cure amount for the assumption or assumption and assignment of the Agreement needs to be established.

The Stipulated Resolution brings certainty and finality to the pending disputes because it: ensures continued radio station broadcasting (which allows the Golden State estate to retain the ability to generate revenue in the short term and preserve station value in the long term pending an eventual asset sale); continues Golden State's ability to broadcast from existing premises, thus avoiding time, expenses, and uncertainty associated with locating an alternate tower site and initiating broadcasting at a new site even if one could be found; resolves C&E's more than eight-year payments dispute with Golden State regarding antenna use at the Tower Site and contains the incurrence of legal fees related thereto; brings certainty and conclusion to the Trustee's disputes with C&E regarding calculations underpinning the C&E Claim and asserted administrative claim; waives post-petition late charges through August 1, 2023, that C&E had asserted were otherwise due from Golden State resulting in a significant financial benefit to the Golden State estate; establishes a mechanism for addressing late monthly payments beginning August 1, 2023; allows a modest amount of breathing room for the Trustee to bring Golden State current on post-petition rent; fixes a cure amount for C&E related to the potential assumption or assumption and assignment of the Agreement in connection with any sale of the SF Radio Station; and resolves a pending contested matter in these Chapter 11 Cases.

For these reasons the Trustee respectfully requests the Court grant this Motion and approve the Stipulated Resolution attached hereto as **Exhibit 2**.

## II.
## BACKGROUND

1. On October 19, 2021, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

2. On November 19, 2021, this Court entered its *Order Authorizing Joint Administration of Cases* [ECF No. 37], directing that "the Chapter 11 case of SILVER STATE BROADCASTING, LLC (Case No. 21-14978-abl), shall be jointly administered with the Chapter

11 cases of GOLDEN STATE BROADCASTING, LLC (Case No. 21-14979-abl) and MAJOR MARKET RADIO LLC (Case No. 21-14980-abl), with SILVER STATE BROADCASTING, LLC designated as the Lead Case ("Lead Case"), and all papers relating to the above referenced Debtors shall be docketed in the Lead Case (Case No. 21-14978-abl)[.]" *See* ECF No. 37 at p. 2 of 4.

3. On August 11, 2022, C&E filed its proof of claim against Golden State in the amount of $226,901.37. *See* Claim 10-1 ("C&E Claim"), appearing in the Silver State claims register.

4. On March 6, 2023, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or, in the Alternative, to Convert Cases to Chapter 7 Pursuant to 11 U.S.C. § 1112(b); and Memorandum of Point and Authorities in Support and Reservation of Rights [ECF No. 405], and Creditor Mincin Law, PLLC's Motion for Appointment of Chapter 11 Trustee [ECF No. 393]*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 419.

5. On March 10, 2023, Tracy Hope Davis, the United States Trustee for Region 17, appointed the Trustee as the Chapter 11 trustee for Debtors' estates. *See* ECF No. 420.

6. On March 10, 2023, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 422], thereby approving the Trustee's appointment.

7. On March 13, 2023, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee*, accepting his appointment as the Chapter 11 trustee for the Debtors' estates. *See* ECF No.424.

8. On March 20, 2023, the Trustee filed his *Application for Order Approving Employment of Garman Turner Gordon LLP as Attorneys for Michael Carmel, Chapter 11 Trustee*. *See* ECF No. 425. After notice and a hearing, this Court entered its *Order Approving Application for Order Approving Employment of Garman Turner Gordon LP as Attorneys for Michael Carmel, Chapter 11 Trustee* [ECF No. 528].

9. On April 25, 2023, the Trustee filed his *Motion for Order Pursuant to 11 U.S.C. §§ 363 and 105 and Bankruptcy Rules 6004 and 2002 Authorizing Chapter 11 Trustee to Enter Into*

*Programming Agreements and Use Revenue Generated to Recoup Operational Costs of the Respective Stations* [ECF No. 502] (as supplemented by ECF No. 537, the "Programming Motion"), seeking Court authority to enter into programming agreements with AutopilotFM, LLC (the "Programmer") that enable the Estates to broadcast programming on the Estates' Radio Stations[3] including the SF Radio Station. After notice and a hearing, this Court granted the Programming Motion. *See* ECF No. 566.

10. The FM radio station at 92.7 FM, call sign KREV (the SF Radio Station) is now broadcasting programming through the collaborative efforts of the Trustee and the Programmer. *See* Carmel Decl. ¶ 5.

