1

2

3

_____
Honorable August B. Landis
United States Bankruptcy Judge

4

5  Entered on Docket
   November 20, 2023

6

7  GARMAN TURNER GORDON LLP
   GREGORY GARMAN, ESQ.
8  Nevada Bar No. 6654
   Email: ggarman@gtg.legal
9  TALITHA GRAY KOZLOWSKI, ESQ.
   Nevada Bar No. 9040
10 Email: tgray@gtg.legal
   MARY LANGSNER, Ph.D.
11 Nevada Bar No. 13707
   Email: mlangsner@gtg.legal
12 7251 Amigo Street, Suite 210
   Las Vegas, Nevada 89119
13 Tel: 725.777.3000
   *Attorneys for Michael Carmel,*
14 *Chapter 11 Trustee*

15              **UNITED STATES BANKRUPTCY COURT**

16                      **DISTRICT OF NEVADA**

| 17 | In re: | CASE NO. BK-21-14978-ABL |
|---|---|---|
| 18 | SILVER STATE BROADCASTING, LLC, | Chapter 11 |
| 19 |   AFFECTS THIS DEBTOR  ☐ | *Jointly Administered with:* |
| 20 |   AFFECTS GOLDEN STATE BROADCASTING, LLC  ☐ | Golden State Broadcasting, LLC Case No. 21-14979-ABL |
| 21 | | |
| 22 |   AFFECTS MAJOR MARKET RADIO, LLC  ☐ | Major Market Radio, LLC Case No. 21-14980-ABL |
| 23 |   AFFECTS ALL DEBTORS  ☒ | |
| 24 | | Hearing Date: November 14, 2023 Hearing Time: 1:30 p.m. |

25    **ORDER: (I) AUTHORIZING THE SALE OF DEBTORS' STATION ASSETS OUTSIDE
26    OF THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS,
      CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) AUTHORIZING THE
27    ASSUMPTION, SALE, AND ASSIGNMENT OF CERTAIN EXECUTORY
      CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

28

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Michael Carmel, in his capacity as the Chapter 11 trustee ("<u>Trustee</u>") of the bankruptcy estates of Silver State Broadcasting, LLC, Golden State Broadcasting, LLC, and Major Market Radio, LLC (collectively, "<u>Debtors</u>"; each, a "<u>Debtor</u>"), filed his motion for entry of an *Order: (I) Authorizing the Sale of Debtors' Station Assets Outside of the Ordinary Course of Business Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Authorizing the Assumption, Sale, and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "<u>Sale Motion</u>") [ECF No. 627],[1] which was heard by the Court on November 14, 2023, at 1:30 p.m.  (the "<u>Sale Hearing</u>").  Counsels' appearances are reflected in the above-captioned Court's record of the Sale Hearing.

The Court read and considered the Motion brought pursuant to Sections 105, 363, and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and Local Bankruptcy Rules for the District of Nevada, the supplemental declaration of Michael Carmel filed in support of the Sale Motion [ECF No. 852] (the "<u>Carmel Sale Dec.</u>"), and the other documents filed in connection with the Sale Motion, including without limitation, the Bid Procedures Order [ECF No. 746], the *Notice Announcing Prevailing Bids and Bidders* [ECF No. 845], and the *Notice of: (I) Potential Assumption of Executory Contracts And Unexpired Leases, (II) Fixing of Cure Amounts; and  (III) Deadline to Object Thereto* [ECF No. 844].  The Court's findings and conclusions of law placed on the record at the Sale Hearing are incorporated herein pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and 7052.

It appearing that the relief requested in the Motion is in the best interest of Debtors' estates, creditors, and other parties-in-interest, and after due deliberation and sufficient cause appearing therefor:

---
[1] Capitalized terms not otherwise defined in this Sale Order shall have the meanings set forth in the Sale Motion.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**A.**    **Jurisdiction and Venue**.  This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**B.**    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

**C.**    **Judicial Notice**.  The Court took judicial notice of the pleadings, papers, and other records in the Chapter 11 Cases pursuant to Federal Rule of Evidence 201, made applicable to these proceedings pursuant to Bankruptcy Rule 9017.