11. On June 22, 2023, the Trustee filed the *Trustee's Motion for Entry of Orders: (A)(I) Approving Bid Procedures Relating to Sale of Debtors' Station Assets; (II) Scheduling a Hearing to Consider the Sale; (III) Approving the Form and Manner of Notice of Sale By Auction; (IV) Establishing Procedures for Noticing and Determining Cure Amounts; and (V) Granting Related Relief; and (B)(I) Authorizing the Sale of Debtors' Station Assets Outside of the Ordinary Course of Business Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Authorizing the Assumption, Sale and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [ECF No. 627].

12. The estates' ability to continue broadcasting programming from the SF Radio Station and generate revenue during the pendency of the sale process is material to the Trustee's efforts to ultimately sell the Radio Stations. *See* Carmel Decl. ¶ 6.

**Background: the SF Tower Site Motion**

13. The Trustee's investigations to date indicate that the SF Radio Station is among the most valuable assets of the Debtors' estates. *See* Carmel Decl. ¶ 4.

14. Prepetition, Golden State had entered into a Transmitter Site Use Agreement with C&E (the "Agreement"), which provided for Golden State to utilize non-residential real property

---

[3] The Radio Stations refers, collectively, to: The SF Radio Station; FM radio station at 104.3 FM, call sign KFRH ("Vegas FM Station"); FM radio station at 97.7 FM, call sign KRCK ("Palm Springs Station"); AM radio station at 790 AM, call sign KBET ("Vegas AM Station"); and their affiliated translator stations.

consisting of a transmitter site located at 1 Bayview Park Road, San Francisco, California (the Tower Site) as a transmitter site for the SF Radio Station.[4]

15. Prior to the Trustee's appointment, this Court had entered its *Order Granting in Part and Denying in Part Motion* [ECF No. 346] ("Stay Modification Order"). *Inter alia*, the Stay Modification Order provided as follows:

> **IT IS ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART**.
> 1. The Motion is **GRANTED** to the extent that is seeks relief from the automatic stay for cause under 11 U.S.C. §362(d)(1), and automatic stay shall remain in effect subject to each and all of the following conditions:
> * * *
> c. As additional adequate protection under 11 U.S.C. §§ 362(d)(1) and 361(a)(1) going forward, Golden State shall remit to Haas Development the full contractual Basic Payment amount[] and any adjustments thereto[] when due each month under the terms of the Agreement during the pendency of this case prior to confirmation; and
> * * *
> e. Should Golden State fail to timely and fully satisfy any of these conditions, upon the filing of an *ex parte* motion by Haas Development, supported by admissible evidence, the automatic stay shall terminate without further notice or opportunity for hearing.

*See* ECF No. 346 at 2:15 to 3:10 (emphases as in original).

16. On March 30, 2023, Debtors' former counsel provided a copy of the Agreement and advised that the next monthly payment on behalf of Golden State was due April 1, 2023. *See* Carmel Decl. ¶ 7.

17. Among other provisions, Section 11 of the Agreement provides in part:

> Should any litigation or administrative proceeding arise as the result of Licensee's use of Licensor's transmitter site, transmitter building and/or antenna tower, and should either Licensor or any tenant or licensee of Licensor, . . . be named as a defendant or other party respondent to said litigation or proceeding, Licensee **shall pay all costs, including legal fees, of Licensor** . . . .

(Emphasis added). *See* Carmel Decl. ¶ 9.

18. C&E's attorney fees exceeded fifty thousand dollars, all incurred in connection with litigating Golden State before the Parties' settlement. *See* Carmel Decl. ¶ 10.

---

[4] A copy of the Agreement appears to have previously been submitted to the Court under seal, by stipulation between C&E and the Debtors. *See* ECF Nos. 281, 284. In abundance of caution, the Agreement is not attached to this Motion.

19. The Trustee's early investigations revealed that Golden State did not have sufficient funds to make that payment. *See* Carmel Decl. ¶ 8. However, the Stay Relief Order had essentially provided C&E the opportunity to terminate the automatic stay on an *ex parte* basis if certain payments were not made on April 1, 2023.

20. Therefore, on March 31, 2023, the Trustee filed his *Emergency Motion for Modification of the Automatic Stay or, in the Alternative, Relief from Current Stay Modification Order and to Reinstate Automatic Stay* [ECF No. 446] ("SF Tower Site Motion").

21. The Trustee authorized the filing of the SF Tower Site Motion to ensure that the estates do not lose a valuable asset—the SF Radio Station, call sign KREV—until the Trustee had sufficient time to effectuate his duties as the Chapter 11 trustee. *See* Carmel Decl. ¶ 11.

22. Immediately, the Trustee and C&E began exploring whether a consensual resolution of the issues joined by the SF Tower Site Motion were possible. *See* Carmel Decl. ¶ 12.