**D.**    **Notice**.  As evidenced by the certificates of service filed with this Court and based upon the representations of counsel at the Sale Hearing: (i) due, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Hearing, and the Sale, including the assumption and assignment of the Assumed Contracts and Leases, and Cure Amounts with respect thereto, has been provided in accordance with Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and is good, sufficient, and appropriate under the circumstances; and (iv) no other or further notice of the Motion, the Auction, the Sale Hearing, or the Sale to the Prevailing Bidders is or shall be required.

**E.**    **Opportunity to Object**.  A reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein has been given, in light of the circumstances, to all interested persons and entities, including the following: (i) the U.S. Trustee; (ii) all parties known to be asserting a lien on any of the Station Assets; (iii) the Internal Revenue Service; and (iv) all of Debtors' known creditors, equity security holders, and parties-in-interest entitled to notice under Bankruptcy Rule 2002(a).

**F.**    **Prevailing Bidders**.  As provided in the Bid Procedures Order, the Court conducted the in-court Auction on October 26, 2023.  At the conclusion of the Auction, the Trustee determined in his business judgment that the following bids were the highest and best and the

Court approved the following bids and bidders as the Prevailing Bids and Prevailing Bidders for the respective Station Assets:

| Debtor | Stations | Prevailing Bidders | Prevailing Bids |
|---|---|---|---|
| Golden State Broadcasting, LLC | KREV(FM) | Friends of KEXP | $3,750,000.00 |
| Silver State Broadcasting, LLC<br><br>Major Market Radio, LLC | KFRH(FM)<br><br>KRCK-FM, K251BX, & K238AK | VCY America, Inc. | $1,954,219.16<br><br>$298,281.73<br>$111,169.53<br>$82,282.46 |
| Silver State Broadcasting, LLC | KBET(AM) & K276GX | AutopilotFM, LLC | $150,000.00 |

The Asset Purchase Agreements executed by the Prevailing Bidders memorializing the Prevailing Bids are attached hereto as Exhibits 1-3 (collectively, the "APAs") and incorporated herein by this reference.

**G.** **Sale Satisfies Best Interests**. Good and sufficient reasons for approval of the Sale to the Prevailing Bidders have been articulated, and the relief requested in the Sale Motion is in the best interests of Debtors, their estates, the creditors, and other parties-in-interest.

**H.** **Business Justification**. The Trustee has demonstrated both: (i) good, sufficient, and sound business purposes and justifications for the Sale; and (ii) compelling circumstances for the Sale other than in the ordinary course of business under Section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization in that, among other things, the immediate consummation of the Sale is necessary and appropriate to maximize the value of Debtors' estates. Entry of an order approving the Sale to the Prevailing Bidders is a necessary condition precedent to consummating the Sale.

**I.** **Arm's-Length Sale**. The APAs were negotiated, proposed, and entered into by the Trustee and Prevailing Bidders without collusion, in good faith, and from an arm's-length bargaining position. Neither the Trustee nor the Prevailing Bidders have engaged in any conduct that would cause or permit the APAs to be avoided under Section 363(n) of the Bankruptcy Code.

Specifically, the Prevailing Bidders have not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

**J.**    **Good Faith Purchaser**.  The APAs were negotiated, proposed, and entered into by Trustee and the Prevailing Bidders in good faith, without collusion, and from arm's-length bargaining positions.  The Prevailing Bidders have proceeded in good faith in all respects in connection with this proceeding, and each Prevailing Bidder is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  Neither the Trustee nor Debtors' estates, nor the Prevailing Bidders have engaged in any conduct that: (i) would cause or permit the Sale transactions contemplated hereby and in accordance with the APAs to be avoided; (ii) would tend to hinder, delay, or defraud creditors; or (iii) would impose costs and damages under Section 363(n) of the Bankruptcy Code.

**K.**    **Highest and Best Offer**.  As demonstrated by the declarations and other testimony and evidence proffered or adduced prior to and at the Sale Hearing: (i) the Trustee has adequately marketed the Station Assets for sale; (ii) the consideration provided for in the APAs constitutes the highest or otherwise best offers for the Station Assets and provides fair and reasonable consideration for the Station Assets; (iii) the Sale pursuant to the APAs will provide a greater recovery for Debtors' creditors than would be provided by any other practical available alternative; (iv) the consideration to be paid by the Prevailing Bidders constitutes reasonably equivalent value and fair consideration (as those terms may be defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.  The Trustee's determination that the Prevailing Bids constitute the highest and best offers for the Station Assets constitutes a valid and sound exercise of the Trustee's business judgment.