23. To facilitate continued dialogue, and in an attempt to consensually resolve the issues joined by the SF Tower Site Motion, the Trustee and C&E (together, the "Parties") entered into a series of stipulations to continue the hearing on the SF Tower Site Motion (and commensurately extend C&E's opposition and Trustee's reply briefing deadlines). *See* ECF Nos. 480 (approved per Order at ECF No. 492); 500 (approved per Order at ECF No. 508); and 573 (approved per Order at ECF No. 574).[5]

24. On June 23, 2023, the Parties' *Stipulation Regarding C&E Claims and to Resolve Pending Motion* [ECF No. 632] (the "Stipulated Resolution") was filed.

25. *Inter alia*, the Stipulated Resolution requires the Trustee to file and prosecute a motion seeking Court approval pursuant to FED. R. BANKR. P. 9019. *See* ECF No. 632 at p. 4 of 5.

---

[5] Presently, the SF Tower Site Motion is set for status on August 9, 2023. *See* ECF No. 639.

## III.
## JURISDICTION AND VENUE

26. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (G), and (O). Venue of the Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a "core proceeding" over which the Court has jurisdiction to render a decision.

27. The statutory bases for the relief requested herein are Sections 105, 503, and 502 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

28. Pursuant to Local Rule 9014.2, the Trustee consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## IV.
## LEGAL ARGUMENT

**A.    Applicable Standard Under Bankruptcy Rule 9019**

Compromise and settlement agreements have long been an integral part of the bankruptcy process. *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1958) (*citing Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). A bankruptcy court may approve a compromise if it makes an informed, independent judgment that the compromise is fair and equitable. *See id.*

In order to determine whether a proposed settlement is fair and equitable, a bankruptcy court is directed to consider the following factors (the "A&C Properties Factors"): "(1) the probability of success in litigation of the dispute, (2) the difficulties to be encountered, if any, in the collection of an award, (3) the complexity, expense, inconvenience and delay of litigation, and (4) the interest of creditors in the case, giving deference to any reasonable views expressed." *In re Endoscopy Ctr. of S. Nevada, LLC*, 451 B.R. 527, 535-36 (Bankr. D. Nev. 2011) (*citing In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

. . .

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

In seeking approval of a compromise, the trustee has the burden of persuasion. *See id*. at 536 (citation omitted). However, the trustee is not necessarily required to satisfy each of the A&C Properties Factors as long as they favor approval of the settlement as a whole. *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 416-17 (Bankr. N.D. Cal. 2004). A bankruptcy court may approve a settlement pursuant to Bankruptcy Rule 9019 where, based on its own judgment, the court determines that the settlement is "fair and equitable when comparing the claims being compromised against the likely rewards of litigation." *In re Endoscopy Center*, 451 B.R. at 535 (*citing TMT Trailer*, 390 U.S. at 425).

Thus, the settlement does not have to be the best the trustee could have possibly obtained but must only fall "within the reasonable range of litigation possibilities." *In re Adelphia Comm'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (citation omitted). The court is not required to conduct a mini-trial of the underlying claims or rule upon disputed facts and questions of law, which would defeat the purpose of settlement and frustrate negotiations, but need only canvass the issues. *See Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008) (*citing, inter alia, Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997)); *In re Western Funding Inc.*, 550 B.R. 841, 852 (B.A.P. 9th Cir. 2016), *aff'd* 705 F. App'x 600 (9th Cir. 2017).

B. **The Stipulated Resolution Is a Fair and Reasonable Settlement and Should be Approved.**

Each of the A&C Properties Factors support approval of the Stipulated Resolution, which is fair and equitable when considering the breadth and extent of disputes it resolves, as well as the expenses and delay saved with resolving these disputes consensually instead of litigating each one separately to an evidentiary hearing.

The Stipulated Resolution cements a number of moving parts impacting estate administration. It (*a*) preserves the SF Radio Station's ability to broadcast from existing premises; (*b*) fixes C&E's unsecured proof of claim at a compromised amount of $219,999.52 (the "Pre-Petition Claim"), thereby resolving the issue of allowance of the C&E Claim (formerly the subject