**L.**    **Consideration**.    The Prevailing Bids represent fair and reasonable offers to purchase the Station Assets under the circumstances of the Chapter 11 Cases.  No other person or entity or group of entities other than the Prevailing Bidders has offered to purchase the Station

Assets for an amount that would give greater economic value to Debtors' estates.  Approval of the Motion, the Prevailing Bids, the APAs, and the consummation of the Sale contemplated thereby is in the best interests of Debtors, their creditors, their estates, and all other parties-in-interest.

   **M.**  <u>**Free and Clear**</u>.  Debtors' estates are the sole and lawful owner of the Station Assets or have a valid, enforceable property interest in such Station Assets.  The transfer of the Station Assets to the Prevailing Bidders under the APAs will be a legal, valid, and effective transfer of the Station Assets and vests or will vest the Prevailing Bidders with all right, title, and interest of Debtors' estates to the applicable purchased Station Assets free and clear of all liens, claims (as defined in Section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments, or interests of any kind or nature whatsoever, including but not limited to, product warranty claims and product liability claims (collectively, the "<u>Claims</u>").  The Prevailing Bidders would not have entered into the APAs and would not consummate the Sale if the Sale to the Prevailing Bidders and the assignment of the Assumed Contracts  and Leases to the Prevailing Bidders were not free and clear of all Claims or if the Prevailing Bidders would, or in the future could, be liable for any of the Claims.  For the avoidance of doubt, all Claims shall attach to the cash proceeds received by Debtors' estates ultimately attributable to the property against or in which such Claims are asserted, subject to the terms of such Claims, with the same validity, force, and effect, and in the same order of priority that such Claims now have against the Station Assets or their proceeds, if any, subject to any rights, claims, and defenses Debtors or their estates may possess with respect thereto.

   **N.**  The Trustee may sell the Station Assets free and clear of any Claims of any kind or nature whatsoever because in each instance, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Each entity with a Claim to or in the Station Assets to be transferred on the day of the closing of the Sale of the Station Assets to the Prevailing Bidders (the "<u>Closing</u>"): (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim; or (iii) otherwise falls within the provisions of Section 363(f) of the Bankruptcy Code.  Those holders of Claims who did not

object to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code.

> **O.**    All holders of Claims are adequately protected by having their Claims attach to the cash proceeds received by Debtors' estates that are ultimately attributable to the property against or in which such Claims are asserted, subject to the terms of such Claims, with the same validity, force and effect, and in the same order of priority, which such Claims now have against the Station Assets or their proceeds, if any, subject to any rights, claims, and defenses Debtors or their estates may possess with respect thereto.

> **P.    No Fraudulent Transfer**.    The Prevailing Bids and APAs provide Debtors' estates with reasonably equivalent value and fair consideration (as those terms are defined in the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and the Bankruptcy Code). The APAs were not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the State of Nevada.  Neither the Trustee nor the Prevailing Bidders is entering into the APAs fraudulently.

> **Q.    Not a Successor**.    The Prevailing Bidders: (i) are not successors to any of the Debtors; (ii) have not, de facto or otherwise, merged with or into the Debtors; (iii) are not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; (iv) do not have a common identity of incorporators, directors, or equity holders with the Debtors; and (v) are not holding themselves out to the public as a continuation of the Debtors.  The: (i) transfer of the Station Assets to the Prevailing Bidders in accordance with the terms of the APAs; and (ii) assumption and assignment to the Prevailing Bidders of the Assumed Contracts and Leases does not and will not subject the Prevailing Bidders to any liability whatsoever with respect to the operation of Debtors' businesses before the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the State of Nevada, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