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

9

of a claim objection filed by the then-debtors-in-possession[6]); (*c*) fixes an allowed administrative claim for C&E in the compromised amount of $95,000.00 (the "Post-Petition Fixed Admin Claim") to address arrearages and attorney fees through June 30, 2023, thereby affording the Golden State estate a substantial discount through C&E's waiver of all post-petition late charges through August 1, 2023 (an amount of approximately $48,856.03); (*d*) provides certainty to the Golden State estate and C&E by establishing a timeframe by which C&E can expect to receive payment in full on its Post-Petition Fixed Admin Claim, thus bringing Golden State current on its post-petition arrearage; (*e*) incentivizes timely monthly payments starting August 1, 2023, by entitling C&E to a late fee of $2,531.37/month for untimely monthly adequate protection payments directed by the Stay Modification Order; (*f*) establishes a mechanism for C&E to recover post-petition missed payments from August 1, 2023, thereafter in the form of an administrative claim, incentivizing the Parties' continued cooperation; (*g*) resolves the Trustee's Tower Site Motion, thereby containing the Golden State estate from incurring further administrative expenses associated with prosecuting ongoing disputes with C&E[7]; (*h*) sets a cure amount related to the assumption or assumption and assignment of the Agreement in connection with a Section 363 asset sale, paving the way for a potentially successful sale of the valuable SF Radio Station asset; and (*i*) preserves the balance struck in the Court's Stay Modification Order by providing C&E the opportunity to obtain stay relief in the event of uncured default while allowing the Trustee to renew his Tower Site Motion in the future if needed.

1.  **The probability of success in litigation of the dispute.**

The Trustee and C&E seriously dispute their relative probabilities of success in litigating the Tower Site Motion, an objection to the C&E Claim, and any objection to a C&E administrative expense application. However, in order for the Trustee to successfully market and sell the SF Radio Station in a Section 363 asset sale, the cure amount to be paid to C&E needed to be established—

---

[6] *See, e.g.*, ECF Nos. 356, 392, 418.

[7] C&E asserts that its attorney fees are recoverable from Golden State under the Agreement. So, resolving ongoing litigation saves the estate expenses in the form of not only Trustee's attorney fees but likely C&E's as well. *See* Carmel Decl. ¶ 14.

10

and, to establish a cure, the allowance of the C&E Claim, the amount and allowance of any administrative expenses owed to C&E (including monthly payments directed by the Stay Modification Order and attorney fees incurred by C&E Haas in connection with enforcement of the Agreement), and the Tower Site Motion all needed to be resolved.

The cure amount established by the Stipulated Resolution falls well within the range of litigation possibilities. The Trustee considered the information provided by C&E concerning Golden State's historical use of the Tower Site, antenna use, and payments records from all sources. *See* Carmel Decl. ¶ 15. The Trustee also considered what the estate liability might look like (net of incurred administrative expenses) if these matters proceeded in litigation including to evidentiary hearings. *See* Carmel Decl. ¶ 16. The Trustee also conducted an in-depth analysis of the calculations underpinning the C&E Claim and the administrative expenses asserted by C&E post-petition. *See* Carmel Decl. ¶ 17. The Trustee as well considered C&E's legal fees incurred in connection with litigating Golden State during the pendency of the Chapter 11 Cases. *See* Carmel Decl. ¶ 18. The Trustee also considered the benefit to the Golden State estate of maintaining a consistent broadcasting site through the pendency of the asset sale process. *See* Carmel Decl. ¶ 19. The Trustee likewise considered the difficulties encountered should the Golden State estate not prevail in the Trustee's efforts to modify the automatic stay or otherwise seek relief from the Court's Stay Modification Order. *See* Carmel Decl. ¶ 20.

Based on his analyses of what liability might look like for the Golden State estate in the event the Trustee did not prevail on the Tower Site Motion, in objecting to the C&E Claim, or in objecting to C&E's asserted administrative expenses, the Trustee believes the Parties' compromise results in a significant benefit to the Golden State estate, particularly given C&E's discount of post-petition late fees of just over forty-eight thousand dollars. *See* Carmel Decl. ¶ 21. Moreover, the extent of litigation between Golden State and C&E prior to the Trustee's appointment further demonstrates that success is far from guaranteed. As a result, this factor weighs strongly in favor of approval of the Stipulated Resolution.

. . .

. . .

      **2.      The difficulties to be encountered, if any, in the collection of an award.**

The Trustee did not consider difficulties encountered in the collection of an award from C&E because the pending contested matter (SF Tower Site Motion) and other facets of estate administration that are resolved through the Stipulated Resolution did not involve collection of amounts *from* C&E but rather amounts asserted as due and owing *to* C&E. Thus, difficulties in collecting an award *from* C&E did not factor into the Trustee's considerations underpinning the settlement; however, the Trustee did consider the Golden State estate's ability to pay the Post-Petition Fixed Admin Claim in a timely manner and maintain currency going forward commencing with the August 1, 2023, payment coming due to C&E. *See* Carmel Decl. ¶ 22. As a result, this factor is neutral or weighs slightly in favor of approving the Stipulated Resolution.