**R.**     **Cure/Adequate Assurance**.  The assumption and assignment of the Assumed Contracts and Leases pursuant to the terms of this Sale Order is integral to AutopilotFM, LLC's APA and is in the best interests of Silver State Broadcasting, LLC, its estate, its creditors, and all other parties-in-interest, and represents the reasonable exercise of sound and prudent business judgment by the Trustee.  AutopilotFM, LLC has: (i) provided adequate assurance of their ability to cure any default existing prior to the date hereof with respect to the Assumed Contracts and Leases within the meaning of Sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code; and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assumed Contracts and Leases within the meaning of Sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  AutopilotFM, LLC's promise to perform the obligations under the Assumed Contracts and Leases after the Closing in accordance with their terms shall constitute adequate assurance of future performance within the meaning of Sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

**S.**     With respect to the Assumed Contracts and Leases: (i) the Trustee has met all of the requirements of Section 365(b) of the Bankruptcy Code; (ii) the Assumed Contracts and Leases can, upon the payment of the Cure Amounts, be assumed by Silver State Broadcasting, LLC and assigned to AutopilotFM, LLC; and (iii) upon such assumption and assignment, Silver State Broadcasting, LLC and its estate shall be forever released from any and all liability under the Assumed Contracts and Leases.

**T.**     **Prompt Consummation**.  The Sale in accordance with the APAs must be approved and consummated promptly in order to preserve the viability of the Debtors' estates' FCC licenses and to maximize the value of Debtors' estates for the benefit of their creditors.  Time is of the essence in consummating the Sale.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, CONCLUDED, AND DECREED AS FOLLOWS:**

1.    **Motion Is Granted**.  The Motion and the relief requested therein is GRANTED and APPROVED.

2.    **Objections Overruled**.  Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby denied and overruled on the merits with prejudice.

3.    **Approval of the Sale**.  The APAs and the Sale contemplated therein are hereby approved.  Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code, the Trustee, on behalf of the Debtors and the Debtors' estates, is hereby authorized to: (i) execute and perform the obligations under the APAs, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Sale pursuant to the APAs; (ii) consummate the Sale in accordance with the terms and conditions of the APAs and all additional documents and instruments contemplated thereby; and (iii) take all other and further action as may be reasonably necessary to implement and consummate the Sale to the Prevailing Bidders pursuant to the APAs.

4.    **Free and Clear**.  Except as otherwise specifically provided for in the APAs or this Sale Order, pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Trustee is authorized to transfer the Station Assets to the Prevailing Bidders in accordance with the applicable APAs and, as of the Closing, the Prevailing Bidders shall take title to and possession of the respective Station Assets free and clear of all Claims of any kind or nature whatsoever, with all such Claims to attach to the cash proceeds received by the Debtors' estates that are ultimately attributable to the property against or in which such Claims are asserted, subject to the terms of such Claims with the same validity, force, and effect, and in the same order of priority, which such Claims now have against the Station Assets or their proceeds, if any, subject to any rights, claims, and defenses Debtors or their estates may possess with respect thereto.

5.    **Valid Transfer**.  Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Trustee is authorized and directed to transfer the Station Assets in accordance with the terms of the APAs.  As of the Closing: (i) the Sale to the Prevailing Bidders pursuant to the respective

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

9

APAs effects a legal, valid, enforceable, and effective sale and transfer of the Station Assets to the Prevailing Bidders, and shall vest the Prevailing Bidders with all right, title, and interest to such Station Assets free and clear of all Claims; (ii) the APAs and the instruments contemplated thereby shall be enforceable against and binding upon the Prevailing Bidders, the Debtors, and the Debtors' estates, and not subject to rejection or avoidance by the Debtors, the Debtors' estates, or any subsequently appointed chapter 11 or chapter 7 trustee of the Debtors and their estates; and (iii) the Sale to the Prevailing Bidders pursuant to the APAs shall be free and clear of all Claims, with all such Claims to attach to the proceeds of the Sale in the order of their priority and with the same validity, force, and effect which they now have against the Station Assets, subject to any rights, claims, and defenses Debtors or their estates may possess with respect thereto.

6. This Sale Order: (i) shall be effective as a determination that, as of the Closing: (a) no Claims relating to the Station Assets will be assertable against the Prevailing Bidders, their affiliates, successors, or assigns or any of their respective Station Assets, (b) the Station Assets shall have been transferred to the Prevailing Bidders free and clear of all Claims, and (c) the conveyances described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, national and international registrars of deeds, administrative agencies, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APAs.