      **3.      The complexity, expense, inconvenience, and delay of litigation.**

The complexity, expense, inconvenience, and delay associated with litigating the issues resolved through the Stipulated Resolution is significant. The issues joined in the Tower Site Motion, the C&E Claim, and any asserted administrative expenses by C&E are fact intensive. Litigating the C&E Claim alone would require the Parties to untangle and investigate dealings C&E had with Golden State dating back to approximately October 2013, including establishing the date by which Golden State began to utilize the Tower Site and with which antenna. *See* Carmel Decl. ¶ 23. Then, the Trustee would need to litigate a fact-intensive payment history that involved several iterations of payors (some Debtor-affiliated and others not). *See* Carmel Decl. ¶ 24. Such fact-intensive issues would require discovery and an evidentiary hearing. Additionally, because of the Parties' differing interpretations concerning the application of interest (as a late fee) to any outstanding balance, it is likely that any administrative expense application filed by C&E would also be fully litigated by the Parties and submitted to the Court for eventual resolution. In the meantime, both the Trustee and C&E were also ready to litigate the Tower Site Motion. As the Agreement allows for C&E to recoup its legal fees in connection with litigation or proceedings arising as the result of Golden State's use of the Tower Site, the Golden State estate would not only have to fund the Trustee's legal fees, but potentially also C&E's legal fees. Taken together, any one of these matters is substantive, significant, and expensive to litigate. However, *all* of these

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

12

matters needed to be resolved in order for a cure amount to be established. Further, the Trustee believed that, without a cure amount, his ability to successfully market the SF Radio Station would be hampered. *See* Carmel Decl. ¶ 25.

All of these considerations taken together mean that the complexity, expense, inconvenience, and delay associated with litigating these issues[8] is avoided through the Parties' consensual resolution. As such, this factor strongly favors approval of the Stipulated Resolution.

### 4. The interests of creditors, giving deference to any reasonable views.

Even amidst deference to reasonable views, the interests of creditors are served by the Stipulated Resolution. First, the Parties' settlement provides for ongoing use of the Tower Site premises, which enables Golden State to run broadcasting and generate revenue, which is absolutely in the interests of creditors. Second, stability in the SF Radio Station's broadcasting enhances the radio station's value as a going concern and is believed will ultimately increase the eventual purchase price the Trustee receives for selling this station, thereby giving the Golden State estate the best chance at a highest price received; more monies received in a sale of the SF Radio Station certainly benefits creditors. Third, fixing the cure amount provides assurance to interested purchasers of the SF Radio Station that they are dealing with a known, finite cure amount and also ensures that a cure dispute does not hold up an eventual sale of the SF Radio Station—which also benefits creditors because it removes a potential obstacle that could otherwise interrupt or delay sale closing. Fourth, bringing certainty and closure to a number of pending disputes is in the best interests of creditors because it stops the Golden State estate from incurring further administrative expenses in litigating these heavily fact-intensive issues tainted by the prior involvement of Debtors' principal. Fifth, establishing a means by which Golden State can come current on post-petition rent, while also incentivizing timely payments going forward and providing a mechanism to address default in future, avoids the immediate threat of C&E obtaining relief from the automatic stay and encourages the Parties' continued cooperation, which is certainly in the interests of

---

[8] That it took the Parties nearly three months to consensually resolve these issues (even amidst the Estates' pressing concerns related to stay relief) speaks volumes about how hotly contested they are.

creditors and the Golden State estate. As a result, this factor also heavily favors approval of the Stipulated Resolution.

Based on the foregoing, the Trustee submits that the Stipulated Resolution is fair and reasonable and requests that it be approved. *See* Carmel Decl. ¶ 26.

## V.
## CONCLUSION

The settlement memorialized in the Stipulated Resolution is in the best interests of the Golden State estate and the Debtors' creditors and is fair and reasonable under the standard set forth in *A & C Properties*. Accordingly, the Trustee respectfully requests the Court enter an order approving of the Stipulated Resolution pursuant to FED. R. BANKR. P. 9019 substantially in the form of **Exhibit 1**.

Dated this 11th day of July, 2023.

                              GARMAN TURNER GORDON LLP

                              By: */s/ Mary Langsner*
                                  GREGORY E. GARMAN, ESQ.
                                  TALITHA GRAY KOZLOWSKI, ESQ.
                                  MARY LANGSNER, PH.D.
                                  7251 Amigo Street, Suite 210
                                  Las Vegas, Nevada 89119
                                  *Attorneys for Michael Carmel, Chapter 11 Trustee*