7. If any person or entity that has filed financing statements, liens, or other documents or agreements evidencing Claims against or in the Debtors' estates or the Station Assets shall not have delivered to the Prevailing Bidders prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests that the person or entity has with respect to Debtors, their estates, the Station Assets, or

otherwise, then only with regard to Station Assets that are purchased by the Prevailing Bidders pursuant to the APAs and this Sale Order: (i) the Trustee is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Station Assets; and (ii) the Prevailing Bidders are hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the applicable Station Assets.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

8.       All persons or entities in possession of some or all of the Station Assets identified in the APAs are directed to surrender possession of such Station Assets to the Prevailing Bidders or their respective designees at the time of the Closing of the Sale.

9.       Following the Closing, no holder of any Claim shall interfere with the Prevailing Bidders' title to or use and enjoyment of the Station Assets based on or related to any such Claim, or based on any actions the Trustee, the Debtors' estates, the Debtors-Out-of-Possession, or equity may take in Debtors' Chapter 11 Cases, or in the event of a conversion of any of the Chapter 11 Cases to a case under any other chapter of the Bankruptcy Code, any such actions in that case.

10.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Trustee and the Debtors' estates to transfer the Station Assets to the Prevailing Bidders in accordance with the APAs and this Sale Order.  Without limiting the foregoing, all persons and entities, including, but not limited to, the Debtors' officers, managers, members (and their respective officers, directors, managers, members, or shareholders), employees, and former employees, are prohibited and enjoined from taking any action or filing any pleading with the Federal Communications Commission ("FCC") or any other governmental agency to adversely affect or interfere with consideration of any application or other filings with the FCC (or any other governmental agency) for consent to an assignment of the FCC authorizations for the Stations to the Prevailing Bidders or any other matter related to the Stations or their transfer or the transfer of Station Assets to the Prevailing Bidders, including by asserting

any basis that is the subject of bankruptcy laws, or of contractual or other issues, subject to or appropriate for determination by a bankruptcy or other court of competent jurisdiction, or by asserting any fact or argument that is not truthful and correct, or is frivolous.

11.    To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Station Assets sold, transferred, or conveyed to the Prevailing Bidders on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale contemplated by the APAs.

12.    **General Assignment**.  On the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Prevailing Bidders of the Station Assets as set forth in each of the APAs.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale to the Prevailing Bidders pursuant to the APAs.

13.    **Injunction**.  Except as expressly permitted by the APAs or by this Sale Order, all persons and entities, including, but not limited to, the Debtors' officers, managers, members (and their respective officers, directors, managers, members, or shareholders), employees, former employees, all debt security holders, equity security holders, administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, lessors, trade creditors, and all other creditors, holding Claims of any kind or nature whatsoever against the Debtors or the Station Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under, out of, in connection with, or in any way relating to, the Station Assets or with respect to any Claims arising out of or related to the Station Assets, shall be and hereby are forever barred, estopped, and permanently enjoined from commencing, prosecuting, or continuing in any manner any action or other proceeding of any kind against the Prevailing Bidders, their property, their successors and assigns, their affiliates, or the Station Assets.  Notwithstanding the foregoing, nothing herein shall prevent: (i) the Trustee or the Debtors' estates from pursuing an action against the Prevailing Bidders arising under the APAs or

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

the related documents; or (ii) the FCC, the Department of the Interior, Bureau of Reclamation, any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state, and local officials from properly exercising their regulatory powers.

14.      **Release of Claims**.  Subject to Paragraphs 4 and 33 of this Sale Order, this Sale Order shall be effective as a determination that, on the Closing, all Claims of any kind or nature whatsoever existing as to the Station Assets prior to the Closing have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effectuated.

15.      **Direction to Release Claims**.  On the Closing and subject to the Claims attaching to the cash proceeds of the Sale as provided for in Paragraphs 4 and 33 of this Sale Order, each of Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release the Claims in the Station Assets, if any, as such Claims may have been recorded or may otherwise exist.

16.      **No Successor Liability**.  Neither the Prevailing Bidders nor their affiliates, successors, nor assigns shall be deemed, as a result of any action taken in connection with the purchase of the Station Assets, to: (i) be successors to any of the Debtors or their estates; (ii) have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates; or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  The transfer of the Station Assets to the Prevailing Bidders shall not result in: (i) the Prevailing Bidders, their affiliates, members, or shareholders or the Station Assets, having any liability or responsibility for any Claim against the Debtors or against any insider of the Debtors; (ii) the Prevailing Bidders, their affiliates, members, or shareholders, or the Station Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any Claim; or (iii) the Prevailing Bidders, their affiliates, members, or shareholders or the Station Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the APAs and this Sale Order.

17.     Without limiting the effect or scope of the foregoing and except as expressly provided in the APAs, the Prevailing Bidders shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to Debtors or any obligations of Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any taxes or other government fees, contributions or surcharges arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Station Assets prior to the Closing, under the laws of the United States, any state, territory or possession thereof, or the State of Nevada.

18.     **Assumption and Assignment of the Assumed Contracts and Leases.**  Under Sections 105(a) and 365, Silver State Broadcasting, LLC's assumption and assignment of the Assumed Contracts and Leases to AutopilotFM, LLC free and clear of all Claims pursuant to the terms set forth in the APAs is hereby approved, and the requirements of Sections 365(b)(1), 365(b)(3), and 365(f)(2) with respect thereto are hereby deemed satisfied.  Each Counterparty to any of the Assumed Contracts and Leases is hereby forever barred, and estopped from raising or asserting against the Debtors, Debtors' estates, or the Prevailing Bidders, or the property of either, any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinate) arising under or related to the Assumed Contracts and Leases existing as of the Closing or arising by reason of the Closing.

19.     There shall be no rent accelerations, assignment fees, increases (including advertising rates), or any other fees charged to the Prevailing Bidders or Debtors as a result of the assumption and assignment of the Assumed Contracts and Leases.

20.     The payment of the Cure Amounts shall be in full satisfaction of any and all defaults under the Assumed Contracts and Leases, whether monetary or non-monetary, and upon payment of the Cure Amounts, any default of Debtors thereunder shall have been irrevocably cured.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Case 21-14978-abl    Doc 925    Entered 11/20/23 09:31:18    Page 15 of 22

21.     Any provisions in any of the Assumed Contracts and Leases that prohibit or condition the assignment of such Assumed Contracts and Leases or allow the party to such Assumed Contracts and Leases to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contracts and Leases, are either deemed satisfied or constitute unenforceable anti-assignment provisions that are void and of no force and effect.

22.     The Prevailing Bidders have provided adequate assurance of future performance under the relevant Assumed Contracts and Leases within the meaning of Sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.  All other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and their estates and assignment to the Prevailing Bidders of the Assumed Contracts and Leases have been satisfied.

23.     Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code: (i) the Prevailing Bidders shall be fully and irrevocably vested with all right, title, and interest of Trustee and Debtors under the applicable Assumed Contracts and Leases; and (ii) the Debtors and their estates shall be relieved from any liability for any breach of such Assumed Contracts and Leases occurring thereafter pursuant to Section 365(k) of the Bankruptcy Code.

24.     To the extent any governmental license or permit necessary for the operation of the Debtors' businesses is determined not to be an executory contract assumable and assignable under Section 365 of the Bankruptcy Code, the Prevailing Bidders shall apply for and obtain any necessary licenses or permits promptly after the Closing and to the extent permitted by law such licenses or permits of Debtors shall remain in place for the Prevailing Bidders' benefit until new licenses and permits are obtained.  The Debtors and their estates shall have no liability under such licenses or permits after the Closing.

25.     Paragraphs 18 through 23 of this Sale Order are subject to and conditioned upon the occurrence of the Closing.

26.     **Cure**.  The Prevailing Bidders shall pay all Cure Amounts relative to the Assumed Contracts and Leases to be assigned on the Closing in accordance with the terms of the APAs and

neither Debtors nor their estates shall have any obligation to pay, or any liability for, any such Cure Amounts relating to any Assumed Contracts and Leases upon the Closing.  The payment of the applicable Cure Amounts (if any) shall: (i) effect a cure of all defaults existing thereunder as of the Closing; (ii) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default; and (iii) together with the assumption of the Assumed Contracts and Leases by Debtors and their estates, constitute adequate assurance of future performance thereof.  Except as set forth in this Sale Order, the non-Debtor party to each of the Assumed Contracts and Leases that is to be assigned on the Closing is forever barred from asserting against Debtors and their estates, the Prevailing Bidders and any of their affiliates, or any of the Station Assets: (i) any fee, default, breach, claim, or pecuniary loss arising under or related to the Assumed Contracts and Leases existing as of the Closing or arising by reason of the Closing; and (ii) any objection to the assumption and assignment of such non-Debtor party's Assumed Contracts and Leases.

27.    **Binding Effect of Order**.  This Sale Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Station Assets.

28.    **Binding on Successors**.  The terms and provisions of the APAs and this Sale Order shall be binding in all respects upon Trustee, Debtors, their estates, all creditors of (whether known or unknown) and holders of equity interests in, the Debtors, the Prevailing Bidders and their respective affiliates, successors and assigns, and any affected third parties, including, but not limited to, all persons asserting Claims in the Station Assets and all non-Debtor counterparties to the Assumed Contracts and Leases, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding.  This Sale Order and the APAs shall inure to the benefit of Debtors, their estates, all creditors, the Prevailing Bidders, and their respective successors and assigns.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

16

29.    **Section 363(n) of the Bankruptcy Code.**  The consideration provided by the Prevailing Bidders for the Station Assets under the APAs is fair and reasonable and may not be avoided under Section 363(n) of the Bankruptcy Code.

30.    **Good Faith**.  The Sale to the Prevailing Bidders is undertaken by the Prevailing Bidders without collusion and in good faith, as that term is used in Section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts and Leases) with or to the Prevailing Bidders, unless such authorization is duly stayed pending such appeal.  The Prevailing Bidders are good faith purchasers of the Station Assets, and entitled to all of the benefits and protections afforded by Section 363(m) of the Bankruptcy Code.

31.    **Fair Consideration**.  The consideration provided by the Prevailing Bidders to the Debtors' estates pursuant to the APAs for the purchase of the Station Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Fraudulent Conveyance Act.

32.    **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the APAs, and all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to: (i) compel delivery of the Station Assets to the Prevailing Bidders; (ii) compel delivery of the purchase price under the APAs or performance of other obligations thereunder owed to the Trustee and Debtors' estates; (iii) interpret, implement, and enforce the provisions of this Sale Order and the APAs; (iv) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale; and (v) protect the Prevailing Bidders against any Claims in the Debtors or the Station Assets of any kind or nature whatsoever attaching to the proceeds of the Sale.

33.    **Sale Proceeds**.  Any and all valid and perfected Claims in Station Assets shall attach to any cash proceeds of such Station Assets immediately upon receipt of such proceeds by

the Trustee (or any party acting on the Trustee's behalf) in the order of priority, and with the same validity, force, and effect which they now have against such Station Assets, if any, subject to any rights, claims, and defenses Debtors or their estates may possess with respect thereto, and, in addition to any limitations on the use of such cash proceeds pursuant to any provision of this Sale Order.

34. **Non-Material Modifications**. The APAs and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect, in the Trustee's sole business judgment, on Debtors' estates.

35. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the APAs in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APAs be authorized and approved in their entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Prevailing Bids and the APAs (including all ancillary documents executed in connection therewith) and this Sale Order. Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

36. **Acceptance of Documents.** Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APAs.

37. **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), this Sale Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof. Time is of the essence in closing the Sale contemplated herein, and the Trustee and the Prevailing Bidders intend to close the Sale as soon as practicable. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

38. **Cooperation with Administration of the Estates**. The Trustee shall have reasonable access, on a confidential basis, to copies of the books and records constituting Station

Assets that are required to enable its tax accountants to prepare tax filings or reports regarding ownership of the Station Assets prior to the Closing or the conduct of the business prior to the Closing.  The Prevailing Bidders shall cooperate with all reasonable requests of the Trustee and provide any information or documentation reasonably necessary to enable the Trustee to administer Debtors' estates and to reconcile Claims.  Except for the foregoing, the Prevailing Bidders shall not be liable for any costs, fees, and/or expenses associated with the administration of Debtors' estates and/or reconciliation of Claims, including, but not limited to: (i) any administrative fees and expenses, including, without limitation, allowed administrative expenses under Section 503(b) of the Bankruptcy Code; (ii) any Sale costs, fees, and expenses in connection with Trustee's obligations under this Sale Order; and (iii) any rejection damages claimed in Debtors' Chapter 11 Cases.

39. **Further Assurances**.  From time to time, as and when requested by any party to the APAs, each APAs' party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale to the Prevailing Bidders, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in the Prevailing Bidders its right, title, and interest in and to the Station Assets.

40. **Consummation of Sales; Injunction**.  Upon entry of this Sale Order, no further corporate action of the Debtors or approval of any of the Debtors' equity security holders shall be required to authorize the Trustee to consummate the Sale contemplated by the APAs.  Except as expressly permitted by this Sale Order, all holders of Claims against the Debtors shall be and hereby are forever barred, estopped, and enjoined from commencing, prosecuting, or continuing in any manner any action or other proceeding of any kind against the Trustee, the Debtors' estates, or the Trustee's attorneys and professionals on account of or related to the Sale to the Prevailing Bidders.  Additionally, all managers, members, officers, directors, and holders of equity interests in Debtors shall: (i) be and hereby are forever barred, estopped, and enjoined from commencing, prosecuting, or continuing in any manner any action or other proceeding of any kind against the

Trustee, the Debtors' estates, or the Trustee's attorneys and professionals on account of or related to the Sale to the Prevailing Bidders; (ii) cooperate fully in effectuating the Sale of the Station Assets to the Prevailing Bidders in accordance with the terms of the APAs; and (iii) not file any petition to deny, informal objection, or other opposition or pleading with the FCC against or related to the applications for assignment of the FCC licenses or authorizations held by Debtors' estates, or otherwise related to the Sale of the Station Assets.  Nothing herein shall prevent the FCC, the Department of the Interior, Bureau of Reclamation, any administrative agencies, governmental, tax, and regulatory authorities, secretaries of state, federal, state, or local officials from properly exercising their regulatory powers.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

GARMAN TURNER GORDON LLP

By: */s/ Talitha Gray Kozlowski*
      GREGORY E. GARMAN, ESQ.
      TALITHA GRAY KOZLOWSKI, ESQ.
      MARY LANGSNER, PH.D
      7251 Amigo Street, Suite 210
      Las Vegas, Nevada 89119
      *Attorneys for Michael Carmel, Chapter 11 Trustee*

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐     The court waived the requirement of approval under LR 9021(b)(1).

☐     No party appeared at the hearing or filed an objection to the motion.

☒     I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated in the Order.

| | |
|---|---|
| Daniel Kelly, Esq.,<br>Attorneys for Judgment Creditor<br>Bellaire Tower Homeowners Association | APPROVED |
| Norma Guariglia, Esq.<br>Attorneys for Harris Law Practice | APPROVED |
| Nicholas Koffroth, Esq.<br>Attorneys for W. Lawrence Patrick | APPROVED |
| Candace Carlyon, Esq.<br>Attorneys for C & E Haas<br>Development Company LLC | APPROVED |
| Thomas Fell, Esq.<br>Attorneys for Crown Castle MU LLC | APPROVED |
| David Mincin, Esq.<br>Attorneys for Mincin Law, PLLC | APPROVED |
| Ogonna Brown, Esq.<br>Attorneys for VCY America, Inc. | APPROVED |
| Michael Shalmy, Esq.<br>Attorneys for Friends of KEXP | APPROVED |
| Justin Valina, Esq.<br>Attorneys for U.S. Trustee – LV – 11 | APPROVED |
| John White, Esq.,<br>Attorneys for the Debtors-Out-of-Possession | DISAPPROVE |

Garman Turner Gordon<br>7251 Amigo Street, Ste. 210<br>Las Vegas, Nevada 89119<br>(725) 777-3000

21

| Donald Schwartz, Esq.<br>Attorneys for Royce International<br>Broadcasting Corporation, Edward R.<br>Stolz, II, and Playa Del Sol Broadcasters | Neither approved nor disapproved, stating:<br>"I made myself available as a "friend to the<br>court" – I did not make an appearance in the<br>court." |
| --- | --- |

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

###

Garman Turner Gordon<br>7251 Amigo Street, Ste. 210<br>Las Vegas, Nevada 89119<br>(725) 777-3000